UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
----------------------------------------------------------------x

SHELLEY LEVINE, et al.,                              Case No. 21-cv-03043

                              Plaintiffs,

                    v.

THE PALESTINE LIBERATION
ORGANIZATION and
THE PALESTINIAN AUTHORITY,

                              Defendants.
----------------------------------------------------------------x


### <u>DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>


**SQUIRE PATTON BOGGS (US) LLP**

Gassan A. Baloul
gassan.baloul@squirepb.com
Mitchell R. Berger
mitchell.berger@squirepb.com

2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

1801 California Street
Suite 4900
Denver, CO 80202
Telephone: (303) 830-1776
Facsimile: (303) 894-9239

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF CONFERRAL ......................................................................................... 4

ARGUMENT ........................................................................................................................ 4

I.     EXERCISING PERSONAL JURISDICTION OVER DEFENDANTS WOULD VIOLATE DUE PROCESS ..................................................................................... 4

    A.    Defendants Lack Sufficient Contacts with the United States to Support the Exercise of Personal Jurisdiction. ......................................................... 5

    B.    The PSJVTA Does Not Establish Valid "Consent" to Personal Jurisdiction. ............................................................................................... 8

    C.    Allowing Congress to Dictate that Defendants Shall Be "Deemed" to "Consent" to Personal Jurisdiction Would Violate Separation of Powers. ......... 15

II.    THE AMERICAN PLAINTIFFS FAIL TO STATE A DIRECT-LIABILITY OR RESPONDEAT SUPERIOR CLAIM UNDER THE ATA. ........................................... 16

    A.    The American Plaintiffs Fail to State a Claim for Direct Liability for an Act of International Terrorism Pursuant to 18 U.S.C. § 2333(a)......................... 19

        1.    The Complaint Fails To Plausibly Allege Proximate Cause. .................. 19

        2.    The American Plaintiffs Do Not Plausibly Allege that Defendants Committed an "Act of International Terrorism."...................................... 23

        3.    The American Plaintiffs Do Not Plausibly Allege Defendants Provided Material Support to an FTO, or Knew or Intended that Such Support Would Be Used for a Terrorist Act. .................................. 26

    B.    The American Plaintiffs Fail to Establish Essential Elements of Respondeat Superior Liability. ............................................................................ 27

III.    PLAINTIFFS' FAIL TO STATE A CLAIM FOR CONSPIRACY LIABILITY UNDER 18 U.S.C. 2333(D). ............................................................................ 28

IV.    THE AMERICAN PLAINTIFFS HAVE FAILED TO PLAUSIBLY ALLEGE A CLAIM FOR AIDING AND ABETTING LIABILITY PURSUANT TO 18 U.S.C. § 2333(D). ........................................................................................... 30

    A.    The American Plaintiffs Have Not Alleged, and Could Not Plausibly Allege, that Defendants Knowingly and Substantially Assisted the Attack........ 30

    B.    The American Plaintiffs Have Not Alleged, and Could Not Plausibly Allege, that Defendants Were Generally "Aware" They Were Assuming a Role in Violent Terrorist Activity....................................................................... 32

V.      PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED BUT-FOR CAUSATION
        AS REQUIRED FOR A NEGLIGENCE CLAIM UNDER ISRAELI LAW. ................ 33

VI.     PLAINTIFFS FAIL TO STATE A CLAIM FOR VICARIOUS LIABILITY
        UNDER ISRAELI LAW. ............................................................................................... 34

CONCLUSION ............................................................................................................................. 35

## TABLE OF AUTHORITIES

**Cases**

*Alfaro-Huitron v. Cervantes Agribusiness*,
    982 F.3d 1242 (10th Cir. 2020) ................................................................. 28

*Am. Select Ins. Co. v. Johnson*,
    2018 U.S. Dist. LEXIS 101446 (D. Colo. June 18, 2018) ....................................... 28

*Anapoell v. Am. Express Bus. Fin. Corp.*,
    2009 U.S. App. LEXIS 6315 (10th Cir. Mar. 24, 2009) ......................................... 17

*Archangel Diamond Liquidating Trust v. OAO Lukoil*,
    75 F. Supp. 3d 1343 (D. Colo. 2014) .......................................................... 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................ 16

*Ayda Husam Ahmad v. Christian Friends of Israeli Cmtys.*,
    2014 U.S. Dist. LEXIS 62053 (S.D.N.Y. May 5, 2014) ..................................... 20, 26

*Bank Markazi v. Peterson*,
    578 U.S. 212 (2016) ........................................................................ 15

*Behagen v. Amateur Basketball Ass'n*,
    744 F.3d 731 (10th Cir. 1984) ............................................................... 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................... 16, 17

*Biodiversity Assocs. v. Cables*,
    357 F.3d 1152 (10th Cir. 2004) ............................................................. 15

*Boim v. Am. Muslims for Palestine*,
    9 F.4th 545 (7th Cir. 2021) ............................................................ 27, 28

*Boim v. Holy Land Found. for Relief & Dev.*,
    549 F.3d 685 (7th Cir. 2008) ............................................................... 28

*Brewer v. Williams*,
    430 U.S. 387 (1977) .................................................................... 15, 16

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985) ......................................................................... 5

*City of Boerne v. Flores*,
    521 U.S. 507 (1997) ..................................................................................... 15

*College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999) ................................................................ 9, 10, 11, 12

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ................................................................................ 6, 14

*Dudnikov v. Chalk & Vermillion Fine Arts*,
    514 F.3d 1063 (10th Cir. 2008) ................................................................... 4

*EEOC v. Arabian Am. Oil Co.*,
    499 U.S. 244 (1991) .................................................................................... 27

*Estate of Botvin v. Islamic Rep. of Iran*,
    772 F. Supp. 2d 218 (D.D.C. 2011) ........................................................... 34

*Estate of Klieman v. Palestinian Auth.*,
    140 S. Ct. 2713 (2020) ................................................................................. 5

*Estate of Klieman v. Palestinian Auth.*,
    820 F. App'x 11 (D.C. Cir. 2020) ............................................................... 5

*Estate of Klieman v. Palestinian Auth.*,
    923 F.3d 1115 (D.C. Cir. 2019) ........................................................... 5, 6, 7

*Estate of Parsons v. Palestinian Auth.*,
    715 F. Supp. 2d 27 (D.D.C. 2010) ............................................................. 28

*Estate of Parsons v. Palestinian Auth.*,
    651 F.3d 118 (D.C. Cir. 2011) ............................................................. 28, 29

*Fields v. Twitter, Inc.*,
    881 F.3d 739 (9th Cir. 2018) ...................................................................... 19

*Frutos v. Am. Modern Prop. & Cas. Ins. Co.*,
    No. 19-cv-334, 2020 U.S. Dist. LEXIS 169276 (D. Colo. Mar. 20, 2020) ............................. 28

*Fuld v. PLO*,
    No. 20-CV-3374, 2022 U.S. Dist. LEXIS 3102 (S.D.N.Y. Jan. 6, 2022)......................... *passim*

*Gill v. Arab Bank, PLC*,
    893 F. Supp. 2d 54 (E.D.N.Y. 2012) .................................................... 23, 26

*Gilson v. Republic of Ir.*,
    682 F.2d 1022 (D.C. Cir. 1982) .................................................................. 15

*Goldberg v. UBS AG*,
   660 F. Supp. 2d 410 (E.D.N.Y. 2009)..................................................................... 27, 31

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ............................................................................................... 14

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983) .......................................................................... 30, 31

*Hamm v. United States*,
   483 F.3d 135 (2d Cir. 2007)................................................................................ 18, 19

*Hess v. Pawloski*,
   274 U.S. 352 (1927) ............................................................................................ 8, 11

*Honickman v. Blom Bank Sal*,
   6 F.4th 487 (2d Cir. 2021)................................................................................... 32, 33

*Hooper v. Wyant*,
   502 F. App'x 790 (10th Cir. 2012)............................................................................ 8

*In re Mid-Atl. Toyota Antitrust Litig.*,
   525 F. Supp. 1265 (D. Md. 1981) ........................................................................... 12

*Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee* ("*Bauxites*"),
   56 U.S. 694 (1982) ............................................................................................... 8, 9

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) .................................................................................................. 9

*J.L. v. Best Western Int'l, Inc.*,
   521 F. Supp. 3d 1048 (D. Colo. 2021) ...................................................................... 5

*Kaplan v. Lebanese Canadian Bank, SAL*,
   999 F.3d 842 (2d Cir. 2021)............................................................................ *passim*

*Kemper v. Deutsche Bank AG*,
   911 F.3d 383 (7th Cir. 2018)........................................................................... *passim*

*Klinghoffer v. S.N.C. Achille Lauro*,
   937 F.2d 44 (2d Cir. 1991)................................................................................... 8, 13

*Leonard v. USA Petroleum Corp.*,
   829 F. Supp. 882 (S.D. Tex. 1993) ...................................................................... 9, 12

*Lerner v. Fleet Bank, N.A.*,
   318 F.3d 113 (2d Cir. 2003).................................................................................... 19

*Licerio v. Lamb*,
  No. 20-cv-681-WJM-STV, 2021 U.S. Dist. LEXIS 175346 (D. Colo. July 15, 2021) ........... 17

*Linde v. Arab Bank PLC*,
  882 F.3d 314 (2d Cir. 2018) ................................................................. 23, 24, 25, 31

*Livnat v. Palestinian Auth.*,
  851 F.3d 45 (D.C. Cir. 2017) ................................................................. 5, 6, 14

*Marbury v. Madison*,
  5 U.S. (1 Cranch) 137 (1803) ................................................................. 16

*Mendelsohn v. Meese*,
  695 F. Supp. 1474 (S.D.N.Y. 1988) ................................................................. 13

*Mohammad v. Rajoub*,
  566 U.S. 449 (2012) ................................................................. 27

*O'Sullivan v. Deutsche Bank AG*,
  No. 17-cv-8709, 2019 U.S. Dist. LEXIS 53134 (S.D.N.Y. Mar. 28, 2019) ...................... 29, 32

*Owens v. BNP Paribas, S.A.*,
  897 F.3d 266 (D.C. Cir. 2018) ................................................................. 18, 19, 21, 25

