UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
----------------------------------------------------------------x

SHELLEY LEVINE, et al.,                          Case No. 21-cv-03043

                            Plaintiffs,

             v.

THE PALESTINE LIBERATION
ORGANIZATION and
THE PALESTINIAN AUTHORITY,

                            Defendants.
----------------------------------------------------------------x

### DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER RULE 12(b)(2) AND RULE 12(b)(6)

**SQUIRE PATTON BOGGS (US) LLP**

Gassan A. Baloul
gassan.baloul@squirepb.com
Mitchell R. Berger
mitchell.berger@squirepb.com

2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

717 17th Street
Suite 1825
Denver, CO 80202
Telephone: (303) 830-1776
Facsimile: (303) 894-9239

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF CONFERRAL ......................................................................................... 4

ARGUMENT ......................................................................................................................... 4

I.      EXERCISING PERSONAL JURISDICTION OVER DEFENDANTS WOULD
VIOLATE DUE PROCESS ......................................................................................... 4

      A.    The PSJVTA Does Not Establish Valid "Consent" to Personal Jurisdiction
under the Due Process Clause. ........................................................................ 5

           1.    "Deemed" Consent Under the PSJVTA Violates Due Process. ............... 6

           2.    Other Implied Consent Cases Focus on the Defendant's Conduct
Rather than the Forum's Intent to Exercise Personal Jurisdiction. .......... 10

           3.    Allowing Congress to Dictate "Deemed" Consent to Personal
Jurisdiction Would Violate Separation of Powers. ................................... 14

      B.    Defendants Lack Sufficient Contacts with the United States to Support the
Exercise of Specific Jurisdiction. ................................................................... 15

      C.    The Addition of Ambassador Mansour as a Rule 23.2 "Representative"
Does Not Create Jurisdiction Over The PA and PLO. ..................................... 19

           1.    Rule 23.2 Does Not Allow this Court to Ignore the Due Process
Limits On Personal Jurisdiction. ............................................................... 20

           2.    Rule 23.2 Does Not Apply in this Case Because Plaintiffs Have
Sued the PA and PLO Directly as Entities. ............................................... 21

           3.    The FAC Fails To Allege A Defendant Class Under Rule 23.2. ............... 24

II.    THE AMERICAN PLAINTIFFS FAIL TO STATE A DIRECT-LIABILITY OR
RESPONDEAT SUPERIOR CLAIM UNDER THE ATA ............................................. 27

      A.    The American Plaintiffs Fail to State a Claim for Direct Liability for an
Act of International Terrorism Pursuant to 18 U.S.C. § 2333(a) ........................ 30

           1.    The FAC Fails To Plausibly Allege Proximate Cause. ............................. 30

           2.    The American Plaintiffs Do Not Plausibly Allege that Defendants
Committed an "Act of International Terrorism." ....................................... 34

           3.    The American Plaintiffs Do Not Plausibly Allege Defendants
Provided Material Support to an FTO, or Knew or Intended that
Such Support Would Be Used for a Terrorist Act. .................................... 36

      B.    The American Plaintiffs Fail to Establish Essential Elements of
Respondeat Superior Liability. ....................................................................... 37

III.   PLAINTIFFS' FAIL TO STATE A CLAIM FOR CONSPIRACY LIABILITY
       UNDER 18 U.S.C. 2333(D). ............................................................................ 38

IV.    THE AMERICAN PLAINTIFFS FAILED TO PLAUSIBLY ALLEGE A
       CLAIM FOR AIDING AND ABETTING LIABILITY UNDER 18 U.S.C. §
       2333(D). ....................................................................................................... 40

       A.    The American Plaintiffs Have Not Alleged, and Could Not Plausibly
             Allege, that Defendants Knowingly and Substantially Assisted the Attack. ........ 40

       B.    The American Plaintiffs Have Not Alleged, and Could Not Plausibly
             Allege, that Defendants were Generally "Aware" they were Assuming a
             Role in Violent Terrorist Activity. ...................................................................... 42

V.     PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED BUT-FOR CAUSATION
       AS REQUIRED FOR A NEGLIGENCE CLAIM UNDER ISRAELI LAW. ................ 43

VI.    PLAINTIFFS FAIL TO STATE A CLAIM FOR VICARIOUS LIABILITY
       UNDER ISRAELI LAW. ................................................................................. 44

CONCLUSION ....................................................................................................... 45

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

*Alfaro-Huitron v. Cervantes Agribusiness*,
  982 F.3d 1242 (10th Cir. 2020) ....................................................................39

*Am. Select Ins. v. Johnson*,
  2018 U.S. Dist. LEXIS 101446 (D. Colo. June 18, 2018)...........................38

*Anapoell v. Am. Express Bus. Fin. Corp.*,
  2009 U.S. App. LEXIS 6315 (10th Cir. Mar. 24, 2009)..............................28

*Archangel Diamond Liquidating Trust v. OAO Lukoil*,
  75 F. Supp. 3d 1343 (D. Colo. 2014)......................................................15, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................27, 28

*Ayda Husam Ahmad v. Christian Friends of Israeli Cmtys.*,
  2014 U.S. Dist. LEXIS 62053 (S.D.N.Y. May 5, 2014) ..........................30, 36

*Bank Markazi v. Peterson*,
  578 U.S. 212 (2016)....................................................................................14

*Behagen v. Amateur Basketball Ass'n*,
  744 F.2d 731 (10th Cir. 1984) .....................................................................4

*Benn v. Seventh-Day Adventist Church*,
  304 F. Supp. 2d 716 (D. Md. 2004).............................................................22

*Biodiversity Assocs. v. Cables*,
  357 F.3d 1152 (10th Cir. 2004) ..................................................................14

*Boim v. Am. Muslims for Palestine*,
  9 F.4th 545 (7th Cir. 2021) .........................................................................38

*Estate of Botvin v. Islamic Rep. of Iran*,
  772 F. Supp. 2d 218 (D.D.C. 2011) ............................................................44

*Brewer v. Williams*,
  430 U.S. 387 (1977).....................................................................................15

*Brzak v. UN*,
  597 F.3d 107 (2d Cir. 2010)........................................................................27

*Burger King v. Rudzewicz*,
  471 U.S. 462 (1985).....................................................................................15

*CGC Holding Co. v. Hutchens*,
  974 F.3d 1201 (10th Cir. 2020) ..................................................................21

*City of Boerne v. Flores*,
    521 U.S. 507 (1997)...........................................................................................................14

*College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999)...............................................................................................7, 9, 10

*Coniglio v. Highwood Servs., Inc.*,
    60 F.R.D. 359 (W.D.N.Y. 1972)......................................................................................23

*Daimler AG v Bauman*,
    571 US 117 ( 2014)...........................................................................................................13

*Doe v. Douglas Cty. Sch. Dist.*,
    775 F. Supp. 1414 (D. Colo. 1991)...................................................................................26

*EEOC v. Arabian Am. Oil Co.*,
    499 U.S. 244 (1991).........................................................................................................37

*Frutos v. Am. Modern Prop. & Cas. Ins.*,
    No. 19-334, 2020 U.S. Dist. LEXIS 169276 (D. Colo. Mar. 20, 2020) ..................................38

*Fuld v. PLO*,
    No. 20-3374, 2022 U.S. Dist. LEXIS 3102 (S.D.N.Y. Jan. 6, 2022) ............................ *passim*

*Gay Lib v. Univ. of Missouri.*,
    416 F. Supp. 1350 (W.D. Mo. 1976), *rev'd on other grounds*, 558 F.2d 848
    (8th Cir. 1977)..................................................................................................................23

*GCIU-Emplr. Ret. Fund v. Coleridge Fine Arts*,
    700 F. App'x 865 (10th Cir. 2017) ..............................................................................18, 19

*Gill v. Arab Bank, PLC*,
    893 F. Supp. 2d 542 (E.D.N.Y. 2012) .............................................................................34

*Gilson v. Republic of Ir.*,
    682 F.2d 1022 (D.C. Cir. 1982).......................................................................................14

*Goldberg v. UBS AG*,
    660 F. Supp. 2d 410 (E.D.N.Y. 2009) .........................................................................37, 41

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).........................................................................................................13

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983)..........................................................................................41

*Hamm v. United States*,
    483 F.3d 135 (2d Cir. 2007)............................................................................................29

*Heching v. Islamic Rep. of Iran*,
    No. 17-01659 (D.D.C.) ...............................................................................32, 33

*Heching v. Syrian Arab Rep.*,
    No. 17-01192 (D.D.C.) ................................................................... *passim*

*Hess v. Pawloski*,
    274 U.S. 352 (1927)..................................................................................7, 10

*Honickman v. Blom Bank Sal*,
    6 F.4th 487 (2d Cir. 2021) .......................................................................42, 43

*Hooper v. Wyant*,
    502 F. App'x 790 (10th Cir. 2012) .................................................................7

*Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982)......................................................................................6, 7

*Kaplan v. Lebanese Canadian Bank, SAL*,
    999 F.3d 842 (2d Cir. 2021)............................................................ *passim*

*Kemper v. Deutsche Bank AG*,
    911 F.3d 383 (7th Cir. 2018) ......................................................... *passim*

*Klieman v. Palestinian Auth.*,
    923 F.3d 1115 (D.C. Cir. 2019)..................................................... *passim*

*Klinghoffer v. S.N.C. Achille Lauro*,
    937 F.2d 44 (2d Cir. 1991)........................................................................6, 12

*Lang v. Windsor Mount Joy Mut. Ins. Co.*,
    493 F. Supp. 97 (E.D. Pa. 1980) ...................................................................22

*Leonard v. USA Petroleum Corp.*,
    829 F. Supp. 882 (S.D. Tex. 1993) ................................................................11

*Licerio v. Lamb*,
    No. 20-681-WJM, 2021 U.S. Dist. LEXIS 175346 (D. Colo. July 15, 2021) ........................28

*Linde v. Arab Bank PLC*,
    882 F.3d 314 (2d Cir. 2018)........................................................34, 35, 36, 41

*Livnat v. Palestinian Auth.*,
    851 F.3d 45 (D.C. Cir. 2017) ........................................................ *passim*

*Low v. Chu*,
    2009 U.S. Dist. LEXIS 111623 (N.D. Okla.. Dec. 1, 2009)................................26

*Lumbermen's Underwriting Alliance v. Mobil Oil*,
  612 F. Supp. 1166 (D. Idaho 1985) ............................................................24

*Marbury v. Madison*,
  5 U.S. (1 Cranch) 137 (1803) ...................................................................15

*Mendelsohn v. Meese*,
  695 F. Supp. 1474 (S.D.N.Y. 1988) ...........................................................12

*In re Mid-Atl. Toyota Antitrust Litig.*,
  525 F. Supp. 1265 (D. Md. 1981) ...............................................................11

*Mohammad v. Palestinian Auth.*,
  566 U.S. 449 (2012) ..................................................................................38

*Monarch Asphalt Sales v. Wilshire Oil*,
  511 F.2d 1073 (10th Cir. 1975) ..................................................................27

*Nasious v. Two Unknown B.I.C.E. Agents*,
  492 F.3d 1158 (10th Cir. 2007) ...............................................................3, 22

*Nat'l Bank of Wash. v. Mallery*,
  669 F. Supp. 22 (D.C. Cir. 1987) ...............................................................22

*Noble Sec, Inc.. v. MIZ Eng, Ltd.*,
  611 F. Supp. 2d 513 (E.D. Va. 2009) .........................................................19

*Northbrook Excess & Surplus Ins. v. Med. Malpractice Joint Underwriting Assn.*,
  900 F.2d 476 (1st Cir. 1990) ......................................................................21

*Nouinou v. Smith*,
  No. 20-8682, 2021 U.S. Dist. LEXIS 182293 (S.D.N.Y. Sep. 22, 2021) ................27

*O'Sullivan v. Deutsche Bank AG*,
  No. 17-8709, 2019 U.S. Dist. LEXIS 53134 (S.D.N.Y. Mar. 28, 2019) ......39, 40, 42

*Owens v. BNP Paribas, S.A.*,
  897 F.3d 266 (D.C. Cir. 2018) ...............................................29, 30, 31, 35

*Estate of Parsons v. Palestinian Auth.*,
  715 F. Supp. 2d 27 (D.D.C. 2010), *aff'd in part, rev'd in part,* 651 F.3d 118
  (D.C. Cir. 2011) ......................................................................................38

*Estate of Parsons*,
  651 F.3d at 134 (J. Tatel, concurring) .........................................................39

*Patrician Towers Owners, Inc. v. Fairchild*,
  513 F.2d 216 (4th Cir. 1975) ..................................................................22, 23

*Peay v. BellSouth Med. Assistance Plan*,
    205 F.3d 1206 (10th Cir. 2000) ...................................................................16

*PostNet Int'l Franchise Corp. v. Wu*,
    521 F. Supp. 3d 1087 (D. Colo. 2021) ..........................................................7

*Price v. Socialist People's Libyan Arab Jamahiriya*,
    294 F.3d 82 (D.C. Cir. 2002) ...............................................................14, 20

*Quill Corp. v. North Dakota*,
    504 U.S. 298 (1992) .......................................................................................20

*Railway. Labor Executives' Ass'n v. Ass'n of Am. R.R.*,
    No. 87-2145, 1988 U.S. Dist. LEXIS 18600 (D.D.C. July 14, 1988) ..............20, 21

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013) ...................................................................*passim*

