# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

```
                                    )
THE PUERTO RICO PUBLIC              )
HOUSING ADMINISTRATION,             )
et al.,                             )
                                    )
        Plaintiffs,                 )
                                    )
        v.                          )      C. A. No. 96-1304 (PG)
                                    )
UNITED STATES DEPARTMENT            )
OF HOUSING AND URBAN                )
DEVELOPMENT, et al.,                )
                                    )
        Defendants.                 )
                                    )
```

DEFENDANTS' MOTION FOR PARTIAL DISMISSAL AND TO LIMIT DISCOVERY

Plaintiffs have sued the United States Department of Housing
and Urban Development and the Secretary of the United States
Department of Housing and Urban Development (collectively "HUD"),
asserting, inter alia, claims under Title VI of the Civil Rights
Act of 1964, 42 U.S.C. § 2000d ("Title VI"), Title VIII of the
Civil Rights Act of 1964, 42 U.S.C. § 3601, et seq. ("Title
VIII"), the Equal Protection and Due Process Clauses of the Fifth
and Fourteenth Amendments to the United States Constitution and
the Administrative Procedure Act, 5 U.S.C. § 553, et seq.
("APA").

With the exception of PRPHA and PRDH's claims under the APA,
plaintiffs' complaint suffers from numerous legal deficiencies
and should be dismissed.  First, Ms. Alameda lacks standing to
pursue any of these claims.  Second, sovereign immunity bars suit
under any of the provisions cited by plaintiffs except the APA.
Third, plaintiffs do not possess an implied right of action under
either Title VI or Title VIII.  Finally, since neither PRPHA nor

PRDH is a "person" within the meaning of the Equal Protection and Due Process Clauses, they cannot state claims under these provisions.  Nor can they pursue these claims on behalf of PRPHA tenants as such parens patriae suits do not lie against HUD, an agency of the United States.

Accordingly, the only justiciable claims advanced in this proceeding are the APA claims stated by PRPHA and PRDH.  Under the applicable federal six-year statute of limitations, these APA claims are limited to final agency actions taken up to six years before the filing of this action in March 14, 1996.  Moreover, since this action involves only the limited inquiry conducted under the APA, this Court's review is restricted to the administrative records upon which HUD's various funding and related decisions were made, and discovery into extra-record materials is therefore inappropriate.

WHEREFORE, HUD respectfully moves the Court to dismiss all claims asserted by plaintiffs except the APA claims stated by PRPHA and PRDH in Count IV of the Complaint.  HUD respectfully further moves the Court to order that the federal statute of limitations bars claims arising more than six years prior to the March 14, 1996, filing of this action; to require HUD to provide to PRPHA and PRDH only administrative records relevant to final agency actions not barred by the statute of limitations; and to prohibit forbid the parties from serving or otherwise engaging in discovery.

-2-

A proposed order and memorandum in support of this motion are submitted herewith.

Dated:  Oct. _8_, 1996      Respectfully submitted,

OF COUNSEL:            FRANK W. HUNGER
                        Assistant Attorney General

HOWARD SCHMELTZER
MAURA MALONE            GUILLERMO GIL
Office of General Counsel   United States Attorney
U.S. Department of Housing
    and Urban Development
451 7th St., S.W.
Washington, D.C.   20410
(202) 708-0300          *Fidel Sevillano/ sas*
                        FIDEL SEVILLANO
                        Assistant United States Attorney


                        *Lois Bonsal Os...*
                        MICHAEL SITCOV
                        Assistant Branch Director
                        LOIS BONSAL OSLER
                        Trial Attorney
                        U.S. Department of Justice
                        Civil Division
                        Federal Programs Branch
                        901 E Street, N.W.
                        Room 990
                        Washington, D.C.   20530
                        (202) 514-3770
                        Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| THE PUERTO RICO PUBLIC HOUSING ADMINISTRATION, et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )    C. A. No. 96-1304 (PG) |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., | ) ) ) ) |
| Defendants. | ) ) |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION FOR
PARTIAL DISMISSAL AND TO LIMIT DISCOVERY

I.   INTRODUCTION

Citing allegedly unfairly low levels of federal subsidization dating back nearly three decades and a variety of constitutional and statutory theories, plaintiffs sue the United States Department of Housing and Urban Development and the Secretary of the United States Department of Housing and Urban Development (collectively "HUD"), asserting, inter alia, that HUD has discriminatorily shortchanged the Puerto Rico Public Housing Administration ("PRPHA"). Specifically, plaintiffs, PRPHA, the Puerto Rico Department of Housing ("PRDH") and Myriam Alameda ("Alameda") purport to state claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"), Title VIII of the Civil Rights Act of 1964, 42 U.S.C. § 3601, et seq. ("Title VIII"), the Equal Protection and Due Process Clauses of the Fifth

and Fourteenth Amendments to the United States Constitution and the Administrative Procedure Act, 5 U.S.C. § 553, et seq. ("APA").

With the exception of PRPHA and PRDH's claims under the APA, plaintiffs' Complaint for Declaratory and Injunctive Relief ("Complaint") suffers from numerous legal deficiencies and should be dismissed. First, Ms. Alameda lacks standing to pursue any of her claims. Second, sovereign immunity bars suit under any of the provisions cited by plaintiffs except the APA. Third, plaintiffs do not possess an implied right of action under either Title VI or Title VIII. Finally, since neither PRPHA nor PRDH is a "person" within the meaning of the Equal Protection and Due Process Clauses, they cannot state claims under these provisions. Nor can they pursue these claims on behalf of PRPHA tenants as such parens patriae suits do not lie against HUD, an agency of the United States.

Accordingly, the only justiciable claims advanced in this proceeding are the APA claims stated by PRPHA and PRDH. Under the applicable federal six-year statute of limitations, these APA claims are limited to final agency actions taken up to six years before the filing of this action on March 14, 1996. Moreover, since this action involves only the limited inquiry conducted under the APA, this Court's review is restricted to the administrative records concerning HUD's various funding and related decisions, and discovery into extra-record materials is therefore inappropriate.

-2-

In short, stripped of its meritless claims and improper claimant, this complaint presents a simple APA case involving a quarrel over HUD's 1992 review of PRPHA's federal subsidy level. Accordingly, this Court's review is limited to the administrative records of HUD's recent decisions regarding the appropriate approach to, and calculation of, funding levels for PRPHA.