*Peay v. BellSouth Med. Assistance Plan*,
  205 F.3d 1206 (10th Cir. 2000) ................................................................. 6

*PostNet Int'l Franchise Corp. v. Wu*,
  521 F. Supp. 3d 1087 (D. Colo. 2021) ................................................................. 8

*Price v. Socialist People's Libyan Arab Jamahiriya*,
  294 F.3d 82 (D.C. Cir. 2002) ................................................................. 15

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013) ................................................................. *passim*

*Ruggieri v. General Well Service, Inc.*,
  535 F. Supp. 525 (D. Colo. 1982) ................................................................. 8, 9

*Shatsky v. PLO*,
  955 F.3d 1016 (D.C. Cir. 2020) ................................................................. 5, 7, 21

*Shatsky v. PLO*, No. 02-2280 (RJL),
  2017 U.S. Dist. LEXIS 94946 (D.D.C. June 20, 2017) ................................................................. *passim*

*Siegel v. HSBC N. Am. Holdings, Inc.*,
  933 F.3d 217 (2d Cir. 2019) ................................................................. 3, 33

*Siemer v. Learjet Acquisition Corp.*,
   966 F.2d 179 (5th Cir. 1992).................................................................. 14, 15

*Sokolow v. PLO*,
   60 F. Supp. 3d 509 (S.D.N.Y. 2014)......................................................... *passim*

*United States v. Fischman*,
   645 F.3d 1175 (10th Cir. 2011)..................................................................... 28

*United States v. Ghayth*,
   709 F. App'x 718 (2d Cir. 2017)................................................................... 26

*United States v. Hamilton*,
   334 F.3d 170 (2d Cir. 2003)......................................................................... 32

*United States v. PLO*,
   695 F. Supp. 1456 (S.D.N.Y. 1988).............................................................. 13

*United Water & Sanitation Dist. v. Geo-Con, Inc.*,
   488 F. Supp. 3d 1052 (D. Colo. 2020).......................................................... 17

*Walden v. Fiore*,
   571 U.S. 277 (2014)........................................................................................ 6

*Waldman v. PLO*,
   835 F.3d 317 (2d Cir. 2016)................................................................. 5, 6, 8

*Weiss v. Nat'l Westminster Bank PLC*,
   768 F.3d 202 (2d Cir. 2014)......................................................................... 24

*Wellness Int'l Network v. Sharif*,
   575 U.S. 665 (2015)........................................................................................ 9

*Wenz v. Memery Crystal*,
   55 F.3d 1503 (10th Cir. 1995)........................................................................ 4

*WorldCare Ltd. Corp. v. World Ins. Co.*,
   767 F. Supp. 2d 341 (D. Conn. 2011)........................................................... 15

*Wultz v. Islamic Republic of Iran*,
   755 F. Supp. 2d 1 (D.D.C. 2010)................................................................. 33

## Statutes

18 U.S.C. § 2331............................................................................................. 24

18 U.S.C. § 2333 .......................................................................................................... *passim*

18 U.S.C. § 2334 ..................................................................................................... 1, 3, 7, 15

18 U.S.C. § 2339A ................................................................................................................ 26

18 U.S.C. § 2339B ................................................................................................................ 26

18 U.S.C. § 2339C ................................................................................................................ 26

22 U.S.C. § 5201 .................................................................................................................. 13

22 U.S.C. § 5202 .................................................................................................................. 13

28 U.S.C. § 1605A ................................................................................................................ 27

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................ 2, 16

Local Rule 7.1(a) .................................................................................................................. 4

**Other Authorities**

CA 148/80 *Vaknin v. Beit Shemesh Local Council 37*(1) PD 113 [1982] (Isr.) ........................... 33

Israel Gilead, *Tort Law*, in The Law of Israel: General Surveys 275, 437 (Itzhak Zamir & Sylviane Clombo eds., 1995) ...................................................................................... 34

Israeli Civil Wrongs Ordinance (New Version), 5728-1968, 2 LSI 5, § 14 (1972) (Isr.) ............ 34

Programme of Work for 2020, CEIRPP, UN Doc. A/AC.183/2020/1 (Feb. 7, 2020) ................. 13

Report, CEIRPP, UN Doc. A/75/35 (Oct. 10, 2020) .................................................................. 12

**Treatises**

Restatement (Second) of Agency § 82 (1958) .............................................................................. 19

## **PRELIMINARY STATEMENT**

Plaintiffs rely for jurisdiction exclusively on the Promoting Security and Justice for Victims of Terrorism Act ("PSJVTA"), 18 U.S.C. § 2334(e) (*see* Compl. ¶¶ 7-13), which another federal court recently held violates the Due Process Clause of the Fifth Amendment. *Fuld v. PLO*, No. 20-CV-3374, 2022 U.S. Dist. LEXIS 3102 (S.D.N.Y. Jan. 6, 2022) (hereinafter, "*Fuld* Opinion"). Plaintiffs' Complaint accordingly must be dismissed at the threshold because personal jurisdiction cannot be exercised over Defendants consistent with jurisdictional due process.

The PSJVTA is simply the latest unsuccessful legislative effort to undo an unbroken line of judicial decisions holding that the same type of allegations Plaintiffs level here cannot support jurisdiction over these Defendants consistent with Due Process.[1]  Time and again, courts hold that the same type of activity by Defendants that Plaintiffs allege here lacks a sufficient jurisdictional connection with the United States. Because jurisdictional due process protections are rooted in the Constitution, they cannot be undone by mere legislation.

In holding the PSJVTA unconstitutional, the *Fuld* court held that the legislatively-imposed "deemed" "consent" to jurisdiction on which the PSJVTA pivots (*see supra* n.1) cannot be squared with the Due Process Clause. "Congress cannot, consistent with the Constitution, simply decree that any conduct, without regard for its connections to the United States generally or to litigation in the United States specifically, signals a party's intent to submit to" jurisdiction. *Fuld*, 2022 U.S. Dist. LEXIS 3102, at *3. The PSJVTA violates this basic principle because the conduct at issue—

---

[1] Invoking the PSJVTA, Plaintiffs allege Defendants are "deemed" to have "consented" to jurisdiction because they (1) made certain payments to those responsible for terrorist attacks (or their families) that injured or killed a U.S. national; (2) maintained a non-exempt office in the U.S.; or (3) conducted non-exempt activities while physically present in the United States (Compl. ¶¶ 8-13). Notably, courts have repeatedly held that this same alleged conduct, standing alone, is *insufficient* to support jurisdiction. *See infra* at 7-8.

payments made in Palestine, maintenance of Palestine's UN Mission, and limited UN-related activities—"does not remotely signal[] approval or acceptance of the Court's jurisdiction." *Id.* at *19. "To hold otherwise would effectively mean that there are no constitutional limitations on the exercise of personal jurisdiction . . . ." *Id.* at *3. Because the PSJVTA is the sole basis for personal jurisdiction alleged in the Complaint, Plaintiffs' claims must be dismissed.

　　　Independent of the lack of jurisdiction, Plaintiffs' six causes of action are legally insufficient and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs' direct-liability claim under the Anti-Terrorism Act ("ATA" ) (Count 1) for an "act of international terrorism" fails because Plaintiffs make only conclusory and speculative assertions, devoid of plausible supporting facts, in an unavailing attempt to connect Defendants to the November 18, 2014 attack in Har Nof, Israel (the "Attack") that caused Plaintiffs' injuries. Plaintiffs fail to make plausible factual allegations satisfying three essential elements of their ATA direct-liability claim, *i.e.*, that Defendants: (1) proximately caused Plaintiffs' injuries; (2) *themselves* committed an "act of international terrorism"; or (3) provided material support to a Foreign Terrorist Organization ("FTO"), or any support with knowledge or intent that such support would be used to prepare for, or to carry out, a criminal act of terrorism.

　　　Plaintiffs' claim for ATA respondeat superior liability (Count 2) likewise fails.  First, there is no such cause of action because Congress did not expressly authorize one. Second, Plaintiffs do not plausibly plead an employment relationship between Defendants and Uday Abu Jamal and Ghassan Abu Jamal (the "Attackers"), which is an essential element of any respondeat superior claim.

Similarly, Plaintiffs' JASTA[2] secondary-liability claim for conspiracy (Count 4) fails because Plaintiffs do not plausibly plead that Defendants had an agreement with the Attackers to carry out the Attack or any other act of international terrorism. That type of *agreement* is the *sine qua non* of a JASTA conspiracy claim. *Kaplan v. Lebanese Canadian Bank, SAL,* 999 F.3d 842, 855 (2d Cir. 2021) (JASTA conspiracy claim requires that defendant "conspire[d] with" the principal actor that committed the attack) (alteration in original). It is not satisfied by allegations that Defendants provided limited and generalized support for the Popular Front for the Liberation of Palestine ("PFLP") as a political faction, or by *post*-Attack praise or stipends.

Plaintiffs' secondary-liability claim for aiding and abetting the Attack (Count 3) fails because Plaintiffs do not plausibly allege Defendants knowingly and substantially assisted the Attack, or were "generally aware" they were playing a "role" in others' violent or life-threatening acts. Failing to plead either of these elements requires dismissal of Plaintiffs' aiding-and-abetting claim. *See Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 223 (2d Cir. 2019) (JASTA aiding and abetting requires that the defendant "knowingly and substantially assist[ed] the principal violation," i.e., the "act of international terrorism").

Finally, Plaintiffs' non-federal claims (Counts 5 and 6) fail to plausibly establish elements required under Israeli law, which those claims invoke. Specifically, as to Plaintiffs' negligence claim, they do not, because they cannot, plausibly allege that Defendants' conduct was the but-for cause of Plaintiffs' injuries, as Israeli law requires.  Further, because Plaintiffs do not allege facts to support Defendants' prior awareness of the Attack, they do not plausibly plead that the Attackers were acting as agents of, or were otherwise affiliated with, Defendants as Israeli law requires.

---

[2] The relevant portions of the Justice Against Sponsors of Terrorism Act ("JASTA") are codified at 18 U.S.C. § 2334(d).

## STATEMENT OF CONFERRAL

Pursuant to Local Rule 7.1(a), undersigned counsel for Defendants conferred in good faith via email with Plaintiffs' counsel regarding the specific bases for this Motion. Plaintiffs oppose this Motion.