*Ruggieri v. General Well Serv.*,
    535 F. Supp. 525 .............................................................................................7

*Shatsky v. PLO*,
    955 F.3d 1016 (D.C. Cir. 2020) .................................................................6, 16

*Shatsky v. PLO*,
    No. 02-2280 (RJL), 2017 U.S. Dist. LEXIS 94946 (D.D.C. June 20, 2017)
    *vac'd and rem'd for dismissal on other gnds*, 955 F.3d 1016 (D.C. Cir. 2020) ............... *passim*

*Shatsky v. PLO*,
    No. 18-12355, 2022 U.S. Dist. LEXIS 48721 (S.D.N.Y. Mar. 18, 2022) ...................... *passim*

*Siegel v. HSBC N. Am. Holdings, Inc.*,
    933 F.3d 217 (2d Cir. 2019)...........................................................4, 42, 43

*Siemer v. Learjet Acquisition Corp.*,
    966 F.2d 179 (5th Cir. 1992) ......................................................................13

*Sokolow v. PLO*,
    138 S. Ct. 1438 (2018) ...................................................................................18

Sokolow v. PLO, 2022 U.S. Dist. LEXIS 107122, at *3 (June 15, 2022)............................1, 8, 10

*Sokolow v. PLO*,
    2022 U.S. Dist. LEXIS 43096 (S.D.N.Y. Mar. 10, 2022) ........................1, 8, 10, 35

*Sokolow v. PLO*,
    60 F. Supp. 3d 509 (S.D.N.Y. 2014)........................................35, 40, 42, 44

*Souders v. Brill*,
   No. 09-00778, 2009 U.S. Dist. LEXIS 50407 (D. Colo. Apr. 29, 2009)................................25

*Taylor v. Bywater*,
   1994 U.S. Dist. LEXIS 4176 (D. Kan. Mar. 29, 1994)....................................................24, 25

*Tyson Foods v. Bouaphakeo*,
   136 S. Ct. 1036 (2016)...............................................................................................................20

*United States v. Fischman*,
   645 F.3d 1175 (10th Cir. 2011) ................................................................................................39

*United States v. Ghayth*,
   709 F. App'x 718 (2d Cir. 2017) .............................................................................................36

*United States v. Hamilton*,
   334 F.3d 170 (2d Cir. 2003).....................................................................................................42

*United States v. PLO*,
   695 F. Supp. 1456 (S.D.N.Y. 1988).........................................................................................12

*United Water & Sanitation Dist. v. Geo-Con, Inc.*,
   488 F. Supp. 3d 1052 (D. Colo. 2020).....................................................................................28

*van Aggelen v. UN*,
   311 F. App'x 407 (2d Cir. 2009) .............................................................................................27

*Walden v. Fiore*,
   571 U.S. 277 (2014)..................................................................................................................16

*Waldman v. PLO*,
   835 F.3d 317 (2d Cir. 2016)......................................................................................... *passim*

*Warnick v. Dish Network*,
   301 F.R.D. 551 (D. Colo. 2014) ..............................................................................................25

*Weiss v. Nat'l Westminster Bank PLC*,
   768 F.3d 202 (2d Cir. 2014)......................................................................................................34

*Wellness Int'l Network, Ltd. v. Sharif*,
   575 U.S. 665 (2015).....................................................................................................................7

*Wenz v. Memery Crystal*,
   55 F.3d 1503 (10th Cir. 1995) ....................................................................................................4

*Wilkinson v. FBI*,
   99 F.R.D. 148 (C.D. Cal. 1983)................................................................................................23

*WorldCare Ltd. Cor. v. World Ins. Co,*
  767 F. Supp. 2d 341 (D. Conn. 2011) ....................................................................14

*Wultz v. Islamic Republic of Iran,*
  755 F. Supp. 2d 1 (D.D.C. 2010) ..........................................................................43

*Wynadotte Nation v. City of Kan. City,*
  214 F.R.D. 656 (D. Kan. 2003) .............................................................................26

**Statutes**

28 U.S.C. § 1605A ...................................................................................................... 37

18 U.S.C. § 2331 ........................................................................................................ 34

18 U.S.C. § 2333 ................................................................................................ *passim*

18 U.S.C. § 2334 ............................................................................................. 1, 3, 5,14

18 U.S.C. § 2339A ..................................................................................................... 36

18 U.S.C. § 2339B ..................................................................................................... 37

18 U.S.C. § 2339C ..................................................................................................... 36

22 U.S.C. § 5201 ........................................................................................................ 12

22 U.S.C. § 5202 ........................................................................................................ 12

28 U.S.C. 1605A ......................................................................................................... 37

Colo. Rev. Stat. §7-30-106(3) ...............................................................................24, 25

Colo. Rev. Stat. §7-30-107(1) ...................................................................................22

**Rules**

Fed. R. Civ. P 4 ......................................................................................................... 19

Fed. R. Civ. P. 12 ...................................................................................................... 27

Fed. R. Civ. P. 17 ...................................................................................................... 22

Fed. R. Civ. P.  23.2 .............................................................................................19-27

**Other Authorities**

CA 148/80 *Vaknin v. Beit Shemesh Local Council*
  *37*(1) PD 113 [1982] (Isr.) ......................................................................................... 43

Israel Gilead, *Tort Law*, in The Law of Israel: General Surveys 275, 437 (Itzhak Zamir &
  Sylviane Clombo eds., 1995) ...................................................................................... 44

Israeli Civil Wrongs Ordinance (New Version), 5728-1968, 2 LSI 5, § 14 (1972) (Isr.) ............ 44

Middle East Monitor, "PFLP reaffirms boycott of Palestinian National Council meetings,"
  https://www.middleeastmonitor.com/20220131-pflp-reaffirms-boycott-of-palestinian-national-
  council-meetings/ (Jan. 31, 2022) ............................................................................ 28

Programme of Work for 2020, CEIRPP,
  UN Doc. A/AC.183/2020/1 (Feb. 7, 2020) .............................................................. 12

Report, CEIRPP, UN Doc. A/75/35 (Oct. 10,C 2020) ................................................. 11

Restatement (Second) of Agency § 82 (1958) ........................................................... 29

## PRELIMINARY STATEMENT

Despite a host of tactical amendments aimed at avoiding dismissal, the First Amended Complaint ("FAC") substantively suffers from the same jurisdictional and legal-sufficiency defects as its predecessor. Accordingly, the Court should dismiss the FAC for lack of personal jurisdiction. Plaintiffs primarily rely on the Promoting Security and Justice for Victims of Terrorism Act ("PSJVTA"), 18 U.S.C. § 2334(e) (*see* FAC ¶¶ 17-26), which three federal courts recently held to violate the Due Process Clause of the Fifth Amendment. *Fuld v. PLO*, No. 20-3374, 2022 U.S. Dist. LEXIS 3102, at *38-39 (S.D.N.Y. Jan. 6, 2022) (holding PSJVTA to be unconstitutional); *Sokolow v. PLO*, No. 04-397, 2022 U.S. Dist. LEXIS 43096, at *15 (S.D.N.Y. Mar. 10, 2022) (same); *id*, 2022 U.S. Dist. LEXIS 107122, at *3 (June 15, 2022) (same); *Shatsky v. PLO*, No. 18-12355, 2022 U.S. Dist. LEXIS 48721, at *13-16 (S.D.N.Y. Mar. 18, 2022) (same).

The PSJVTA is simply the latest unsuccessful legislative effort to undo an unbroken line of judicial decisions holding that the same type of allegations Plaintiffs level here cannot support jurisdiction over these Defendants consistent with Due Process.[1] Time and again, courts hold that the same type of activity by Defendants that Plaintiffs allege here lacks a sufficient jurisdictional connection with the United States. Because jurisdictional due process protections are rooted in the Constitution, they cannot be undone by mere legislation.

In holding the PSJVTA unconstitutional, the *Fuld* court held that legislatively-imposed "deemed" "consent" to jurisdiction on which the PSJVTA pivots (*see supra* n.1) cannot be squared with the Due Process Clause. "Congress cannot, consistent with the Constitution, simply decree

---

[1] Invoking the PSJVTA, Plaintiffs allege Defendants are "deemed" to have "consented" to jurisdiction because they (1) made certain payments to those responsible for terrorist attacks (or their families) that injured or killed a U.S. national; (2) maintained a non-exempt office in the U.S.; or (3) conducted non-exempt activities while physically present in the U.S. (FAC ¶¶ 18-23).

- 1 -

that any conduct, without regard for its connections to the United States generally or to litigation in the United States specifically, signals a party's intent to submit to" jurisdiction. *Fuld*, 2022 U.S. Dist. LEXIS 3102, at *3. The PSJVTA violates this basic principle because the conduct at issue—payments made in Palestine, maintenance of Palestine's UN Mission, and limited UN-related activities—"does not remotely signal[] approval or acceptance of the Court's jurisdiction." *Id.* at *19. "To hold otherwise would effectively mean that there are no constitutional limitations on the exercise of personal jurisdiction...." *Id.* at *3. Because the PSJVTA is unconstitutional, it cannot provide a basis for personal jurisdiction in this case.

Without the PSJVTA as a constitutionally-sufficient basis for personal jurisdiction, the FAC must be dismissed because the new jurisdictional theories added by amendment likewise fail. First, federal courts have repeatedly held that the Due Process Clause prohibits specific jurisdiction over the PA and PLO in suits like this one over attacks in Israel or Palestine. That is because in those cases, as here, Plaintiffs' claims did not arise from Defendants' alleged conduct in the United States, and Defendants' alleged conduct in Palestine was not aimed at the United States.

Second, Plaintiffs assert jurisdiction under Federal Rules of Civil Procedure 4(k) and 23.2, but federal courts have unanimously held that those procedural rules do not create jurisdiction where prohibited by the Due Process Clause. Further, Rule 23.2 does not apply by its terms, because Plaintiffs do not allege that the "representative" defendant (Palestine's UN Ambassador Riyad Mansour) took any action that harmed Plaintiffs—nor do they assert claims against him.

Independent of the lack of jurisdiction, Plaintiffs' six causes of action should be dismissed under Rule 12(b)(6). Plaintiffs' direct-liability claim under the Anti-Terrorism Act ("ATA") (Count 1) for an "act of international terrorism" fails because Plaintiffs make only conclusory assertions, devoid of plausible supporting facts, in an unavailing attempt to connect Defendants to

the Nov. 18, 2014 attack in Har Nof, Israel (the "Attack"). Plaintiffs also fail to make plausible factual allegations about three essential elements, *i.e.*, that Defendants: (1) proximately caused Plaintiffs' injuries; (2) *themselves* committed an "act of international terrorism"; or (3) provided material support to a Foreign Terrorist Organization ("FTO"), or any support with knowledge or intent that such support would be used to prepare for, or to carry out, a criminal act of terrorism.

Plaintiffs' claim for ATA respondeat superior liability (Count 2) likewise fails because Congress has not authorized such a cause of action. Nor have Plaintiffs plausibly pled an employment relationship between Defendants and Uday Abu Jamal and Ghassan Abu Jamal (the "Attackers"), which is an essential element of any respondeat superior claim.

Similarly, Plaintiffs' JASTA[2] secondary-liability claim for conspiracy (Count 4) fails because Plaintiffs do not plausibly plead that Defendants had an agreement with the Attackers to carry out the Attack or any other act of international terrorism. That type of agreement is the *sine qua non* of a JASTA conspiracy claim. *Kaplan v. Lebanese Canadian Bank, SAL,* 999 F.3d 842, 855 (2d Cir. 2021) (JASTA conspiracy claim requires that defendant "conspire[d] with" the principal actor that committed the attack) (alteration in original). It is not satisfied by allegations that Defendants provided limited and generalized support for the Popular Front for the Liberation of Palestine ("PFLP") as a political faction, or by *post*-Attack praise or stipends.

Plaintiffs' secondary-liability claim for aiding and abetting the Attack (Count 3) fails because Plaintiffs do not plausibly allege Defendants knowingly and substantially assisted the Attack, or were "generally aware" they were playing a "role" in others' violent or life-threatening acts. Failing to plead either of these elements requires dismissal of Plaintiffs' aiding-and-abetting

---

[2] The relevant portions of the Justice Against Sponsors of Terrorism Act ("JASTA") are codified at 18 U.S.C. § 2334(d).

claim. *See Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 223 (2d Cir. 2019) (JASTA aiding and abetting requires that the defendant "knowingly and substantially assist[ed] the principal violation," i.e., the "act of international terrorism").

Finally, Plaintiffs' non-federal claims (Counts 5 and 6) fail to plausibly establish elements required under Israeli law, which those claims invoke. Specifically, as to their negligence claim, Plaintiffs do not plausibly allege that Defendants' conduct was the *but-for cause* of Plaintiffs' injuries, as Israeli law requires. Because Plaintiffs do not allege facts to support Defendants' prior awareness of the Attack, they do not plausibly plead that the Attackers were acting as agents of, or were otherwise affiliated with, Defendants as Israeli law requires to establish vicarious liability.

### STATEMENT OF CONFERRAL

Pursuant to Local Rule 7.1(a), counsel for Defendants conferred in good faith via email with Plaintiffs' counsel regarding the specific bases for this Motion. Plaintiffs oppose this Motion.

### ARGUMENT

## I.    EXERCISING PERSONAL JURISDICTION OVER DEFENDANTS WOULD VIOLATE DUE PROCESS.

On a motion to dismiss for lack of personal jurisdiction, "[t]he plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984). Courts accept as true "the well pled facts of plaintiff's complaint," but do not credit "mere conclusory allegations." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Once a defendant challenges the exercise of personal jurisdiction, "[t]he plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts." *Id.* at 1508.