## II. STATUTORY AND FACTUAL BACKGROUND

### A. Statutory and Regulatory Background

Through a number of statutes, Congress has charged HUD with primary responsibility for providing housing subsidies for public housing authorities ("PHAs"). See, e.g., Complaint, ¶ 12.[1] Of relevance here, Congress empowered the Secretary of HUD to determine the annual operating subsidies paid to PHAs located throughout the United States and its territories (including the Commonwealth of Puerto Rico). See 42 U.S.C. §§ 1437g(a)(1)(A) and 1437a(b)(7). See also Complaint, ¶ 12. These subsidies compensate PHAs for, among other matters, the shortfall between PHAs' annual operating expenses and PHAs' receipt of rent payments from tenants in the PHAs' housing. See, e.g., id., ¶ 12. To this end, HUD annually enters into Annual Contributions Contracts ("ACCs") with PHAs to provide for payment of subsidies by HUD to PHAs. See 42 U.S.C. § 1437g. See also Complaint, ¶ 10.

---

[1] Solely for purposes of this motion, plaintiffs' factual allegations are taken as true. See Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993).

In 1974, Congress enacted the Housing and Community Development Act of 1974, 42 U.S.C. § 1437g(a)(1), which, in relevant part, mandated that HUD adopt a new system for calculating PHAs' annual subsidies. See Complaint, ¶ 17.[2]  In 1975, HUD issued regulations establishing the Performance Funding System ("PFS") under which HUD considered certain factors affecting PHAs' operating costs and approximated the costs which would be incurred by a hypothetical "well-managed" PHA, as specifically required by statute.[3]  See 42 U.S.C. § 1437g(a)(1); 24 C.F.R. §§ 990, et seq. See also Complaint, ¶ 18.  The PHAs of Guam, the Virgin Islands, Alaska and Puerto Rico were not included in the PFS. See 24 C.F.R. § 990.103(b). See also Complaint, ¶ 22.  Thus, with these four exceptions, HUD did and does use the PFS to calculate PHAs' annual subsidies. See id., ¶¶ 24-28.  Congress has never directed HUD to include the PHAs of Guam, the Virgin Islands, Alaska or Puerto Rico in the PFS. See generally Complaint.

Although a given PHA's other expenses are considered, the primary factor in the PFS calculation is a PHA's "allowable expense level" ("AEL").  A PHA's AEL is derived from that PHA's

---

[2]HUD includes a description of the development of PHA funding which predates March 1990 only for the Court's information.  Reference to these events, which are time-barred and therefore non-justiciable in this action, should not be construed as an admission by HUD that plaintiffs may assert any claims based on HUD final agency actions which predate March 1990.  See § D(1), infra.

[3]As plaintiffs themselves note, PRPHA is and has been a "troubled," i.e., poorly managed, PHA rather than the type of well-managed PHA contemplated under PFS.  See Complaint, ¶ 67.

-4-

approved operating expenses during the PHA's base year, and is then adjusted for inflation.  The base year for PFS PHAs was 1974.  See Complaint, ¶¶ 19-20.  Although Guam, the Virgin Islands, Alaska and Puerto Rico are "non-PFS PHAs" (i.e., not subject to PFS), in 1984 HUD nevertheless calculated approximate AELs based on data for the PHAs of Guam, the Virgin Islands, and Alaska.  See Complaint, ¶ 24.  HUD did not, however, calculate an approximate AEL for the PRPHA until 1989.  See id., ¶ 28.

In 1988, Congress amended § 1437g to direct HUD to conduct a formal review of PHAs included in the PFS system (which, as noted above, did not and does not include Guam, the Virgin Islands, Alaska or Puerto Rico).  See 42 U.S.C. § 1437g(a)(3)(B)(iii).  See also Complaint, ¶ 27.  This review was intended to ensure that PFS PHAs' AELs accurately reflected their operating costs.  See id.  In 1992, HUD implemented this review requirement through an optional review process based on a "formula expense level" ("FEL") calculation.  See id., ¶ 30.  The FEL calculation assessed and assigned a weighted value to five aspects of a given PHA's characteristics:

(a) the number of pre-1940 rental units occupied by poor households as a percentage of the population of the community;

(b) the local government wage rate index ("LGWI");

(c) the number of two-or-more bedroom units owned and operated by the PHA;

(d) the ratio of three-or-more bedroom units to the total number of dwelling units owned by the PHA; and

(e) the ratio of two-or-more bedroom units in high rise family public housing projects to the total dwelling units owned by the PHA.  See id., ¶ 32.

For those PHAs which chose to participate in the FEL process, HUD determined, in essence, whether the PHA's FEL was less than 85% of its AEL.  See id., ¶ 30.  If it was, the AEL was increased to a level to equal 85% of the FEL.  See id.  Although PRPHA was not included in the PFS system and therefore was not covered by the 1988 amendments, HUD reviewed the PRPHA's estimated AEL (established in 1989) in conjunction with the optional review process.  See id., ¶¶ 30-31.  Based on this review, HUD determined not to apply all of the FEL factors as they were applied to the PFS-PHAs.  See id., ¶¶ 31-43, 47-53.

B.   Plaintiffs' Claims

As noted above, there are three plaintiffs in this action. Ms. Alameda is an Hispanic, Puerto Rican resident of public housing provided by PRPHA.  See id., ¶ 4.  The two governmental plaintiffs, PRPHA and PRDH, are, respectively, a government instrumentality and an agency of the Commonwealth of Puerto Rico. See id., ¶¶ 2-3.  Each plaintiff purports to state constitutional and statutory challenges to HUD's calculation of PRPHA's subsidies over the past 25 years.  See id., ¶¶ 71-94.[4]

_____

[4]In addition to their substantive claims, plaintiffs cite 28 U.S.C. §§ 1331 and 2201, as well as the APA and 42 U.S.C. § 1404a, as jurisdictional bases for their suit.  Of these statutes, neither the APA nor § 2201 provides an independent basis for jurisdiction.  See Califano v. Sanders, 430 U.S. 99, 105 (1977)(APA); Schilling v. Rogers, 363 U.S. 666, 667
(continued...)

### III.   ARGUMENT

#### PLAINTIFF ALAMEDA'S CLAIMS AS WELL AS NON-APA CLAIMS OF PRPHA AND PRDH SHOULD BE DISMISSED AND THE APA CLAIMS SHOULD BE LIMITED TO FINAL AGENCY ACTIONS TAKEN SINCE MARCH 1990

Plaintiffs articulate five legal bases for their claims: Title VI, Title VIII, the Equal Protection Clause, the Due Process Clause and the APA.  Under firmly established principles of standing, sovereign immunity, statutory construction and constitutional jurisprudence, only PRPHA and PRDH, on their own behalves, have standing, but these plaintiffs may only pursue claims under the APA.  Furthermore, these APA claims are limited to final agency actions HUD has taken over the six years predating the filing of this action, and the Court's review of these actions must be confined to the administrative records of HUD's decisions.  Therefore, Ms. Alameda should be dismissed as a plaintiff, PRPHA and PRDH's Title VI, Title VIII and