## ARGUMENT

## I.    EXERCISING PERSONAL JURISDICTION OVER DEFENDANTS WOULD VIOLATE DUE PROCESS.

On a motion to dismiss for lack of personal jurisdiction, "[t]he plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Behagen v. Amateur Basketball Ass'n*, 744 F.3d 731, 733 (10th Cir. 1984); *accord Dudnikov v. Chalk & Vermillion Fine Arts*, 514 F.3d 1063, 1069 (10th Cir. 2008). Courts accept as true "the well pled facts of plaintiff's complaint," but do not credit "mere conclusory allegations." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Once a defendant challenges the exercise of personal jurisdiction, "[t]he plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts." *Id.* at 1508.

Plaintiffs cannot satisfy their burden in this case because the sole statutory basis for exercising personal jurisdiction over Defendants—the "deemed consent" provisions of the PSJVTA (*see* Compl. ¶ 7)—are unconstitutional. Just last month, a federal district judge in New York *struck down the same jurisdictional provisions relied upon by Plaintiffs*, holding that they "push the concept of consent well beyond its breaking point" and thus violate the Due Process Clause. *Fuld* Opinion, at *38-39. As explained below, that decision was undoubtedly correct, as the courts consistently reject congressional attempts to impose personal jurisdiction by legislative fiat when defendants lack the minimum contacts necessary to satisfy the Due Process Clause. Accordingly, Plaintiffs' claims in this case should be dismissed for lack of personal jurisdiction.

A.    **Defendants Lack Sufficient Contacts with the United States to Support the Exercise of Personal Jurisdiction.**

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King v. Rudzewicz*, 471 U.S. 462, 471-72 (1985); *see also J.L. v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048, 1059 (D. Colo. 2021) ("Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that jurisdiction does not offend 'traditional notions of fair play and substantial justice.'"). In a series of cases involving similar ATA claims, federal courts have repeatedly held the Due Process Clause prohibits jurisdiction over the Palestinian Authority (the "PA") and the Palestine Liberation Organization (the "PLO") in suits for alleged involvement in attacks in Israel or Palestine, because they lack any "meaningful contacts" with the forum. *See, e.g.*, *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56-58 (D.C. Cir. 2017) (holding plaintiffs failed to establish that the exercise of jurisdiction "would meet the requirements of the Fifth Amendment's Due Process Clause"); *Shatsky v. PLO*, 955 F.3d 1016, 1036-38 (D.C. Cir. 2020) (directing dismissal of ATA claims against Defendants for lack of personal jurisdiction); *Estate of Klieman v. Palestinian Auth.*, 923 F.3d 1115, 1118 (D.C. Cir. 2019) (holding Due Process Clause "barred U.S. courts from exercising jurisdiction" over PA/PLO), *vacated on other grounds*, 140 S. Ct. 2713 (2020), *reinstated in relevant part*, 820 F. App'x 11 (D.C. Cir. 2020); *Waldman v. PLO*, 835 F.3d 317, 344 (2d Cir. 2016) (holding court "could not constitutionally exercise either general or specific personal jurisdiction" over either Defendant).

As these courts have consistently recognized, Defendants are not subject to *general* jurisdiction in the United States because they are not "essentially at home" here. *Klieman*, 923 F.3d at 1123; *see also Waldman*, 835 F.3d at 332 (holding Defendants are fairly regarded as "'at

home' in Palestine, where they govern") (citation omitted); *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014) (describing due process limitations on general jurisdiction). Defendants also are not subject to *specific* jurisdiction because their "suit-related conduct"—their alleged involvement in attacks in Israel or Palestine (which they strongly dispute)—is "not sufficiently connected to the United States" to subject them to suit here. *Waldman*, 835 F.3d at 335-44; *see also Klieman*, 923 F.3d at 1123-26 (explaining American citizenship of victims of alleged attacks was too "random, fortuitous, or attenuated" a contact with forum to support specific jurisdiction); *Walden v. Fiore*, 571 U.S. 277, 283-91 (2014) (describing due process limitations on specific jurisdiction).[3]

Plaintiffs implicitly acknowledge this precedent, as the Complaint does not even allege that Defendants have sufficient contacts with the forum to support either general or specific jurisdiction. *See* Compl. ¶ 7. Instead, Plaintiffs assert the Court may exercise personal jurisdiction over Defendants in this case based solely on the PSJVTA, which provides that Defendants "shall be deemed to have consented to personal jurisdiction" in ATA cases if they:

> 1. Made certain payments, after April 18, 2020, to persons who
>    have been "fairly tried" or pled guilty and have been imprisoned

---

[3] In addition to requiring sufficient contacts with the U.S. to support the exercise of either general or specific jurisdiction, the Fifth Amendment requires that Plaintiffs' choice of specific forum not be "so inconvenient to [Defendants] that it would be a denial of 'fair play and substantial justice.'" *Archangel Diamond Liquidating Trust v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1364 (D. Colo. 2014); *see also Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1211-13 (10th Cir. 2000) (describing factors relevant to this inquiry). Because Defendants lack sufficient nationwide contacts to support either general or specific jurisdiction, the Court need not reach this issue. *See Livnat*, 851 F.3d at 55 n.6 (declining to consider convenience factors because "the [PA] lacks minimum contacts with the United States as a whole"). However, if the Court were to find that Defendants have sufficient U.S. contacts to support jurisdiction, forcing Defendants to litigate in Colorado would plainly violate traditional notions of fair play and substantial justice. The Complaint does not allege a single contact between Defendants and Colorado, and discovery would "overwhelmingly" take place overseas. *Archangel*, 75 F. Supp. 3d at 1371. Moreover, Defendants are foreign organizations without any presence in the state. In such circumstances, the burden of litigating in Colorado is unconstitutionally "undue and unreasonable." *Id.* at 1371-74.

for "any act of terrorism" that injured or killed a U.S. national (or to the families of those who died while committing such acts);

2. Maintained "any office" or other facility "in the United States" after January 4, 2020 (unless the facility was used exclusively for the purpose of conducting official UN business); or

3. Engaged in "any activity while physically present in the United States" after January 4, 2020, that is not expressly exempted from consideration under the Act.[4]

*Id.*; *see also* 18 U.S.C. § 2334(e). Plaintiffs allege Defendants "consented" to personal jurisdiction in this case by making certain payments to those who carried out "attacks against Jewish and Israeli targets" that injured or killed U.S. citizens; by maintaining an office at 115 East 65th Street in New York (the site of Palestine's UN Mission); and by conducting "propaganda, public relations, lobbying, and social media activities" while physically present in the U.S. Compl. ¶¶ 8-13.[5]

Notably, courts have consistently held that the *same activities* relied upon by Plaintiffs to establish purported "consent" to jurisdiction are *insufficient* to satisfy the Due Process Clause. *See Shatsky*, 955 F.3d at 1022-23, 1037 (allegations Defendants provided "martyr payments" and conducted "public relations campaign designed to influence" U.S. foreign policy insufficient to support personal jurisdiction); *Klieman*, 923 F.3d at 1123-26 (rejecting "plaintiff's theory of specific jurisdiction" that hinged on Defendants' alleged "campaign" to "influence or affect [U.S.]

---

[4] Section 2334(e)(3) expressly provides that, in determining whether Defendants engaged in "any activity while physically present in the United States," "no court may consider," *inter alia*, activities undertaken "exclusively for the purpose of conducting" official UN business, activities and meetings with U.S. or foreign government officials, and "any personal or official activities conducted ancillary to" such activities.

[5] Defendants strongly disagree with Plaintiffs' characterization of the payment programs, which even-handedly provide for families burdened by the loss of breadwinners due to the Israeli-Palestinian conflict. However, for purposes of this Motion, Defendants do not contest they have made at least one such payment after the PSJVTA's effective date. Accordingly, this Court may assume that one of the predicates for "deemed-consent" jurisdiction under the PSJVTA is satisfied, and move directly to the constitutional issues.

foreign policy"); *Waldman*, 835 F.3d at 335-44 ("lobbying activities" in U.S. insufficient to support specific jurisdiction); *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 51 (2d Cir. 1991) (operation of Palestine's UN Mission cannot "properly be considered as a basis of jurisdiction").

The question before this Court is therefore whether Plaintiffs can evade the requirements of the Due Process Clause by relying upon these same constitutionally inadequate activities to establish "deemed consent" jurisdiction over Defendants under the PSJVTA. As explained below, permitting this sort of jurisdictional "sleight of hand" would violate due process.

**B.     The PSJVTA Does Not Establish Valid "Consent" to Personal Jurisdiction**.

To establish constitutionally valid "consent" to personal jurisdiction, a plaintiff bears the burden of demonstrating some "actions of the defendant" that "amount to a legal submission to the jurisdiction of the court." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee* ("*Bauxites*"), 456 U.S. 694, 704-05 (1982). A party may expressly consent to jurisdiction via a forum-selection clause, for example, or impliedly consent through conduct in the litigation itself (e.g., by appearing in the forum without objection). *Id.* at 703-05 (describing the "variety of legal arrangements" that "have been taken to represent express or implied consent" to personal jurisdiction); *see also Hooper v. Wyant*, 502 F. App'x 790, 792 (10th Cir. 2012) (litigation conduct); *PostNet Int'l Franchise Corp. v. Wu*, 521 F. Supp. 3d 1087, 1098 (D. Colo. 2021) (forum-selection clause). A party may also impliedly consent to jurisdiction by accepting some government benefit or privilege conditioned upon consent to personal jurisdiction in the forum. *See, e.g.*, *Hess v. Pawloski*, 274 U.S. 352, 354-57 (1927) (holding defendant's "acceptance" of the "rights and privileges" of driving on public roads constituted "signification of his agreement" to consent to jurisdiction in state court); *Ruggieri v. General Well Service, Inc.*, 535 F. Supp. 525 (D.

- 8 -

Colo. 1982) ("Implied consent may also arise from a defendant's pre-litigation conduct," such as "use of a state's roads.").