Plaintiffs cannot satisfy their burden because: (1) the "deemed consent" provisions of the PSJVTA (*see* FAC ¶ 17-26) violate the Fifth Amendment's Due Process Clause because they

"push the concept of consent well beyond its breaking point," *Fuld*, 2022 U.S. Dist. LEXIS 3102, at \*38-39; (2) federal courts have already held the facts alleged here do not create specific jurisdiction over the PA and PLO, and have unanimously held that the PA and PLO are "persons" entitled to due process; (3) by their terms, Rule 4(k) and Rule 23.2 do not provide an alternative jurisdictional basis, and even if they did, those rules cannot supplant the supervening demands of jurisdictional due process.

### A. The PSJVTA Does Not Establish Valid "Consent" to Personal Jurisdiction under the Due Process Clause.

The PSJVTA states that the PA and PLO "shall be deemed to have consented to personal jurisdiction" in ATA cases if they: (1) made certain payments after April 18, 2020, to persons who were "fairly tried" or pled guilty and were imprisoned for terrorism that harmed a U.S. national (or made payments to the families of the attackers); (2) maintained "any office … in the United States" after January 4, 2020, except for one used for official UN business; or (3) engaged in "any activity while physically present in the United States" after January 4, 2020, not exempted by the PSJVTA.[3] 18 U.S.C. § 2334(e). In turn, Plaintiffs allege Defendants "consented" to personal jurisdiction in this case by making certain payments to those who carried out "attacks against Jewish and Israeli targets" that injured U.S. citizens; by maintaining an office for Palestine's UN Mission; and by conducting "propaganda, public relations, lobbying, and social media activities" while physically present in the U.S. FAC ¶¶ 24-25.[4]

---

[3] Section 2334(e)(3) expressly provides that, in determining whether Defendants engaged in "any activity while physically present in the United States," "no court may consider," *inter alia*, activities undertaken "exclusively for the purpose of conducting" official UN business, activities and meetings with U.S. or foreign government officials, and "any personal or official activities conducted ancillary to" such activities.

[4] Defendants strongly disagree with Plaintiffs' characterization of the payment programs, which even-handedly provide for families burdened by the loss of breadwinners due to the Israeli-

Notably, courts have consistently held that the *same activities* relied upon by Plaintiffs to establish purported "consent" to jurisdiction are *insufficient* to satisfy the Due Process Clause. *See Shatsky v. PLO*, 955 F.3d 1016, 1022-23, 1037 (D.C. Cir. 2020) (allegations Defendants provided "martyr payments" and conducted "public relations campaign designed to influence" U.S. foreign policy insufficient for personal jurisdiction); *Klieman v. Palestinian Auth.*, 923 F.3d 1115, 1123-26 (D.C. Cir. 2019) (rejecting "plaintiff's theory of specific jurisdiction" that hinged on allegations of a "campaign" to "influence or affect [U.S.] foreign policy"); *Waldman v. PLO*, 835 F.3d 317, 335-44 (2d Cir. 2016) ("*Waldman I*") ("lobbying activities" in U.S. insufficient to support specific jurisdiction); *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 51 (2d Cir. 1991) (operation of Palestine's UN Mission cannot "properly be considered as a basis of jurisdiction").

The question before this Court is therefore whether Plaintiffs can evade the requirements of the Due Process Clause by relying upon these same constitutionally inadequate activities to establish "deemed consent" jurisdiction over Defendants under the PSJVTA. As explained below, permitting this sort of jurisdictional "sleight of hand" would violate due process.

### 1. "Deemed" Consent Under the PSJVTA Violates Due Process.

To establish constitutionally valid "consent" to personal jurisdiction, a plaintiff bears the burden of demonstrating some "actions of the defendant" that "amount to a legal submission to the jurisdiction of the court." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee* ("*Bauxites*"), 456 U.S. 694, 704-05 (1982). A party may expressly consent to jurisdiction via a forum-selection clause, for example, or impliedly consent through conduct in the litigation itself

---

Palestinian conflict. However, for purposes of this Motion, Defendants do not contest they have made at least one such payment after the PSJVTA's effective date. Accordingly, this Court may assume that predicate for "deemed-consent" jurisdiction under the PSJVTA is satisfied, and move directly to the constitutional issues.

(e.g., by appearing in the forum without objection). *Id.* at 703-05 (describing the "variety of legal arrangements" that "have been taken to represent express or implied consent" to personal jurisdiction); *Hooper v. Wyant*, 502 F. App'x 790, 792 (10th Cir. 2012) (litigation conduct); *PostNet Int'l Franchise Corp. v. Wu*, 521 F. Supp. 3d 1087, 1098 (D. Colo. 2021) (forum-selection clause). A party may also impliedly consent to jurisdiction by accepting some government benefit or privilege conditioned upon consent to personal jurisdiction in the forum. *See Hess v. Pawloski*, 274 U.S. 352, 354-57 (1927) (defendant's "acceptance" of the "rights and privileges" of driving on public roads constituted "signification of his agreement" to consent to jurisdiction in state court); *Ruggieri v. General Well Serv.*, 535 F. Supp. 525, 529 (D. Colo. 1982) ("Implied consent may also arise from a defendant's pre-litigation conduct," such as "use of a state's roads.").

Regardless of the specific type of consent at issue (whether express or implied), however, the Supreme Court has "emphasiz[ed]" that consent to jurisdiction must be "*knowing and voluntary.*" *Wellness Int'l Network v. Sharif*, 575 U.S. 665, 685 (2015) (emphasis added). Because "constructive consent is not a doctrine commonly associated with the surrender of constitutional rights," federal courts "indulge every reasonable presumption against waiver of fundamental constitutional rights." *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 681-82 (1999) (internal quotations omitted). Accordingly, for implied consent, the nature of the defendant's activity must evince the defendant's agreement to the forum's exercise of jurisdiction. *Bauxites*, 456 U.S. at 705-09 (holding that "due process is violated ... if the behavior of the defendant will not support" legal presumption of personal jurisdiction).

As the *Fuld* court recently concluded, the PSJVTA fails this test, because "neither form of conduct" specified by the Act—making social welfare payments in Palestine or maintaining a UN office and conducting related activities in the U.S.—"remotely signals approval or acceptance of

- 7 -

the Court's jurisdiction." *Fuld*, 2022 U.S. Dist. LEXIS 3102, at *19. "[F]or conduct to imply consent, the conduct must be 'of such nature as to justify the fiction' that the party actually consented to submit itself to the jurisdiction of the court. Put simply, for waiver of personal jurisdiction through consent to satisfy the requirements of due process, it 'must be willful, thoughtful, and fair. "Extorted actual consent" and "equally unwilling implied consent" are not the stuff of due process.'" *Id.* at *18 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945) and *Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882, 889 (S.D. Tex. 1993)).

"Measured against these standards," the *Fuld* court correctly held that "the PSJVTA does not constitutionally provide for personal jurisdiction over Defendants," because "Congress simply took conduct in which the PLO and PA had previously engaged—conduct that the Second and D.C. Circuits had held was insufficient to support personal jurisdiction in *Waldman*, *Livnat*, *Shatsky*, and *Klieman*—and declared that such conduct 'shall be deemed' to be consent." *Id.* The specified payments "have no direct connection to the United States, let alone to litigation in a United States court." *Id.* at *19. Inferring consent to personal jurisdiction on that basis would therefore "strain the idea of consent beyond its breaking point." *Id.* And while the U.S. offices and activities prongs at least "relate to conduct in the United States," the courts have uniformly held that such conduct is "too thin" a reed to support the exercise of personal jurisdiction under the Due Process Clause. *Id.* "To pass muster," the *Fuld* court explained, "the predicate conduct would have to be a much closer proxy for actual consent than the predicate conduct at issue is here. To be blunt: The PSJVTA is too cute by half to satisfy the requirements of due process." *Id.* at *20; *Sokolow*, 2022 U.S. Dist. LEXIS 107122, at *6 (the activities anticipated by the PSJVTA "do not infer any intention on the part of Defendants to legally submit to suit in the United States").

*Fuld*'s conclusion draws "strong support," (*Fuld*, 2022 U.S. Dist. LEXIS 3102, at *20-23) from the Supreme Court's decision in *College Savings Bank*, which similarly rejected a Congressional attempt to exact "constructive" or implied waivers of jurisdictional defenses. *See College Savings Bank*, 527 U.S. at 676-87. In that case, plaintiffs argued that a state agency impliedly consented to jurisdiction in federal court by knowingly and voluntarily engaging in interstate marketing, after a federal statute made clear that such activity would subject it to suit. *Id.* at 671-72, 679. The Supreme Court emphatically rejected this "constructive-waiver" theory, holding:

> There is a fundamental difference between a State's expressing unequivocally that it waives its immunity, and Congress's expressing unequivocally its intention that if the State takes certain action it shall be deemed to have waived that immunity. In the latter situation, the most that can be said with certainty is that the State has been put on notice that Congress intends to subject it to suits brought by individuals. That is very far from concluding that *the State* made an "altogether voluntary" decision to waive its immunity.

*Id.* at 680-81 (emphasis in original).[5] The constitutional requirement of knowing and voluntary consent means nothing if Congress can simply "exact constructive waivers" of jurisdictional defenses "through the exercise of Article I powers." *Id.* at 683. The same is true in this case: "Congress cannot, consistent with the Constitution, simply decree that any conduct, without regard for its connections to the United States … signals a party's intent to submit to the jurisdiction of a United States court." *Fuld*, 2022 U.S. Dist. LEXIS 3102, at *3.

---

[5] Although *College Savings Bank* addressed waivers of state sovereign immunity rather than consent to personal jurisdiction, the Supreme Court made clear that its decision hinged on broader constitutional principles. *See* 527 U.S. at 681-82 (relying on the "classic description of an effective waiver of a constitutional right," and noting implied waivers "are simply unheard of in the context of *other* constitutionally protected privileges.") (emphasis in original); *see also Fuld*, 2022 U.S. Dist. LEXIS 3102, at *21-22 ("[T]he principles underlying *College Savings Bank* are not specific to the Eleventh Amendment, but rather apply to constitutional rights broadly.").

The other courts to address the PSJVTA universally agree. For example, *Shatsky*, 2022 U.S. Dist. LEXIS 48721, at *15, agreed with *Fuld* that "it is not reasonable to infer an intention to consent to suit in U.S. courts from the factual predicates in the PSJVTA" because the specified conduct does not reflect any "knowing and voluntary" agreement to "submit" to jurisdiction. Similarly, Judge Daniels explained that "finding that Defendants have impliedly consented to personal jurisdiction based solely on their conduct in violation of the PSJVTA would violate the due process clause of the constitution" because the conduct does not support the "presumption" that Defendants intended to submit to jurisdiction. *Sokolow*, 2022 U.S. Dist. LEXIS 43096, at *17-20; *id*., 2022 U.S. Dist. LEXIS 107122, at *6 (the "types of conduct" alleged by plaintiffs "do not infer any intention on the part of Defendants to legally submit to suit in the United States").

### 2. Other Implied Consent Cases Focus on the Defendant's Conduct Rather than the Forum's Intent to Exercise Personal Jurisdiction.

The unanimous holdings in *Fuld, Shatsky,* and *Sokolow* draw further support from other "implied consent" cases, which similarly focus on the nature of the defendant's conduct rather than the forum's intent to subject the defendant to suit. Beginning with the Supreme Court's decision in *Hess*, courts confronting claims of implied consent have examined whether a defendant's decision to engage in the specified activity actually reflects its implicit agreement to submit to jurisdiction. When the defendant chooses to take advantage of a forum's offerings (e.g., driving on public roadways, doing business in the state), courts properly assume the defendant freely and voluntarily accepts the conditions the forum places on such activities—including consent to specific personal jurisdiction in the forum.[6] By accepting the benefit of engaging in the regulated

---

[6] *See, e.g.*, *Hess*, 274 U.S. at 354-57 (holding acceptance of the "privilege" of driving on public roads evinced defendant's implicit agreement to jurisdiction); *College Savings Bank*, 527 U.S. at 686-87 (holding Congress may condition grant of federal funds or "gratuit[ies]" on State's waiver

activity, the defendant "enters into a 'bargain' with the state" whereby it consents to jurisdiction in exchange for permission to engage in conduct which the state otherwise could prohibit. *Leonard*, 829 F. Supp. at 889; *see also In re Mid-Atl. Toyota*, 525 F. Supp. at 1278 (describing this "bargain"). Conversely, Defendants are not aware of a single case upholding an implied consent statute in the *absence* of reciprocity—i.e., absent some benefit conferred upon the defendant in exchange for its consent.

Judged against this standard, the PSJVTA again falls on the wrong side of the line. Unlike constitutionally permissible implied-consent statutes, the PSJVTA does not confer any "benefit" or "privilege" for Defendants to "accept" in exchange for their purported "consent" to jurisdiction. The payments at issue occur entirely outside the United States (in Palestine), and do not require authorization from the U.S. government or the involvement of any U.S. entity. Any decision to continue making such payments thus reflects Defendants' own domestic policy choice, rather than any intent to freely and voluntarily consent to jurisdiction in the United States.