---

[4](...continued) (1960)(Declaratory Judgment Act).  Furthermore, § 1331 confers jurisdiction only if and to the extent that the United States has expressly waived sovereign immunity.  See Robishaw Engineering, Inc. v. United States, 891 F. Supp. 1134, 1142 (E.D. Va. 1995) (§ 1331 "generally confers jurisdiction on federal courts to review agency actions and decisions" only where sovereign immunity waived); Hayes v. Federal Bureau of Investigation, 562 F. Supp. 319, 322 (S.D. N.Y. 1983)("broad jurisdictional statutes like 28 U.S.C. § 1331 do not operate -- in and of themselves -- as waivers of sovereign immunity . . . The plaintiff, therefore, must look beyond the jurisdictional provision[s] -- to the statute which supplies the substantive basis of [plaintiff's] claim -- for a waiver of sovereign immunity.").  Finally, § 1404a provides a very limited waiver of sovereign immunity for HUD by permitting the agency to be sued "only with respect to its functions under the United States Housing Act," but does not itself vest jurisdiction in the district court.  See, e.g., Portsmouth Redevelopment and Housing Authority v. Pierce, 706 F.2d 471, 475 (4th Cir.), cert. denied, 464 U.S. 960 (1983).

constitutional claims should be dismissed and no discovery should be permitted.

> A.   Standards for Dismissal
>      Under Rules 12(b)(1) and 12(b)(6)

Pursuant to Rule 12(b)(1), Fed. R. Civ. P., a litigant's claims must be dismissed if the court lacks jurisdiction over the subject matter of the claim.  See, e.g., Barrios v. Aeela, 84 F.3d 487, 489-490 (1st Cir. 1996).  See also National Association for Mental Health, Inc. v. Califano, 717 F.2d 1451 (D.C. Cir. 1983), cert. denied, 469 U.S. 817 (1984).  Under Rule 12(b)(6), a claim must be dismissed if it fails to state a basis upon which relief may be granted.  See Rule 12(b)(6).  Under both rules, the court takes those allegations of the complaint as true and views the allegations in the light most favorable to the claimant. See, e.g., Hart v. Mazur, 903 F. Supp. 277, 279 (D.R.I. 1995).[5] The court need not, however, "accept a complainant's unsupported conclusions or interpretations of law."  Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d at 971.

---

[5]Where, as here, a "facial" attack is made to standing based on the allegations of the complaint, the Court's review under Rule 12(b)(1) is limited to the four corners of the complaint. See, e.g., RMI Titanium Co. v. Westinghouse Electric Corp., 78 F.3d 1125, 1134 (6th Cir. 1996).

-8-

B.   The Court Lacks Subject Matter Jurisdiction
     Over Ms. Alameda's Claims and Over the
     Title VI, Title VIII and Constitutional Claims

     1.   Ms. Alemeda Lacks Standing and
          Her Claims Should Be Dismissed

          a.   Principles of Standing

Standing to sue is "a threshold issue [] determining whether
the court has the power to hear the case." Libertad v. Welch, 53
F.3d 428, 437 (1st Cir. 1995). As demonstrated below, Ms.
Alemeda lacks standing because she has not suffered an alleged
injury in fact traceable to HUD's actions and any relief granted
by this Court would not be likely to redress her alleged injury.

Federal courts lack subject matter jurisdiction over, and
therefore must dismiss, actions which do not present a
justiciable "case or controversy." See, e.g., O'Shea v.
Littleton, 414 U.S. 488, 493 (1974)(jurisdiction of federal
courts is dependent on an actual "case or controversy . . .
Plaintiffs in the federal courts 'must allege some threatened or
actual injury resulting from the putatively illegal action before
a federal court may assume jurisdiction.'")(quoting Linda R.S. v.
Richard D., 410 U.S. 614, 617 (1973)(footnote omitted)); DeFunis
v. Odegaard, 416 U.S. 312, 316 (1974)(same). Accordingly, where
a plaintiff does not properly plead sufficient facts to support
his or her standing, the action should be dismissed for lack of
subject matter jurisdiction. See, e.g., City of Los Angeles v.
Lyons, 461 U.S. 95, 101 (1983). As the Supreme Court has stated:

> In its constitutional dimension, standing imports
> justiciability: whether the plaintiff has made out a 'case
> or controversy' between himself and the defendant within the
> meaning of Art. III.  This is the threshold question in
> every federal case, determining the power of the court to
> entertain the suit.

Warth v. Seldin, 422 U.S. 490, 498-99 (1975).  Explaining this

"bedrock principle," the Supreme Court held:

> [A]t an irreducible minimum, Art. III requires the party who
> invokes the court's authority to 'show that he personally
> has suffered some actual or threatened injury as a result of
> the putatively illegal conduct of the defendant,' and that
> the injury 'fairly can be traced to the challenged action'
> and 'is fairly likely to be redressed by a favorable
> decision' . . .

Valley Forge Christian College v. Americans United for Separation

of Church and State, 454 U.S. 464, 472 (1982)(footnotes and

citations omitted).

To satisfy Article III's "case or controversy" requirement,

a plaintiff must establish the elements of his or her standing to

sue.  First, the plaintiff must show that he or she has suffered

an "injury in fact," i.e., an "actual or threatened injury as a

result of the putatively illegal conduct of the defendant."

Valley Forge, 454 U.S. at 472 (quoting Gladstone Realtors v.

Village of Bellwood, 441 U.S. 91, 99 (1979)).  See also Lujan v.

Defenders of Wildlife, -- U.S. --, 112 S.Ct. 2130 (1992).  The

"injury in fact" required for standing must be immediate,

objective, and concrete, see, e.g., City of Los Angeles v. Lyons,

461 U.S. 95, 102 (1983); Simon v. Eastern Kentucky Welfare Rights

Organization, 426 U.S. 26, 40 (1976); O'Shea v. Littleton, 414

U.S. 488, 494-99 (1974), rather than merely speculative,

-10-

subjective or abstract.  <u>See</u>, <u>e.g.</u>, <u>City of Los Angeles</u> v. <u>Lyons</u>, 461 U.S. at 101-02, 107 n.8.

Second, the standing doctrine mandates that federal court jurisdiction be invoked only where the plaintiff's "injury in fact" "fairly can be traced to the challenged action."  <u>Valley Forge</u>, 454 U.S. at 472 (quoting <u>Eastern Kentucky</u>, 426 U.S. at 38).  Requiring that a direct, causal relationship exist between the alleged illegal conduct and the alleged palpable injury ensures that the injuries do not result from independent action. <u>Eastern Kentucky</u>, 426 U.S. at 41-42.  In short, the plaintiff must make a "reasonable showing that 'but for' defendants' action the alleged injury would not have occurred."  <u>Community Nutrition Institute</u> v. <u>Block</u>, 698 F.2d 1239, 1247 (D.C. Cir. 1983), <u>rev'd on other grounds</u>, 467 U.S. 340 (1984).  Consequently, a plaintiff lacks standing where the court must accept speculative inferences and assumptions in order to connect the alleged injury with the challenged activity.  <u>Winpisinger</u> v. <u>Watson</u>, 628 F.2d 133, 139 (D.C. Cir.), <u>cert</u>. <u>denied</u>, 446 U.S. 929 (1980).