Regardless of the specific type of consent at issue (whether express or implied), however, the Supreme Court has "emphasiz[ed]" that consent to jurisdiction must be "knowing and voluntary." *Wellness Int'l Network v. Sharif*, 575 U.S. 665, 685 (2015). Because "constructive consent is not a doctrine commonly associated with the surrender of constitutional rights," federal courts "indulge every reasonable presumption against waiver of fundamental constitutional rights." *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 681-82 (1999) (internal quotations omitted). Accordingly, for implied consent, the nature of the defendant's activity must evince the defendant's agreement to the forum's exercise of jurisdiction. *Bauxites*, 456 U.S. at 705–09 (holding that "due process is violated . . . if the behavior of the defendant will not support" legal presumption of personal jurisdiction).

As the *Fuld* court recently concluded, the PSJVTA fails this test, because "neither form of conduct" specified by the Act—making social welfare payments in Palestine or maintaining a UN office and conducting related activities in the U.S.—"remotely signals approval or acceptance of the Court's jurisdiction." *Fuld* Opinion, at *19. "[F]or conduct to imply consent, the conduct must be 'of such nature as to justify the fiction' that the party actually consented to submit itself to the jurisdiction of the court. Put simply, for waiver of personal jurisdiction through consent to satisfy the requirements of due process, it 'must be willful, thoughtful, and fair. "Extorted actual consent" and "equally unwilling implied consent" are not the stuff of due process.'" *Id.* at *18 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945) and *Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882, 889 (S.D. Tex. 1993)).

"Measured against these standards," the *Fuld* court correctly held that "the PSJVTA does not constitutionally provide for personal jurisdiction over Defendants," because "Congress simply took conduct in which the PLO and PA had previously engaged—conduct that the Second and D.C. Circuits had held was insufficient to support personal jurisdiction in *Waldman*, *Livnat*, *Shatsky*, and *Klieman*—and declared that such conduct 'shall be deemed' to be consent." *Id.* The specified payments "have no direct connection to the United States, let alone to litigation in a United States court." *Id.* at *19. Inferring consent to personal jurisdiction on that basis would therefore "strain the idea of consent beyond its breaking point." *Id.* And while the U.S. offices and activities prongs at least "relate to conduct in the United States," the courts have uniformly held that such conduct is "too thin" a reed to support the exercise of personal jurisdiction under the Due Process Clause. *Id.* "To pass muster," the *Fuld* court explained, "the predicate conduct would have to be a much closer proxy for actual consent than the predicate conduct at issue is here. To be blunt: The PSJVTA is too cute by half to satisfy the requirements of due process." *Id.* at *20.

*Fuld*'s conclusion draws "strong support," (*id.* at *20-23) from the Supreme Court's decision in *College Savings Bank*, which similarly rejected a Congressional attempt to exact "constructive" or implied waivers of state sovereign immunity. *See College Savings Bank*, 527 U.S. at 676-87. In that case, plaintiffs argued that a state agency impliedly consented to jurisdiction in federal court by knowingly and voluntarily engaging in interstate marketing, after a federal statute made clear that such activity would subject it to suit. *Id.* at 671-72, 679. The Supreme Court emphatically rejected this "constructive-waiver" theory, holding:

> There is a fundamental difference between a State's expressing unequivocally that it waives its immunity, and Congress's expressing unequivocally its intention that if the State takes certain action it shall be deemed to have waived that immunity. In the latter situation, the most that can be said with certainty is that the State has been put on notice that Congress intends to subject it to suits brought

> by individuals. That is very far from concluding that *the State* made
> an "altogether voluntary" decision to waive its immunity.

*Id.* at 680-81 (emphasis in original).[6] The constitutional requirement of knowing and voluntary consent means nothing if Congress can simply "exact constructive waivers" of jurisdictional defenses "through the exercise of Article I powers." *Id.* at 683. The same is true in this case: "Congress cannot, consistent with the Constitution, simply decree that any conduct, without regard for its connections to the United States generally or to litigation in the United States specifically, signals a party's intent to submit to the jurisdiction of a United States court." *Fuld* Opinion, at *3.

The decision in *Fuld* draws further support from other "implied consent" cases, which similarly focus on the nature of the defendant's conduct rather than the forum's mere intent to subject the defendant to suit. Beginning with the Supreme Court's decision in *Hess*, courts confronting claims of implied consent have examined whether a defendant's decision to engage in the specified activity actually reflects its implicit agreement to submit to jurisdiction. When the defendant chooses to take advantage of a forum's offerings (e.g., driving on public roadways, doing business in the state), courts properly assume the defendant freely and voluntarily accepts conditions the forum places on such activities—including consent to specific personal jurisdiction in the forum.[7] By accepting the benefit of engaging in the regulated activity, the defendant "enters

---

[6] Although *College Savings Bank* addressed waivers of state sovereign immunity rather than consent to personal jurisdiction, the Supreme Court made clear that its decision hinged on broader constitutional principles. *See* 527 U.S. at 681-82 (relying on the "classic description of an effective waiver of a constitutional right," and noting implied waivers "are simply unheard of in the context of *other* constitutionally protected privileges.") (emphasis in original); *see also Fuld* Opinion, at *21-22 ("[T]he principles underlying *College Savings Bank* are not specific to the Eleventh Amendment, but rather apply to constitutional rights broadly.").

[7] *See, e.g., Hess*, 274 U.S. at 354-57 (holding acceptance of the "privilege" of driving on public roads evinced defendant's implicit agreement to jurisdiction); *College Savings Bank*, 527 U.S. at 686-87 (holding Congress may condition grant of federal funds or "gratuit[ies]" on State's waiver

into a 'bargain' with the state" whereby it consents to jurisdiction in exchange for permission to engage in conduct which the state otherwise could prohibit. *Leonard*, 829 F. Supp. at 889; *see also In re Mid-Atl. Toyota*, 525 F. Supp. at 1278 (describing this "bargain"). Conversely, Defendants are not aware of a single case upholding an implied consent statute in the *absence* of reciprocity— i.e., some benefit conferred upon the defendant in exchange for its consent.

Judged against this standard, the PSJVTA again falls on the wrong side of the line. Unlike constitutionally permissible implied-consent statutes, the PSJVTA does not confer any "benefit" or "privilege" for Defendants to "accept" in exchange for their purported "consent" to jurisdiction. The payments at issue occur entirely outside the United States (in Palestine), and do not require authorization from the U.S. government or the involvement of any U.S. entity. Any decision to continue making such payments thus reflects Defendants' own domestic policy choice, rather than any intent to freely and voluntarily consent to jurisdiction in the United States.

Similarly, Defendants' choice to maintain Palestine's UN Mission in New York, and to conduct activities in furtherance of the Mission's work, does not reflect any intent to freely and voluntary consent to jurisdiction in the United States.[8] Under longstanding judicial interpretation

---

of sovereign immunity because "acceptance of the funds entails an agreement" to the condition); *In re Mid-Atl. Toyota Antitrust Litig.*, 525 F. Supp. 1265, 1278 (D. Md. 1981) (explaining state business registration statutes condition privilege of doing business in the state on defendant's consent to jurisdiction).

[8] Although for purposes of this Motion Defendants do not contest the PSJVTA's "payments" prong is satisfied, they do contest Plaintiffs' conclusory allegations regarding their U.S. activities. As noted above (*supra* n. 4), the PSJVTA expressly provides "no court may consider" Defendants' UN activities, meetings with government officials, and *any activities "ancillary to" such activities*. As part of its UN activities, the Palestinian Mission is expected to "participate[] in the work of" the UN Committee on the Exercise of the Inalienable Rights of the Palestinian People ("CEIRPP"). *See* Report, CEIRPP, UN Doc. A/75/35 (Oct. 10, 2020). The CEIRPP's express purpose is to "mobilize the international community" to provide "the broadest possible international support" for the Palestinian people by "end[ing] . . . the Israeli occupation," supporting the "two-State solution," "highlighting the illegality of Israeli settlement activities in the West Bank," and

- 12 -

of the UN Headquarters Agreement ("UNHQA"), the U.S. government is "obligat[ed] . . . to refrain from impairing the function of the PLO Observer Mission," which falls outside U.S. "jurisdiction." *United States v. PLO*, 695 F. Supp. 1456, 1465-68, 1471 (S.D.N.Y. 1988); *see also Klinghoffer*, 937 F.2d at 51. Aside from UN-related activities, the Anti-Terrorism Act of 1987—which Plaintiffs affirmatively allege "remains in force today" (Compl. ¶ 91)—broadly prohibits Defendants from operating in the United States. *See* 22 U.S.C. §§ 5201, 5202; *see also PLO*, 695 F. Supp. at 1471; *Mendelsohn v. Meese*, 695 F. Supp. 1474, 1484 (S.D.N.Y. 1988) (explaining 1987 Act was enacted for express purpose of "deny[ing] the PLO the benefits of operating in the United States"). The PSJVTA does not remove any of the prohibitions on Defendants' U.S. activities under the 1987 Act, nor does it alter the scope of permissible UN-related activities under the UNHQA. The PSJVTA thus fails to offer any benefit for Defendants to "accept" by which they might signal implied agreement to consent to jurisdiction.

Rather than confer any government "benefit" or "privilege" conditioned upon consent to jurisdiction, the PSJVTA simply decrees that certain conduct in which Defendants have previously engaged shall be "deemed consent" to personal jurisdiction—regardless of whether that conduct is constitutionally meaningful under the Due Process Clause. As *Fuld* recognized, allowing Congress to transform constitutionally inadequate contacts with a forum into grounds for "deemed consent" to personal jurisdiction based on nothing more than legislative say-so would swallow the

---

"rais[ing] international awareness of the political, human rights and humanitarian developments on the ground." Programme of Work for 2020, CEIRPP, UN Doc. A/AC.183/2020/1 (Feb. 7, 2020). The "propaganda," "social media," "public relations," and "lobbying" activities alleged in the Complaint (*see* ¶¶ 12-13) are all plainly either official UN business or "ancillary to" Defendants' UN activities as exemplified by its participation in CEIRPP.

minimum contacts test, leaving no limit—other than "legislative imagination"—to the types of activities that could subject a defendant to personal jurisdiction. *Fuld* Opinion, at \*28.