Similarly, Defendants' choice to maintain Palestine's UN Mission in New York, and to conduct activities in furtherance of the Mission's work, does not reflect any intent to freely and voluntary consent to jurisdiction in the United States.[7] Under longstanding judicial interpretation

---

of sovereign immunity because "acceptance of the funds entails an agreement" to the condition); *In re Mid-Atl. Toyota Antitrust Litig.*, 525 F. Supp. 1265, 1278 (D. Md. 1981) (explaining state business registration statutes condition privilege of doing business in the state on defendant's consent to jurisdiction).

[7] Although, for purposes of this Motion, Defendants do not contest that the PSJVTA's "payments" prong is satisfied, they do contest Plaintiffs' conclusory allegations regarding their "U.S. activities." As noted above (*supra* n. 4), the PSJVTA provides "no court may consider" Defendants' UN activities, meetings with government officials, and *any activities "ancillary to" such activities*. As part of its UN activities, the Palestinian Mission is expected to "participate[] in the work of" the UN Committee on the Exercise of the Inalienable Rights of the Palestinian People ("CEIRPP"). *See* Report, CEIRPP, UN Doc. A/75/35 (Oct. 10, 2020). The CEIRPP's express purpose is to "mobilize the international community" to provide "the broadest possible

of the UN Headquarters Agreement ("UNHQA"), the U.S. government is "obligat[ed] ... to refrain from impairing the function of the PLO Observer Mission," which falls outside U.S. "jurisdiction." *United States v. PLO*, 695 F. Supp. 1456, 1465-68, 1471 (S.D.N.Y. 1988); *see also Klinghoffer*, 937 F.2d at 51. Aside from UN-related activities, the Anti-Terrorism Act of 1987—which Plaintiffs affirmatively allege "remains in force today" (FAC ¶ 115)—broadly prohibits Defendants from operating in the United States. *See* 22 U.S.C. §§ 5201, 5202; *see also PLO*, 695 F. Supp. at 1471; *Mendelsohn v. Meese*, 695 F. Supp. 1474, 1484 (S.D.N.Y. 1988) (explaining 1987 Act was enacted for express purpose of "deny[ing] the PLO the benefits of operating in the United States"). The PSJVTA does not remove any of the prohibitions on Defendants' U.S. activities under the 1987 Act, nor does it alter the scope of permissible UN-related activities under the UNHQA. The PSJVTA thus fails to offer any benefit for Defendants to "accept," and thereby signal their implied agreement to consent to jurisdiction.

Rather than conferring any government "benefit" or "privilege" conditioned upon consent to jurisdiction, the PSJVTA simply decrees that certain conduct in which Defendants previously engaged shall be "deemed consent" to personal jurisdiction—regardless of whether that conduct is meaningful under the Due Process Clause. As *Fuld* recognized, allowing Congress to transform constitutionally inadequate contacts with a forum into grounds for "deemed consent" to personal jurisdiction based on nothing more than legislative say-so would swallow the minimum contacts

---

international support" for the Palestinian people by "end[ing] ... the Israeli occupation," supporting the "two-State solution," "highlighting the illegality of Israeli settlement activities in the West Bank," and "rais[ing] international awareness of the political, human rights and humanitarian developments on the ground." Programme of Work for 2020, CEIRPP, UN Doc. A/AC.183/2020/1 (Feb. 7, 2020). The "propaganda," "social media," "public relations," and "lobbying" activities alleged in the FAC (*see* ¶¶ 12-13) are all plainly either official UN business (including within the mandate of the CEIRPP) or "ancillary to" such UN activities, or other exempt meetings.

test, leaving no limit—other than "legislative imagination"—to the types of activities that could subject a defendant to personal jurisdiction. *Fuld,* 2022 U.S. Dist. LEXIS 3102, at *28.

In *Daimler*, for example, the Supreme Court held that the Due Process Clause prohibited a California court from exercising general jurisdiction over a car manufacturer and its U.S. subsidiary, which distributed vehicles to California dealerships but were incorporated and maintained their principal places of business elsewhere. 571 U.S. at 139. Despite achieving "sizable" sales in the state, the Court held defendants' activities were insufficient to confer personal jurisdiction because they were not "essentially at home" in California. *Id.* But if "deemed consent" were a valid means of imposing "consent" to jurisdiction, the California legislature could circumvent *Daimler* simply by enacting a statute declaring that any foreign corporation that distributed vehicles to California dealerships "shall be deemed to have consented to personal jurisdiction" in the state. The same would be true of virtually any decision holding that a defendant's forum-related activities were insufficient to confer jurisdiction. If constitutionally inadequate activities in a forum could serve as a valid basis for implied consent to jurisdiction merely because the legislature incanted the magic words "deemed consent," there would be no end to the types of activities that could serve as the basis for implied "consent" to jurisdiction.

For that reason, courts have long rejected legislative attempts to create personal jurisdiction where the Constitution forbids it. Rather, the Due Process Clause "sets the outer boundaries of [a court's] authority to proceed against a defendant," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011), and a court may only exercise jurisdiction where "constitutionally permissible." *Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183-84 (5th Cir. 1992); *see also Livnat v. Palestinian Auth.*, 851 F.3d 45, 53 (D.C. Cir. 2017) (courts must apply "due-process protections to limit personal jurisdiction in [ATA] cases" even when it might "thwart

Congress's intent to provide redress," because "Congress cannot wish away a constitutional provision"); *Gilson v. Republic of Ir.*, 682 F.2d 1022, 1028 (D.C. Cir. 1982) ("[A] statute cannot grant personal jurisdiction where the Constitution forbids it ...."); *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002) (same). "Expansive, non-explicit consent to being haled into court on any claim whatsoever in a [forum] in which one lacks minimum contacts goes against the longstanding notion that personal jurisdiction is primarily concerned with fairness." *WorldCare Ltd. v. World Ins.*, 767 F. Supp. 2d 341, 355 (D. Conn. 2011). The result in this case should be no different.

### 3. Allowing Congress to Dictate "Deemed" Consent to Personal Jurisdiction Would Violate Separation of Powers.

The PSJVTA's "deemed consent" provisions are unconstitutional for a second reason as well: they violate separation of powers. Although Congress maintains inherent authority to pass new substantive law, it oversteps that authority when it attempts to "usurp a court's power to interpret and apply the law to the circumstances before it" by "direct[ing] the result without altering the legal standards governing the effect of [the specified activity]." *Bank Markazi v. Peterson*, 578 U.S. 212, 224-28 (2016); *see also City of Boerne v. Flores*, 521 U.S. 507, 536 (1997) (Congress cannot override the judiciary's responsibility to "say what the law is"); *Biodiversity Assocs. v. Cables*, 357 F.3d 1152, 1171 (10th Cir. 2004) (explaining Congress lacks the authority to interfere with private rights "by directing the judiciary to decide a particular way, or by setting aside [prior] judicial determinations").

The PSJVTA runs afoul of these basic principles by attempting to dictate to the courts the circumstances under which Defendants "shall be deemed to have consented to personal jurisdiction." 18 U.S.C. § 2334(e)(1). Determining whether a party has waived its constitutional rights is a quintessentially judicial question, requiring "application of constitutional principles to

the facts as found." *Brewer v. Williams*, 430 U.S. 387, 403 (1977). The PSJVTA improperly usurps the judicial function by directing courts to *always* find "voluntary" consent to jurisdiction if the statute's factual predicates are met—regardless of whether those activities would satisfy the governing "knowing and voluntary" standard under the Due Process Clause.

The PSJVTA also attempts to override the courts' consistent application of constitutional principles to the scope of Defendants' activities in the United States. In *Shatsky*, *Waldman*, *Livnat*, and *Klieman*, the courts uniformly held that the same conduct specified in the PSJVTA was *insufficient* to subject Defendants to personal jurisdiction. Permitting Congress to supersede those constitutional holdings by legislative fiat would make the Constitution, "like other acts ... alterable when the legislature shall please to alter it," in violation of fundamental principles of separation of powers. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

### B. Defendants Lack Sufficient Contacts with the United States to Support the Exercise of Specific Jurisdiction.

This Court should likewise reject the FAC's attempt to assert specific jurisdiction (FAC ¶¶ 13-16) over Defendants. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King v. Rudzewicz*, 471 U.S. 462, 471-72 (1985); *Archangel Diamond Liquidating Trust v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1364 (D. Colo. 2014) (courts look at nationwide, not state, contacts under the Fifth Amendment).   Exercising specific jurisdiction would violate due process because, as other courts have held, Defendants' "suit-related conduct"—their alleged involvement in attacks in Israel or Palestine (which they strongly dispute)—is "not sufficiently connected to the United States" to subject them to suit here. *Waldman I*, 835 F.3d at 335-44; *see also Klieman*, 923 F.3d at 1123-26 (explaining American citizenship of victims of the alleged attacks was too "random, fortuitous, or attenuated" a contact

with forum to support specific jurisdiction); *Walden v. Fiore*, 571 U.S. 277, 283-91 (2014) (describing due process limitations on specific jurisdiction).[8]

In a series of cases involving similar ATA claims, federal courts have repeatedly held the Due Process Clause prohibits jurisdiction over the PA and PLO in suits for alleged involvement in attacks in Israel or Palestine, because those attacks lack any "meaningful contacts" with the United States. *See, e.g.*, *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56-58 (D.C. Cir. 2017) (holding plaintiffs failed to establish that the exercise of jurisdiction "would meet the requirements of the Fifth Amendment's Due Process Clause"); *Shatsky*, 955 F.3d at 1036-38 (directing dismissal of ATA claims against Defendants for lack of personal jurisdiction); *Klieman*, 923 F.3d at 1118 (holding Due Process Clause "barred U.S. courts from exercising jurisdiction" over PA/PLO), *vac'd on other gnds*, 140 S. Ct. 2713 (2020), *reinstated in relevant part*, 820 F. App'x 11 (D.C. Cir. 2020); *Waldman I*, 835 F.3d at 344 (holding court "could not constitutionally exercise either general or specific personal jurisdiction" over either Defendant).

The FAC asserts that the activities of the PLO's Washington office from 1994 to 2014 creates specific jurisdiction in this case. FAC ¶¶ 13-16, 151. But the Second and D.C. Circuits have already reviewed the conduct of the PLO's former Washington office at length, discussing its employees, its "commercial presence" and "diplomatic activities," its "multi-million dollar

---

[8] As Defendants lack sufficient nationwide contacts to support jurisdiction, the Court need not reach the "convenience factors" under the Fifth Amendment. *See Livnat*, 851 F.3d at 55 n.6 (declining to consider convenience factors because "the [PA] lacks minimum contacts with the United States as a whole"). In any case, forcing Defendants to litigate in Colorado would violate fair play and substantial justice. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1211-13 (10th Cir. 2000) (describing factors relevant to this inquiry). The FAC does not allege any contact between Defendants and Colorado, and discovery would "overwhelmingly" take place overseas. *Archangel*, 75 F. Supp. 3d at 1371. Defendants are foreign organizations without any presence in the state, such that the burden of litigating in Colorado is unconstitutionally "undue and unreasonable." *Id.* at 1371-74.

contract" for "consulting and lobbying," and its promotion of "the Palestinian cause in speeches and media." *Waldman I*, 835 F.3d at 323; *Livnat*, 851 F.3d at 56-57. These types of activities are insufficient to establish specific jurisdiction because, as the Second Circuit explained, any connection between efforts "to influence United States policy" and specific attacks is too "attenuated" under the Due Process Clause. *Waldman I*, 835 F.3d at 341-42. The FAC fails for the same reason, as it cannot establish a substantial connection between the alleged activities of the PLO's former Washington office and the Attack. Its generic allegations of a strategy to "influence United States policy" are indistinguishable from the allegations rejected in *Waldman*, *Klieman*, *Livnat*, and *Shatsky*.

The courts have similarly rejected Plaintiffs' argument that Defendants cannot challenge the exercise of personal jurisdiction because the PA and PLO "have no Due Process rights." FAC ¶¶ 9-11. The Second and D.C. Circuits—the only two circuit courts to address the issue—have both held that Defendants *are* entitled to the protections afforded to "persons" under the Due Process Clause. *See Livnat*, 851 F.3d at 48-54 (holding Defendants are "persons" under the Due Process Clause); *Waldman I*, 835 F.3d at 329 (same). In so holding, the courts expressly rejected the assertion (repeated by Plaintiffs in this case) that Defendants should be treated as "foreign governments" rather than "persons" under the Due Process Clause, explaining that a "non-sovereign" entity like the PA or the PLO "lacks the 'panoply of mechanisms in the international arena' that a sovereign state … can use to resolve disputes with the United States." *Livnat*, 851 F.3d at 51; *see also Waldman I*, 835 F.3d at 329 (holding Defendants "have due process rights" because "neither the PLO nor the PA is recognized by the United States as a sovereign state"). Accordingly, like any other non-sovereign foreign association, Defendants are subject to personal jurisdiction in the United States "only if consistent with due-process limits." *Livnat*, 851 F.3d at

54; *see also Waldman I*, 835 F.3d at 329; *GCIU-Emplr. Ret. Fund v. Coleridge Fine Arts*, 700 F. App'x 865, 868 (10th Cir. 2017) (applying "Fifth Amendment due process standards" to exercise of personal jurisdiction over foreign corporation).