Finally, the alleged concrete injury must be "likely to be redressed by a favorable decision."  <u>Valley Forge</u>, 454 U.S. at 472.  Of paramount significance in this action, the "redressability" element of standing is not satisfied unless the relief sought is "likely" to follow from a favorable decision. <u>Eastern Kentucky</u>, 426 U.S. at 38.

-11-

b.   <u>Ms. Alemeda Does Not Have Standing</u>

Ms. Alemeda alleges that she is an Hispanic, Puerto Rican resident in public housing provided by PRPHA.  <u>See</u> Complaint, ¶ 4.  In the vaguest of terms, Ms. Alemeda asserts that her living conditions -- in an unidentified PRPHA public housing project and over an unspecified period of time -- have deteriorated as a result of HUD's alleged underfunding of PRPHA. <u>See</u> Complaint, ¶¶ 61, 83 and 89.  Ms. Alemeda does not purport to sue on behalf of any other public housing residents.  <u>See generally</u> Complaint.

Under the principles outlined above, Ms. Alemeda has failed to offer allegations sufficient to demonstrate standing.  Most glaringly, Ms. Alemeda has not alleged any facts that establish a direct link between HUD funding levels for PRPHA and her alleged injury -- the purported failure of PRPHA to provide services and conditions to which she claims to be entitled.  As noted above, the causation component of the standing doctrine mandates that a plaintiff must demonstrate that his or her alleged injury "fairly can be traced to the challenged action" of the defendant. <u>Eastern Kentucky</u>, 426 U.S. at 41-42.  It is insufficient for standing purposes merely to assert that the challenged action might have influenced the factors resulting in the alleged injury to the plaintiff if the alleged injury is just as likely to result from independent, intervening causal factors.  The Supreme Court has consistently abided by this tenet.  <u>See</u>, <u>e.g.</u>, <u>Eastern Kentucky</u>; <u>Allen</u> v. <u>Wright</u>, 468 U.S. 737 (1984).

-12-

Ms. Alemeda's alleged concerns simply are not fairly traceable to HUD's supposed underfunding of PRPHA. For example, Ms. Alemeda makes no assertion that PRPHA or any other entity advised her that the allegedly deteriorating conditions in PRPHA housing were due to a lack of funding from HUD. Indeed, the allegations of the Complaint demonstrate that it is PRPHA's decisions regarding how and where to spend its HUD subsidies which have directly resulted in Ms. Alemeda's alleged difficulties. In this regard, PRPHA states that it uses its federal subsidy to operate 332 public housing projects comprising 57,345 housing units. <u>See</u> Complaint, ¶¶ 2, 10. The PRPHA's public housing tenant population tops 250,000. <u>See</u> <u>id</u>., ¶. 2. Unquestionably, PRPHA determines how to divide between these projects and these tenants the annual federal subsidy which PRPHA receives from HUD. Thus, decisions concerning use of federal subsidies rest with PRPHA, not HUD. Therefore, Ms. Alemeda's claims involve not HUD's actions, but the failure of PRPHA to dedicate funding to the anonymous housing project in which she resides. Therefore, since PRPHA, not HUD, controls the services, conditions and facilities available to Ms. Alameda, her purported injuries are not traceable to any actions by HUD.

Turning to "redressability," the courts have observed that mere allegations of redressability will not suffice. Instead, "the Supreme Court has explicitly interpreted the standard for redressability as 'substantial likelihood.'" [cite to be

supplied] at 670 (quoting <u>Duke Power Co.</u> v. <u>Carolina Environmental Study Group</u>, 438 U.S. 59, 75 n.20 (1975)).

As noted above, PRPHA operates hundreds of housing developments and thousands of rental units.  PRPHA also services hundreds of thousands of individual tenants.  Consequently, there is no basis for believing that Ms. Alameda's alleged injuries -- inadequate services and facilities -- will be affected by any relief granted in this action.  Moreover, the Complaint is devoid of any allegation that Ms. Alameda would directly receive any benefit from increased PRPHA funding.  Thus, it is entirely speculative that her alleged injury would be redressed in any way whatsoever should the Court order HUD to recalculate PRPHA's funding level.  PRPHA would be entirely free to devote any and all increased funding it might be awarded in this litigation to other operations, or to 331 projects which PRPHA manages and claims are in disrepair, instead of to Ms. Alemeda's unit or even her project.  Indeed, PRPHA affirmatively alleges that the additional funding it seeks through this action will be devoted to improving its management infrastructure.  <u>See</u> Complaint, ¶¶ 62, 66.

Thus, it is problematic at best to suggest that a court order raising PRPHA's funding level would have any impact whatsoever on Ms. Alemeda's particular public housing unit.  As the Supreme Court has held, "unadorned speculation will not suffice to invoke the federal judicial power."  <u>Eastern Kentucky</u>, 426 U.S. at 44.  Since the Complaint does not demonstrate that an

-14-

order of this Court granting in full the relief against HUD requested in the Complaint would redress Ms. Alameda's alleged injury, she has not satisfied the requirements for standing. Because she plainly lacks standing, the Court lacks jurisdiction over any of her claims.[6]

        2.   <u>Sovereign Immunity Bars Plaintiffs' Non-APA Claims</u>

Even assuming that Ms. Alemeda possesses standing, her Title VI and Title VII claims, as well as her constitutional claims, and those of her co-plaintiffs, are barred by the doctrine of sovereign immunity and this Court accordingly lacks subject matter jurisdiction over such claims.  This action is, of course, against an agency of the United States.  <u>See</u> Complaint, ¶ 5 ("HUD is a federal agency of the United States").  The Supreme Court has treated as "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." <u>United States</u> v. <u>Mitchell</u>, 463 U.S. 206, 212 (1983). <u>See also</u> <u>Lane</u> v. <u>Pena</u>, -- U.S. --, 116 S. Ct. 2092 (1996); <u>United States</u> v. <u>Nordic Village, Inc.</u>, 503 U.S. 30 (1992); <u>United States</u> v. <u>Testan</u>, 424 U.S. 392, 399 (1976). Unless there is express evidence of consent to be sued, suits against the sovereign accordingly must be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Sherwood</u>, 312 U.S. 584, 586 (1941)(the "terms of [the United States'] consent to be sued in any court define the

---

     [6]Even if Ms. Alameda possessed standing, her non-APA claims should be dismissed for the reasons stated <u>infra</u> concerning the claims of her co-plaintiffs.

court's jurisdiction to entertain the suit").  Such consent cannot be implied but must be explicitly stated and narrowly construed.  <u>See</u> <u>Lane</u> v. <u>Pena</u>, 116 S. Ct. at 2096; <u>United States</u> v. <u>Testan</u>, 424 U.S. at 399; <u>Affiliated Ute Citizens</u> v. <u>United States</u>, 406 U.S. 128, 141 (1971); <u>United States</u> v. <u>King</u>, 395 U.S. 1, 4 (1969).