In *Daimler*, for example, the Supreme Court held that the Due Process Clause prohibited a California court from exercising general jurisdiction over a car manufacturer and its U.S. subsidiary, which distributed vehicles to California dealerships but were incorporated and maintained their principal places of business elsewhere. 571 U.S. at 139. Despite achieving "sizable" sales in the state, defendants' activities were insufficient to confer personal jurisdiction because they were not "essentially at home" in California. *Id.* If the PSJVTA were a valid means of imposing "consent" to jurisdiction, however, the California legislature could circumvent *Daimler* simply by enacting a statute declaring that any foreign corporation that distributed vehicles to California dealerships "shall be deemed to have consented to personal jurisdiction" in the state. The same would be true of virtually any decision holding that a defendant's forum-related activities were insufficient to confer jurisdiction. If constitutionally inadequate activities in a forum could serve as a valid basis for implied consent to jurisdiction merely because the legislature incanted the magic words "deemed consent," there would be no end to the types of activities that could serve as the basis for implied "consent" to jurisdiction.

For that reason, courts have long rejected legislative attempts to create personal jurisdiction where the Constitution forbids it. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (holding Due Process Clause "sets the outer boundaries of [a court's] authority to proceed against a defendant"); *Livnat*, 851 F.3d at 50, 53 (courts must apply "due-process protections to limit personal jurisdiction in [ATA] cases" even when doing so might "thwart Congress's intent to provide redress," because "Congress cannot wish away a constitutional provision"); *Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183-84 (5th Cir. 1992) (holding

defendant can only impliedly "consent[]" to jurisdiction "where such jurisdiction is constitutionally permissible"); *Gilson v. Republic of Ir.*, 682 F.2d 1022, 1028 (D.C. Cir. 1982) ("[A] statute cannot grant personal jurisdiction where the Constitution forbids it . . . ."); *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002) (same). "Expansive, non-explicit consent to being haled into court on any claim whatsoever in a [forum] in which one lacks minimum contacts goes against the longstanding notion that personal jurisdiction is primarily concerned with fairness." *WorldCare Ltd. Corp. v. World Ins. Co.*, 767 F. Supp. 2d 341, 355 (D. Conn. 2011). The result in this case should be no different.

C.   **Allowing Congress to Dictate that Defendants Shall Be "Deemed" to "Consent" to Personal Jurisdiction Would Violate Separation of Powers.**

The PSJVTA's "deemed consent" provisions are unconstitutional for a second reason as well: they violate separation of powers. Although Congress maintains inherent authority to pass new substantive law, it oversteps that authority when it attempts to "usurp a court's power to interpret and apply the law to the circumstances before it" by "direct[ing] the result without altering the legal standards governing the effect of [the specified activity]." *Bank Markazi v. Peterson*, 578 U.S. 212, 224-28 (2016); *see also City of Boerne v. Flores*, 521 U.S. 507, 536 (1997) (Congress cannot override the judiciary's responsibility to "say what the law is"); *Biodiversity Assocs. v. Cables*, 357 F.3d 1152, 1171 (10th Cir. 2004) (explaining Congress lacks the authority to interfere with private rights "by directing the judiciary to decide a particular way, or by setting aside [prior] judicial determinations").

The PSJVTA runs afoul of these basic principles by attempting to dictate to the courts the circumstances under which Defendants "shall be deemed to have consented to personal jurisdiction." 18 U.S.C. § 2334(e)(1). Determining whether a party has waived its constitutional rights is a quintessentially judicial question, requiring "application of constitutional principles to

the facts as found." *Brewer v. Williams*, 430 U.S. 387, 403 (1977). The PSJVTA improperly usurps the judicial function by directing the courts that they must *always* find "voluntary" consent to jurisdiction if the statute's factual predicates are met—regardless of whether those activities would satisfy the governing "knowing and voluntary" standard under the Due Process Clause.

The PSJVTA also attempts to override the courts' consistent application of constitutional principles to the scope of Defendants' activities in the United States. In *Shatsky*, *Waldman*, *Livnat*, and *Klieman*, the courts uniformly held that the same conduct specified in the PSJVTA is *insufficient* to subject Defendants to personal jurisdiction. Permitting Congress to supersede those constitutional holdings by legislative fiat would make the Constitution, "like other acts . . . alterable when the legislature shall please to alter it," in violation of fundamental principles of separation of powers. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

Accordingly, because this Court does not have personal jurisdiction over Defendants, Plaintiffs' Complaint must be dismissed.

## II.     THE AMERICAN PLAINTIFFS FAIL TO STATE A DIRECT-LIABILITY OR RESPONDEAT SUPERIOR CLAIM UNDER THE ATA.

Independent of the lack of personal jurisdiction over Defendants, Plaintiffs' claims are legally insufficient under Fed. R. Civ. P. 12(b)(6). A complaint must be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but—it has not shown— that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555 ("Factual

allegations must be enough to raise a right to relief above the speculative level . . . ."); *see also Anapoell v. Am. Express Bus. Fin. Corp.*, 2009 U.S. App. LEXIS 6315, at *11-12 (10th Cir. Mar. 24, 2009) (same).

Here, Plaintiffs have not pled the non-conclusory, factual allegations necessary to raise a reasonable inference that Defendants had any involvement with, or connection to, the Attack. The allegations in the Complaint are a far cry from the "sufficient factual matter" that must be alleged. *Twombly*, 550 U.S. at 570; *Licerio v. Lamb*, No. 20-cv-681-WJM-STV, 2021 U.S. Dist. LEXIS 175346, at *55-56 (D. Colo. July 15, 2021) (dismissing claims where plaintiff's allegations were "conclusory and speculative."). The Complaint does not allege Defendants directly communicated with or provided support to the Attackers. Instead, the Complaint boils down to three wholly conclusory claims:  (1) the Attackers were "operatives" of the PFLP (Compl. ¶¶ 136, 144); (2) the PFLP was responsible for the Attack (*see, e.g.*, *id.* ¶ 181); and (3) Defendants are liable for the acts of the PFLP because the PFLP is "without separate legal identit[y]" from Defendants, in that "the PLO's factions carry out terrorism under factional names," "work[ing] hand-in-glove" with Defendants (*id.* ¶¶ 121-23).[9]  The Complaint does not allege facts to plausibly support these assertions, requiring dismissal.

_____

[9] The Court can take judicial notice of public reports contradicting Plaintiffs' speculative and conclusory allegations the Defendants operate "hand-in-glove" or in a "fictitious 'division of roles'" with the PFLP.  Compl. ¶¶ 122-23.  For example, the PFLP is currently boycotting meetings at the highest level of the PLO due to its policy disagreements with other PLO factions and PA President Mahmoud Abbas.  *See* Middle East Monitor, "PFLP reaffirms boycott of Palestinian National Council meetings," https://www. middleeastmonitor.com/20220131-pflp-reaffirms-boycott-of-palestinian-national-council-meetings/ (Jan. 31, 2022); *see also United Water & Sanitation Dist. v. Geo-Con, Inc.*, 488 F. Supp. 3d 1052, 1057 (D. Colo. 2020) ("Courts may also consider matters of which a court may take judicial notice . . . includ[ing] adjudicative facts, which are those facts not subject to reasonable dispute because they are . . . readily determined from sources whose accuracy cannot be reasonably questioned.") (internal quotations omitted).

Plaintiffs allege Defendants are liable for the acts of the PFLP because the PLO, as a governmental entity, provides limited and generalized support to all of its constituent political factions, including the PFLP. But, Plaintiffs have not alleged any plausible way how Defendants, played any role whatsoever in the Attack (a) by providing the PFLP with: (i) limited and general monetary support; (ii) permission to maintain office space in Palestine; and (iii) payments to "PFLP operatives who had been incarcerated for terrorist activities," or (b) by refusing to shut down PFLP websites or radio programming. Compl. ¶¶ 101, 103, 106, 108-12. Nor do Plaintiffs' allegations of *post*-Attack conduct—e.g., Defendants "publicly praising" the Attackers—establish any plausible connection between Defendants and the Attack *before* the Attack occurred. Plaintiffs' allegations of limited and general forms of government support for PLO political factions and *post*-Attack conduct are too speculative and attenuated to raise a plausible connection between the Attack and Defendants.

A causal chain cannot be presumptively drawn between the Attack and Defendants' alleged actions *as a government*. *See Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013) (finding no proximate cause to support ATA claim and recognizing that governmental entities have "many legitimate agencies, operations, and programs to fund"); *see also Kemper v. Deutsche Bank AG*, 911 F.3d 383, 391-392 (7th Cir. 2018) ("When one of the links on a causal chain is a sovereign state, the need for facts specifically connecting a defendant's actions to the ultimate terrorist attack is especially acute."). That principle holds true for actions taken before or after the Attacks. *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 275 (D.C. Cir. 2018) (post-attack events "have no bearing on what actions 'caused' the bombings."); *see also Hamm v. United States*, 483 F.3d 135, 140 (2d Cir. 2007) (post-tort conduct cannot constitute ratification of an antecedent tort absent evidence

that the tort "was done or professedly done on [the defendant's] account.") (quoting Restatement (Second) of Agency § 82 (1958)).

**A.   The American Plaintiffs Fail to State a Claim for Direct Liability for an Act of International Terrorism Pursuant to 18 U.S.C. § 2333(a).**

The American Plaintiffs[10] claim first that Defendants are directly liable for an act of international terrorism under ATA Section 2333(a). These Plaintiffs fail to state a claim because the Complaint does not allege plausible, non-conclusory factual allegations that Defendants: (1) proximately caused the American Plaintiffs' injuries; (2) *themselves*, committed an "act of international terrorism"; (3) provided material support to an FTO; or (4) provided any support to others with the knowledge or intent that such support would be used to prepare for, or to carry out, a criminal act of terrorism. These failures require dismissal of this claim.

**1.   The Complaint Fails To Plausibly Allege Proximate Cause.**

To state a claim for ATA direct liability, the American Plaintiffs must plausibly allege facts showing that their injuries occurred "by reason of" an act of international terrorism committed by Defendants themselves. Courts have interpreted the "by reason of" language to require a showing that a defendant's own acts proximately caused plaintiff's injuries. *See Rothstein*, 708 F.3d at 95; *see also Kemper*, 911 F.3d at 391-92; *Owens*, 897 F.3d at 275; *Fields v. Twitter, Inc.*, 881 F.3d 739, 744-49 (9th Cir. 2018).