Rather than acknowledging this precedent, the FAC instead relies on Executive Branch materials filed *over thirty years ago* to assert that "[f]oreign entities such as the PLO … do not have due process rights." FAC ¶ 10. More recent pronouncements make clear that any such view is outdated. In 2018, for example, the U.S. Government argued that Defendants' due-process rights were so well-established that review of the Second Circuit's decision in *Waldman I* was unnecessary. *See* U.S. Amicus Br. at 9, *Sokolow v. PLO*, 138 S. Ct. 1438 (2018) (No. 16-1071). As the Solicitor General explained, the Supreme Court's "existing jurisprudence has set only States of the Union outside of the category of 'persons' [entitled to Due Process under the Fifth Amendment]," and thus "do[es] <u>not</u> establish that foreign entities like [the PA and PLO] are barred from invoking due process protections." *Id.* Every court of appeals to consider the issue has reached the same conclusion: the PA and PLO constitute "persons" within the meaning of the Due Process Clause, and are thus entitled to the Clause's protections. *Id.* at 9 & n.1 (collecting cases). "The Second Circuit's treatment of [the PA and PLO] as entities that receive due process protections" was thus uncontroversial, as it did not conflict with Supreme Court precedent or "with any decision of another court of appeals." *Id.* at 9. Put simply, there is no support for Plaintiffs' claim that foreign entities like the PA and PLO lack due-process rights.

Finally, the courts have also squarely rejected the FAC's assertion that Defendants' waiver of service under Fed. R. Civ. P. 4(k) creates jurisdiction. FAC ¶¶ 7-8. Prior plaintiffs made the same argument, but the Second Circuit correctly held that due process still "applies even when federal service-of-process statutes are satisfied." *Waldman I*, 835 F.3d at 343 (Rule 4(k) service

on Defendants insufficient to establish personal jurisdiction); Fed. R. Civ. P 4(d)(5) ("Waiving service of a summons does not waive any objection to personal jurisdiction or to venue."). The Tenth Circuit likewise recognizes that mere compliance with Rule 4(k) does not answer the constitutional question of whether the exercise of personal jurisdiction "satisfies Fifth Amendment due process standards." *GCIU-Emplr. Ret. Fund*, 700 F. App'x at 868; *see also Noble Sec. v. MIZ Eng*, 611 F. Supp. 2d 513, 552 (E.D. Va. 2009) ("[A]ssertion of jurisdiction under a federal statute pursuant to [Rule] 4(k)(1)(C) requires application of the due process clause of the Fifth Amendment."). Neither the PSJVTA nor Rule 4(k) excuses Plaintiffs from carrying their burden of demonstrating exercising jurisdiction over Defendants complies with the Fifth Amendment.

### C.    The Addition of Ambassador Mansour as a Rule 23.2 "Representative" Does Not Create Jurisdiction Over The PA and PLO.

This Court should reject Plaintiffs' attempt to evade jurisdictional due process by naming Ambassador Mansour as a "representative" in a Rule 23.2 class action. FAC ¶¶ 27-32. Rule 23.2 is a procedural rule permitting lawsuits "against the members of an unincorporated association as a class by naming certain members as representative parties." Fed. R. Civ. P. 23.2. But Rule 23.2 does not purport to create personal jurisdiction over the PA and PLO where otherwise lacking. Any assertion of personal jurisdiction must still comport with due process of law.

Plaintiffs, in any case, have *not* brought a class action against the "members" of the PA or the PLO. Rather, as permitted under both federal and Colorado law, they sued the PA and PLO as entities – the PA as "a foreign government" and the PLO as "a foreign political entity" – and requested a judgment *only* "against defendants PLO and PA, jointly and severally." FAC, Prayer for Relief, ¶¶ 10, 11. Plaintiffs do not request relief against the membership of the PA and PLO. Rule 23.2 is therefore superfluous here and does not apply. Rule 23.2 also does not apply because

the FAC does not define the members of the class, Ambassador Mansour is not a member of the class, and because, under Colorado law, he cannot be sued for any alleged torts of the PA and PLO.

### 1.   Rule 23.2 Does Not Allow this Court to Ignore the Due Process Limits On Personal Jurisdiction.

The Rules Enabling Act, under which the Federal Rules of Civil Procedure were promulgated, states that "[s]uch rules shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). The Supreme Court has repeatedly held that Rule 23 class actions are not a license for courts to ignore the requirements of personal jurisdiction. In *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1048 (2016), the Court explained that it would have "violated the Rules Enabling Act" to give parties "different rights in a class proceeding than they could have asserted in an individual action." In other words, if this Court cannot exercise personal jurisdiction over the PA and PLO consistent with due process (which it cannot), Rule 23.2 does not change the result. *Price*, 294 F.3d at 95 ("it is well-settled that 'a statute cannot grant personal jurisdiction where the Constitution forbids it'") (citation omitted). Congress does not "have the power to authorize violations of the Due Process Clause" where due process requirements have not been met. *Quill Corp. v. North Dakota*, 504 U.S. 298, 305 (1992).

Procedural rules like Rule 23.2 do not change the constitutional rule that *the due process limits of personal jurisdiction must be satisfied. Railway. Labor Executives' Ass'n v. Ass'n of Am. R.R.*, No. 87-2145, 1988 U.S. Dist. LEXIS 18600, at *3-4 (D.D.C. July 14, 1988) ("A rule of procedure cannot create a cause of action which otherwise would not exist, nor may it excuse a court from ensuring compliance with constitutionally mandated bars to jurisdiction."). "The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant," and just as in *Railway,*

Plaintiffs "cannot escape application of this rule of law by interjecting a procedural rule." *Id.* (citing *Zenith Corp. v. Hazeltine,* 395 U.S. 100, 110 (1969)).

Just as Plaintiffs here argue that satisfying Rule 23.2 establishes personal jurisdiction over the PA and PLO, the plaintiffs in *Waldman I* argued that meeting the statutory requirement for service of process under Rule 4(k) sufficed to establish personal jurisdiction over the PA and PLO. *Waldman I,* 835 F.3d at 343. The Second Circuit disagreed, holding that due process still applies: "the exercise of personal jurisdiction must comport with constitutional due process principles.... due process is not satisfied in this case, and the courts have neither general nor specific jurisdiction over the defendants, regardless of the service-of-process statute." *Id.* (cleaned up). The Tenth Circuit agrees that Rule 4(k)(2) "provides for federal long-arm jurisdiction *if the plaintiff can show that the exercise of jurisdiction comports with due process*." *CGC Holding Co. v. Hutchens*, 974 F.3d 1201, 1208 (10th Cir. 2020) (emphasis added).

As explained above, the Second Circuit, the D.C. Circuit, and various district courts have already held that the conduct alleged in the FAC (Defendants' purported efforts to influence U.S. policy) is insufficient to support personal jurisdiction under the Due Process Clause. *See, e.g., Waldman I*, 835 F.3d at 333, 343. Plaintiffs' sudden choice to invoke a different procedural rule (Rule 23.2) does not change that fundamental due process analysis.

> **2.    Rule 23.2 Does Not Apply in this Case Because Plaintiffs Have Sued the PA and PLO Directly as Entities.**

Even if Rule 23.2 could sidestep due process, it does not apply where, as here, an unincorporated association has the capacity to be sued as an entity. *See, e.g., Northbrook Excess & Surplus Ins. v. Med. Malpractice Joint Underwriting Assn.*, 900 F.2d 476, 479 (1st Cir. 1990) ("If the [unincorporated association] can institute or defend a suit in its common name under Massachusetts law, [plaintiff] may not use Rule 23.2 to bring a class action against its members in

federal court."); *Nat'l Bank of Wash. v. Mallery*, 669 F. Supp. 22, 24-25 (D.C. Cir. 1987) ("[A]n unincorporated association may sue or be sued as a class only where state law does not allow suit by or against the group as an entity."); *Patrician Towers Owners, Inc. v. Fairchild*, 513 F.2d 216, 220 (4th Cir. 1975) ("when the law of the state in a particular case does not provide an unincorporated association with capacity as a jural person to sue or to be sued, then and *only* then does the mechanism of Rule 23.2 come into operation" (quotation omitted)).[9]

In this case, the PA and PLO may be sued as entities, *i.e.* in their common name, for both the federal and state law claims asserted in the FAC. Fed. R. Civ. P. 17(b)(3)(A) (unincorporated association may be sued in common name to enforce a substantive right existing under the Constitution or federal law); Colo. Rev. Stat. §7-30-107(1) ("A nonprofit association, in its name, may institute, defend, intervene or participate in a judicial … proceeding.").[10] Plaintiffs have in fact sued, and seek to recover damages from the PA and PLO as entities in the FAC. Specifically, the FAC names both the PA and PLO as Defendants in the case, claiming that each entity "aided and abetted and conspired with the PFLP to carry out the Terrorist Attack, and took other actions that facilitated, enabled, and caused the Terrorist Attack." FAC ¶ 3. The FAC likewise seeks damages from the PA and PLO as entities. *See, e.g.,* FAC, Prayer for Relief (requesting a "judgment be entered ... against defendants PLO and PA, jointly and severally, as to each of the causes of action enumerated" in the FAC).

---

[9] *See Benn v. Seventh-Day Adventist Church,* 304 F. Supp. 2d 716, 723 (D. Md. 2004) ("Because Maryland law does provide that unincorporated associations have the right to sue and be sued, on that ground alone Rule 23.2 may not be used by plaintiff as a device to sue the [unincorporated associations]." (citation omitted)); *Lang v. Windsor Mount Joy Mut. Ins.*, 493 F. Supp. 97, 99 (E.D. Pa. 1980) ("Because Pennsylvania law allows an unincorporated association to be sued as an entity, the purpose of Rule 23.2 has been served. Therefore, it is unavailable for plaintiff's use.").

[10] Under Fed. R. Civ. P. 17(b)(3), capacity to sue or be used is determined under Colorado law.

Rule 23.2, on the other hand, "applies to an action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties." Fed. R. Civ. P. 23.2. The FAC does not assert any claims "against the members of [the PA or PLO] as a class." *Id.* "Although an action by or against representatives of the membership of an unincorporated association has often been viewed as a class action, the real or main purpose of this characterization has been to give 'entity treatment' to the association when for formal reasons it cannot sue or be sued as a jural person under Rule 17(b)." Rule 23.2, 1966 committee note.

Consistent with the "purpose" of Rule 23.2 and regardless of a court's view on its scope, Rule 23.2 is inapplicable where, as here, the unincorporated association is *already* present as a party in the case. *See, e.g., Coniglio v. Highwood Servs., Inc.*, 60 F.R.D. 359, 364 (W.D.N.Y. 1972) ("In the present action the NFL has been named and served as a party defendant pursuant to Rule 17(b). It is present as an entity and, accordingly, it would appear to this court that, for this and the other reasons set forth above, the maintenance of a defendant class pursuant to Rule 23.2 would be inappropriate in the present action."); *Patrician Towers*, 513 F.2d at 221 (finding Rule 23.2 action is "not maintainable" where such a case is "joined ... with an action brought by the party for whose benefit the representative action is sought to be asserted."); *Gay Lib v. Univ. of Mo.*, 416 F. Supp. 1350, 1360 (W.D. Mo. 1976), *rev'd on other grounds*, 558 F.2d 848 (8th Cir. 1977) ("There is, therefore, no need to allow a class suit under Rule 23.2 on behalf of Gay Lib and its members, because Gay Lib already stands before this Court as an unincorporated association fully competent to represent its own interests.... Accordingly, this Court will not certify a class under Rule 23.2 in this action."); *Wilkinson v. FBI*, 99 F.R.D. 148, 152 n.2 (C.D. Cal. 1983) ("Because [the unincorporated association] already is a party in this action, Rule 23.2 is not applicable."). As

Plaintiffs have already sued the PA and PLO as entities, their attempt to use Rule 23.2 as a device to evade the requirements of the Due Process Clause should be rejected.

Finally, Rule 23.2 is inapplicable where members of an unincorporated association do not have the capacity to be sued for the tortious actions of the association simply because they are members. Colo. Rev. Stat. §7-30-106(3) ("A person is not liable for a tortious act or omission for which a nonprofit association is liable merely because the person is a member of the nonprofit association [or] is authorized to participate in the management of the affairs of the nonprofit association…."). In *Lumbermen's Underwriting Alliance v. Mobil Oil*, 612 F. Supp. 1166, 1170-72 (D. Idaho 1985), the court concluded that Rule 23.2 was not available because the individual members of "a reciprocal insurance exchange" could not be liable under state law. *Id.* at 1171. Because the members could not be liable for the association's torts, "a procedural mechanism for such a suit is, of course, superfluous." *Id.* at 1172. *See also Taylor v. Bywater,* 1994 U.S. Dist. LEXIS 4176, at *8 (D. Kan. Mar. 29, 1994) (dismissing Rule 23.2 action against union members because "federal law prohibits actions for monetary damages against individual union members."). Because Plaintiffs have sued Ambassador Mansour ***solely*** for his alleged membership in the PA and PLO, and not his own actions, he cannot be liable for Defendants' alleged torts under Colorado law and Rule 23.2 is not applicable.

### 3.     The FAC Fails To Allege A Defendant Class Under Rule 23.2.

Numerous other pleading deficiencies confirm that Plaintiffs' invocation of Rule 23.2 is merely a fiction designed to avoid due process. While the FAC names Ambassador Mansour "as a representative member of both the PLO and the PA" based on his current position as Ambassador for Palestine's UN Mission (FAC ¶¶ 31-35), the FAC does not allege a defendant-class action as required under Rule 23.2, or assert any claims against the "members" of the PA and the PLO as

defendants. *Taylor*, 1994 U.S. Dist. LEXIS 4176, at *8 (under Rule 23.2, plaintiff "has had to sue, not the IUE itself, but the IUE's members"). Rather, the FAC attempts to use the Ambassador as a stalking horse for a lawsuit against the PA and PLO.