Neither Title VI[7] nor the statutory provision in Title VIII on which plaintiffs rely[8] contains an explicit, independent waiver of sovereign immunity which would allow plaintiffs to sue HUD under those provisions.  <u>See</u> <u>Drayden</u> v.  <u>Needville Independent School District</u>, 642 F.2d 129, 133 n.6 (5th Cir. 1981)("There is no statutory waiver of sovereign immunity in Title VI cases"); <u>Unimex, Inc.</u> v. <u>U.S. Dept. of Housing and Urban Development</u>, 594 F.2d 1060, 1061 (5th Cir. 1979)("the United States has not consented to suit under the civil rights statutes"); <u>United States</u> v. <u>Yonkers Board of Education</u>, 594 F. Supp. 466 (S.D.N.Y. 1984)(Title VI claim barred by sovereign immunity).  Similarly, the bar of sovereign immunity extends to plaintiffs' purported constitutional claims.  <u>See</u>, <u>e.g.</u>, <u>United</u>

---

[7]Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

[8]Plaintiffs specifically rely on § 3608(e) of Title VIII, <u>see</u> Complaint, ¶ 79, which provides, in relevant part, that the Secretary of HUD "shall . . . administer the programs and activities relating to housing and urban development in a manner affirmatively to further the policies of this subchapter."  42 U.S.C. § 3608(e)(5).  <u>See</u> Complaint, ¶ 79.

States v. Timmons, 672 F.2d 1373, 1380 (11th Cir. 1982)("claims based directly on Fifth Amendment violations are likewise barred by the doctrine of sovereign immunity"); Jaffee v. United States, 592 F.2d 712, 718 (3d Cir. 1979)(rejecting claim against United States for deliberate violation of constitutional rights, noting "[t]he repeated statements of the Supreme Court from its inception [] are plain and unequivocal: the United States is subject to suit only by its consent); Forbes v. Reno, 893 F. Supp. 476, 482 (W.D. Pa. 1995)("Because there is no basis for a waiver of sovereign immunity, Forbes' attempts to assert a cause of action directly against the United States for alleged violation of the Fifth, Thirteenth and Fourteenth Amendments . . . fail for lack of jurisdiction."); Benvenuti v. Department of Defense, 587 F. Supp. 348, 352 (D.D.C. 1984)("None of the statutes cited by plaintiff -- the general federal question provision [] and the All Writs and Declaratory Judgment Acts [] -- nor the Constitution itself -- operate as such waivers" of sovereign immunity)(citations omitted); Kelly v. United States, 512 F. Supp. 356, 362 (E.D. Pa. 1981)("Even where there exists a direct cause of action under the Constitution, the United States is not liable for the deprivation of constitutional rights unless it has waived immunity from suit").

Thus, plaintiffs' Title VI, Title VIII and constitutional claims against HUD are barred under the doctrine of sovereign immunity and this Court lacks subject matter jurisdiction to consider them.

-17-

C.   Plaintiffs Have Not Stated Claims
     Under Title VI, Title VIII, the Equal
     Protection Clause or the Due Process
     <u>Clause Upon Which Relief Can Be Granted</u>

As noted above, Rule 12(b)(6) mandates dismissal where a litigant fails to state a claim upon which relief can be granted. Under this rule, only PRPHA and PRDH's APA claims survive.

1.   Title VI Does Not Apply
     <u>to the Federal Government</u>

Leaving aside for the purposes of argument the bar of sovereign immunity, plaintiffs would be entitled to sue the federal government directly under Title VI only if that statute gave them a right to do so.  It does not, and plaintiffs' Title VI claims therefore must be dismissed under Rule 12(b)(6).

The fact that a federal statute may have been violated and some person harmed "does not automatically give rise to a private cause of action in favor of that person."  <u>Cannon</u> v. <u>University of Chicago</u>, 441 U.S. 677, 688 (1979).  "The federal judiciary will not engraft a remedy onto a statute, no matter how salutary, that Congress did not intend to provide."  <u>California</u> v. <u>Sierra Club</u>, 451 U.S. 287, 297 (1981).

As noted above, Title VI does not explicitly provide plaintiffs a right to sue the federal government for failing to enforce the statute.  While the absence of an express right of action in the statute would not be dispositive if plaintiffs could establish that a private right of action is implied in the statute, they face a difficult burden in this regard, <u>Middlesex County Sewerage Authority</u> v. <u>National Sea Clammers Association</u>,

-18-

453 U.S. 1, 14-15 (1981), a burden that cannot be met in this case.

Indeed, the burden applicable to plaintiffs here is even greater than that which must be borne by a party seeking to sue a private entity or individual on an "implied right of action" theory.  The familiar four-part test enunciated by the Supreme Court in <u>Cort</u> v. <u>Ash</u>, 422 U.S. 66 (1975), under which private rights of action against private parties may be inferred in federal statutes, does not squarely fit a case brought against the federal government.

> A private right of action may be implied against a non-governmental defendant even though the statutory language grants no such right explicitly and the legislative history is silent on Congress' intent to provide it.  A silent statute and silent legislative history, however, cannot justify implying a private right of action against the United States because Congress must unequivocally express its intent to create such a right.

<u>Doe</u> v. <u>Attorney General of the United States</u>, 941 F.2d 780, 789 (9th Cir. 1991)(citations omitted).  As this Circuit has forcefully stated en banc, "it rarely makes sense to find that a substantive statute creates an 'implied private right of action' against the federal government for relief from unlawful regulatory action," given that judicial review of federal agency action is generally available under the APA.  <u>Cousins</u> v. <u>Secretary of U.S. Dep't of Transportation</u>, 880 F.2d 603, 606 (1st Cir. 1989)(en banc)(Breyer, J.).  To do so would vitiate Congress' effort to create, though the APA, "a single unified method for review of agency action."  <u>Id</u>. at 605.  <u>See also</u> <u>id</u>. (APA designed to create a "system of administrative law that

-19-

seeks regularity . . . securely embraced within the uniform procedural confines of the APA."). Accordingly, as this Circuit correctly noted,

> In fact, it is difficult to understand why a court would ever hold that Congress, in enacting a statute that creates federal obligations, has implicitly created a private right of action against the <u>federal</u> government, for there is hardly ever any need for Congress to do so [because under the APA] federal action is nearly always reviewable for conformity with statutory obligations without any such 'private right of action.'

<u>N.A.A.C.P.</u> v. <u>Secretary of Housing and Urban Development</u>, 817 F.2d 149, 152 (1st Cir. 1987)(Breyer, J.).