Therefore, Plaintiffs must plausibly allege that each Defendant's purported conduct was "*a substantial factor in the sequence of responsible causation*," and that Plaintiffs' injuries were "reasonably foreseeable or anticipated as a natural consequence." *Rothstein*, 708 F.3d at 91 (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003) (emphasis in original)). "In

---

[10]  The American Plaintiffs consist of all plaintiffs except for the personal representatives of the estates of Zidan Saif and Rabbi Abraham Goldberg.

the context of an ATA action, proximate causation requires non-conclusory, plausible allegations of 'a proximate causal relationship between the cash transferred . . . and the terrorist attacks . . . that injured plaintiffs.'" *Ayda Husam Ahmad v. Christian Friends of Israeli Cmtys.*, 2014 U.S. Dist. LEXIS 62053, at *12 (S.D.N.Y. May 5, 2014) (quoting *Rothstein*, 708 F.3d at 97). Plaintiffs cannot meet this standard.

First, the Complaint does not plausibly allege that the Attack would not have been possible without the aid and support of Defendants. The Complaint acknowledges that the PLO, as a governmental entity, provides generalized funding and resources to its various political factions. Compl. ¶¶ 86-88, 101 (alleging that the PLO has various political factions; that Defendants provide "direct monetary allocations" to the PLO's political factions to further their "organizational roles [and] positions"; and that the "PFLP is the second-largest faction in the PLO" yet is "a relatively small group in the Palestinian arena."). The American Plaintiffs have alleged that, in general, Defendants provided material support to the PFLP in the form of: (1) cash for political operations, (2) permission to maintain political offices and facilities in Palestine, (3) payments to "PFLP operatives who had been incarcerated for terrorist activities," as part of a Palestinian government program and (4) refusal to shut down PFLP websites or radio programming. Compl. ¶¶ 101, 103, 106, 108-12.

Plaintiffs have not plausibly pled any connection between these limited and generalized forms of political and governmental support and the specific Attack here. Governments, such as Defendants, have "many legitimate agencies, operations, and programs to fund." *Rothstein*, 708 F.3d at 97. This is true even for state-sponsors of terrorism, which Defendants are *not*. *Kemper*, 911 F.3d at 393. Where, as here, Plaintiffs' theory is dependent on governmental payments or actions, "the need for facts specifically connecting a defendant's actions to the ultimate terrorist

attack is especially acute." *Id.* at 393. Because governmental actions necessarily implicate non-terroristic objectives—even when state-sponsors of terrorism are defendants—causation cannot be established based on a generalized claim of a "pattern and practice" of terrorist support, but that is all Plaintiffs have alleged here. *Rothstein*, 708 F.3d at 97 (no proximate cause where plaintiffs cannot show that "the moneys UBS transferred to Iran were in fact sent to Hizbollah or Hamas or that Iran would have been unable to fund the attacks by Hizbollah and Hamas without the cash provided by UBS"); *Owens*, 897 F.3d at 276 (to satisfy proximate cause plaintiffs must allege that "BNPP *substantially* contributed to Plaintiffs' injuries because the funds to Sudan 'actually [were] transferred to al Qaeda . . . and aided in' the embassy bombings") (emphasis and alteration in original) (citation omitted). Here, Plaintiffs have not alleged a causal link between the limited and generalized governmental support Defendants allegedly provide to the PFLP and the specific Attack. Indeed, to find otherwise, based on the facts alleged, would effectively render Defendants liable simply because the PFLP is a political faction within the PLO. *See Shatsky v. PLO*, No. 02-2280 (RJL), 2017 U.S. Dist. LEXIS 94946, at *29-30 (D.D.C. June 20, 2017) (holding that incidental support by Defendants to the PFLP, by paying rent for PFLP office, was not a substantial factor in the sequence of causation, because there was no connection between the incidental support and the attack) *vacated and remanded for dismissal on other grounds*, 955 F.3d 1016 (D.C. Cir. 2020).

Second, Plaintiffs cannot adduce the required specific facts linking Defendants' governmental acts to this Attack, because they already have blamed others for providing the support that caused this Attack. The overwhelming majority of these Plaintiffs (sixty-five of the seventy-eight) earlier filed two separate complaints in the District of Columbia alleging that Syria and Iran provided material support to, and conspired with, the PFLP to carry out the Attack. *See*

- 21 -

*Heching v. Syrian Arab Rep.*, No. 17-cv-01192 (D.D.C.) ("*Heching I*"); *Heching v. Islamic Rep. of Iran*, No. 17-cv-01659 (D.D.C.) ("*Heching II*"). In *Heching I,* the plaintiffs allege that "Syria and [] Syrian Officials conspired, and acted through and/or in concert, with the PFLP . . . to carry out . . . the November 18, 2014 Terrorist Attack." *Heching I*, Am. Compl. ¶ 95 (Dkt. 6). In *Heching II*, the plaintiffs allege that "Iran and its Officials and Agents conspired, and acted through and/or in concert, with the PFLP . . . to carry out . . . the November 18, 2014 Terrorist Attack." *Heching II*, Compl. ¶ 87 (Dkt. 1). In both *Heching* matters, plaintiffs informed the court that they have developed substantial evidence that Syria and Iran provided material support for the Attack. *Heching I*, Pls.' Resp. to Order to Show Cause ¶ 7 (Dkt. 18); *Heching II*, Pls.' Resp. to Order to Show Cause ¶ 7 (Dkt. 19). On January 18, 2022, these plaintiffs moved the court for entry of default judgment against Syria and Iran.  *Heching I*, Mot. for Default J. (Dkt. 21); *Heching II*, Mot. for Default J. (Dkt. 22). In their motions, these Plaintiffs assert that Syria and Iran's "state sponsorship" and "support" for the PFLP were "necessary for the survival and effectiveness of the PFLP."  *Heching I*, Mem. in Supp. Mot. for Default J. (Dkt. 21-1) at 22; *Heching II*, Mem. in Supp. Mot. for Default J. (Dkt. 22-1) at 22.

In this Complaint, Plaintiffs hedge their *Heching* bets four years after filing their *Heching* complaints. It is no wonder that Plaintiffs sought out a court for this Complaint that is two time-zones away from the *Heching* court. But that tactical maneuver cannot insulate their belated and speculative allegations that now seek to attribute responsibility for these Attacks to Defendants, rather than to Syria and Iran. Plaintiffs' assertions in *Heching* that Syria and Iran conspired to commit and provide material support for the Attack, and that the PFLP could not survive without that support, render entirely speculative their *post hoc* assertions that the limited and generalized

support Defendants allegedly provided to the PFLP as a political faction was the proximate cause of the Attack. *Rothstein*, 708 F.3d at 91.

Third, the Complaint relies on a manufactured connection between Defendants and the Attackers by the conclusory allegation that the Attackers were affiliated with the PFLP, which is a "constituent faction of" Defendants. Compl. ¶¶ 3, 121-23. But the Complaint does not state any fact-based allegations to connect Defendants themselves to the Attackers. Absent any factual allegations in this regard, the Complaint cannot plausibly allege proximate cause. *See Shatsky*, 2017 U.S. Dist. LEXIS 94946, at *32 (finding "after-the-fact" conduct as "not sufficient" to support proximate causation) (citing *Sokolow v. PLO*, 60 F. Supp. 3d 509,  517 n.11 (S.D.N.Y. 2014)).

### 2.    The American Plaintiffs Do Not Plausibly Allege that Defendants Committed an "Act of International Terrorism."

To state a claim for ATA primary liability, a plaintiff must plausibly allege (i) that the defendant has violated a predicate criminal statute *and* (ii) that the additional elements for the ATA civil cause of action under 18 U.S.C. § 2333(a), apply, including, *inter alia*, that a U.S. national was injured or killed "by reason of an act of international terrorism." *See Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 553 (E.D.N.Y. 2012) ("Like a civil RICO claim, a suit for damages under the ATA is akin to a Russian matryoshka doll, with statutes nested inside of statutes.") (quotation and citations omitted). A plaintiff must plausibly allege that Defendants *themselves* committed an act of "international terrorism." *Linde v. Arab Bank PLC*, 882 F.3d 314, 326 (2d Cir. 2018). Section 2331 defines "international terrorism" to require that a defendant's *own acts* "involve violence or endanger human life" and "appear to be intended to intimidate or coerce a civilian population or to influence or affect a government." *See, e.g., id.* at 319-22; *Rothstein*, 708 F.3d at 97. The Complaint does not plausibly allege that Defendants' own acts meet this standard.

a.  **The American Plaintiffs Do Not Plausibly Allege that Defendants Acted with the Required Terroristic Intent or Engaged in "Violent Acts or Acts Dangerous to Human Life."**

The American Plaintiffs fail to plausibly plead that Defendants' own acts "appear[ed] to be intended to intimidate or coerce a civilian population or to influence or affect a government." *Linde*, 882 F.3d at 326. This is an objective test that "does not depend on the actor's beliefs, but imposes on the actor an objective standard to recognize the apparent intentions of actions." *Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 207 n.6 (2d Cir. 2014) (citation omitted). Further, the Complaint also fails to allege facts to support a reasonable inference that Defendants engaged in activities that "involve violent acts or acts dangerous to human life" sufficient to constitute an act of "international terrorism" under Section 2331(1).

As discussed above, the Complaint does not allege any connection between Defendants and the Attackers. The Complaint's only allegations which purportedly connect Defendants to the Attack itself are allegations of *post*-Attack conduct. First, the American Plaintiffs allege that the "defendants endorsed and ratified" the Attack by "publicly prais[ing]" the Attackers after the Attack. Compl. ¶ 144. Second, following the Attack, they allege the PLO continued to provide limited and generalized funding to the PFLP, and "endorsed the PFLP." Compl. ¶ 145. Neither of these allegations plausibly pleads that Defendants' alleged actions were violent, dangerous to human life or conducted with terroristic intent. "A showing of support . . . is not sufficient to demonstrate that Defendants were somehow responsible for the attacks." *Sokolow*, 60 F. Supp. 3d at 517 n.11. The *Sokolow* court held that "even *post*-attack financial support to the families of terrorists" was "not sufficient" for the plaintiffs to pin responsibility on Defendants. *Id.* (emphasis added). Here, the American Plaintiffs have alleged substantially less.