The only causes of action in the FAC are against the PA and PLO—there are no causes of action against Ambassador Mansour or any other putative class member. FAC ¶¶ 179-240. Similarly, the FAC only asks that "judgment be entered ... against defendants PLO and PA, jointly and severally, as to each of the causes of action enumerated." *Id.*, p. 54. The lack of "specific claims for relief" against Ambassador Mansour requires his dismissal. *Souders v. Brill*, No. 09-00778, 2009 U.S. Dist. LEXIS 50407, at *1-2 (D. Colo. Apr. 29, 2009). A complaint "must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Id.* at *2-3 (citing *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007)). The FAC does not explain what the Ambassador did, how the Ambassador harmed Plaintiffs, or what rights the Ambassador violated.

The lack of allegations regarding how the Ambassador's personal actions harmed Plaintiffs means that he cannot be held liable under Colorado law, which prevents members from being sued for the torts of an association. Colo. Rev. Stat. § 7-30-106(3). Just as an employee of a corporation cannot be sued for the unrelated torts committed by that corporation, Ambassador Mansour cannot be sued for terrorism in which he had no involvement—indeed, the FAC admits that he is a U.S. citizen that has peacefully worked at the United Nations for almost 40 years. FAC ¶ 34.

Nor can the Ambassador be an adequate class representative, as required by Rule 23.2, when the FAC neither defines the class membership nor defines an "ascertainable class." *Warnick v. Dish Network*, 301 F.R.D. 551, 555 (D. Colo. 2014) ("[a]lthough not specifically mentioned in

Rule 23, there must be an ascertainable class" determined "with 'reference to objective criteria'") (citation omitted). An "ascertainable class ... is an implied prerequisite" of Rule 23, and, by the same logic, of Rule 23.2. *Low v. Chu*, 2009 U.S. Dist. LEXIS 111623, at *8 n.5 (N.D. Okla.. Dec. 1, 2009). And because the FAC only names the Ambassador in his "official capacity," he is not a defendant at all because "[w]here a suit contains both entity and official capacity claims, the only defendant is the entity." *Doe v. Douglas Cty. Sch. Dist.*, 775 F. Supp. 1414, 1416 (D. Colo. 1991). These problems (no adequate representative, no claims against the class, and no definite class) implicate this Court's "heightened responsibility to ensure due process for individuals absent from the putative defendants' class." *Wynadotte Nation v. Kan. City*, 214 F.R.D. 656, 659 (D. Kan. 2003) (citing 2 Conte & Newberg, Newberg on Class Actions § 4:48 (4th ed. 2002) ("a defendant class requires closer scrutiny of Rule 23 tests to assure fairness to absent members based on long-standing due process protections for defendants in the absence of a defendant class")).

Additionally, Ambassador Mansour is not a "member" of the PA as a matter of law. The Palestinian Authority was established by the Oslo Accords, which specifically defined the "members" of the organization to be limited to its policy-makers: the President, Council of Ministers, and Legislative Council.[11] The FAC does not allege the Ambassador is a member of those bodies. The FAC instead nonsensically claims that members of certain Palestinian political parties are also members of the PLO because the parties are "departments" of the PLO—yet still

---

[11] *See* Decl. of Principles on Interim Self-Government Arrangements, Sept. 13, 1993, 32 ILM 1525, at Preamble, Art. I & VII (the interim agreements would define the "members" of the "Council," later known as the PA); Agreement on the Gaza Strip and the Jericho Area, May 4, 1995, 33 ILM 622, Art. IV ("[t]he Palestinian Authority will consist of one body of 24 members [now known as the Council of Ministers] which shall carry out and be responsible for all the legislative and executive powers and responsibilities..."); Israeli-Palestinian Interim Agreement on the West Bank and the Gaza Strip, Washington, D.C., Sept. 28, 1995, 36 ILM 551, Art. I, II, III (adding that the President and Legislative Council would also be "members" of the PA).

fails to allege the Ambassador is a member of those political parties. FAC ¶¶ 110-111. *See Monarch Asphalt Sales v. Wilshire Oil,* 511 F.2d 1073, 1077 (10th Cir. 1975) ("A class action may not be maintained by a putative representative who is not a member of the class.").

In any case, Ambassador Mansour, as an invitee to the United Nations, has functional immunity under the UN Headquarters Agreement for actions performed in an "official capacity" or that "relate[]" to official actions. *Brzak v. UN,* 597 F.3d 107, 113 (2d Cir. 2010); *van Aggelen v. UN,* 311 F. App'x 407, 409 (2d Cir. 2009); *see Nouinou v. Smith*, No. 20-8682, 2021 U.S. Dist. LEXIS 182293, at *10 (S.D.N.Y. Sep. 22, 2021) (applying functional immunity "[b]ecause the allegations … arise from Plaintiff's employment at the UN and relate to acts performed by Smith within his official capacity as a UN employee"). For this reason alone, this Court should dismiss the FAC's attempt to name the Ambassador as a defendant in his "official capacity."

In the end, the FAC has neither the trappings nor the substance of a Rule 23.2 class action. As the presence of Ambassador Mansour is entirely superfluous to Plaintiffs' actual claims against the PA and PLO, this Court should dismiss him from this case.

## II.   THE AMERICAN PLAINTIFFS FAIL TO STATE A DIRECT-LIABILITY OR RESPONDEAT SUPERIOR CLAIM UNDER THE ATA.

Independent of personal jurisdiction, Plaintiffs' claims are legally insufficient under Fed. R. Civ. P. 12(b)(6). A complaint must be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but—it has not

shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679; *see also Anapoell v. Am. Express Bus. Fin. Corp.*, 2009 U.S. App. LEXIS 6315, at *11-12 (10th Cir. Mar. 24, 2009) (same).

Here, Plaintiffs' FAC does not contain allegations with "sufficient factual matter" to raise a reasonable inference that Defendants had any involvement with, or connection to, the Attack. *Twombly*, 550 U.S. at 570; *Licerio v. Lamb*, No. 20-681-WJM, 2021 U.S. Dist. LEXIS 175346, at *55-56 (D. Colo. July 15, 2021) (dismissing claims where plaintiff's allegations were "conclusory and speculative."). The FAC does not allege Defendants directly communicated with or provided support to the Attackers. Instead, it makes three conclusory claims:  (1) the Attackers were "operatives" of the PFLP (FAC ¶¶ 165, 172); (2) the PFLP was responsible for the Attack (*id.* ¶ 173); and (3) Defendants are liable for the PFLP because the PFLP is "without separate legal identit[y]" from Defendants, in that "the PLO's factions carry out terrorism under factional names," "work[ing] hand-in-glove" with Defendants (*id.* ¶ 152).[12] The FAC does not allege facts to plausibly support these assertions, requiring dismissal.

Plaintiffs allege Defendants are liable for the acts of the PFLP because the PLO, as a governmental entity, provides limited and generalized support to all of its constituent political factions, including the PFLP. But, Plaintiffs have not alleged any plausible way how Defendants, played any role whatsoever in the Attack (a) by providing the PFLP with: (i) limited and general

---

[12] The Court can take judicial notice of public reports contradicting Plaintiffs' speculative and conclusory allegations the Defendants operate "hand-in-glove" or in a "fictitious 'division of roles'" with the PFLP. FAC ¶¶ 149-150. For example, the PFLP is currently boycotting meetings at the highest level of the PLO due to its policy disagreements with other PLO factions and PA President Mahmoud Abbas. *See* Middle East Monitor, "PFLP reaffirms boycott of Palestinian National Council meetings," https://www.middleeastmonitor.com/20220131-pflp-reaffirms-boycott-of-palestinian-national-council-meetings/ (Jan. 31, 2022); *see also United Water & Sanitation Dist. v. Geo-Con, Inc.*, 488 F. Supp. 3d 1052, 1057 (D. Colo. 2020) ("Courts may also consider matters of which a court may take judicial notice ... includ[ing] adjudicative facts, which are those facts not subject to reasonable dispute because they are ... readily determined from sources whose accuracy cannot be reasonably questioned.") (internal quotations omitted).

monetary support; (ii) permission to maintain office space in Palestine; and (iii) payments to "PFLP operatives who had been incarcerated for terrorist activities," or (b) by refusing to shut down PFLP websites or radio programming. FAC ¶¶ 133, 135, 138, 137. Nor do Plaintiffs' allegations of *post*-Attack conduct—e.g., Defendants "publicly praising" the Attackers—establish any plausible connection between Defendants and the Attack *before* the Attack occurred. Plaintiffs' allegations of limited and general forms of government support for PLO political factions and *post*-Attack conduct are too speculative and attenuated to raise a plausible connection between the Attack and Defendants.

A causal chain cannot be presumptively drawn between the Attack and Defendants' alleged actions *as a government*. *See Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013) (finding no proximate cause to support ATA claim and recognizing that governmental entities have "many legitimate agencies, operations, and programs to fund"); *see also Kemper v. Deutsche Bank AG*, 911 F.3d 383, 391-392 (7th Cir. 2018) ("When one of the links on a causal chain is a sovereign state, the need for facts specifically connecting a defendant's actions to the ultimate terrorist attack is especially acute."). That principle holds true for actions taken before or after the Attacks. *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 275 (D.C. Cir. 2018) (post-attack events "have no bearing on what actions 'caused' the bombings."); *see also Hamm v. United States*, 483 F.3d 135, 140 (2d Cir. 2007) (post-tort conduct cannot constitute ratification of an antecedent tort absent evidence that the tort "was done or professedly done on [the defendant's] account.") (quoting Restatement (Second) of Agency § 82 (1958)).

### A. The American Plaintiffs Fail to State a Claim for Direct Liability for an Act of International Terrorism Pursuant to 18 U.S.C. § 2333(a).

The American Plaintiffs[13] claim first that Defendants are directly liable for an act of international terrorism under ATA Section 2333(a). These Plaintiffs fail to state a claim because the FAC does not allege plausible, non-conclusory factual allegations that Defendants: (1) proximately caused the American Plaintiffs' injuries; (2) *themselves*, committed an "act of international terrorism"; (3) provided material support to an FTO; or (4) provided any support to others with the knowledge or intent that such support would be used to prepare for, or to carry out, a criminal act of terrorism. These failures require dismissal of this claim.

### 1. The FAC Fails To Plausibly Allege Proximate Cause.

To state a claim for ATA direct liability, the American Plaintiffs must plausibly allege facts showing that their injuries occurred "by reason of" an act of international terrorism committed by Defendants themselves. Courts have interpreted the "by reason of" language to require a showing that a defendant's own acts proximately caused plaintiff's injuries. *See Rothstein*, 708 F.3d at 95; *see also Kemper*, 911 F.3d at 391-92; *Owens,* 897 F.3d at 275. Thus Plaintiffs must plausibly allege that each defendant's conduct was "*a substantial factor in the sequence of responsible causation*," and that Plaintiffs' injuries were "reasonably foreseeable or anticipated as a natural consequence." *Rothstein*, 708 F.3d at 91 (citation omitted; emphasis in original). In "an ATA action, proximate causation requires non-conclusory, plausible allegations of 'a proximate causal relationship between the cash transferred ... and the terrorist attacks ... that injured plaintiffs.'" *Ayda Husam Ahmad v. Christian Friends of Israeli Cmtys.*, 2014 U.S. Dist. LEXIS 62053, at *12 (S.D.N.Y. May 5, 2014) (quoting *Rothstein*, 708 F.3d at 97). Plaintiffs cannot meet this standard.

---

[13] The American Plaintiffs consist of all plaintiffs except for the family members and the personal representatives of the estates of Zidan Saif and Rabbi Abraham Goldberg.

First, the FAC does not plausibly allege that the Attack would not have been possible without the support of Defendants. The FAC acknowledges that the PLO, as a governmental entity, provides generalized funding and resources to its various political factions. FAC ¶¶ 86-88, 101 (alleging that the PLO has political factions; that Defendants provide "direct monetary allocations" to those factions to further their "organizational roles [and] positions"; and that the "PFLP is the second-largest faction in the PLO" yet is "a relatively small group in the Palestinian arena."). The American Plaintiffs have alleged that, in general, Defendants provided material support to the PFLP in the form of: (1) cash for political operations, (2) permission to maintain political offices and facilities in Palestine, (3) payments to "PFLP operatives who had been incarcerated for terrorist activities," as part of a Palestinian government program and (4) refusal to shut down PFLP websites or radio programming. FAC ¶¶ 133, 135, 137-144.

Plaintiffs have not plausibly pled any connection between these limited and generalized forms of governmental support and the Attack. Governments, such as Defendants, have "many legitimate agencies, operations, and programs to fund." *Rothstein*, 708 F.3d at 97. This is true even for state-sponsors of terrorism, which Defendants are *not*. *Kemper*, 911 F.3d at 393. Because Plaintiffs' theory is dependent on governmental actions, "the need for facts specifically connecting a defendant's actions to the ultimate terrorist attack is especially acute." *Id.*. Because governmental actions necessarily implicate non-terroristic objectives—even when state-sponsors of terrorism are defendants—causation cannot be established based on a generalized claim of a "pattern and practice" of terrorist support, which is all Plaintiffs have alleged here. *Rothstein*, 708 F.3d at 97 (no proximate cause where plaintiffs cannot show that "the moneys UBS transferred to Iran were in fact sent to Hizbollah or Hamas or that Iran would have been unable to fund the attacks by Hizbollah and Hamas without the cash provided by UBS"); *Owens*, 897 F.3d at 276 (to satisfy

proximate cause plaintiffs must allege that "BNPP *substantially* contributed to Plaintiffs' injuries because the funds to Sudan 'actually [were] transferred to al Qaeda ... and aided in' the embassy bombings") (emphasis and alteration in original) (citation omitted).