For this reason, courts have rejected litigants' efforts to sue the federal government under a purported implied private right of action under Title VI.  For example, in <u>Women's Equity Action League (WEAL)</u> v. <u>Cavazos</u>, 906 F.2d 742 (D.C. Cir. 1990), Judge (now Justice) Ruth Bader Ginsburg confronted head-on the assertion of a private right of action to sue the federal government to compel enforcement of Title VI and determined that there is no such right of action.

Judge Ginsburg premised her decision largely on the Supreme Court's opinion in <u>Cannon</u> v. <u>University of Chicago</u>, 441 U.S. 677 (1979).  In that case, the Supreme Court analyzed the availability of relief for the victim of discrimination in a federally-funded program.  The precise issue in <u>Cannon</u> was whether an implied private right of action permits a lawsuit against a recipient of federal funding under Title IX of the Education Amendments of 1972.  Although Title IX relates to sex discrimination in educational programs, and not to racial or

-20-

national origin discrimination in federally funded programs
generally or HUD programs in particular, Title IX was patterned
after Title VI in all relevant respects.  441 U.S. at 694.
Consequently, the legislative background of Title VI provided the
primary analytical framework for the Court's consideration in
Cannon.

Relying on that legislative history, the Court concluded
that the statute did authorize suit directly against the non-
federal discriminating entity.  In so doing, however, the Court
clearly restricted the reach of such a suit to that entity, and
not to the federal government.  As the Court explained,

> [i]n its final form, [Title VI] was far more conducive to
> implication of a private remedy against a discriminatory
> recipient than was the original language, but at the same
> time was arguably less conducive to implication of a private
> remedy against the Government (as well as the recipient) to
> compel the cutoff of funds.

441 U.S. at 677 (emphasis in original).  Writing in WEAL, Judge
Ginsburg explained the Supreme Court's dictum in the following
terms:

> The Cannon opinion contrasts two private remedies: suit
> against a discriminatory fund recipient to terminate the
> offending discrimination; and suit against the government to
> terminate federal funding.  The Court found strong support
> in legislative history for the former, but resistance on the
> part of lawmakers toward the latter.

906 F.2d at 750.

This Circuit has strongly intimated that there is no right
to sue the federal government under Title VI.  Cousins v. U.S.
Dep't of Transportation, 880 F.2d 603, 607 (1st Cir. 1989)(en
banc)(no private right of action to obtain judicial supervision

-21-

of federal funding agency under § 504 of Rehabilitation Act, which is modeled after Title VI). Other courts have agreed that no private right of action against the federal government exists under either Title VI itself or under statutes modeled upon Title VI. See Marlow v. U.S. Dep't of Education, 820 F.2d 581, 583 (2d Cir. 1987), cert. denied, 484 U.S. 1044 (1988); Salvador v. Bennett, 800 F.2d 97, 99 (7th Cir. 1986); Grimes v. Cavazos, 786 F. Supp. 1184, 1189-91 (S.D. N.Y. 1992).[9]

Finally, plaintiffs cannot attack HUD for alleged failure to comply with Title VI through their APA claims. As noted above, Title VI supports a cause of action against a recipient of federal funds. See, e.g., Cannon v. University of Chicago, supra (finding private right of action against educational institution receiving federal funds). HUD is not a "recipient" of federal funds within the meaning of Title VI. See 24 C.F.R. § 1.2(f)(defining "recipient"). Therefore, HUD is not subject to

---

[9]The WEAL court did mention several pre-Cannon cases which seem at least to assume the existence of a Title VI private right of action to sue the federal government, including Garrett v. City of Hamtramck, 503 F.2d 1236 (6th Cir. 1974). Judge Ginsburg suggested that those cases could be distinguished on the ground that they involved narrowly focused situation-specific claims of failure to enforce civil rights statutes, while the allegations in WEAL were very broad-based. In Abramson v. Bennett, 707 F.Supp. 13 (D.D.C.), aff'd, 889 F.2d 291 (D.C. Cir. 1989), though, the court held that a narrowly focused attempt to force the federal government to enforce Title VI cannot succeed for lack of a private right of action. Thus, whether a case is broad or narrow in scope, the post-Cannon rule should be that Title VI does not provide a private right of action. But see Young v. Pierce, 544 F.Supp. 1010 (E.D. Tex. 1982) (holding that there is a private right of action to sue federal government under Title VI).

suit under Title VI because HUD is not a recipient of federal funds.

As the preceding discussion demonstrates, the conclusion that plaintiffs have no right to sue the federal government directly under Title VI is inescapable.  Therefore, plaintiffs' Title VI claims should be dismissed.

> 2.    No Private Right of Action Against the
>       <u>Federal Government Exists Under Title VIII</u>

As noted earlier, plaintiffs also purport to bring this action under Title VIII, and specifically under § 3608(e).

> The short, conclusive answer to this argument [] is that [the First Circuit] has recently held that Congress did not create any such direct private right of action under Title VII.

<u>N.A.A.C.P.</u> v. <u>Secretary of Housing and Urban Development</u>, 817 F.2d 149, 152 (1st Cir. 1987).  <u>See</u> <u>also</u> <u>Latinos Unidos de Chelsea</u> v. <u>Secretary of Housing and Urban Development</u>, 799 F.2d 774, 791-793 (1st Cir. 1986)(finding no private right of action against HUD under Title VIII and holding that HUD's failure to comply with Title VIII only may be attacked through an APA claim).  Numerous other courts have reached the same conclusion for Title VIII claims (including, specifically, § 3608(5)).  <u>See</u>, <u>e.g.</u>, <u>Pleune</u> v. <u>Pierce</u>, 687 F. Supp. 113, 119-20 (E.D. N.Y. 1988)(collecting cases).  Therefore, plaintiffs simply cannot proceed under this provision.