- 24 -

While Plaintiffs allege that the PLO provided limited and generalized political support to the PFLP (*e.g.,* Compl. ¶ 125), *political* support for the PFLP does not objectively demonstrate that Defendants intended to foster a terrorist attack. Provision of support to an FTO that is non-terroristic in nature and purpose does not constitute an "act of international terrorism." *Kemper,* 911 F.3d at 390 (affirming dismissal of ATA claim and finding that alleged material support is not an act of international terrorism when motivated by economics and governmental policy and not a desire to "intimidate or coerce"); *Linde,* 882 F.3d at 326 (holding that "material support to a foreign terrorist organization does not invariably equate to an act of international terrorism").

Governmental authorities like Defendants have "many legitimate agencies, operations, and programs to fund." *Rothstein*, 708 F.3d at 97; *see also Owens,* 897 F.3d at 276. "When one of the links on a causal chain is a sovereign state, the need for facts specifically connecting a defendant's actions to the ultimate terrorist attack is especially acute." *Kemper,* 911 F.3d at 393. So too here, given Defendants' governmental responsibilities. Governmental authorities have many non-terroristic obligations, policies, and priorities that negate a plausible inference that their implementation of government policies "appear[ed] to be intended to intimidate or coerce a civilian population or to influence or affect a government". *Linde*, 882 F.3d at 326. Plaintiffs have not alleged any facts to plausibly plead that Defendants' governmental action of limited political support to the PFLP objectively demonstrated an intent to foster the Attack. *Kemper,* 911 F.3d at 390 (holding support to Iranian entities, objectively, "d[id] not appear intended to intimidate or coerce" where actions were motivated by economics, rather than "a desire to intimidate or coerce.").

3.    **The American Plaintiffs Do Not Plausibly Allege Defendants Provided Material Support to an FTO, or Knew or Intended that Such Support Would Be Used for a Terrorist Act.**

Section 2339A requires Plaintiffs to plausibly allege that Defendants "provide[d] material support or resources . . . knowing or intending that they are to be used in preparation for, or in carrying out," the Attack. 18 U.S.C. § 2339A; *see United States v. Ghayth*, 709 F. App'x 718, 722-23 (2d Cir. 2017) (summary order) (quoting § 2339A); *Ahmad*, 2014 U.S. Dist. LEXIS 62053, at *7-8 (citing *Gill*, 893 F. Supp. 2d at 504). Section 2339C similarly requires Plaintiffs to plausibly allege that Defendants "provid[ed] or collect[ed] funds with the intention that such funds be used, or with the knowledge that such funds are to be used, in full or in part, in order to carry out" the Attack. 18 U.S.C. § 2339C; *see Ahmad*, 2014 U.S. Dist. LEXIS 62053, at *8 (citing *Gill*, 893 F. Supp. 2d at 504).

The American Plaintiffs have not alleged that the Defendants had prior knowledge of the Attack or provided support or resources directly to the Attackers. Further, Plaintiffs' attempts to rely on Defendants' provision of limited and generalized support to the PFLP are too attenuated to plausibly state a claim. The American Plaintiffs have not provided the Court with specific factual allegations to adequately allege that the type of generalized governmental funding that Defendants provide to the PFLP was intended to be used, in whole or in part, for the Attack. This is particularly true here, where most of the American Plaintiffs have made clear in the *Heching* cases that Syria and Iran provided the material support for the Attack and that Syria and Iran's support was "necessary" for the PFLP's survival.

Section 2339B, on the other hand, explicitly requires a showing that the defendant provided material support or resources "to a foreign terrorist organization." 18 U.S.C. § 2339B(a)(1). But "material" support requires more than the type of *de minimis* political support for the PFLP at issue

- 26 -

here, as another court has recognized. *See Shatsky,* 2017 U.S. Dist. LEXIS 94946 at *28-29 ("[P]laintiffs posit a connection between [a PFLP office] rent payment and the bombing solely on the fact that [the office location was] nearby to [the bombing location]. To say the least, that is a stretch!"); *see also Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 425-26 (E.D.N.Y. 2009) ("It has long been recognized that substantial assistance means more than just a little aid . . . .") (internal quotation and citation omitted).

### B. The American Plaintiffs Fail to Establish Essential Elements of Respondeat Superior Liability.

The Complaint also fails to state a viable claim for "respondeat superior liability" for "international terrorism pursuant to 18 U.S.C. § 2333(a)." The American Plaintiffs base this cause of action on the conclusory allegation that "[t]he PFLP carried out the [] Attack as the agent of the defendants." Compl. ¶ 169. The Court should dismiss this claim for two reasons.

First, the ATA does not authorize a cause of action for respondeat superior liability. The ATA is a statute that applies extraterritorially. As such, it must be construed narrowly. *See EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991). The ATA does not expressly provide for vicarious liability, and if Congress wished to impose such liability, it would have done so expressly. *See* Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A (allowing suits against certain foreign states in terrorism cases for acts of "an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency."). The ATA is akin to the Torture Victim Protection Act of 1991 ("TVPA") wherein the Supreme Court held that in the absence of Congress' express authorization, the TVPA did not impose organizational liability for acts of individual employees. *Mohammad v. Rajoub*, 566 U.S. 449, 451, 455-56 (2012). To this end, the Seventh Circuit has recently reiterated that "[t]he Anti-Terrorism Act [] does not appear to provide a cause of action for imposing vicarious liability." *Boim v. Am.*

*Muslims for Palestine*, 9 F.4th 545, 555 (7th Cir. 2021) (citing *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 691 (7th Cir. 2008)); *see also Estate of Parsons v. Palestinian Auth.*, 715 F. Supp. 2d 27, 34 (D.D.C. 2010) (rejecting imposition of ATA liability under a respondeat superior theory), *aff'd in part, rev'd in part,* 651 F.3d 118, 139 (D.C. Cir. 2011) (declining to decide whether the ATA permits a respondeat superior claim).

Second, the American Plaintiffs have not properly pled essential elements of a respondeat superior claim, which would require Plaintiffs to plausibly plead that the Attackers were the Defendants' agents. *Am. Select Ins. Co. v. Johnson*, 2018 U.S. Dist. LEXIS 101446, at *12-13 (D. Colo. June 18, 2018) (a claim for respondeat superior requires "a finding of an employer-employee relationship" between the tortfeasor and the alleged agent). The American Plaintiffs have not alleged facts sufficient to raise a reasonable inference that the Attackers were associated with the Defendants, let alone allegations that an employment relationship existed. The American Plaintiffs' claims that Defendants provided limited and generalized forms of support to the PFLP are too attenuated to establish that the Attackers "were acting" within the "scope of employment" with either Defendant when committing the Attack. *Frutos v. Am. Modern Prop. & Cas. Ins. Co.* No. 19-cv-334, 2020 U.S. Dist. LEXIS 169276, at *3 (D. Colo. Mar. 20, 2020).

### III. <u>PLAINTIFFS' FAIL TO STATE A CLAIM FOR CONSPIRACY LIABILITY UNDER 18 U.S.C. 2333(D).</u>

"The crux of any conspiracy is an agreement between the co-conspirators." *Kemper*, 911 F.3d at 395; *see also Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1262 (10th Cir. 2020) (dismissing conspiracy claim on "failure to show the requisite agreement—the first element of a conspiracy claim"). A co-conspirator must join the "agreement knowing its purpose and with the intent to further" that purpose. *United States v. Fischman*, 645 F.3d 1175, 1187 (10th Cir. 2011). "Mere speculation . . . will not do." *Cervantes Agribusiness*, 982 F.3d at 1262. Plaintiffs

here have not alleged facts to plausibly plead that Defendants agreed with the Attackers or the PFLP to commit the Attack or any other act of international terrorism.

A conspiracy claim under Section 2333(d) requires plausible allegations that Defendants formed or joined an agreement to commit an "act of international terrorism". *See O'Sullivan v. Deutsche Bank AG*, No. 17-cv-8709, 2019 U.S. Dist. LEXIS 53134, at *35 (S.D.N.Y. Mar. 28, 2019) (The "plain language of JASTA . . . suggests that JASTA liability lies where the secondary tortfeasor conspired with the principal tortfeasor in committing such an act of international terrorism.") (cleaned up). Plaintiffs must therefore allege that the co-conspirators' activities were "so coordinated or monolithic that [they] shared a common purpose or plan." *Id.* at *37. "[T]he further down the causal chain a defendant sits, the more diligent plaintiff must be to plead facts that plausibly suggest that the defendant entered into an agreement . . . ." *Kemper*, 911 F.3d at 395-96; *Kaplan*, 999 F.3d at 855 ("JASTA states that to be liable for conspiracy a defendant would have to be shown to have conspired with the principal . . . .") (internal quotations omitted); *Estate of Parsons*, 651 F.3d at 134 (J. Tatel, concurring) (ATA conspiracy claim requires more than "piling inference . . . upon inference" which is "akin more to speculation than to reasonable fact-finding.").

Plaintiffs' claim fails under these standards. The Complaint does not plausibly allege that Defendants agreed with the Attackers to commit an act of "international terrorism" as defined in the ATA. *O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at *35 (for a JASTA conspiracy claim, "a defendant must have conspired to commit an act of international terrorism."). Plaintiffs' allegation that the PLO provided the PFLP, like all other Palestinian political factions, with limited and generalized funding and support does not raise a reasonable inference that there was an *agreement* between the PFLP and Defendants to commit this specific Attack or any other act of international

terrorism. So too for Plaintiffs' allegations that Defendants made *post*-Attack statements "publicly praising" the Attackers. Statements of support after the attack cannot plausibly allege that Defendants agreed beforehand to perpetrate the attack. *See Sokolow*, 60 F. Supp. 3d at 517 n.11 ("A showing of support—even *post*-attack financial support to the families of terrorists—is not sufficient to demonstrate that [defendant is] somehow responsible for the attacks.") (emphasis added). Additionally, in the *Heching* matters, sixty-five of these Plaintiffs have alleged that Syria and Iran—not these Defendants—were the ones who conspired with the PFLP to commit this Attack.

## IV.  THE AMERICAN PLAINTIFFS HAVE FAILED TO PLAUSIBLY ALLEGE A CLAIM FOR AIDING AND ABETTING LIABILITY PURSUANT TO 18 U.S.C. § 2333(D).