Here, Plaintiffs have not alleged a causal link between the limited government support Defendants allegedly provide to the PFLP and the Attack. To find otherwise, based on the facts alleged, would effectively render Defendants liable simply because the PFLP is a political faction within the PLO. *See Shatsky v. PLO*, No. 02-2280 (RJL), 2017 U.S. Dist. LEXIS 94946, at *29-30 (D.D.C. June 20, 2017) (holding that incidental support by Defendants to the PFLP, by paying rent for PFLP office, was not a substantial factor in the sequence of causation, because there was no connection between the incidental support and the attack), *vacated and remanded for dismissal on other grounds*, 955 F.3d 1016 (D.C. Cir. 2020).

Second, Plaintiffs cannot adduce the required specific facts linking Defendants' governmental acts to this Attack, because they already have blamed others for providing the support that caused this Attack. The overwhelming majority of these Plaintiffs earlier filed two separate complaints in the District of Columbia alleging that Syria and Iran provided material support to, and conspired with, the PFLP to carry out the Attack. *See Heching v. Syrian Arab Rep.*, No. 17-01192 (D.D.C.) ("*Heching I*"); *Heching v. Islamic Rep. of Iran*, No. 17-01659 (D.D.C.) ("*Heching II*"). In *Heching I,* the plaintiffs allege that "Syria and [] Syrian Officials conspired, and acted through and/or in concert, with the PFLP ... to carry out ... the November 18, 2014 Terrorist Attack." *Heching I*, Am. Compl. ¶ 95 (Dkt. 6). In *Heching II*, the plaintiffs allege that "Iran and its Officials and Agents conspired, and acted through and/or in concert, with the PFLP ... to carry out ... the November 18, 2014 Terrorist Attack." *Heching II*, Compl. ¶ 87 (Dkt. 1). In both *Heching* matters, plaintiffs informed the court that they have developed substantial evidence that Syria and

Iran provided material support for the Attack. *Heching I*, Pls.' Resp. to Order to Show Cause ¶ 7 (Dkt. 18); *Heching II*, Pls.' Resp. to Order to Show Cause ¶ 7 (Dkt. 19). On January 18, 2022, these plaintiffs moved the court for entry of default judgment against Syria and Iran. *Heching I*, Mot. for Default J. (Dkt. 21); *Heching II*, Mot. for Default J. (Dkt. 22). In their motions, these Plaintiffs assert that Syria and Iran's "state sponsorship" and "support" for the PFLP were "necessary for the survival and effectiveness of the PFLP." *Heching I*, Mem. in Supp. Mot. for Default J. (Dkt. 21-1) at 22; *Heching II*, Mem. in Supp. Mot. for Default J. (Dkt. 22-1) at 22.

In this FAC, Plaintiffs hedge their *Heching* bets four years after filing their *Heching* complaints. It is no wonder that Plaintiffs sought out a court two time-zones away from the *Heching* court. But that tactical maneuver cannot insulate their speculative allegations that seek to attribute responsibility for these Attacks to Defendants, rather than to Syria and Iran. Plaintiffs' assertions in *Heching* that Syria and Iran conspired to commit and provide material support for the Attack, and that the PFLP could not survive without that support, render entirely speculative their *post hoc* assertions that the limited and generalized support Defendants allegedly provided to the PFLP as a political faction was the proximate cause of the Attack. *Rothstein*, 708 F.3d at 91.

Third, the FAC relies on a manufactured connection between Defendants and the Attackers by the conclusory allegation that the Attackers were affiliated with the PFLP, which is a "constituent faction of" Defendants. FAC ¶¶ 3, 147. But the FAC does not state any fact-based allegations to connect Defendants themselves to the Attackers. Absent any factual allegations in this regard, the FAC cannot plausibly allege proximate cause. *See Shatsky*, 2017 U.S. Dist. LEXIS 94946, at *32 (finding "after-the-fact" conduct as "not sufficient" to support proximate causation) (citing *Sokolow v. PLO*, 60 F. Supp. 3d 509, 517 n.11 (S.D.N.Y. 2014)).

### 2.     The American Plaintiffs Do Not Plausibly Allege that Defendants Committed an "Act of International Terrorism."

To state a claim for ATA primary liability, a plaintiff must plausibly allege (i) that the defendant has violated a predicate criminal statute *and* (ii) that the additional elements for the ATA civil cause of action under 18 U.S.C. § 2333(a), apply, including, *inter alia*, that a U.S. national was injured or killed "by reason of an act of international terrorism." *See Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 553 (E.D.N.Y. 2012) ("Like a civil RICO claim, a suit for damages under the ATA is akin to a Russian matryoshka doll, with statutes nested inside of statutes.") (cleaned up). A plaintiff must plausibly allege that Defendants *themselves* committed an act of "international terrorism." *Linde v. Arab Bank PLC*, 882 F.3d 314, 326 (2d Cir. 2018). Section 2331 defines "international terrorism" to require that a defendant's *own acts* "involve violence or endanger human life" and "appear to be intended to intimidate or coerce a civilian population or to influence or affect a government." *See, e.g., id.* at 319-22; *Rothstein*, 708 F.3d at 97. The FAC does not plausibly allege that Defendants' own acts meet this standard.

The American Plaintiffs fail to plausibly plead that Defendants' own acts "appear[ed] to be intended to intimidate or coerce a civilian population or to influence or affect a government." *Linde*, 882 F.3d at 326. This is an objective test that "does not depend on the actor's beliefs, but imposes on the actor an objective standard to recognize the apparent intentions of actions." *Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 207 n.6 (2d Cir. 2014) (citation omitted). Further, the FAC also fails to allege facts to support a reasonable inference that Defendants engaged in activities that "involve violent acts or acts dangerous to human life" sufficient to constitute an act of "international terrorism" under Section 2331(1).

As discussed above, the FAC does not allege any connection between Defendants and the Attackers. The FAC's only allegations which purportedly connect Defendants to the Attack itself

are allegations of *post*-Attack conduct. First, the American Plaintiffs allege that the "defendants endorsed and ratified" the Attack by "publicly prais[ing]" the Attackers after the Attack. FAC ¶ 176. Second, following the Attack, they allege the PLO continued to provide limited and generalized funding to the PFLP, and "endorsed the PFLP." FAC ¶ 178. Neither of these allegations plausibly pleads that Defendants' alleged actions were violent, dangerous to human life or conducted with terroristic intent. "A showing of support ... is not sufficient to demonstrate that Defendants were somehow responsible for the attacks." *Sokolow*, 60 F. Supp. 3d at 517 n.11. The *Sokolow* court held that "even *post*-attack financial support to the families of terrorists" was "not sufficient" for the plaintiffs to pin responsibility on Defendants. *Id*. (emphasis added). Here, the American Plaintiffs have alleged substantially less.

While Plaintiffs allege that the PLO provided limited and generalized political support to the PFLP (*e.g.,* FAC ¶ 153), *political* support for the PFLP does not objectively demonstrate that Defendants intended to foster a terrorist attack. Provision of support to an FTO that is non-terroristic in nature and purpose does not constitute an "act of international terrorism." *Kemper,* 911 F.3d at 390 (affirming dismissal of ATA claim and finding that alleged material support is not an act of international terrorism when motivated by economics and governmental policy and not a desire to "intimidate or coerce"); *Linde,* 882 F.3d at 326 (holding that "material support to a foreign terrorist organization does not invariably equate to an act of international terrorism").

Governmental authorities like Defendants have "many legitimate agencies, operations, and programs to fund." *Rothstein*, 708 F.3d at 97; *see also Owens,* 897 F.3d at 276. "When one of the links on a causal chain is a sovereign state, the need for facts specifically connecting a defendant's actions to the ultimate terrorist attack is especially acute." *Kemper,* 911 F.3d at 393. So too here, given Defendants' governmental responsibilities. Governmental authorities have many non-

terroristic obligations, policies, and priorities that negate a plausible inference that their implementation of government policies "appear[ed] to be intended to intimidate or coerce a civilian population or to influence or affect a government." *Linde*, 882 F.3d at 326. Plaintiffs have not alleged any facts to plausibly plead that Defendants' governmental action of limited political support to the PFLP objectively demonstrated an intent to foster the Attack. *Kemper,* 911 F.3d at 390 (support to Iranian entities, objectively, "d[id] not appear intended to intimidate or coerce" where actions were motivated by economics, rather than "a desire to intimidate or coerce.").

### 3. The American Plaintiffs Do Not Plausibly Allege Defendants Provided Material Support to an FTO, or Knew or Intended that Such Support Would Be Used for a Terrorist Act.

Section 2339A requires Plaintiffs to plausibly allege that Defendants "provide[d] material support or resources ... knowing or intending that they are to be used in preparation for, or in carrying out," the Attack. 18 U.S.C. § 2339A; *see United States v. Ghayth*, 709 F. App'x 718, 722-23 (2d Cir. 2017) (summary order); *Ahmad*, 2014 U.S. Dist. LEXIS 62053, at *7-8 (citing *Gill*, 893 F. Supp. 2d at 504). Section 2339C similarly requires Plaintiffs to plausibly allege that Defendants "provid[ed] or collect[ed] funds with the intention that such funds be used, or with the knowledge that such funds are to be used, in full or in part, in order to carry out" the Attack. 18 U.S.C. § 2339C; *see Ahmad*, 2014 U.S. Dist. LEXIS 62053, at *8 (citation omitted).

The American Plaintiffs have not alleged that the Defendants had prior knowledge of the Attack or provided support or resources directly to the Attackers. Further, Plaintiffs' attempts to rely on Defendants' provision of generalized support to the PFLP are too attenuated to plausibly state a claim. There are no specific factual allegations to alleging that the generalized governmental funding that Defendants provide to the PFLP was intended to be used, in whole or in part, for the Attack. This is particularly true here, where most of the American Plaintiffs have made clear in

the *Heching* cases that Syria and Iran provided the material support for the Attack and that Syria and Iran's support was "necessary" for the PFLP's survival.

Section 2339B, on the other hand, explicitly requires a showing that the defendant provided material support or resources "to a foreign terrorist organization." 18 U.S.C. § 2339B(a)(1). But "material" support requires more than the type of *de minimis* political support for the PFLP at issue here, as recognized in *Shatsky,* 2017 U.S. Dist. LEXIS 94946, at *28-29 ("[P]laintiffs posit a connection between [a PFLP office] rent payment and the bombing solely on the fact that [the office location was] nearby to [the bombing location]. To say the least, that is a stretch!"); *see also Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 425-26 (E.D.N.Y. 2009) ("It has long been recognized that substantial assistance means more than just a little aid ....") (cleaned up).

## B.   The American Plaintiffs Fail to Establish Essential Elements of  Respondeat Superior Liability.

The FAC also fails to state a viable claim for "respondeat superior liability" for "international terrorism pursuant to 18 U.S.C. § 2333(a)." The American Plaintiffs base this cause of action on the conclusory allegation that "[t]he PFLP carried out the [] Attack as the agent of the defendants." FAC ¶ 202. The Court should dismiss this claim for two reasons.

First, the ATA does not authorize a cause of action for respondeat superior liability. The ATA is a statute that applies extraterritorially. As such, it must be construed narrowly. *See EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991). The ATA does not expressly provide for vicarious liability, and if Congress wished to impose such liability, it would have done so expressly. *See* Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A (allowing suits against certain foreign states in terrorism cases for acts of "an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency."). The ATA is akin to the Torture Victim Protection Act of 1991 ("TVPA") wherein the Supreme Court

held that in the absence of Congress' express authorization, the TVPA did not impose organizational liability for acts of individual employees. *Mohammad v. Palestinian Auth.*, 566 U.S. 449, 451, 455-56 (2012). To this end, the Seventh Circuit has recently reiterated that "[t]he Anti-Terrorism Act [] does not appear to provide a cause of action for imposing vicarious liability." *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 555 (7th Cir. 2021) (citation omitted); *see also Estate of Parsons v. Palestinian Auth.*, 715 F. Supp. 2d 27, 34 (D.D.C. 2010) (rejecting imposition of ATA liability under a respondeat superior theory), *aff'd in part, rev'd in part,* 651 F.3d 118, 139 (D.C. Cir. 2011) (declining to decide whether the ATA permits a respondeat superior claim).

Second, the American Plaintiffs have not properly pled essential elements of a respondeat superior claim, which would require Plaintiffs to plausibly plead that the Attackers were the Defendants' agents. *Am. Select Ins. v. Johnson*, 2018 U.S. Dist. LEXIS 101446, at *12-13 (D. Colo. June 18, 2018) (a claim for respondeat superior requires "a finding of an employer-employee relationship" between the tortfeasor and the alleged agent). The American Plaintiffs have not alleged facts sufficient to raise a reasonable inference that the Attackers were associated with the Defendants, let alone allegations that an employment relationship existed. The American Plaintiffs' claims that Defendants provided limited and generalized forms of support to the PFLP are too attenuated to establish that the Attackers "were acting" within the "scope of employment" with either Defendant when committing the Attack. *Frutos v. Am. Modern Prop. & Cas. Ins.,* No. 19-334, 2020 U.S. Dist. LEXIS 169276, at *3 (D. Colo. Mar. 20, 2020).