3.   **PRPHA and PRDH Have No Rights Under the Due Process and Equal Protection Clauses**

PRPHA and PRDH purport to bring Equal Protection and Due Process claims against HUD.  See Complaint, 86-90.  Neither possesses such claims.[10]

Most fundamentally, the Equal Protection and Due Process clauses "relate[] to equality between persons" and accordingly afford no independent rights to entities such as PRPHA and PRDH. McGowan v. Maryland, 366 U.S. 420, 427 (1960)(discussing Equal Protection); South Carolina v. Katzenbach, 383 U.S. 323-24 (1966)(states are not persons within meaning of Fifth Amendment and therefore enjoy no due process protections); East St. Louis v. Circuit Court for Twentieth Judicial Circuit, 986 F.2d 1142, 1144 (7th Cir. 1993)(municipalities are not "persons" within meaning of Fifth or Fourteenth Amendments); State of New York v. United States, 942 F.2d 114, 118 (2d Cir. 1991)(noting that states have no due process rights); Reeder v. Kansas City Board of Police Commissioners, 796 F.2d 1050, 1053 (8th Cir.), cert. denied, 479 U.S. 1065 (1986)(Equal Protection Clause "protects people"); State of Alabama v. United States Equal Protection Agency, 871 F.2d 1548, 1554 (11th Cir.), cert. denied, 493 U.S. 991 (1989)("State of Alabama is not included among the entities

---

[10]The Fourteenth Amendment by its terms does not apply to the federal government, see, e.g., Carter v. District of Columbia, 409 U.S. 418 (1973), and the Fifth Amendment contains no equal protection clause.  Nonetheless, the Supreme Court has held that the Fifth Amendment protects against the same types of invidious discrimination that the Fourteenth Amendment prohibits.  See Rostker v. Goldberg, 453 U.S. 57 (1981).

protected by the due process clause of the fifth amendment);
Delta Special School District No. 5 v. State Board of Education
for State of Arkansas, 745 F.2d 532, 533 (8th Cir. 1984)
(political subdivisions of a state possess no right under Equal
Protection Clause). Political entities, including specifically
PRPHA and PRDH, therefore lack justiciable rights under these
amendments.

PRPHA's attempt to pursue such claims against the federal
government as the supposed representative of PRPHA tenants is
similarly without merit. See Complaint, ¶ 2 (PRPHA "represents
the interests of [PRPHA] residents"). See, e.g., South Carolina
v. Katzenbach, 383 U.S. 301, 323 (1966)(state cannot sue federal
government on behalf of state's citizens because "the Federal
Government [] [is] the ultimate parens patriae of every American
citizen"); Massachusetts v. Mellon, 262 U.S. 447, 485-86
(1923)(same).

Therefore, these constitutional claims cannot lie against
HUD and should be dismissed.[11]

_____

[11]Furthermore, even if Ms. Alameda possessed standing, she
has failed to state an equal protection or due process claim.
Ms. Alameda bases these claims not on the assertion that HUD
discriminates against the entire class of Hispanic, Puerto
Ricans, but on the allegation that HUD discriminates against
residents of PRPHA many, but not all, of whom are Hispanic
citizens of Puerto Rico. In this regard, Ms. Alameda does not
allege that HUD treats or treated Puerto Ricans living in HUD-
assisted public housing located outside of Puerto Rico
discriminatorily although, as plaintiffs presumably would not
contest, there are Hispanics (including Puerto Ricans) residing
HUD-subsidized public housing in numerous locations. See, e.g.,
Latinos Unidos, supra.; Huntington Branch, N.A.A.C.P. v. Town of
Huntington, 844 F.2d 926, 929 (2d Cir. 1988), cert. denied, 488
(continued...)

D. The Court May Not Review HUD
   Final Agency Actions that Occurred
   More than Six Years Before the Complaint
   Was Filed, and Must Confine its Review to
   <u>the Administrative Records of those Actions</u>

   1.   The Applicable Federal Statute
        of Limitations Bars Litigation of
        Claims Arising from Actions Taken Over
        <u>Six Years Prior to the Filing of this Lawsuit</u>

28 U.S.C. § 2401(a) provides that

[e]xcept as provided by the Contract Disputes Act of 1978,
every civil action commenced against the United States shall
be barred unless the complaint is filed within six years
after the right of action first accrues.

"Every civil action" means what it says: it "'applies to all

civil actions whether legal, equitable or mixed.'" <u>Nesovic</u> v.

<u>United States</u>, 71 F.3d 776, 778 (9th Cir. 1995)(quoting <u>Spannaus</u>

v. <u>Department of Justice</u>, 824 F.2d 52, 55 (D.C. Cir. 1987)).  Of

significance here, this time period unquestionably governs APA

claims, which are the only justiciable claims in this proceeding.

<u>See</u>, <u>e.g.</u>, <u>James Maditon Ltd., by Hecht</u> v. <u>Ludwig</u>, 82 F.3d 1085,

---

[11](...continued)
U.S. (1989)(Hispanics in HUD-subsidized public housing); <u>Jaimes</u>
v. <u>Toledo Metropolitan Housing Authority</u>, 758 F.2d 1086, 1090
(6th Cir. 1985)((Hispanics in HUD-subsidized public housing).
Ms. Alameda also does not allege that all residents of PRPHA's
public housing are Puerto Ricans of Hispanic origin.  <u>See</u>
Complaint, ¶ 11 ("The residents of public housing in Puerto Rico
are low-income and are <u>predominantly</u> of Hispanic origin)(emphasis
added).  Accordingly, Ms. Alameda attacks not HUD's alleged
treatment of Puerto Ricans or Hispanics, but rather HUD's
treatment of PRPHA, a public housing provider which happens to be
located in Puerto Rico.  As noted above, the Equal Protection
Clause protects people; this protection does not extend to
places.  Finally, HUD's funding of PRPHA arises from a
contractual relationship between those parties.  <u>See</u> Complaint,
¶ 12.  Ms. Alameda is not a party to that contract and
accordingly possesses no due process rights regarding funding
levels.

1094 (D.C. Cir. 1996); <u>Village of Elk Grove Village</u> v. <u>Evans</u>, 997 F.2d 328, 331 (7th Cir. 1993); <u>Wind River Mining Corp.</u> v. <u>United States</u>, 946 F.2d 710, 712-13 (9th Cir. 1991); <u>Balssingame</u> v. <u>Secretary of the Navy</u>, 811 F.2d 65, 70 (2d Cir. 1987).  The consequences of filing suit after the limitations period has run are unequivocal and dispositive:

> 'The failure to sue the United States within the period of limitations is not simply a waivable defense; it deprives the district court of jurisdiction to entertain the action.'

<u>Nesovic</u>, 71 F.3d at 777-78 (citation omitted).  <u>See also</u> <u>Walters</u> v. <u>Secretary of Defense</u>, 725 F.2d 107, 112 n.12 (D.C. Cir. 1983); 14 Wright, Miller & Cooper, <u>Federal Practice and Procedure</u> § 3654 (1985).[12]  Since the statute of limitations is jurisdictional, it must be strictly construed.  <u>See</u>, <u>e.g.</u>, <u>Lehman</u> v. <u>Nakshian</u>, 453 U.S. 156, 160-61 (1981)("limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto will not be implied."); <u>Spannaus</u> v. <u>United States Department of Justice</u>, 824 F.2d 52, 55 (D.C. Cir. 1987).  Accordingly, the statute of limitations begins to run when "'facts which would support a cause of action are apparent or should be apparent to a person with reasonable prudent regard for his rights." <u>Rozar</u> v. <u>Mullis</u>, 85 F.3d 556, 561-62 (11th Cir. 1996).