The Complaint also fails to allege the essential elements for a JASTA aiding-and-abetting claim, because the American Plaintiffs have failed to allege plausible facts showing that either Defendant (i) "knowingly and substantially assist[ed] the principal violation," here, the Attack, or (ii) was "generally aware" of its role "as part of an overall illegal or tortious activity at the time [it] provide[d] assistance." *Kaplan,* 999 F.3d at 856 (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)).

### A.  The American Plaintiffs Have Not Alleged, and Could Not Plausibly Allege, that Defendants Knowingly and Substantially Assisted the Attack.

The American Plaintiffs' aiding-and-abetting claim fails because the Complaint cannot plausibly allege that Defendants "knowingly and substantially assisted" those responsible for the Attack. The "knowingly" component requires "actual knowledge" that the defendant's alleged facilitative conduct substantially assisted "someone who performed wrongful conduct." *Kaplan*, 999 F.3d at 856. "That knowledge requirement is designed to avoid imposing liability on innocent, incidental participants." *Id*. at 864 (quotations omitted).

"[T]he 'proper legal framework for how [aiding-and-abetting] liability should function' under the ATA is that identified in" *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983). *Linde*, 882 F.3d at 329 (quoting 18 U.S.C. § 2333 Statutory Note) (alterations in original). *Halberstam* identified six factors relevant to determining "how much encouragement or assistance is substantial enough" to satisfy the requirement that the defendant "substantially assist the principal violation"—that is, the Attack at issue here. *Linde*, 882 F.3d at 329 (quoting *Halberstam*, 705 F.2d at 487). Those six factors are: (1) the nature of the act encouraged; (2) the amount of assistance given by the defendant; (3) the defendant's presence or absence at the time of the tort; (4) the defendant's relation to the principal; (5) the defendant's state of mind; and (6) the period of defendant's assistance. *Id.* (citing *Halberstam*, 705 F.2d at 483-84); *see also Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 425-26 (E.D.N.Y. 2009) ("It has long been recognized that 'substantial assistance' means more than just a little aid.") (internal quotation and citation omitted).

The American Plaintiffs' attempts to convert the limited and generalized political support provided to the PFLP into substantial assistance to the Attack falls flat. First, as discussed above, the majority of these Plaintiffs have already brought two actions in which they claim that it was Syria and Iran that conspired to commit, and that provided substantial assistance to, the Attack. Second, the Complaint does not plausibly allege that the PLO's limited and generalized funding provided to their political factions, including the PFLP, was "a major part" in promoting the Attack. *Halberstam*, 705 F.2d at 484. Nor have they plausibly alleged that the PFLP radio programs or websites played a role in the Attack. "[A]iding and abetting an act of international terrorism requires more than the provision of material support to a designated terrorist organization." *Kaplan*, 999 F.3d at 859 (citation omitted); *see also Shatsky*, 2017 U.S. Dist. LEXIS 94946 at *28-29 ("[P]laintiffs posit a connection between [a PFLP office] rent payment and the bombing

solely on the fact that [the office location was] nearby to [the bombing location].  To say the least, that is a stretch!").  Here, the American Plaintiffs have alleged far less, warranting dismissal of their claim.

In addition, *post*-Attack payments and statements of support *after* the Attack could not logically have "substantially assisted" in the Attack.  *See Sokolow*, 60 F. Supp. 3d at 517 n.11; *Shatsky*, 2017 U.S. Dist. LEXIS 94946 at *32 (citation omitted); *see also United States v. Hamilton*, 334 F.3d 170, 180 (2d Cir. 2003) ("[A] person cannot be found guilty of aiding and abetting a crime that already has been committed . . . .").

**B.      The American Plaintiffs Have Not Alleged, and Could Not Plausibly Allege, that Defendants Were Generally "Aware" They Were Assuming a Role in Violent Terrorist Activity.**

To state an aiding-and-abetting claim, the American Plaintiffs must also plausibly allege that Defendants were "generally aware of [their] role as part of an overall illegal or tortious activity."  *Kaplan*, 999 F.3d at 863 (citation omitted); *see O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at *39 ("[T]he Complaint must allege plausibly that . . . Defendants were 'generally aware' that they were . . . playing a 'role' in an FTO's violent or life-endangering activities.") (citation omitted).  Further, Defendants "must be generally aware of [their] role in an overall illegal activity from which the act that caused the plaintiff's injury was *foreseeable*."  *Honickman v. Blom Bank Sal*, 6 F.4th 487, 496 (2d Cir. 2021) (emphasis in original).[11]

---

[11] Plaintiffs' allegations are similar to those found insufficient in *Siegel*, as explained by the court in *Kaplan*. 999 F.3d at 861-862. "We affirmed the dismissal of the *Siegel* complaint for failure to state an aiding-and-abetting claim . . . because the plaintiffs ha[d] not plausibly alleged that [defendant] assumed a role in the [attack] or provided substantial assistance . . . . Their complaint failed to advance any plausible, factual, non-conclusory allegations that [defendant] knew or intended that the funds it forwarded . . . would be sent to AQI or to any other terrorist organization, and it lacked any factual allegations that support a conclusion that [defendant] knowingly played a role in the terrorist activities."  *Id.* (cleaned up). The same applies here, where, as explained,

The American Plaintiffs have failed to allege that Defendants' provision of limited and generalized support to the PFLP as a political faction of the PLO would have made the Attack foreseeable, or demonstrates awareness of involvement in the PFLP's terrorist activities. "[K]nowingly providing material support to an FTO, without more, does not as a matter of law satisfy the general awareness element." *Kaplan,* 999 F.3d at 860. Without alleging a connection between the alleged support and the Attack, the Complaint fails to raise a "reasonable inference" that Defendants aided and abetted the Attack. *See Siegel,* 933 F.3d at 224-25 (allegation that banking defendant was aware that client was believed by some to have links to terrorist organizations insufficient to establish the "general awareness" element of JASTA aiding-and-abetting liability); *Honickman,* 6 F.4th at 498-99 (rejecting argument that, because "[m]oney is fungible," JASTA aiding-and-abetting liability can be premised solely on knowing and material support to an FTO). Accordingly, the Court should dismiss the American Plaintiffs' aiding-and-abetting claim.

## V.        PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED BUT-FOR CAUSATION AS REQUIRED FOR A NEGLIGENCE CLAIM UNDER ISRAELI LAW.

Under Israeli law, which Plaintiffs invoke for the negligence claim, Plaintiffs must, but fail to, plausibly allege that Defendants' actions were the "but-for" cause of Plaintiffs' injuries. "Israeli courts determine factual causation under the tort of negligence by applying a but-for causation test." *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 63 (D.D.C. 2010) (citing CA 148/80 *Vaknin v. Beit Shemesh Local Council 37*(1) PD 113, 133 [1982] (Isr.)). "'[T]he meaning of this test is that a breach of the duty is a factor *sine qua non*' resulting in injury, not merely a 'fundamental and substantial factor' contributing to injury." *Id.* (quoting *Vaknin*, 37(1) PD at 144).

---

Plaintiffs have not alleged any connection between the limited and generalized support Defendants provide the PFLP as a political entity and the Attack itself.

The Complaint does not meet this standard.  The majority of these Plaintiffs have already filed the *Heching* complaints alleging that Syria and Iran are responsible for conspiring with, and providing the material support to, the PFLP for these Attacks. Accordingly, Plaintiffs cannot plausibly allege that Defendants' actions were the "but-for" cause of their injuries.

## VI.     PLAINTIFFS FAIL TO STATE A CLAIM FOR VICARIOUS LIABILITY UNDER ISRAELI LAW.

Similarly, Plaintiffs cannot meet Israeli law elements for vicarious liability under Israeli law. Pursuant to Israeli law, Plaintiffs' claim fails because they have not alleged beyond mere speculation that the Attackers were affiliated with Defendants. Israeli law provides that "[a]ny person who employs an agent . . . to do any act or class of acts on his behalf shall be liable for anything done by such agent in the performance of, and for the manner in which such agent does such act or class of acts." *Estate of Botvin v. Islamic Rep. of Iran*, 772 F. Supp. 2d 218, 229-30 (D.D.C. 2011) (citing Israeli Civil Wrongs Ordinance (New Version), 5728-1968, 2 LSI 5, § 14 (1972) (Isr.)). An agency relationship is recognized when a party acts as the surrogate, or "long-arm," of the defendant. *Id.* (citing Israel Gilead, *Tort Law*, in The Law of Israel: General Surveys 275, 437 (Itzhak Zamir & Sylviane Clombo eds., 1995)).

The Plaintiffs do not plausibly allege that the PA or PLO ever authorized or ratified the actions of the Attackers. Plaintiffs' claim is based on the fact-free allegation that the Attackers were "PFLP operatives."  (Compl. ¶¶ 136, 144). But, as noted above, Plaintiffs have not adequately alleged this beyond conclusory assertions. However, even assuming the Attackers were affiliated with the PFLP, the Complaint does not plausibly plead any connection between the limited and generalized support that Defendants provide to the PFLP as a political faction and the Attack or the Attackers, let alone that the PA or PLO expressly authorized the Attack. Plaintiffs' allegations of Defendants' *post*-Attack "public praise" of the Attackers and the PFLP also fail to sufficiently

- 34 -

state a claim, because vicarious liability cannot be sufficiently stated based on post-incident conduct. *See Sokolow*, 60 F. Supp. 3d at 517 n. 11 ("A showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that Defendants were somehow responsible for the attack[].").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint should be dismissed either for lack of personal jurisdiction, or with prejudice for legal insufficiency.

Respectfully Submitted,


February 21, 2022

**SQUIRE PATTON BOGGS (US) LLP**

/s/ *Gassan A. Baloul*
Gassan A. Baloul (DC Bar 1034245)
gassan.baloul@squirepb.com
Mitchell R. Berger (DC Bar 385467)
mitchell.berger@squirepb.com


2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

1801 California Street
Suite 4900
Denver, CO 80202
Telephone: (303) 830-1776
Facsimile: (303) 894-9239


*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

Gassan A. Baloul, an attorney duly admitted to practice before this Court, certifies that on February 21, 2022, I caused true and correct copies of the foregoing motion to dismiss to be served on Plaintiffs' counsel of record via electronic filing on the Court's CM/ECF system.

Dated:  February 21, 2022

/s/ *Gassan A. Baloul*