## III.   PLAINTIFFS' FAIL TO STATE A CLAIM FOR CONSPIRACY LIABILITY UNDER 18 U.S.C. 2333(D).

"The crux of any conspiracy is an agreement between the co-conspirators." *Kemper*, 911 F.3d at 395; *see also Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1262 (10th Cir. 2020) (dismissing conspiracy claim on "failure to show the requisite agreement—the first element

of a conspiracy claim"). A co-conspirator must join the "agreement knowing its purpose and with the intent to further" that purpose. *United States v. Fischman*, 645 F.3d 1175, 1187 (10th Cir. 2011). "Mere speculation ... will not do." *Cervantes Agribusiness*, 982 F.3d at 1262. Plaintiffs here have not alleged facts to plausibly plead that Defendants agreed with the Attackers or the PFLP to commit the Attack or any other act of international terrorism.

A conspiracy claim under Section 2333(d) requires plausible allegations that Defendants joined an agreement to commit an "act of international terrorism". *See O'Sullivan v. Deutsche Bank AG*, No. 17-8709, 2019 U.S. Dist. LEXIS 53134, at *35 (S.D.N.Y. Mar. 28, 2019) (The "plain language of JASTA ... suggests that JASTA liability lies where the secondary tortfeasor conspired with the principal tortfeasor in committing such an act of international terrorism.") (cleaned up). Plaintiffs must therefore allege that the co-conspirators' activities were "so coordinated or monolithic that [they] shared a common purpose or plan." *Id.* at *37. "[T]he further down the causal chain a defendant sits, the more diligent plaintiff must be to plead facts that plausibly suggest that the defendant entered into an agreement." *Kemper*, 911 F.3d at 395-96; *Kaplan*, 999 F.3d at 855 ("JASTA states that to be liable for conspiracy a defendant would have to be shown to have conspire[d] with the principal.") (internal quotations omitted); *Estate of Parsons*, 651 F.3d at 134 (J. Tatel, concurring) (ATA conspiracy claim requires more than "piling inference ... upon inference" which is "akin more to speculation than to reasonable fact-finding.").

Plaintiffs' claim fails under these standards. The FAC does not plausibly allege that Defendants agreed with the Attackers to commit an act of "international terrorism" as defined in the ATA. *O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at *35 (for a JASTA conspiracy claim, "a defendant must have conspired to commit an act of international terrorism."). Plaintiffs' allegation that the PLO provided the PFLP, like all Palestinian political factions, with generalized support

does not raise a reasonable inference that there was an *agreement* between the PFLP and Defendants to commit this specific Attack or any other act of terrorism. So too for Plaintiffs' allegations that Defendants made *post*-Attack statements "publicly praising" the Attackers. Statements of support after the attack cannot plausibly allege that Defendants agreed beforehand to perpetrate the attack. *See Sokolow*, 60 F. Supp. 3d at 517 n.11 ("A showing of support—even *post*-attack financial support to the families of terrorists—is not sufficient to demonstrate that [defendant is] somehow responsible for the attacks.") (emphasis added). Additionally, in the *Heching* matters, the vast majority of these Plaintiffs have alleged that Syria and Iran—not these Defendants—were the ones who conspired with the PFLP to commit this Attack.

## IV.   THE AMERICAN PLAINTIFFS FAILED TO PLAUSIBLY ALLEGE A CLAIM FOR AIDING AND ABETTING LIABILITY UNDER 18 U.S.C. § 2333(D).

The FAC also fails to allege the essential elements for a JASTA aiding-and-abetting claim, because the American Plaintiffs have failed to allege plausible facts showing that either Defendant (i) "knowingly and substantially assist[ed] the principal violation," here, the Attack, or (ii) was "generally aware" of its role "as part of an overall illegal or tortious activity at the time [it] provide[d] assistance." *Kaplan,* 999 F.3d at 856 (citation omitted).

### A.    The American Plaintiffs Have Not Alleged, and Could Not Plausibly Allege, that Defendants Knowingly and Substantially Assisted the Attack.

The American Plaintiffs' aiding-and-abetting claim fails because the FAC cannot plausibly allege that Defendants "knowingly and substantially assisted" those responsible for the Attack. The "knowingly" component requires "actual knowledge" that the defendant's alleged facilitative conduct substantially assisted "someone who performed wrongful conduct." *Kaplan*, 999 F.3d at 856. "That knowledge requirement is designed to avoid imposing liability on innocent, incidental participants." *Id*. at 864 (quotations omitted).

"[T]he 'proper legal framework for how [aiding-and-abetting] liability should function' under the ATA is that identified in" *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983). *Linde*, 882 F.3d at 329 (quoting 18 U.S.C. § 2333 Statutory Note) (alterations in original). *Halberstam* identified six factors relevant to determining "how much encouragement or assistance is substantial enough" to satisfy the requirement that the defendant "substantially assist the principal violation." *Linde*, 882 F.3d at 329 (citation omitted). Those factors are: (1) the nature of the act; (2) the amount of assistance ; (3) the defendant's presence at the time of the tort; (4) the defendant's relation to the principal; (5) the defendant's state of mind; and (6) the period of defendant's assistance. *Id.*; *see also Goldberg*, 660 F. Supp. 2d at 425-26 ("'substantial assistance' means more than just a little aid.") (citation omitted).

The American Plaintiffs' attempts to convert generalized political support into substantial assistance to the Attack falls flat. As discussed above, most of these Plaintiffs already brought two actions claiming it was Syria and Iran that provided substantial assistance to the Attack. Similarly, the FAC does not plausibly allege that the PLO's generalized funding provided to all political factions was a "major part" in promoting the Attack. *Halberstam*, 705 F.2d at 484. Nor have they plausibly alleged that the PFLP radio programs or websites played a role in the Attack. "[A]iding and abetting an act of international terrorism requires more than the provision of material support to a designated terrorist organization." *Kaplan,* 999 F.3d at 859 (citation omitted); *see also Shatsky,* 2017 U.S. Dist. LEXIS 94946 at *28-29 ("[P]laintiffs posit a connection between [a PFLP office] rent payment and the bombing solely on the fact that [the office location was] nearby to [the bombing location]. To say the least, that is a stretch!"). Here, the American Plaintiffs have alleged far less, warranting dismissal of their claim.

In addition, *post*-Attack payments and statements of support *after* the Attack could not logically have "substantially assisted" in the Attack. *See Sokolow*, 60 F. Supp. 3d at 517 n.11; *Shatsky,* 2017 U.S. Dist. LEXIS 94946 at *32 (citation omitted); *see also United States v. Hamilton*, 334 F.3d 170, 180 (2d Cir. 2003) ("[A] person cannot be found guilty of aiding and abetting a crime that already has been committed ... .").

### B.     The American Plaintiffs Have Not Alleged, and Could Not Plausibly Allege, that Defendants were Generally "Aware" they were Assuming a Role in Violent Terrorist Activity.

To state an aiding-and-abetting claim, the American Plaintiffs must also plausibly allege that Defendants were "generally aware of [their] role as part of an overall illegal or tortious activity." *Kaplan*, 999 F.3d at 863 (citation omitted); *see O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at *39 ("[T]he Complaint must allege plausibly that ... Defendants were 'generally aware' that they were ... playing a 'role' in an FTO's violent or life-endangering activities.") (citation omitted). Further, Defendants "must be generally aware of [their] role in an overall illegal activity from which the act that caused the plaintiff's injury was *foreseeable*." *Honickman v. Blom Bank Sal*, 6 F.4th 487, 496 (2d Cir. 2021) (emphasis in original).[14]

The American Plaintiffs have failed to allege that Defendants' provision of limited and generalized support to the PFLP as a political faction of the PLO would have made the Attack

---

[14] Plaintiffs' allegations are similar to those found insufficient in *Siegel*, as explained by the court in *Kaplan*. 999 F.3d at 861-862. "We affirmed the dismissal of the *Siegel* complaint for failure to state an aiding-and-abetting claim ... because the plaintiffs ha[d] not plausibly alleged that [defendant] assumed a role in the [attack] or provided substantial assistance ... . Their complaint failed to advance any plausible, factual, non-conclusory allegations that [defendant] knew or intended that the funds it forwarded ... would be sent to AQI or to any other terrorist organization, and it lacked any factual allegations that support a conclusion that [defendant] knowingly played a role in the terrorist activities." *Id*. (cleaned up). The same applies here, where, as explained, Plaintiffs have not alleged any connection between the limited and generalized support Defendants provide the PFLP as a political entity and the Attack itself.

foreseeable, or demonstrates awareness of involvement in the PFLP's terrorist activities. "[K]nowingly providing material support to an FTO, without more, does not as a matter of law satisfy the general awareness element." *Kaplan,* 999 F.3d at 860. Without alleging a connection between the alleged support and the Attack, the FAC fails to raise a "reasonable inference" that Defendants aided and abetted the Attack. *See Siegel,* 933 F.3d at 224-25 (allegation that banking defendant was aware that client was believed to have links to terrorist organizations insufficient to establish the "general awareness" element of JASTA aiding-and-abetting liability); *Honickman,* 6 F.4th at 498-99 (rejecting argument that, because "[m]oney is fungible," JASTA aiding-and-abetting liability can be premised solely on knowing and material support to an FTO). Accordingly, the Court should dismiss the American Plaintiffs' aiding-and-abetting claim.

## V.   PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED BUT-FOR CAUSATION AS REQUIRED FOR A NEGLIGENCE CLAIM UNDER ISRAELI LAW.

Under Israeli law, which Plaintiffs invoke for the negligence claim, Plaintiffs must plausibly allege that Defendants' actions were the "but-for" cause of Plaintiffs' injuries. "Israeli courts determine factual causation under the tort of negligence by applying a but-for causation test." *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 63 (D.D.C. 2010) (citing CA 148/80 *Vaknin v. Beit Shemesh Local Council 37*(1) PD 113, 133 [1982] (Isr.)). "'[T]he meaning of this test is that a breach of the duty is a factor *sine qua non*' resulting in injury, not merely a 'fundamental and substantial factor' contributing to injury." *Id*. (quoting *Vaknin*, 37(1) PD at 144).

The FAC does not meet this standard. The majority of these Plaintiffs alleged in *Heching* that Syria and Iran provided the material support to the PFLP for these Attacks. Accordingly, they cannot plausibly allege that Defendants' actions were the "but-for" cause of their injuries.

## VI.     PLAINTIFFS FAIL TO STATE A CLAIM FOR VICARIOUS LIABILITY UNDER ISRAELI LAW.

Similarly, Plaintiffs cannot meet Israeli law elements for vicarious liability under Israeli law. Pursuant to Israeli law, Plaintiffs' claim fails because they have not alleged beyond mere speculation that the Attackers were affiliated with Defendants. Israeli law provides that "[a]ny person who employs an agent ... to do any act or class of acts on his behalf shall be liable for anything done by such agent in the performance of, and for the manner in which such agent does such act or class of acts." *Estate of Botvin v. Islamic Rep. of Iran*, 772 F. Supp. 2d 218, 229-30 (D.D.C. 2011) (citing Israeli Civil Wrongs Ordinance (New Version), 5728-1968, 2 LSI 5, § 14 (1972) (Isr.)). An agency relationship is recognized when a party acts as the surrogate, or "long-arm," of the defendant. *Id.* (citing Israel Gilead, *Tort Law*, in The Law of Israel: General Surveys 275, 437 (Itzhak Zamir & Sylviane Clombo eds., 1995)).

The Plaintiffs do not plausibly allege that the PA or PLO ever authorized or ratified the actions of the Attackers. Plaintiffs' claim is based on the fact-free allegation that the Attackers were "PFLP operatives." FAC ¶¶ 165, 172. As noted above, Plaintiffs have not adequately alleged this beyond conclusory assertions. But even if the Attackers were PFLP-affiliates, the FAC does not plausibly plead any connection between the limited and generalized support that Defendants provide to political factions and the Attack , let alone that the PA or PLO expressly authorized the Attack. Plaintiffs' allegations of Defendants' *post*-Attack "public praise" of the Attackers and the PFLP also fail to sufficiently state a claim, because vicarious liability cannot be sufficiently stated based on post-incident conduct. *See Sokolow*, 60 F. Supp. 3d at 517 n. 11 ("A showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that Defendants were somehow responsible for the attack[].").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' FAC should be dismissed either for lack of personal jurisdiction, or with prejudice for legal insufficiency.

Respectfully Submitted,

June 27, 2022

**SQUIRE PATTON BOGGS (US) LLP**

/s/  *Gassan A. Baloul*
Gassan A. Baloul (DC Bar 1034245)
gassan.baloul@squirepb.com
Mitchell R. Berger (DC Bar 385467)
mitchell.berger@squirepb.com

2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

1801 California Street
Suite 4900
Denver, CO 80202
Telephone: (303) 830-1776
Facsimile: (303) 894-9239

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

Gassan A. Baloul, an attorney duly admitted to practice before this Court, certifies that on June 27, 2022, I caused true and correct copies of the foregoing motion to dismiss to be served on Plaintiffs' counsel of record via electronic filing on the Court's CM/ECF system.

Dated:  June 27, 2022

<u>/s/ *Gassan A. Baloul*</u>