---

[12]The jurisdictional nature of the statute of limitations arises out of principles of sovereign immunity.  <u>See</u>, <u>e.g.</u>, <u>Diliberti</u> v. <u>United States</u>, 817 F.2d 1259, 1261 (7th Cir. 1987).

The Complaint affirmatively states that PRPHA and PRDH were fully aware of the alleged unfairness in HUD's approach to calculating PRPHA's subsidies as early as 1970.  See Complaint, ¶¶ 14-16, 26 (describing allegedly discriminatory "deficit-funding method" applicable to PRPHA from 1970 to 1989). Moreover, these plaintiffs were aware of their claims that PRPHA's AEL was allegedly inequitably low when it was set in 1989, and when HUD purportedly refused to allow an appeal of the subsidization level.  See id., ¶ 28.  Therefore, since the basis for their claims were known to plaintiffs, but they did not file suit within the applicable six years period, their claims dating from actions taken prior to March 14, 1990, are time-barred.[13]

> 2.  Since the Court's Review
>     of HUD's Actions Is Confined
>     to the Appropriate Records,
>     <u>Plaintiffs Are Not Entitled to Discovery</u>

The APA specifically contemplates that judicial review of agency action will be undertaken on the basis of the record compiled by the agency in the course of informal proceedings in which a hearing has not been held.  <u>Florida Power & Light</u> v. <u>Lorion</u>, 470 U.S. 729, 743-44 (1985).  "The factfinding capacity of the district court is thus typically unnecessary to judicial review of agency decisionmaking."  <u>Id</u>. at 744.  Instead, a

---

[13]As a practical matter, it should be noted that even in the unlikely event that plaintiffs were to prevail in this action, the Court's limitation on their claims to the past six years would not affect the substantive nature of either prospective or retroactive relief.  In this regard, plaintiffs seek an order directing HUD to make monetary payments for alleged underfunding only for fiscal years 1993 through 1996, or less than six years ago.  <u>See</u> Complaint, prayer for relief, pg. 26.

reviewing court's task is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision "based on the record the agency presents to the reviewing court." Id. at 743-44 (emphasis supplied)(citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971)). Accord PBGC v. LTV, Corp., 496 U.S. 633, 656 (1990); Camp v. Pitts, 411 U.S. 138, 142 (1973)("focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court"). This Circuit, of course, also abides by this principle. See, e.g., Cousins, 880 F.2d at 610 ("APA review typically takes place on the basis of a record compiled by the agency in making the challenged decision."). Where a federal agency's action "is reasonably supported by the administrative record, [the court's] inquiry must end." Town of Norfolk v. U.S. Army Corps of Engineers, 968 F.2d 1438, 1448 (1st Cir. 1992).[14]

Accordingly, the Court should order that no discovery be taken in this matter and that HUD be required only to produce relevant administrative records.[15]

---

[14]Significantly, this Circuit has expressly held that restricting review to the agency's administrative record in no way places the party challenging the agency's action at a disadvantage and has rejected efforts, such as those made in this case, to "build a record in the district court." See Cousins, 880 F.2d at 610.

[15]To the extent that this request may be construed as a motion relating to discovery, as the Court is aware, the parties have met to discuss this motion and agreed, with the Court's approval at the August 16, 1996 status conference, to submit briefing on the propriety of discovery. Accordingly, the parties have effectively complied with Local Rule 311.11.

IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss all claims asserted by plaintiffs except the APA claims stated by PRPHA and PRDH in Count IV of the Complaint.  Furthermore, the Court should hold that the federal statute of limitations bars claims arising more than six years prior to the March 14, 1996, filing of this action and should limit its review of the surviving APA claims to HUD's administrative record.

Dated:  Oct. _8_, 1996

OF COUNSEL:

HOWARD SCHMELTZER
MAURA MALONE
Office of General Counsel
U.S. Department of Housing
    and Urban Development
451 7th St., S.W.
Washington, D.C.   20410
(202) 708-0300

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General

GUILLERMO GIL
United States Attorney


_Fidel Sevillano / LBO_
FIDEL SEVILLANO
Assistant United States Attorney


_Lou Bonsal OL_
MICHAEL SITCOV
Assistant Branch Director
LOIS BONSAL OSLER
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
901 E Street, N.W.
Room 990
Washington, D.C.   20530
(202) 514-3770
Attorneys for Defendant

-30-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| THE PUERTO RICO PUBLIC HOUSING ADMINISTRATION, et al., | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) C. A. No. 96-1304 (PG) |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., | ) ) ) ) |
| Defendants. | ) ) ) |

ORDER

Upon consideration of Defendants' Motion for Partial Dismissal and to Limit Discovery, the memorandum in support thereof, the opposition thereto and the record in this matter,

IT IS HEREBY ORDERED THAT Defendants' Motion for Partial Dismissal and to Limit Discovery be and hereby is granted; and

IT IS FURTHER ORDERED THAT all claims asserted by plaintiff Myriam Alameda be and hereby are dismissed with prejudice; and

IT IS FURTHER ORDERED THAT, with the exception of claims asserted by plaintiffs Puerto Rico Public Housing Administration and Puerto Rico Department of Housing under the Administrative Procedure Act, 5 U.S.C. § 533, et seq., as set forth in Count IV of the complaint, all claims asserted by plaintiffs Puerto Rico Public Housing Administration and Puerto Rico Department of Housing be and hereby are dismissed with prejudice; and

IT IS FURTHER ORDERED THAT claims asserted by plaintiffs Puerto Rico Public Housing Administration and Puerto Rico Department of Housing under the Administrative Procedure Act, 5

U.S.C. § 533, et seq., as set forth in Count IV of the complaint, which arise from actions occurring prior to March 14, 1990, be and hereby are dismissed with prejudice; and

IT IS FURTHER ORDERED THAT defendant United States Department of Housing and Urban Development shall provide administrative records to Puerto Rico Public Housing Administration and Puerto Rico Department of Housing which relate to these plaintiffs' claims under the Administrative Procedure Act, 5 U.S.C. § 533, et seq., as set forth in Count IV of the complaint, which arose from actions occurring prior to March 14, 1990; and

IT IS FURTHER ORDERED THAT no discovery shall be served or otherwise engaged in by either party.

Dated: _____

                    _____
                    UNITED STATES DISTRICT COURT JUDGE

<u>CERTIFICATE OF SERVICE</u>

I certify that true and correct copies of Defendants' Motion for Partial Dismissal and to Limit Discovery, Memorandum of Points and Authorities in Support of Defendants' Motion for Partial Dismissal and to Limit Discovery and proposed order were served by hand, addressed to:

> James F. Hibey, Esq.
> William R. Sherman, Esq.
> Lisa K. Hsiao, Esq.
> Verner, Liipfert, Bernhard
>   McPherson and Hand, Ctd.
> 901 15th Street, N.W.
> Suite 700
> Washington, D.C.  20005.

Dated: Oct. _8_, 1996