# EXHIBIT I

1

C89QsokC1

1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    MARK I. SOKOLOW, et al.
3
4                   Plaintiffs
4
5            v.                          04 CV 397 (GBD)
5
6    THE PALESTINE LIBERATION
6    ORGANIZATION, et al.
7
7                   Defendants
8
8    ------------------------------x
9                                       New York, N.Y.
9                                       August 9, 2012
10                                      11:00 a.m.
10
11   Before:
11
12                    HON. GEORGE B. DANIELS
12
13                                       District Judge
13
14                         APPEARANCES
14
15   DAVID I. SCHOEN Attorney at Law
15        Attorney for Plaintiffs
16   2800 Zelda Road, Suite 100-6
16   Montgomery, AL 36106
17   DAVID I. SCHOEN
18   MILLER & CHEVALIER CHARTERED
18        Attorneys for Defendants
19   655 15th Street NW, Suite 900
19   Washington DC 20005
20   DAWN MURPHY-JOHNSON
20   LAURA FERGUSON
21
22
23
24
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                2
        C89QsokC1
 1                 (In open court)
 2                 THE DEPUTY CLERK:  Mark Sokolow v. Palestine
 3      Liberation Organization 04 CV 397.
 4                 Please stand and state your name for the record
 5      starting with the plaintiffs.
 6                 MR. SCHOEN:  Good morning, your Honor.  David Schoen
 7      for the plaintiffs.
 8                 THE COURT:  Good morning, Mr. Schoen.
 9                 MS. MURPHY-JOHNSON:  Good morning, your Honor.  Dawn
10      Murphy-Johnson and Laura Ferguson on behalf of the defendants.
11                 THE COURT:  Good morning.
12                 MR. FERGUSON:  Good morning.
13                 THE COURT:  Let me first hear from defendants with
14      regard to the motion.
15                 MS. MURPHY-JOHNSON:  Would you prefer that I come to
16      the podium?
17                 THE COURT:  It would probably be easier for the court
18      reporter.
19                 MS. MURPHY-JOHNSON:  Your Honor, this is a complex
20      case that was filed in 2004 by 42 plaintiffs involving seven
21      attacks that occurred around Jerusalem between 2001 and 2004.
22                 The complaint asserts 13 counts against the
23      defendants.  The first count is a Federal Anti-Terrorism Act
24      claim.  The second through 13th counts are a mix of non-federal
25      claims and a variety of theories of liability and theories of
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300

3

C89QsokC1

1  damages.
2           The defendants have moved to dismiss plaintiffs
3  non-federal claims based on the defendant's lack of capacity to
4  be sued for those claims.  Those non-federal claims are the
5  second count which is wrongful death, the fourth count which is
6  battery, the fifth count which is assault, the seventh count
7  which is negligence, the eighth count which is the intentional
8  infliction of emotional distress, and the ninth count which is
9  the negligent infliction of emotional distress.  The plaintiffs
10  have also alleged in their papers that the sixth count, loss of
11  solatium and consortium is a cause of action.
12           Under Federal Rules of Civil Procedure 17(b)(3), the
13  law of the forum state controls the capacity of an
14  unincorporated association to be sued for non-federal claims,
15  and here that's New York General Associations's Law Section 13
16  under which an unincorporated association cannot be sued in its
17  own name.  And here the PA and PLO, which are unincorporated
18  associations, have been sued in their own names warranting
19  dismissal of those claims.
20           THE COURT:  Let me first start out with a basic
21  question, because the PLO has been in litigation before and has
22  taken different positions on that issue.  Is it your position
23  that you are conceding, admitting, acknowledging that the PLO
24  is in fact an unincorporated association?
25           MS. MURPHY-JOHNSON:  Well, your Honor, for purposes of

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

C89QsokC1

1   this motion, yes.
2           THE COURT:  All right.  That's not the way I phrased
3   it, because for purposes of -- the real question is not for
4   purposes of this motion.  The real question is one of two:  If
5   that is what you acknowledge and admit, then that's going to be
6   the PLO's acknowledgment and admission, and every judge is not
7   going to have to go through this depending on what's to the
8   advantage or disadvantage of either party in terms of what they
9   want to assert.  But this is really your affirmative defense.
10          MS. MURPHY-JOHNSON:  Right.
11          THE COURT:  So, you have to tell me whether or not you
12  say that you're asserting this as an affirmative defense
13  because in fact the PLO is an unincorporated association and
14  acknowledges that and admits that and concedes that, and your
15  position is there's significant evidence to support this court
16  and every other court to make that determination for now and
17  all time.
18          MS. MURPHY-JOHNSON:  Well, as you are aware, your
19  Honor, historically, the PA and the PLO have argued that they
20  should be recognized as states or as nations, and routinely
21  every court that's addressed that issue has rejected that.
22          THE COURT:  Right.
23          MS. MURPHY-JOHNSON:  So, we have come to the point
24  where we have to acknowledge that we are unincorporated
25  associations because the courts refuse to acknowledge the

5

C89QsokC1

1    defendant's status as states.
2              THE COURT:  Well, let's put it this way, you have yet
3    to convince a court that you have any evidence to demonstrate
4    something other than that, so I'm trying to understand whether
5    or not you -- again, this is your affirmative defense.  It's
6    not a question of everybody else has done it so I should do it
7    too.  It seems to me it's a question of fact, and either you
8    say that that is the fact or you say that that is not the fact.
9    It's a little awkward for me to have you argue that I should
10   make decisions on that basis, not because you say it's so, but
11   because you say other judges have assumed that to be the case.
12             MS. MURPHY-JOHNSON:  Could I seek the Court's
13   permission to have Ms. Ferguson address this particular
14   question?
15             THE COURT:  Surely.  Whoever has a straight answer for
16   me can address the question.
17             MR. FERGUSON:  Ms. Murphy-Johnson is at a disadvantage
18   because her exposure with the case is a little more recent than
19   mine.  I have been representing the PA since 2007.  I am
20   familiar with the litigation history of the immunity question,
21   so if I could clarify.  Predecessor counsel, since the lawsuits
22   began in the U.S. against the PA and the PLO, argue that the PA
23   should be treated as a sovereign state.
24             THE COURT:  Right.
25             MR. FERGUSON:  And that argument really focused on the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

6

C89QsokC1

1   PA rather than the PLO.  There is not really a conceivable
2   argument that the PLO has any even quasi-state status, but the
3   PA, they argued, as a quasi-state should be accorded sovereign
4   immunity.  And the courts acknowledged -- the courts found that
5   the facts just weren't there to support it.  In fact, the whole
6   conflict is over the PA's desire to be recognized as a state.
7   That hasn't happened yet.  So, when my firm came in to
8   represent the PA and PLO, we recognized that there was no
9   sovereign immunity defense, and that the cases needed to be
10  litigated on the merits.  So, that's what we've proceeded to
11  do.
12          So we are not making a state to a claim for the PLO.
13  We are not making a state to a claim for the PA.  If at some
14  point the PA becomes a recognized state, that would be
15  different, but here and now the PA is not a recognized foreign
16  state.
17          THE COURT:  That's even not my issue.  I am not asking
18  you whether you contend or don't contend in this litigation
19  that the PA or PLO is a sovereign state.  That's not the
20  question.  The question is solely the question of whether or
21  not -- I mean, it has been debated back and forth in almost
22  every single case in which the PLO is in, not just the issue of
23  whether it's a sovereign state, but because the determination
24  of whether it is or isn't a sovereign state is not a
25  determination that it is or is not an unincorporated

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

C89QsokC1

1    association.
2              The only question before me is whether or not in fact
3    the PLO and the PA have the status of being an unincorporated
4    association.  If that is your position, whether or not it is or
5    isn't a sovereign state, whether or not for all purposes -- for
6    purposes of service, for purposes of standing, for every other
7    purpose -- if you are urging me to make the conclusion that you
8    say is acknowledged by the PA and PLO, that you are in fact an
9    unincorporated association.
10             MR. FERGUSON:  There is only a certain number of
11   potential baskets the PA and PLO can fall within.
12             THE COURT:  I mean, I don't know.
13             MR. FERGUSON:  We are not a corporation, not a
14   partnership, not a state.
15             THE COURT:  If you say so.
16             MR. FERGUSON:  Right.  Yes, I think the best framework
17   for these are sui generis entities is under the Federal Rules
18   of Civil Procedure and unincorporated association, and that's
19   how the courts have treated the PLO, how the Southern District
20   of New York treated the PLO in the Klinghoffer case.  That's
21   how the District of Columbia has treated the PA and the PLO in
22   the Kliman and Parsons case, as unincorporated associations.
23   We accept that designation.  And even the plaintiffs have
24   acknowledged the PLO is an unincorporated association.
25             THE COURT:  Well, but that is where I have to start

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

C89QsokC1

1    because I have been asked basically to take judicial notice of
2    this fact.  While I can take judicial notice that the other
3    courts in their resolutions of the issues that were before them
4    said for the purpose of those issues that the PLO is an
5    unincorporated association, that isn't quite judicial notice.
6    I'm not sure that it's appropriate for me to take judicial
7    notice that that is in fact true because another judge has
8    ruled that way.  If that was the case, I couldn't disagree with
9    my colleague next door because they ruled one way and I've
10   decided to rule a different way.  I can take judicial notice
11   that they've ruled that way, but I can't take judicial notice
12   that that's either a fact independently or that that is the
13   legal consequence for all time in every case or even if I had
14   made the same decision, given the same set of circumstances
15   that I would have made the same judgment.
16           So, as I say, my attitude is it's more in the hands of
17   the PLO and the PA as to what it is that you say the facts
18   demonstrate that you are rather than an argument that simply
19   you've made the opposite argument and have lost that argument,
20   and so, therefore, since you've lost the argument, everybody
21   else has to accept it in every litigation even though your
22   position might be different.
23           MR. FERGUSON:  Your Honor, I don't think there is much
24   dispute or uncertainty about what the basic facts are of what
25   the PA is or what the PLO is.  The question is, how do you

9

C89QsokC1

1   categorize that sort of sui generis entity for purposes of the
2   U.S. Federal Rules of Civil Procedure.
3              THE COURT:  Well, no, I think that there is --look,
4   the fact is that it may or may not be my role, but I know
5   what's going to happen; that if you are going to argue to me,
6   literally, and I think it's appropriate, it's time to stop
7   debating this issue depending on whether it's to the advantage
8   of some plaintiff or the advantage of the defendant.
9              If you want me to accept the fact that the PLO is in
10  fact an unincorporated association, then you're going to have
11  to tell me that, and you tell me that it is and tell me why it
12  is, and tell me the evidence supports that, and my guess is
13  that people are going to quote this back to you in future
14  litigation because I don't think it's appropriate for me to
15  have you tell me that I should make that determination and the
16  consequences for that determination in this case, and then you
17  represent that to me in this case, and then the next case if
18  it's not to your advantage for either service or some other
19  purpose, then you want to make the opposite argument because,
20  you know, this is not --
21             MR. FERGUSON:  I accept that, your Honor.
22             THE COURT:  -- it's not so much a legal argument.  It
23  is a fact; either you are an unincorporated association or
24  you're not an unincorporated association, and you have to tell
25  me whether or not you believe it is so, and you have to tell me

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

C89QsokC1

1   on what basis you believe that, particularly in this context
2   because this is your affirmative defense.
3           MR. FERGUSON:  Right.  I believe the PLO is an
4   unincorporated association.  I believe it should be treated as
5   an unincorporated association because it is sort of an umbrella
6   group for a variety of political parties and factions who share
7   a common purpose of a Palestinian national movement with
8   recognition of a Palestinian state.  It's not incorporated.  It
9   is a loose affiliation of members who share a common purpose.
10  So it best falls under the rubric of an unincorporated
11  association.
12          THE COURT:  On what basis do I even have in this
13  record at this stage of the proceeding to say that the PLO has
14  members?  Who are the PLO's members?
15          MR. FERGUSON:  Your Honor, I could first say that the
16  plaintiffs have acknowledged the PA is an unincorporated
17  association.  Their argument is that the law where it is --
18  where the association was formed to govern its capacity to be
19  sued, but they don't contend that it's not an unincorporated
20  association.  There is no dispute between the parties about the
21  PLO's status.
22          But with respect to the membership of the PLO, the PLO
23  represents all the Palestinians, including the Palestinians
24  that are in the Diaspora, so those that are not in the West
25  Bank and the Gaza Strip.  And they represent all those

11

C89QsokC1

 1   Palestinians who share in the Palestinian national movement.
 2           THE COURT:  That's not the definition of an
 3   unincorporated association.  The fact that they take the
 4   position that they represent the interest of all of those
 5   individuals does not make all of those individuals members of
 6   the PLO.  That is not the definition of an unincorporated
 7   association for legal purposes.
 8           MR. FERGUSON:  Well, I can refer the Court to the
 9   Kliman decision in the District of Columbia where it concluded
10   that the PLO fell within the definition of unincorporated
11   association precisely because it's composed of individuals
12   without a legal identity -- I'm quoting from the Kliman
13   decision from the District of Columbia.
14           It has been determined by other federal courts that
15   the PLO qualifies as an unincorporated association because it
16   is "composed of individuals without a legal identity apart from
17   its membership formed for specific objectives."  Citing the
18   Ungar decision from Rhode Island and also the Klinghoffer
19   decision from this court.
20           So, with respect to the PA, again, it's this problem
21   of a sui generis entity.  It has an executive branch.  It has a
22   legislative branch.  It has courts.  It took the position we
23   are close enough to a state, we should be treated as state for
24   some purposes.  That's been rejected.
25           THE COURT:  I understand that.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

12

C89QsokC1

1          MR. FERGUSON:  So that's why I accept that the next
2    best framework is unincorporated association.
3          THE COURT:  But there is no such thing as a default
4    framework.  You see what I'm saying?  So you can't say that
5    because it's not an apple, it must be an orange.  That's not
6    the way it works.  As I say, you have to tell me why you say
7    it's unincorporated -- is your position that the PA is an
8    unincorporated association?
9          MR. FERGUSON:  Yes, it is, and because we have to pick
10   a set of rules that govern capacity to be sued, that govern
11   service of process, that govern immunity, and we have to define
12   for U.S. law purposes how we're going to treat the sui generis
13   purposes for purposes of applying the Federal Rules of Civil
14   Procedure.
15         THE COURT:  But you are defining that because you give
16   me a set of factors that meet that definition, and then you
17   tell me why the PA or the PLO meets those factors.  It's not an
18   analysis that if the PLO or the PA has been rejected, it's one
19   thing, they must be by default something else, that's an
20   unincorporated association.  That's not true.  Because if
21   you're not a state, you could be a corporation.  You could be,
22   you know, a partnership.  There are a lot of things you could
23   be depending on the facts.
24         So, the question is not, you know, is there a space to
25   push them in.  The question is what is the nature of the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C89QsokC1

1   organizations, and in what way does the nature of that
2   organization meet the requirements of being an unincorporated
3   association?  Now, you know, this first question may be much
4   ado about nothing because when I ask them the same question,
5   they may say to me, well, Judge, that's what we think they are,
6   and then they have to give me a good reason then why they
7   shouldn't be treated that way for all purposes.
8             But I just want to first start out with the premise
9   because almost every other case you've cited to me in which the
10  court ruled that -- and not in all contexts, but in most
11  contexts it had to deal with the issue of service, but there
12  were some cases that also had to --
13            MR. FERGUSON:  The Parsons case specifically addressed
14  the capacity of the Palestinian Authority to be sued for
15  non-federal law claims.
16            THE COURT:  But in every one of those cases, my
17  recollection is -- and you correct me if I'm wrong -- in every
18  one of those cases the PLO and the PA took the opposite
19  position, said that they were not.
20            MR. FERGUSON:  That they were not?
21            THE COURT:  Unincorporated associations.
22            MR. FERGUSON:  I don't think that's the case in
23  Parsons, your Honor.
24            THE COURT:  You think the case in Parsons -- I have to
25  look at that, but I don't -- I'm not sure they even

C89QsokC1

1  specifically took that position.  Maybe in Parsons they took
2  the position for the purpose of capacity and --
3         MR. FERGUSON:  In Parsons we did not argue sovereign
4  immunity.  That was one of the recent cases that was filed --
5         THE COURT:  Right.  And my recollection was that not
6  in Parsons that you said -- I don't know if you were in
7  Parsons.
8         MR. FERGUSON:  I think how we framed it is that the PA
9  and the PLO -- or especially the PA has argue stages.  That has
10  been rejected.  The PA accepts that that's the consistent
11  ruling of the U.S. courts and, therefore, the PA should be
12  treated as an unincorporated association, as the court did in
13  Kliman.
14         THE COURT:  I remember everything that you just stated
15  except the fact that you say you accept that.  I'm not sure
16  that I read -- I don't know what the underlying position was,
17  but in the case law that I read, I am not sure that you said we
18  accept the fact that we are unincorporated association.
19  Obviously, you wanted the benefit of excluding the cause of
20  action, the underlying cause of action, if that was what the
21  finding was going to be, but I'm not sure that you urged upon
22  the court that in any of those cases that the PA and/or the PLO
23  was in fact an unincorporated association.
24         MR. FERGUSON:  I can tell you that the PA is no longer
25  standing on sovereign immunity claims and takes the position

C89QsokC1

1    that it's best treated for the Federal Rules of Civil Procedure
2    as an unincorporated association, and that's what the courts
3    consistently have done.
4                THE COURT:  Well, best treated is not --
5                MR. FERGUSON:  Well, it's not a corporation.  It's not
6    a partnership.  What is it is the problem.
7                THE COURT:  Well, no, I understand that, but the
8    question before me is not what it's best treated as.  The
9    question before me is whether you have an affirmative defense
10   of lack of capacity to be sued because you are in fact an
11   unincorporated association.  Isn't that really the only issue
12   for me at this point?
13               MR. FERGUSON:  There are two issues before you.  One
14   is whether there's a capacity to -- whether the PA and PLO have
15   the capacity to be sued.  The second is whether the Court
16   should decline exercise of supplemental jurisdiction.
17               THE COURT:  But I haven't gotten to that yet.
18               MR. FERGUSON:  But with respect to the capacity
19   question, yes, a threshold determination undoubtedly is that
20   the PA and PLO are unincorporated associations.  I don't think
21   there's any dispute as to the PLO.
22               As to the PA, you know, it's a group of Palestinians
23   living in the West Bank and Gaza Strip, and there is a
24   governmental structure there, but it is not treated as a state.
25               THE COURT:  But as you just described it is not the
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300

C89QsokC1

1   definition of an unincorporated association.
2            MR. FERGUSON:  The question is then how do we
3   determine this thing's capacity to be sued and how it should be
4   served?
5            THE COURT:  I don't know, but that's not my issue at
6   this point.  The only issue for me right now is whether or not
7   in fact the PA should be dismissed from this case because --
8            MR. FERGUSON:  Certainly we're not -- right, the
9   Anti-Terrorism Act may continue the court case.
10           THE COURT:  Yes, I misstated it.  Whether or not
11   the -- I'll call them the common law clauses of action.
12           MR. FERGUSON:  Right.
13           THE COURT:  The common law causes of action should be
14   dismissed because it is an unincorporated association and the
15   law indicates that an unincorporated association does not have
16   the capacity to be sued.
17           MR. FERGUSON:  Your Honor, I can't stand here and kind
18   of neatly tick off the elements of the PA and sort of link them
19   directly to a definition of unincorporated association.  Courts
20   that have looked at this issue have found that that's the best
21   framework.  That's really all I can offer you.  But if this
22   seems too -- you know, the fact that the PA is so sui generis
23   that it makes it difficult to resolve the capacity argument,
24   then that is really sort of another reason that the Court
25   should not take on the seven non-federal law claims because,

17

C89QsokC1

1   again, this is another aspect of the complexity that these
2   claims bring to the case.
3           THE COURT:  Then the way I am trying to analyze it is
4   that may or may not be -- that may be correct, but the question
5   is, does that mean that this can be resolved at this stage of
6   the proceeding rather than at a later stage of the proceeding.
7           MR. FERGUSON:  I cannot contemplate any discovery that
8   would shed any light on whether the Palestinian Authority
9   should be treated as an unincorporated association.  The Oslo
10  Accords that set up the Palestinian Authority are widely
11  available.  They're a matter of public record.  So the
12  structure of the PA is well-known.  There is no discovery that
13  would aid this inquiry.  Ultimately, we're left with the sui
14  generis entity and we have to decide what basket it best fits
15  into.  I recognize this is a novel question and it doesn't fit
16  neatly into any of the baskets, but that's what we're left
17  with.  I think I've hijacked Ms. Murphy-Johnson's argument.
18          THE COURT:  Go ahead.
19          MS. MURPHY-JOHNSON:  I am looking at to where we
20  should next go.
21          THE COURT:  I mean, your basic argument is fairly
22  straightforward.
23          MS. MURPHY-JOHNSON:  It is.
24          THE COURT:  And your basic argument is that -- if I
25  articulate it correctly -- that the PLO, that you have an

18

C89QsokC1

1  affirmative defense that requires no further factual
2  examination, and that affirmative defense is that the PLO and
3  the PA are unincorporated associations, meet that definition
4  for all purposes, and, therefore, whatever rules apply to an
5  unincorporated association with regard to the common law claims
6  should apply in this case.
7           MS. MURPHY-JOHNSON:  Correct.
8           THE COURT:  Fairly straightforward argument.  I can
9  accept that if everyone says to me that that's the way the
10 issue is to be viewed.  As I say, it doesn't make the case go
11 away.  The only thing I disagree with initially in terms of the
12 proposition is that I think all of the claims that you ticked
13 off, other than the last claim, would fall into that category
14 because I'm not sure that -- was it Count Six?
15          MS. MURPHY-JOHNSON:  Yes.
16          THE COURT:  I'm not sure that Count Six would qualify
17 as an independent cause of action.
18          MS. MURPHY-JOHNSON:  Right, and we take that position
19 as well.
20          THE COURT:  They can explain to me if they think that
21 that's an independent cause of action, but I don't know of any
22 underlying elements of liability that independently prove to
23 demonstrate that as an independent cause of action unless
24 you've established an underlying cause of action.  That seems
25 to me to be also related to the issue of damages.  I thought

C89QsokC1

1    that the plaintiffs pretty much argued that or at least lumped
2    that into the same category as the other claims, but maybe not.
3    Hold on just a second.
4              MS. MURPHY-JOHNSON:  Your Honor, if I might --
5              THE COURT:  Yes.
6              MS. MURPHY-JOHNSON:  -- in the plaintiff's opposition
7    to our motion -- this is DE-196 at page 3 -- the plaintiffs
8    grouped Count Six in with what they characterized as
9    garden-variety non-federal causes of action.
10             THE COURT:  I'm sorry.  Where are you looking, at page
11   3 of their response?
12             MS. MURPHY-JOHNSON:  Yes.
13             THE COURT:  Oh, I see.  Yes.  Then I will discuss that
14   with them.  All right.
15             Well, if you have anything further to say you want to
16   say about the standing issue, then I will hear you; otherwise,
17   let's just talk briefly about your argument that I should not
18   assert supplemental jurisdiction.
19             MS. MURPHY-JOHNSON:  Certainly.  We'll shift gears
20   then to that argument.
21             So, independent of this capacity issue, the defendants
22   request that the Court nonetheless decline to exercise
23   supplemental jurisdiction over the plaintiff's non-federal
24   claims under 28 U.S.C. 1367 which states that the Court can
25   decline to exercise supplemental jurisdiction if non-federal

C89QsokC1

1  claims raise complex questions of foreign law or if they would
2  come to substantially predominate over the federal claim at
3  issue in the case.
4          We strongly feel that that is what would happen here.
5  The case is already inherently complex on the federal grounds
6  alone.  There are seven different attacks involved over a
7  period of three years, all involving different factual
8  scenarios, potentially different militant groups allegedly
9  involved.  There are 42 plaintiffs.
10          THE COURT:  So why should I double that?
11          MS. MURPHY-JOHNSON:  Why should you quadruple that?
12  Quintuple that?
13          THE COURT:  Right.  But my question is different than
14  your question.  You are asking why should I quadruple that in
15  this case.  I'm saying why should I quadruple that in two to
16  four different cases?  What sense does that make?  Why should
17  you have to go through this twice, here and in another
18  jurisdiction?
19          MS. MURPHY-JOHNSON:  Well, because here doing so would
20  mean engaging experts on potentially up to four or five
21  different foreign bodies of law --
22          THE COURT:  Well, they argued that -- look, as I said,
23  this isn't rocket science.  Wrongful death is wrongful death.
24  What expert do I need to tell me -- I don't see any place where
25  you argued, one, that -- well, I'm not quite sure what your

C89QsokC1

 1  position is as to where these supplemental claims should be
 2  litigated and what law should apply.
 3          MS. MURPHY-JOHNSON:  The question of what law should
 4  apply is actually a very complicated one since the Second
 5  Circuit issued its decision in the Licci matter.  I don't know
 6  if I'm pronouncing that correctly.
 7          THE COURT:  OK.
 8          MS. MURPHY-JOHNSON:  There the Second Circuit held
 9  that the law of the jurisdiction having the greatest interest
10  on litigation should be applied.  And then tort cases such as
11  negligence intentional infliction of emotional distress where
12  conduct-regulating rules apply, the law of the location where
13  the tort occurred applies.
14          THE COURT:  Who is going to make that determination?
15  And what are you urging that determination to be?
16          MS. MURPHY-JOHNSON:  Well, if I could, I'm not sure
17  that it necessarily warrants a definitive determination.  I
18  think that the question itself presents so much complexity and
19  we could engage in years of litigation over which law actually
20  applies.
21          THE COURT:  But why?  I understand that in the
22  abstract, but I don't understand how that applies to this case,
23  and I am not sure how it makes it more efficient to do that in
24  two or three different forums when we're all talking about the
25  same underlying activity --

C89QsokC1

```
 1            MS. MURPHY-JOHNSON:  Sure.
 2            THE COURT:  -- that just translates into different
 3  causes of action.  I mean, their argument is this:  That there
 4  are only two choices.  You are either going to apply New York
 5  law or you're going to apply Israeli law.  I don't know if you
 6  say there is a third choice, but you haven't articulated a
 7  third choice, so at least we've narrowed it down to two
 8  choices.
 9            MS. MURPHY-JOHNSON:  If I might articulate that now.
10  As we attempted to articulate in our June 6 letter to the
11  Court, because of the Licci decision, it does appear that there
12  is another alternative here, aside from New York law and
13  Israeli law, and that would be however we would characterize
14  Palestinian law because that is where the PA and the PLO at
15  least for some part --
16            THE COURT:  Where do I look to find Palestinian law?
17            MS. MURPHY-JOHNSON:  Well, yes.  That's how --
18            THE COURT:  Where does any forum look to find
19  Palestinian law?
20            MS. MURPHY-JOHNSON:  Well, I will tell you.
21            THE COURT:  Wait.  Stop.  So, you are saying that
22  there is such a thing as Palestinian law that's been applied in
23  a court of law to resolve these disputes?
24            MS. MURPHY-JOHNSON:  I can't say for sure because I'm
25  not an expert on Palestinian law.
```

C89QsokC1

```
 1              THE COURT:  Well, you got to say for sure, otherwise,
 2    I can't accept that argument.  You can't just make it up.
 3              MS. MURPHY-JOHNSON:  I'm not making it up.
 4              THE COURT:  Well, that's as I say -- let's put it this
 5    way:  They argue that there are certain injuries and deaths
 6    that occurred in Israel, so, therefore, under normal
 7    circumstances, given the fact that there are U.S. citizens,
 8    that the -- and I characterize them as the common law causes of
 9    action will either be causes of action under New York law or
10    causes of action under Israeli law.  In the first instance that
11    makes sense.
12              You say now that there's something else called
13    Palestinian wrongful death law that is somehow different than
14    Israeli or New York law that some court needs to go through --
15    and I'm not sure which court you say needs to do that -- but
16    some court needs to go through and determine what that is in
17    order to litigate that issue.  Is there something called
18    Palestinian wrongful death law?
19              MS. MURPHY-JOHNSON:  Just like everything else in this
20    case, that is also a complicated question, and I know that's
21    not helpful to you.
22              THE COURT:  It's not a complicated question.  It's a
23    very simple question.  If you can tell me there is such a
24    thing, then I will say, all right, then somebody has to analyze
25    that.  If you can't tell me that you have a basis to say there
```

24

C89QsokC1

1   is such a thing, then why is that a consideration for me?
2            MS. MURPHY-JOHNSON:  Over history, depending on what
3   foreign nation has governed the region, those various
4   countries' laws have been exercised in the Palestinian
5   territories, and over a time they've all become layered on top
6   of each other.
7            So, for conduct that occurred in the Gaza Strip,
8   arguably Ottoman Law could apply because at some period of time
9   Ottoman Law governed that region.  And if certain conduct
10  occurred in the West Bank, there could be a combination of
11  British Mandate law, Jordanian Law, Israeli mililtary orders or
12  Israeli law, but this has all been --
13           THE COURT:  Well, what does that have to do with the
14  plaintiffs wanting to invoke and having available to them to
15  invoke either the laws of Israel or the laws of New York?  If
16  your argument is that they cannot establish their cause of
17  action under one of those laws, then you may prevail on summary
18  judgment or before a jury in being able to convince the Court
19  or a jury that, no, protections of those laws do not apply
20  here.  But what does that have to do with my declining to
21  assert jurisdiction over this?  How is this somehow easier for
22  some other court to deal with and address than this Court?
23           MS. MURPHY-JOHNSON:  The plaintiffs themselves believe
24  that they could potentially bring these cases, the non-federal
25  claims, in Israeli courts.

25

C89QsokC1

 1              THE COURT:  Right.
 2              MS. MURPHY-JOHNSON:  But I'm not saying that the
 3     choice is solely between -- and if this court were to exercise
 4     supplemental jurisdiction here, that it's a question of
 5     choosing between New York law and Israeli law.  My only extra
 6     additional point is that if this Court were to address these
 7     claims, there is likely this third body of law that's developed
 8     over the past several decades in the Palestinian courts
 9     involving all these different layers of foreign law.
10              So my point is, that if the Court were to accept
11     supplemental jurisdiction over those claims, even the choice of
12     law issue alone adds so much complexity to an already complex
13     case that there is no doubt that these non-federal claims would
14     come to predominate over the federal ATA claims.
15              THE COURT:  But I don't understand in the detail of
16     that argument what that argument means.  It sounds
17     superficially logical, but what is it that this Court has or
18     any court has to determine?  They will invoke -- and you will
19     either agree or disagree -- that they have the protection of
20     either New York State common law or Israeli law, and they will
21     say that we can prove that those laws do apply and should be
22     applied and we can prove our cause of action under those laws.
23              MS. MURPHY-JOHNSON:  But I think under Licci that that
24     is not accurate any more because the defendants -- if the
25     defendants solely committed their tortious acts in Israel, then

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

```
            C89QsokC1
 1   under Licci, Israeli law would arguably apply.  But there is a
 2   whole list of allegations in the complaint that the PA and PLO
 3   from their headquarters, which are not in Israel, acted
 4   negligently to, for example, release prisoners who then went on
 5   to allegedly commit these acts.
 6               THE COURT:  OK.
 7               MS. MURPHY-JOHNSON:  Or paid people from their
 8   headquarters, which are not in Israel, to commit acts.
 9               THE COURT:  What does that have to do with a cause of
10   action for negligence?
11               MS. MURPHY-JOHNSON:  I'm sorry?
12               THE COURT:  I'm just trying to pick a cause of action.
13   Explain to me how that complicates any one of these causes of
14   action.
15               MS. MURPHY-JOHNSON:  Because then the PA or the PLO
16   acted in the West Bank negligently to release a given prisoner
17   who then went and committed an attack.
18               THE COURT:  But that's not the nature of anyone's
19   claim here.
20               MS. MURPHY-JOHNSON:  I'm sorry?
21               THE COURT:  That's not the nature of anyone's claim
22   here.
23               MS. MURPHY-JOHNSON:  It is.
24               THE COURT:  Whose?
25               MS. MURPHY-JOHNSON:  The plaintiffs have alleged that.
```

C89QsokC1

```
 1                THE COURT:  Have alleged what?
 2                MS. MURPHY-JOHNSON:  That the PA or the PLO have
 3     released certain people who were in their custody intentionally
 4     for the purpose of committing acts of terror.
 5                THE COURT:  OK.  Maybe I have to go back to the
 6     complaint again.  I will accept your premise for now, but I'm
 7     not quite sure where you say that that requires some other
 8     alternative choice of law.
 9                MS. MURPHY-JOHNSON:  Well, that's what Licci tells us.
10     In Licci the question was -- and, unfortunately, it was a
11     question between New York law and Israeli law, so I don't want
12     to cabinet in those terms, but there the court found that
13     American Express had acted in New York.
14                THE COURT:  Right.
15                MS. MURPHY-JOHNSON:  Those acts then resulted in
16     rocket attacks in Israel, but New York law applied because New
17     York is where American Express took its actions.  So what I'm
18     saying is Palestinian law, however one eventually comes to
19     define it, would apply to any claim that the plaintiffs have
20     that the PA acted tortiously within the Palestinian
21     territories.
22                THE COURT:  So who is supposed to decide, and why is
23     it somehow more convenient for some other court to decide
24     that -- and even more convenient for the parties for some other
25     court to decide that rather than in the case in which you
```

C89QsokC1

1   litigated already the issues with regard to the injuries and
2   deaths for the crime?
3          MS. MURPHY-JOHNSON:  Because if it were litigated
4   here, it adds a substantial layer of complexity.
5          THE COURT:  How?  All I have to do is decide if you
6   weren't giving me Ottoman Law.  In their brief it says Ottoman
7   Law applies, and, therefore, this is your defense, I'm sure I
8   could decide that.  That wouldn't take any more time than it
9   has taken me to decide any of the other motions that I have to
10  decide.
11         MS. MURPHY-JOHNSON:  Because I think, your Honor, it
12  would become so much more complex because of the number of
13  claims involved, the number of plaintiffs involved, the
14  theories of liability, whether it's direct liability or
15  respondeat superior.
16         THE COURT:  That's going to be true whether or not the
17  supplemental claims went somewhere else or not.
18         MS. MURPHY-JOHNSON:  True, but on top of that we would
19  have to hire experts.
20         THE COURT:  You're going to have to do that anyway.
21         MS. MURPHY-JOHNSON:  We're going to have to have
22  translators.  Everything is in a foreign language.
23         THE COURT:  You're going to have to do that anyway.
24  I'm sorry, I didn't mean to interrupt you, but I'm trying to
25  focus you on this issue.  Part of my analysis is, you're saying

C89QsokC1

1   that -- and you're not saying that I'm required to do it or you
2   have a right for me to have to settle this on this basis.  I
3   have the discretion to do this, and you're asking me to
4   exercise my discretion appropriately to do this.
5           My question is, first, if I do this, I must consider
6   whether there is a reasonable alternative forum for the parties
7   to litigate this dispute.  What do you claim is the reasonable
8   alternative forum that I should decline jurisdiction over these
9   claims so that those claims can be litigated in another forum?
10  Do you understand my question?
11          MS. MURPHY-JOHNSON:  I do understand your question,
12  but to tell you the truth, I'm wondering if that is more
13  appropriate if this were being raised as a forum non conveniens
14  argument.
15          THE COURT:  But I can't imagine that it would be
16  appropriate for me to act properly and not abuse my discretion
17  by declining to assert supplemental jurisdiction over what
18  would otherwise be valid claims if the consequence of that is
19  that the plaintiff has no forum in which to litigate those
20  claims.
21          MS. MURPHY-JOHNSON:  Well, the plaintiffs themselves
22  have said that they believe that Israel could be a proper forum
23  for these claims.
24          THE COURT:  But you say no.
25          MS. MURPHY-JOHNSON:  No.  I'm saying that Israeli law

                                                                          30
        C89QsokC1
1   might not necessarily apply; not that Israel might not be the
2   proper forum for the claims.
3           THE COURT:  So are you saying that I should decline
4   jurisdiction over these claims in order that the plaintiffs can
5   re-assert these claims in an Israeli court if they wish.
6           MS. MURPHY-JOHNSON:  Correct.
7           THE COURT:  All right.  That's all I'm trying to say.
8           MS. MURPHY-JOHNSON:  OK.  Let me see if there was
9   anything else.
10          THE COURT:  All right.  Let them respond because I
11  have some questions for them, and then I will let you respond.
12          MS. MURPHY-JOHNSON:  Thank you very much, your Honor.
13          MR. SCHOEN:  Your Honor, I'm David Schoen, and I
14  represent the plaintiffs.  I see the Court has read the papers
15  thoroughly, so I don't intend to just reiterate what's in the
16  papers.  I'd actually like to start at a different place than I
17  intended originally, just to respond to a couple of things that
18  were said, and maybe the lead line is, quite frankly, a comment
19  the Court made.  This applied to Section 1367, the choice of
20  law argument.  The Court said -- I'm paraphrasing -- it
21  understands this argument in the abstract but does not
22  understand how it applies in this case.  That's it in a
23  nutshell.
24          That's exactly, with all due respect, what happened
25  here.  A number of legal arguments were thrown against the wall
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

C89QsokC1

1   to see which stick, but when you break it down to this case,
2   none of them applies to this case.  We don't get, for example,
3   to the choice of law issue and these so-called complicated
4   questions of now we hear Palestinian law or Israeli law because
5   they've never shown there was a conflict between New York law
6   and those laws.  In fact, the Court well versed in these issues
7   commented in the Licci case that the Court is familiar with
8   Israeli law, and when it comes to these kinds of things, there
9   really isn't any difference.
10          But I heard some things today in the argument that,
11   quite frankly -- and, again, I mean it with all due respect --
12   I was quite surprised to hear.  For example, we heard from
13   Ms. Ferguson today the rather shocking proposition which turns
14   everything on its head that if the -- I'm paraphrasing again --
15   the fact that the question of whether the PA is an
16   unincorporated association is too difficult to really determine
17   should argue against hearing these claims, should make you
18   dismiss these claims and send it away because we can't tell if
19   it's an unincorporated association.
20          The defendants have missed their burden here
21   completely and missed the appreciation of their burden in all
22   regards.
23          Again, as the Court noted, we can't appear before this
24   court and say, well, one argument didn't work; therefore, maybe
25   this one will work, and then flowing from that should be the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C89QsokC1

1   prejudice to these plaintiffs because contrary -- and I know
2   she believed it when she said it -- but contrary to what
3   Ms. Murphy-Johnson said, we don't say these claims can be
4   brought in Israeli court today.  We say that's part of the
5   extreme prejudice that's happened in this case because they
6   waited so late to raise these things, the statute of
7   limitations has run in the Israeli courts, and we submitted an
8   affidavit from this Jeremy Stern to that effect.
9           THE COURT:  Let me start you with the basic premise
10  that I started them with.  Is it your position that they are or
11  are not an unincorporated association?
12          MR. SCHOEN:  It is my position that they are not, and
13  it's my position primarily that they have the burden of
14  establishing that they are, and on this record they certainly
15  have not done that.
16          THE COURT:  Well, I'm in the same position with you as
17  I am with them is that your position is inconsistent and
18  inconsistent -- understandably inconsistent because it is one
19  way depending on what's to your advantage.  Now, the position
20  has always been consistently for service purposes and for other
21  purposes that they're an unincorporated association.
22          They argue, and I don't think you directly addressed
23  the issue -- they argued that you served them on that basis,
24  OK?  And that's the way you proceeded on that basis, and,
25  therefore, you would like to consistently cite every court's

C89QsokC1

```
 1   ruling that they're an unincorporated association for the
 2   purpose of service; but then when it's to be applied to the
 3   causes of action, now you want to say, oh, they can't prove
 4   that.  Well, what do you claim is their status?
 5            MR. SCHOEN:  Respectfully, your Honor, let me explain
 6   why I believe there is no inconsistency.
 7            We've taken the position that they are not a
 8   governmental entity entitled to sovereign immunity, but that,
 9   as the Court said earlier, doesn't lead to the conclusion that
10   for purposes of New York law they are an unincorporated
11   association with members, therefore, not subject to suing or
12   being sued.
13            And, with all due respect, the argument on service
14   that the defendants have raised is simply wrong.  We didn't
15   serve them or assert that we served them as an unincorporated
16   association.  Under Rule 4(h) that's the catchall for
17   organizations.  Frankly, the argument works in our favor.  Why?
18   Because Rule 4(h) says it applies to organizations or
19   associations subject to suit under a common name.  They have
20   never challenged that part of it.  If they're subject to suit
21   under a common name, that tears asunder their argument that
22   they're not an entity operating under a common name.  Their
23   argument is we need to -- when you're talking about an
24   unincorporated association, it's just a loose conglomeration of
25   members and, therefore, you need to get the approval or
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C89QsokC1

1   ratification of every member.  Well, if there is anything to be
2   drawn from Rule 4(h) it is that it authorizes service for an
3   organization or association subject to suit under common name.
4            Again, let me get to a little more basic question.
5   The defendant said, well, it's complicated.  We're not sure
6   what to look at.  Maybe we should look at Palestinian law.
7   We're not sure what to look at about whether they could sue or
8   be sued because it's complicated.
9            Well, how about a basic created document, the Oslo
10  Accords that created the PA and that the PLO negotiated with
11  the United States.  It could not say more expressly that the PA
12  is an entity authorized with the power to sue or be sued.
13  Again, I don't think you could have it both ways.
14           What are they trying to do?  They're trying to say in
15  New York they don't have the right to sue or be sued because
16  it's an unincorporated association.  Well, I would suggest to
17  the Court, with all due respect to the defendants, that the
18  fact that it is this quasi-governmental entity, which is what
19  they argued in the Knox case and how the court in Knox treated
20  them.  I can give the page cites for that.  It's 306 F.Supp.2d
21  424 to 435.  Either they're that or they're this other kind of
22  organization.  Well, that's exactly why the Court in cases like
23  the Massachusetts Trust case that we cited and other cases in
24  the reply, that's exactly why the Court said if they don't
25  really fit into what we call an unincorporated association with

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C89QsokC1

1  the members, and, after all, it's the membership that makes it
2  where you can't sue them.  You have to show approval by the
3  individual members because it's such a loosey-goosey
4  organization, but in the Massachusetts case, we say we look
5  then how were they treated back home?  And back home that
6  organization that they argued was an unincorporated
7  association, had the power to sue and be sued.
8          They said, wait a minute now.  That's going to be
9  unfair if we go to Massachusetts, and so we're not going to
10  treat them like an unincorporated association here.  Whatever
11  they're called -- again, we have to analyze it under New York
12  law specifically.
13          THE COURT:  But every court that has opined on this
14  issue for any purpose relating to any legal question, has
15  determined that they qualified as an unincorporated
16  association.  What authority are you citing to me that would
17  give you a basis to argue in law or in fact that that is not
18  the case?
19          MR. SCHOEN:  I'm telling the Court, respectfully, that
20  none of those courts has analyzed the question in this
21  framework.  It says it in Parsons.  The decision they
22  submitted.  It says the defendants haven't shown us any reason
23  otherwise.  It wasn't analyzed or argued.
24          THE COURT:  It wasn't analyzed or argued, but that
25  status was applied to them in all of those cases to both the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

36

C89QsokC1

1     advantage and disadvantage of both sides.
2              MR. SCHOEN:  I'm saying, your Honor, I know that this
3     Court is fully capable of analyzing the question on its own,
4     and it has been presented and framed here.  Again, the burden
5     is on them.  They have shown no membership.  Who are the
6     members of the PA?  Who are the members of the PLO?  And,
7     again, respectfully, we do not concede that for purposes of New
8     York law and this question under New York law that the PLO is
9     an unincorporated association.  There's reference made to it as
10    an unincorporated association on page 17 of our papers, but
11    then if you go to page 18, we say they haven't shown they have
12    any members.  So, while it might be called unincorporated
13    association for some purposes, under New York law they've got
14    to show they've got members and so on.  And, frankly, if you
15    had to show -- if we had discovery on the case, and they said,
16    well, what would they determine in discovery?  I suppose we
17    have a laundry list, starting with their charter and the right
18    to sue and be sued.  How do they operate?  Who are their
19    members, and all that?
20              Frankly, if their members are what they said in their
21    United States Supreme Court brief that the PLO is an umbrella
22    organization of different factions, well, frankly, every one of
23    those factions has a charter that would condone, ratify or
24    approve this kind of terrorism that occurred in this case.
25              THE COURT:  Well, my direct question to you is the

C89QsokC1

1  same as to them:  Is it your position that they are or are not
2  an unincorporated association?
3          MR. SCHOEN:  It is my position that as that term is
4  used in New York law for these purposes, they are not.  They
5  are something like a quasi-governmental entity as the Court
6  treated them in Knox in analyzing the question.  They are
7  not -- we have seen no proof on this record that they are a
8  voluntary membership organization any more than any
9  administrating authority, whether it's the Port Authority here
10 or a governmental authority like a county government, is a
11 voluntary membership organization.  Its constituents, it has
12 said, are all the factions of the Palestinian people.  That
13 doesn't sound or look like a voluntary membership organization.
14 If they have the proof, they haven't made that proof.
15         But all of it, again -- by the way, I just wanted to
16 take one or two baby steps back.  That is, I know the Court is
17 aware that we also have pending motions to strike these
18 affirmative defenses on procedural grounds, and specifically
19 with this issue, a waiver issue, because this issue was raised
20 a long time ago in a subject matter jurisdiction motion which
21 was denied, and then didn't appear again in the next series of
22 motions to dismiss that we saw, and it's coming up now.  That's
23 relevant both for waiver and for the exercise of this Court's
24 discretion because one of the many important factors for this
25 Court to consider is the prejudice that arose from the way in

C89QsokC1

1   which the defendants have engaged in their litigation of this
2   case specifically with respect to that issue, and that means
3   throwing these folks out of Court and throwing these claims out
4   of court; not just for the plaintiffs who are non-Americans,
5   but for the American plaintiffs that wouldn't be able to have
6   the benefit of these kinds of claims which have different
7   elements from the ATA.
8           THE COURT:  Well, that may go to your argument of
9   whether or not they should be allowed to dismiss those claims
10  on this basis at this time, but the plaintiff was put on notice
11  that they had an affirmative defense.
12          MR. SCHOEN:  In the answer, your Honor?
13          THE COURT:  Yes.
14          MR. SCHOEN:  Yes, your Honor.
15          THE COURT:  So, there is no prejudice in the sense of
16  surprise that at some point during this litigation they were
17  intending to put forth that affirmative defense.
18          MR. SCHOEN:  Your Honor, is distinguishing between
19  surprise and prejudice because that answer was filed after the
20  statute limitations would have run in the Israeli courts, so we
21  didn't have another forum to go to.
22          THE COURT:  But I can't fault them for that aspect of
23  it, as long as their answer was timely filed, whether or not it
24  was timely filed in relationship to the statute of limitations
25  some place else is not their fault.  They get to timely file an

C89QsokC1

1   answer, and they get to assert affirmative defenses that they
2   say they're going to rely upon in defending this lawsuit.  So,
3   it may be prejudice to the plaintiff, but it's not undue
4   prejudice.

5         MR. SCHOEN:  I follow your Honor.  My suggestion was
6   that the waiver argument arises because there were motions to
7   dismiss -- and this issue had been discussed -- and there were
8   motions to dismiss before the answer was filed, and this wasn't
9   raised in those, and we say they abandoned it by not raising
10   it.

11         THE COURT:  That may be a waiver of the motion to
12   dismiss.  It is not a waiver of the affirmative defense.

13         MR. SCHOEN:  But I think it puts us in the position of
14   assuming that issue isn't going to be in the case any more
15   until it arises again in the answer years later.  That is, if
16   we have to evaluate at some point on our own, well, could it be
17   that they are going to argue lack of capacity down the road,
18   therefore, we have to cover our bases and file in Israeli
19   courts in case somehow a court dismisses these things down the
20   road.  No reason to believe that until the answer is filed.
21   When they filed other motions to dismiss when this subject the
22   lack of capacity had been raised earlier, that motion was
23   denied in the context of subject matter jurisdiction motion --
24   sorry -- had been denied and then subsequent motions to dismiss
25   are filed, it's not raised again.  I'm just saying in terms

40

C89QsokC1
1    of --
2            THE COURT:  But that's what I'm saying, I want to
3    understand your argument.  I understand that argument to be a
4    waiver of a subsequent motion to dismiss for lack of capacity.
5            MR. SCHOEN:  I follow you, your Honor.  Your Honor is
6    being very precise.
7            THE COURT:  It is not a waiver of an affirmative
8    defense because they have not yet filed an answer asserting
9    affirmative defense, and as long as they still have the right
10   to file an answer asserting their affirmative defenses, it
11   doesn't automatically -- as related to your other motion
12   automatically say I'm supposed to strike their affirmative
13   defense because they didn't make it in a motion to dismiss.
14           MR. SCHOEN:  Your Honor is being very precise and
15   absolutely correct, I believe.
16           However, that brings us to the other argument again
17   about how they raised it in the answer.  As your Honor is also
18   aware, we have raised this argument, and under Rule 9 they fail
19   to allege it with particularity and with the supporting facts
20   that are required.  We cite the cases in the brief that require
21   that kind of allegation.  We can't just throw out there lack of
22   capacity.
23           I know I've skipped all around.  I would like to just
24   kind of put in a nutshell a little bit the first argument and
25   just reiterate what our arguments are on this unincorporated
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

C89QsokC1

1   association, and then I would like to just put in a nutshell
2   our 1367 arguments, and then I would like three minutes to
3   discuss with the Court why in all of this, and especially in
4   the exercise of the Court's discretion, it makes absolutely no
5   sense to dismiss these cases for any of the prudential reasons
6   that courts sometimes dismiss what I, in the old days, called
7   pendent supplemental jurisdiction to dismiss those kinds of
8   cases in this case.
9            On the unincorporated association, as I say,
10  fundamental position after we get past the waiver and all
11  that -- and that would be one way to decide it is on waiver --
12  is that the burden is on them because they're looking here for
13  an escape for these claims in this case.  They have the burden
14  of proving that they are an unincorporated association under
15  New York law.  And that doesn't end it.  It's a matter of
16  capacity, even if they are an unincorporated association that
17  they don't have the capacity to sue or be sued.  That's
18  relevant here because they are this unique sort of animal,
19  let's call it -- unique sort of entity, both the PA and the
20  PLO.
21           So, again, I say with respect to the PA, you look to
22  the organic document that created them.  It says expressly,
23  which the PLO negotiated for, we have the right to sue and be
24  sued.  Again, we don't have to guess because we pulled a series
25  -- doing discovery on our own, we pulled a series of about 10

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

42

C89QsokC1

 1    to 14 case necessary which the PA has sued.  They're the
 2    plaintiff in 10 to 14 cases at least.  That was just in one
 3    glance in the Israeli court.  So they recognize they have the
 4    right to sue and be sued.
 5            So what we say in this argument is when you're dealing
 6    with, even if it's an unincorporated association --
 7            THE COURT:  Slower.
 8            MR. SCHOEN:  I'm sorry.  If it's a foreign
 9    unincorporated association -- and by foreign, I just mean a
10    non-New York unincorporated association -- we have to look to
11    how that entity is treated back in its domicile.  Those are the
12    cases we've cited that they take issue with, and we cite it
13    again in the reply later on.  I can give the Court the cites to
14    pleadings and all that, but, again, I can see the Court has
15    read them all.  So that is an answer to that.
16            The 4(h) argument we've discussed.  The only reason I
17    raise it is because they've tried to claim mileage out of that
18    saying well, they served it under 4(h) as an unincorporated
19    association.  That's the catchall for organizations.  Again, it
20    undercuts their argument because it only applies to groups that
21    can be sued under a common name.  Their position is we can't be
22    sued under a common name.  You got to name our president or
23    treasurer and then prove all the members approved it or
24    ratified it.  That's a different kind of entity.
25            I think that pretty well covers it.  Again, they have

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

43

C89QsokC1

1    the burden of showing what it is and of establishing that they
2    are members, or, as the Court alluded to, or suggested -- I
3    don't see that the Court came to any conclusion -- as the Court
4    threw out as an issue, isn't it fundamentally a question of
5    fact?  If it's a question of fact, then we have no business
6    deciding it at this point.  Certainly nobody has been
7    prejudiced and nobody would be prejudiced by having it go
8    forward all the way through.
9              In fact, two of the five plaintiffs, who they claim
10   shouldn't have any claims here on their demand, on the
11   defendant's demand, have flown over to New York, have had their
12   depositions taken on damages, and have had Rule 35 examinations
13   taken already at great expense and great inconvenience to them.
14             On the Section 1367 argument, your Honor, first of
15   all, again, we don't even get there.  There has been no showing
16   of any conflict of laws in the first place.  Why is that
17   important?  Because they rely on two prongs:  They rely on the
18   prong that you have the discretion to get rid of these claims
19   if it raises a novel issue, that sort of thing.
20             Let me just read from 1367, your Honor.
21             Their claim is that "this case raises a novel or
22   complex issue of state law" -- you know, some jurisdiction
23   other than the federal court -- "and that the claim or
24   Subsection 2" -- I'm reading from 28 U.S.C. 1367(c)(1) and (2).
25             The first one says "it raises a novel or complex issue

44

C89QsokC1

1  of state law."  The second one is "these claims substantially
2  predominate over the claim or claims over which the district
3  court has jurisdiction" -- the ATA claims.
4        "The last proposition, cannot be supported under any
5  reasonable good faith argument that these garden-variety claims
6  of wrongful death and assault and battery would predominate
7  over this thing."
8        What they mean is, well, we would have to apply
9  foreign law for them, and they would predominate because we'd
10  all get bogged down, as Ms. Murphy-Johnson said, in having
11  experts in here for two or three years with foreign law and all
12  that.  Nonsense.  I don't mean that disrespectfully, but it's a
13  nonsensical argument because we don't get to the first part.
14        First of all, case law ad infinitum, and the
15  commentators all say, as the Court said earlier, when we're
16  dealing with torts, contract claims, and that sort of thing,
17  these are not the kind of novel or complex issues that are
18  contemplated by Section 1367(c).  That's right out of Wright  &
19  Miller and cases that they cite.
20        On the second part of it, will they predominate, this
21  is the classic case in which the state court claims are
22  intertwined -- inextricably intertwined with the federal claim.
23  The proof is the same.  The evidence is the same.  You go
24  through one trial with no difference except maybe the elements
25  are more simple than in the ATA.

C89QsokC1

```
 1              But, again, let's talk about the burden.  The first
 2   burden is on them to prove that there is a conflict between New
 3   York law and Israeli law or Palestinian law.  And to say to the
 4   Court today, well, now we don't know what law would apply in
 5   Palestinian territories -- they are the law.  They're the
 6   legislature there.  They are the courts there.  They have the
 7   burden to tell the Court.  It can't just be let's throw it
 8   against the wall, and in the abstract we could have an issue
 9   here, and it could be real complicated, maybe Judge.  Can't
10   tell you why.  Can't tell you how.  Can't tell you what the
11   differences are or what that body of law is, but, you know, in
12   the abstract, that could be out there; therefore, Judge, why
13   don't you just get rid of these things and makes things simple?
14   That's not the way it works, the Court knows that, and it's not
15   fair.
16              Another relevant question:  Would it enlarge the scope
17   of the action at all?  Not at all.  Not at all.  Let me
18   explain.  I think the best way for me to explain what I mean by
19   that, it will take me about three minutes because I want to
20   concretize it and put it in real terms.  I want to tell the
21   Court who the five plaintiffs are that we're talking about and
22   how their claims arise to perfectly, I believe -- not me -- the
23   facts perfectly demonstrate the point I'm trying to make here;
24   both why it wouldn't complicate the case at all and why it's
25   perfectly appropriate for these claims to be in this case.  In
```

46

C89QsokC1

1  fact, this is the classic case.
2           The first plaintiff -- we're talking, again, about
3  five plaintiffs on these claims.  The first plaintiff is
4  Guetta.  In January of 2001, just outside Jerusalem, four men
5  with Kalashnikov machine guns opened fire on a car in which
6  Varda Guetta was traveling with a 14 year-old son Oz.  The
7  shooters got out of their car and they fired at the Guettas'
8  car just a few feet away.  Varda got a close look at some of
9  them.  We intend to prove in this case that those men were
10 officers with the PA Police Department Security Forces.  Many
11 of them are now sitting in jail for carrying out similar
12 attacks in that same area.  The son, Oz, was struck with
13 machine gun bullets and has serious injuries.  He is an
14 American citizen and has an ATA claim.  Somehow, miraculously,
15 the bullets missed Varda, but she has significant mental health
16 issues, as they know from depositions, and, as a result, she
17 has a physically and emotionally crippled son.  And she deals
18 with that every single day.
19          It would be unfair in the extreme to deny Varda the
20 opportunity to present her claims from this same incident in
21 which the claims for her son's injuries are going to be
22 presented.  She has claims for the emotional distress.  She has
23 claims for the loss of consortium, the loss of her mother/son
24 relationship as it was over the last ten years.  So it doesn't
25 add to the scope of this case because the evidence will be the

47

C89QsokC1

1   same.  The evidence will be that she was there and what she
2   suffered.  So, yes, if we have to put on some damages evidence
3   about her, that can increase it a little bit.  That's not the
4   kind of thing we talk about in why we have to get rid of these
5   claims because they would predominate.
6           I'll make it real quick on the others.  In the Bauer
7   incident we allege in March 2002, a suicide bomb blew up on
8   King George Street in downtown Jerusalem.  Dr. Alan Bauer and
9   his young son, Yehonathon, were injured severely and several
10  Israelis were killed.  Again, two officers in the PA Security
11  Services, Abdel Akrim Aweis and Nasser Shawish were convicted
12  of planning the attack and sending the bomber.  They proudly
13  admitted it.  This is one of those cases in which General Zinni
14  handed the PA a list of known terrorists, people who were
15  committing these acts.  They locked up Aweis for about a week
16  or two and then released him.  They knew who he was; they knew
17  what he was going to do.
18          The story gets even worse.  Let me cut to the chase
19  here.  Alan Bauer and his son, Yehonathon, are Americans.  They
20  had ATA claims.  But Revital Bauer, who is Alan's wife and
21  Yehonathon's mother, is not American.  She only has the
22  non-federal claims.  So, again, she'd be out of court, but
23  there's no reason for her to be because this case is going to
24  be tried here and now with all of the same evidence at trial.
25          Goldberg is the third case.  January 2004, a PA

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C89QsokC1

1    policeman Ali Jara got into the number 19 bus in Jerusalem.
2    The attack was planned, we allege, and we will prove, by two
3    other PA policeman, Achmed Salah and Halmi Hamash, who were
4    convicted and got multiple sentences for it.  Among those
5    murdered in the bombing was Stuart Scott Goldberg.  He was
6    Canadian.  So his estate doesn't have an ATA claim, but his
7    wife and seven minor children, who are American, do.  They have
8    their ATA claims here, and they will be litigating it.  So what
9    an absurd result to throw the estate of the fellow who was
10   murdered out while the relatives will be in here and have the
11   right to be in here.
12            Finally, there's the Mandelkorn case, which are two of
13   the plaintiffs.  There in June 2002 a suicide bomber blew up in
14   a crowded bus stop in Jerusalem, killing a group of Israelis
15   and wounding plaintiff Shaul Mandelkorn.  He's not American,
16   but his father, Rabbi Leonard Mandelkorn, is American, and,
17   therefore, the father has a claim under the ATA; but since
18   Shaul is not American, he doesn't have a claim, nor does his
19   mother under the ATA.  But, again, you'll have the father going
20   forward here, all of the facts of that incident, that terrible
21   terrorist incident will be put before the Court and jury in
22   this case in all their detail whether or not those plaintiffs
23   are here.  Those plaintiffs deserve an opportunity to have
24   their case heard.
25            In terms of the depositions, as I say, Revital Bauer,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

49

C89QsokC1

1   the wife, the husband of Alan and the mother of Yehonathon, was
2   deposed already, and she's already had her Rule 35 examination
3   done.
4          Varda Guetta was deposed already June 28.  She had her
5   mental examination June 27 at their demand.  And they already
6   have demands out there for immediately taking the depositions
7   and Rule 35 examinations of the other plaintiffs.  Well, then
8   they should do it because these claims ought to go forward,
9   your Honor.
10         I hate to even throw this out here because, again, I
11   don't think we get off first base with these claims, but if we
12   did, then we ought to be able to amend the complaint at this
13   point and name the president and the treasurer of the
14   association and prove to the Court then that the kinds of -- we
15   don't know who their members are, but if they claim the members
16   are these factions, that each one of those factions has a
17   charter and a policy and a practice of engaging, approving and
18   ratifying these kinds of terrorist acts, so that we would get
19   them that way also.
20         The bottom line is the estate claims ought to go
21   forward for all the reasons we've said, your Honor.  I
22   appreciate the time.  I know the Court has read the papers.  We
23   also rely on the papers.  And I don't mean to undercut anything
24   in the papers that I've said here today.
25         THE COURT:  Let me ask you a side question with regard

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C89QsokC1

1    to your Count Six.  Why is that an independent count?
2             MR. SCHOEN:  Your Honor, it could well be a misnomer
3    considering it to be a cause of action.  This is a solatium and
4    consortium count.  The fact of the matter is, under the ATA we
5    have the right to those kinds of damages.
6             THE COURT:  Damages.
7             MR. SCHOEN:  Yes, your Honor.
8             THE COURT:  That's a determination of damages.  That's
9    not, as I understand it, an independent cause of action.  You
10   say that you want to allege it as a separate non-federal cause
11   of action.  The fact that it may be related to damages in a
12   federal cause of action doesn't make it independently a cause
13   of action unless there is such a cause of action in Israeli law
14   or in New York law, and I fail to find it.
15            MR. SCHOEN:  Let me say this, your Honor ---
16            THE COURT:  I assume you put it in that category of
17   other of common law or non-federal claims, but --
18            MR. SCHOEN:  Because we believe those kinds of damages
19   are also recoverable under the state.
20            THE COURT:  That is what you said, let me go to --
21            MR. SCHOEN:  The Court's point is, it's not a separate
22   cause of action.  I have been in the case two days, and I think
23   that's right, and the Court knows it far better than I do, and
24   the Court has been in the case a lot longer.
25            THE COURT:  You've talked about garden-variety

C89QsokC1

```
 1   non-federal causes of action, such as wrongful deaths, loss of
 2   consortium and solatium, assault and battery, negligence and
 3   infliction of emotional distress.  Then you talk about the five
 4   remaining counts:  Conscious pain and suffering, civil
 5   conspiracy, aiding and abetting, vicarious liability and
 6   respondeat superior and inducement.  They set forth theories of
 7   liability and/or types of damages available, not separate
 8   causes of action.
 9           It seems to me that Count Six falls in that category,
10   not the first category.
11           MR. SCHOEN:  I can't disagree, your Honor.
12           THE COURT:  OK.
13           MR. SCHOEN:  I hesitate to speak for lawyers who have
14   done ten years of work in the case and I'm in it two days, but
15   that's the way I read it.
16           THE COURT:  That's not determinative of this case.
17           Let me just go back to one other issue with regard to
18   your motion to strike.
19           MR. SCHOEN:  Yes, your Honor.
20           THE COURT:  Let me put aside for a second the lack of
21   capacity in the affirmative defense.  What is the utility or
22   purpose of striking all of the affirmative defenses at this
23   point or striking anything at this point?  I understand the
24   difference between a motion to dismiss and a motion to strike.
25   Why am I striking?
```

52

C89QsokC1

1           MR. SCHOEN:  Again, your Honor, I think part of this
2    is -- I will tell you how I read it, your Honor.  I have a
3    little bit of my own baggage in this one.  The judge I happened
4    to clerk for was real big on this sort of stuff.  That is, he
5    would call up the parties at the time and say, listen, you've
6    thrown this in your answer, I don't want this all -- we're
7    going to have a have a trial on that.  Let's just clean it up.
8    I think part of that is what this is.  For example, one of the
9    objections in the motion to strike is that the defenses are
10   just too conclusory.  Then we break it down.
11          But as to affirmative defenses three and six, we say
12   these allege personal jurisdiction and improper venue, those
13   have already been ruled on.  No reason for them to be in the
14   answer.  They were dismissed on a motion.
15          THE COURT:  So I ignore them.
16          MR. SCHOEN:  OK.
17          THE COURT:  As I say, it's just a matter of style.
18   You're right.  Your judge may have stricken them.  I don't even
19   want to spend the time having to argue about striking them.  I
20   will just ignore them.  If those issues have been resolved,
21   they've been resolved.  Every time I dismiss something out of a
22   case, I don't need to go back and rewrite the pleadings.  It's
23   not there.  My attitude is that if they have alleged
24   sufficiently and put you on notice of any claim, counterclaims,
25   or affirmative defenses, the only question in my mind for me to

53

C89QsokC1

```
 1   address is whether or not at the end of discovery there is a
 2   basis in which to put forth those affirmative defenses in
 3   support of a summary judgment motion or to go to a jury with
 4   those affirmative defenses.
 5          MR. SCHOEN:  I understand, your Honor.  I think
 6   another issue, just as a matter of law, was plaintiffs take the
 7   position that Twombly and Iqbal apply to affirmative defenses,
 8   and we cite a whole host of cases that say that, and say if
 9   they can't support these things, they ought to go out --
10          THE COURT:  Which affirmative defense don't you
11   understand that they are asserting and why they are asserting
12   them?
13          MR. SCHOEN:  I think we understand them.
14          THE COURT:  So, what else does Iqbal and Twombly
15   require other than sufficient specificity for you to understand
16   the nature of the affirmative defense so that you can confront
17   that affirmative defense?
18          MR. SCHOEN:  I think specifically, for example, for
19   the fourth defense of lack of capacity, this dovetails with
20   that argument under Rule 9, and, that is, they have the burden
21   of setting out the facts that they know about that make them
22   this unincorporated association.
23          THE COURT:  They don't have to prove it in their
24   answer.  They just have to give you notice of what they claim
25   is the nature of the affirmative defense.  It seems to me that
```

C89QsokC1

1  when anyone reads from the plaintiff's side that they were
2  asserting a lack of capacity, that the only reasonable
3  conclusion to reach at that point was that they were asserting
4  a lack of capacity based on the fact that they are not an
5  unincorporated association.
6          MR. SCHOEN:  I hear the Court.  I would just say that
7  I think the rules require them to also set out the facts that
8  support it, and, remember, we have this problem with their
9  26(a) disclosures.
10          THE COURT:  Well, that's a different question.
11          MR. SCHOEN:  That's right.
12          THE COURT:  You could have enforced the 26(a)
13  disclosures or moved on the basis that the disclosures are
14  insufficient, but that doesn't go to the pleadings.  The
15  disclosure doesn't go to the pleadings.  It goes to whether or
16  not they made sufficient disclosures.
17          MR. SCHOEN:  Yes, your Honor.  That's raised in our
18  cross motion, of course.  The disclosures were insufficient,
19  and that that's relevant to this issue as well.
20          THE COURT:  Well, the disclosures may be insufficient
21  and may warrant preclusion of certain evidence that wasn't
22  disclosed, but I'm not sure how that independently factors into
23  my evaluation as to whether the pleadings are sufficient.  I
24  assume that you would say I should reject their argument that
25  your disclosures were insufficient, so, therefore, you fail to

55

C89QsokC1

```
 1   state a cause of action in your complaint.  Those aren't
 2   related to each other.  Those are two different legal analyses.
 3            MR. SCHOEN:  I hear you, Judge.
 4            THE COURT:  So, at this point, as I say, my reaction
 5   is for the purpose of cleaning up the pleadings, if I spend
 6   most of my time trying to do that in cases, I'd be spending a
 7   lot more time doing that than concentrating on the merits of
 8   the case.  With regard to any affirmative defense, I'm not sure
 9   that you have articulated which affirmative defense -- I
10   understand your arguments about what issues have already been
11   addressed, and that they're no longer in this case; but with
12   regard to an argument as to any particular affirmative defense,
13   I'm not sure which affirmative defense that you say is
14   inadequately pled on the basis that it is not pled in a manner
15   in which you sufficiently understand what is the nature of the
16   affirmative defense that they intend to pursue in order to
17   defeat liability.
18            MR. SCHOEN:  I understand, your Honor.
19            THE COURT:  So, is it your position that -- when you
20   say the underlying facts, I assume it's not your position that
21   even with regard to capacity, if they said that we assert the
22   affirmative defense of lack of capacity because we are an
23   unincorporated association, and, therefore, cannot be sued, you
24   wouldn't argue that some other factual allegation of proof
25   would be necessary beyond that.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

56

C89QsokC1

 1              MR. SCHOEN:  Under Rule 9, I would, your Honor.
 2              THE COURT:  What else would you say would be -- they
 3       would have to give you the proof on that?
 4              MR. SCHOEN:  They have to make the assertion with
 5       their defense, and that facts are peculiarly within their
 6       knowledge.
 7              THE COURT:  But what facts are peculiarly within their
 8       knowledge?  If they simply said, we have the affirmative
 9       defense, and they didn't articulate this, but I think you
10       understood this to be their position.  So if they had
11       specifically articulated in the affirmative defense, that we
12       have the affirmative defense of lack of capacity to be sued
13       because we have been determined to be and we are in fact an
14       unincorporated association which cannot be sued under New York
15       law for these non-federal claims, you are not saying that they
16       would have to lay out in attached chapter and verse what
17       created them and who their members are and how they're an
18       unincorporated association, as long as they put you on -- this
19       is notice to you.  Even in terms of affirmative defenses, that
20       is clearly a plausible theory under Twombly and Iqbal, and it's
21       clearly sufficient to put you on notice that they claim to
22       establish as a defense to any cause of action that you might
23       otherwise establish that you have sued an entity which cannot
24       be sued.  I'm not quite sure what else you say that they would
25       be required to put in a plea.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

C89QsokC1

```
 1              MR. SCHOEN:  Your Honor, I refer the Court to DE 196
 2   at page 9.  We just kind of set out sort of the body of case
 3   law starting with the Pressman v. Estate of Steinvorth case.
 4   What they say in there in fleshing this out, what do we mean by
 5   Rule 9(a) and what's a waiver?  They say:  He waived the
 6   capacity defense by waiting more than seven years before
 7   raising it.  That's not what your Honor is talking about right
 8   now.
 9              THE COURT:  But they're not even raising a waiver
10   argument in that regard.  You're raising an insufficient
11   pleading argument.
12              MR. SCHOEN:  In this argument, of course, the Court's
13   aware we are waiving the waiver argument but they waited so
14   long -- they raised it first and then they, we say abandoned
15   it, and then raised it again.  That's what happened in
16   Pressman.
17              THE COURT:  Slow down.  Slow down for a second.
18              I understood your waiver argument and the failure to
19   sufficient plead the affirmative defense argument to be two
20   separate arguments.  Is that not two separate arguments?
21              MR. SCHOEN:  Two separate arguments.  The only reason
22   I raise it now is because in Pressman, they put it in that
23   context.
24              THE COURT:  Right, in the waiver context.
25              MR. SCHOEN:  Not just the waiver -- I'm sorry, your
```

58

C89QsokC1

1   Honor.  They say because he failed to be more explicit in his
2   answer, he has waived it.  So it's a waiver because he didn't
3   properly or timely raise it.  That's an argument we have.  And
4   in this context, the way they call it in Pressman is they call
5   it a waiver by not explicitly laying out supporting facts.
6   Rule 9(a) requires not only pleader to make a specific negative
7   averment of the plaintiff's capacity to sue, but also that
8   averment to include "such supporting particulars as are
9   peculiarly within the pleader's knowledge."
10          In this case, they only asserted that we lacked the
11  requisite standing to bring the case, but they didn't give any
12  particulars or explanation, the Court said, and the Southern
13  District here, the Court said, and, therefore, they waived the
14  issue for not being specifically -- for not laying out the
15  supporting facts.  In this case, I would say who the members
16  are, what makes them an unincorporated association, because it
17  gives us notice then.
18          THE COURT:  On what point do you say they waived this
19  because at some point you knew this, so they didn't.
20          MR. SCHOEN:  I still don't know why they claim they're
21  an unincorporated association.
22          THE COURT:  And you say because you don't know at this
23  point why they claim that they're an unincorporated
24  association, that they have waived that argument?
25          MR. SCHOEN:  Yes, your Honor.  And I don't believe
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

C89QsokC1

1   they are a membership organization, as we know that to be
2   required under unincorporated association.  If they are, I
3   don't know who their members are, and I say -- they do know.
4   If they are going to take the position --
5           THE COURT:  But you do know it to one extent.  You
6   know it to the extent that they have been determined to be an
7   unincorporated association in other cases, so you are at
8   least -- to sort of say it is somehow a surprise to you that
9   somebody would say this and why they would say that is a little
10  bit --as I said, that's why I say it sounds to me you are
11  making solely a waiver argument.  You are not making anything
12  other than a waiver argument.
13          (Continued on next page)
14
15
16
17
18
19
20
21
22
23
24
25

C895sok2                       argument

1              MR. SCHOEN:  It's a waiver and an insufficiency
2      argument under Rule --
3              THE COURT:  Well, I'm not sure -- as I say, I'm not
4      sure that it's a waiver of argument that they didn't put you on
5      notice as to the nature of the affirmative defense so that you
6      can obviously have an opportunity to either move to dismiss it
7      or to explore any discovery.  I don't understand that you were
8      in such a position.
9              MR. SCHOEN:  Well, we have said we needed discovery on
10     that issue, of course before --
11             THE COURT:  Right.  So, if you get discovery on the
12     issue then why is it waived?
13             MR. SCHOEN:  I still think it is a violation of Rule
14     9.
15             THE COURT:  Have you requested discovery on that
16     issue?
17             MR. SCHOEN:  Yes, your Honor.  We have discovery
18     requests for cases in which they've sued and been sued.
19             THE COURT:  Okay.
20             MR. SCHOEN:  That sort of thing.
21             THE COURT:  Are they somehow in default on responding
22     to those outstanding requests?
23             MR. SCHOEN:  I don't know the answer to that but
24     they're asking your Honor to dismiss these claims and are
25     saying we don't need any discovery.

C895sok2                       argument

```
 1              THE COURT:  No, but I'm not -- I'm not focusing on
 2  what they're asking me to do, I'm focusing on what you're
 3  asking me do.  I mean, you are saying they have waived it even
 4  though you targeted a discovery request that is still
 5  outstanding, they have not defaulted on appropriately and
 6  timely responded to that discovery request.  So why, under
 7  those circumstances, should I say that they have -- you're in a
 8  position to say that you don't understand the nature of their
 9  claim and that's sufficient for you to confront and disprove
10  that affirmative defense?
11              MR. SCHOEN:  Let me put it like this, your Honor.
12              THE COURT:  Or explore that in discovery.
13              MR. SCHOEN:  Let me put it like this, if may.
14              I think part of the reason for the rule is that
15  requires this so that we are not just engaging in endless
16  motion practice and briefing, let's flesh it out from the start
17  so we know what we're talking about with the answer; not so
18  that, your Honor, we can show up today after all of this
19  motions practice and say -- I don't mean this in any way as a
20  personal attack at all -- but I'm saying from the defendant's
21  perspective, well, I guess we're an unincorporated association
22  because we haven't been anything else so far.
23              THE COURT:  But aren't you already in that position?
24  If you weren't in that position you wouldn't have been in a
25  position to articulate and generate the specific discovery
```

C895sok2                    argument

1    requests that you say were relevant to that issue.  You have
2    already done that.  Why would a -- if you have already
3    requested what you know is the relevant inquiry to defeat that
4    affirmative defense or to argue that they produce no proof and
5    so order that from the defendants, in what way should I say
6    that?
7              MR. SCHOEN:  If the Court's position is no harm, no
8    foul, in a sense, I hear you.  I think there is a foul because
9    I think it cost us a great deal extra time and effort and money
10   and so on having to deal with the issue without knowing --
11   without them meeting their obligation because it is part of the
12   same obligation carrying a burden of proof, that is, why are
13   you an unincorporated association, who are your members, how do
14   you establish those things.  And in the answer there is a Rule
15   98 for a reason.  It distinguishes between lack of capacity and
16   other kinds of other defenses and it says you have to give us
17   the underlying facts.
18             Judge, are we finished?
19             THE COURT:  Yes.
20             MR. SCHOEN:  I mean you make it -- this is what a
21   lawyer lives for, frankly, to have a Court this prepared when
22   we come in here for argument.
23             THE COURT:  I know.  It is important for all parties.
24             MR. SCHOEN:  I very much appreciate it.
25             THE COURT:  I will let them respond.

63

C895sok2                    argument

1              MS. FERGUSON:  You have me back again, your Honor.
2              THE COURT:  Sure.
3              MS. FERGUSON:  Just briefly on whether there was sort
4    of a foul in the way in which the affirmative defense of lack
5    of capacity was raised.
6              The PA and PLO fully briefed this issue back in 2007
7    and the Court wanted to defer ruling on that question until the
8    threshold of personal jurisdiction issue was resolved.  That
9    took some time to resolve and, meanwhile, we preserved our lack
10   of capacity argument and then, of course, raised it in the
11   answer so there has been no waiver, there has been no
12   prejudice.  The plaintiff has been on notice since 2007 not
13   just that we intended to raise a lack of capacity defense but
14   of the very nature of the argument and what it rested on
15   because we actually briefed the issue in 2007.  So, I wanted to
16   make that point clear.
17             With respect to the lack of capacity argument, I think
18   it has become somewhat muddled in terms of what the different
19   kind of points of inquiry are and what law one looks to for
20   these different points of inquiry, and I think it is very
21   important to distinguish between the first question of:  What
22   kind of entity is this?  Is it a corporation?  Is it a state?
23   Is it an unincorporated association versus if it is an
24   unincorporated association what law do we look to determine
25   whether it has the capacity to be sued?  And my opposing

C895sok2                        argument

1   counsel has argued that well, sure, the PLO might be an
2   unincorporated association in a general sense, but under New
3   York Law it is not an unincorporated association.  Well, New
4   York Law does not govern the status of the PLO or the PA under
5   the Federal Rules of Civil Procedure.  That's become a question
6   of federal common law, the what is it.
7           What the Federal Rules of Civil Procedure then tell
8   you is that if the PLO is an unincorporated association, then
9   you go to the law of the forum to determine its capacity to be
10  sued.
11          There is also this question that sort of comes into
12  play that creates some confusion about, well, who are its
13  members and did its members ratify the unincorporated
14  association's actions.  Well, we don't even get to that point
15  because if you accept the premise that the PA and the PLO are
16  unincorporated associations and then you go to law of the
17  forum, New York, it tells you that the unincorporated
18  associations cannot be sued in their own name, they have to be
19  sued in the name of the president or the treasurer.  If the
20  plaintiffs had done that, which they didn't, then there would
21  be the question of whether they sufficiently alleged that the
22  members had ratified the conduct.  But we don't have that, the
23  valid complaint even moves forward because it named the PA and
24  PLO, not the president or treasurer and the plaintiffs, even
25  though they have been on notice since 2007 that we have this

C895sok2                    argument

 1  lack of capacity defense and the nature of that defense, they
 2  have not sought leave to amend.  They haven't filed a complaint
 3  against the president or treasurer.  So, the notion that we
 4  need discovery to determine every single member of the PLO or
 5  whether every single member of the PLO ratified this action,
 6  that's putting the cart way before the horse because they don't
 7  even have, under New York Law, a valid claim to proceed on
 8  because they've sued the wrong entity, or they've sued it in
 9  its own name, I should say.  So, I wanted to clarify that point
10  as well.
11          I also think, your Honor, that it would be a mistake
12  to keep sort of kicking this can down the road with respect to
13  these supplemental law claims by suggesting, well, maybe there
14  is some other facts out there that would help us resolve this.
15  These are, I acknowledge, sui generis organizations, the PA and
16  the PLO, but I submit that the plaintiffs have not identified
17  specific discovery that would help us to figure out how, under
18  U.S. law, we are going to treat this sui generis thing that is
19  the PA and PLO and we all sort of know in broad, general terms
20  what they are.  They want discovery on, well, I would like to
21  see charters of every individual member of the organization to
22  see if they've ratified it.  Well, we don't get to that
23  question.  We don't get to that question because they haven't
24  filed a suit against the president or treasurer.  So, there is
25  no reason to keep kicking this can down the road because there

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

66

C895sok2                        argument

1    isn't another avenue with respect to the capacity point.
2            With respect to the supplemental, our sort of
3    additional argument under 1367, I understand your Honor's
4    position that well, yes, it is complex here, but it would be
5    complex against Israel as well and I think it is important to
6    understand that we did raise this argument of lack of capacity
7    back in 2007 when the statute of limitations had not run in
8    Israel.  Moreover, this is a highly -- I can't stress enough
9    how difficult it is for the PA and the PLO to litigate complex
10   cases in U.S. Courts and deal with the obligations of U.S.
11   civil discovery.  We have been in discovery for quite a time
12   now, this case has been ongoing since 2004, active since 2007.
13   We are getting -- we are getting very near the end of fact
14   discovery.  Fact discovery is set to close December 21st.  And
15   so, the PA is sort of getting there but now to open up this
16   entire tranche of additional claims involving different sources
17   of foreign law and requiring -- and where all the facts and the
18   experts and the witnesses and the documents, everything is over
19   there, so it is very expensive to litigate it here as opposed
20   to in the region.  It is very burdensome.  The issues are
21   considerable, considerable expense and delay, and it truly is
22   already a complex case.
23           THE COURT:  Well, the PLO and PA has been involved in
24   numerous litigation in the United States in various courts.
25           MS. FERGUSON:  Yes.

67

C895sok2                    argument

```
 1            THE COURT:  I don't know why this is any more
 2   burdensome than any other litigation that they must expect,
 3   particularly under the ATA, to be involved in.  And, as I say,
 4   even I if I accept your argument, this case doesn't go away.
 5            MS. FERGUSON:  No, this case does not go away because
 6   under the statute, if a U.S. national has been injured, they
 7   have a right to bring suit here.
 8            THE COURT:  So, I can't give them a more convenient
 9   forum, I can only put them into forums which is less than
10   convenient.
11            MS. FERGUSON:  But, with respect to embarking on what
12   would be a complicated, lengthy, burdensome process of expert
13   discovery and litigation of numerous foreign law claims --
14            THE COURT:  If you don't, give me a scenario where you
15   won't have to do that anyway.
16            MS. FERGUSON:  Well, they should have brought those
17   claims in Israel.
18            THE COURT:  The only argument that I can assume you
19   are making is that if I grant your motion, since they are
20   time-barred in Israel, you won't have to do that again in any
21   other forum because they will have no forum to litigate these
22   common law claims.
23            MS. FERGUSON:  Even if Israel were to toll the statute
24   and allow the claims to move forward.
25            THE COURT:  Then you would have double work.  I mean,
```

68

C895sok2                    argument
1   how does that --
2               MS. FERGUSON:  Except the experts are likely to be in
3   the region.
4               THE COURT:  Okay.
5               MS. FERGUSON:  We will have more access to people that
6   speak those languages in the region.
7               THE COURT:  Why is it that you don't have access to
8   those people in the region even if you are litigating
9   ultimately in a case here?
10              MS. FERGUSON:  Well, the PA's U.S. counsel doesn't --
11  we don't read Arabic or Hebrew.
12              THE COURT:  That's not where it should be, that is who
13  the lawyer should be.  Get yourself some lawyers who speak
14  Arabic or Hebrew because that is what is going to have to
15  happen.  That is not a compelling argument about the forum,
16  that's a compelling argument about who is involved and what
17  lawyers and support staff is involved in litigating.
18              MS. FERGUSON:  Your Honor, there is a case in front of
19  the Supreme Court right now, the Kiobel case involving the
20  alien tort statute where the Court is inquiring as to under
21  what circumstances should U.S. Courts exercise jurisdiction
22  over claims involving foreign defendants, involving foreign
23  plaintiffs and actions that occur abroad.  Now, here there is a
24  statute that says, yes, the U.S. Court will take it if the U.S.
25  national has been injured but now that's become the vehicle for

C895sok2                          argument

1   attaching any number of other claims.
2              THE COURT:  That arise out of those incidents.
3              MS. FERGUSON:  Right, but that add even more -- that
4   now have a U.S. Court not just adjudicating a federal statute
5   but now you have the U.S. Court trying to decide whether under
6   the law of the West Bank whether they actually recognize a
7   claim for negligent infliction of emotional distress.
8              THE COURT:  You keep saying that but I haven't
9   confronted that in this case yet and I'm not sure on what
10  scenario you say that this Court is going to have to confront
11  that.  That has not been an issue that's raised by either
12  party, that somehow that we are going to be trying to decide
13  whether or not the defendants are liable under some other law
14  other than the law -- the ATA and the law that is consistent in
15  both New York and Israel.
16             MS. FERGUSON:  Well, that's where we keep going back
17  to the Second Circuit case that says that the choice of law
18  rules for torts would have the Court, as to conduct-regulating
19  activity, apply the law where the conduct occurred.  And some
20  of the conduct here is alleged to have occurred in -- not in
21  Israel but in the West Bank.
22             THE COURT:  Well, that issue, in all of these years,
23  has not been raised in this Court, so now you say that you
24  anticipate that that's what you may raise in the future and
25  make those arguments.  There is only a limited amount of

C895sok2                    argument

1  consideration that I should give to the fact that you say now,
2  Judge, send it someplace else because we think we are going to
3  raise an issue somewhere down the line that some other law
4  should apply other than the law we have all been talking about
5  all of these years.
6        MS. FERGUSON:  Well --
7        THE COURT:  I mean, you have never raised that issue
8  in this case.  That issue has never been raised.
9        MS. FERGUSON:  These aren't our claims.
10       THE COURT:  That's your claim.  That's your issue.
11  They're not raising that issue.
12       MS. FERGUSON:  But the complaint, in a way it puts us
13  at a considerable advantage because they don't say what the
14  source of law is for these claims.  They definitely don't say
15  it is anything other than New York or Israel.  They're silent
16  on it.
17       THE COURT:  They're not silent.  They specifically
18  said in their papers it is New York or Israel and those laws
19  are not inconsistent with each other.  If you have a different
20  position you have not raised a different position with regard
21  to what law applies until today when we started discussing
22  this.  Anybody is going to raise that --
23       MS. FERGUSON:  Subsequent to the briefing the Second
24  Circuit decision came out holding that it is not the place
25  where the injury or the loss occurs that controls but the place

C895sok2                    argument

1    where the conduct occurred.  So, there was a recent development
2    that came off our briefs that we alerted the Court to in a
3    letter so that's why this has come up, because there is this
4    recent Second Circuit case decided after the briefing that
5    makes not the law of Israel controlling but the law where the
6    conduct occurred.
7              THE COURT:  Well, even if I were to accept all of that
8    argument it does not lead to the conclusion in the abstract
9    that this case should be somewhere other than here because the
10   majority of the activity that's at issue -- the activity that
11   you say you want to rely upon and the situs of the activity
12   that you say you want to rely upon is the minority of the
13   activity that is at issue here, not the majority of the
14   activity that is at issue here.  So, you're saying that even
15   though most of the activity affected U.S. citizens in Israel,
16   you say because of the connection with activity that you say is
17   attributed to the PLO or the PA in a different region should
18   compel that the law of that region be applied.  It is unlikely
19   that you, on these facts, that that is going to be a compelling
20   argument because that's not -- you have not even articulated
21   that that's -- making that analysis would compel one to say
22   that some other law other than the law of Israel or New York or
23   the ATA should apply.  You haven't even articulated such a
24   position.
25             MS. FERGUSON:  But with respect to the plaintiff's
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

C895sok2                    argument

1    claims that the PA and PLO's own conduct creates liability --
2            THE COURT:  That's a limited part of the claim.  That
3    is a limited -- that is not the predominant part of the claim.
4            MS. FERGUSON:  I am missing, then, what the
5    predominant part of the claim is.
6            THE COURT:  The predominant part of the claim is the
7    injury and death that occurred at the locations that they
8    occurred and its effect on United States citizens.  That's the
9    primary part of the claim.  That's not a sophisticated thing.
10           You are saying that because they say the PLO made some
11    decisions in the region that somehow that should mean that all
12    of these claims should be decided in that region or according
13    to that law.  Now, if you want to make that argument maybe
14    there will be appropriate time to make that argument but, right
15    now, as an argument in the abstract, it is not a compelling
16    argument for me to say that, you know, I should -- oh, that's
17    too complicated in this case, it is much less complicated for
18    some other unknown jurisdiction to go do that analysis
19    separately even though we're litigating here, and somehow even
20    a balance of convenience says it is more convenient for that to
21    be done someplace else.  You haven't articulated where and how
22    it is more convenient or that there is really going to be any
23    compelling reason, compelling evidence to indicate that the
24    factors to consider are going weigh, somehow, more heavily
25    somewhere else other than Israel or the United States.

C895sok2                    argument

1        MS. FERGUSON:  I would just encourage your Honor to
2   review the recent Second Circuit decision because with respect
3   to the damages issues there you do look to the place where the
4   injury occurred and that would be Israel.
5        THE COURT:  You want me to review --
6        MS. FERGUSON:  The Second Circuit decision.
7        THE COURT:  I'm aware of the Second Circuit Licci
8   decision.  Very familiar with it, even before it was a Second
9   Circuit decision.
10        MS. FERGUSON:  I understand, your Honor.
11        THE COURT:  I know what the issue is and I know the
12   limited issue that they addressed and I know the more broader
13   issue that I had to address before they got it and I don't
14   think that that changes, at all, my analysis here.  Matter of
15   fact, it is very consistent with my analysis here.  If you were
16   standing here making an argument that you could articulate a
17   basis to conclude that this litigation is more appropriate
18   someplace else or some law is more appropriate to apply, then
19   the laws that we have been discussing, then that would advance
20   that argument.  But, to argue in the abstract, well, we are
21   going to argue at some point that maybe there is connections
22   with the different region and that other laws might be laws
23   that can be considered, that doesn't get you over the hurdle of
24   trying to convince me on this record that I'm aware of at this
25   point that somehow this is more appropriate for a region or to

C895sok2                          argument

```
 1   apply some laws that are different than either the laws of the
 2   United States, New York, or Israel; I just haven't articulated
 3   the compelling place or set of laws that should apply instead
 4   of those.
 5            MS. FERGUSON:  I didn't know if it would be useful to
 6   have a briefing on some of these choice of law issues.
 7            THE COURT:  If that becomes relevant at the
 8   appropriate time.  That's usually my response.
 9            MS. FERGUSON:  Our foremost argument is the lack of
10   capacity argument, so thank you, your Honor.
11            THE COURT:  You're welcome.
12            MR. SCHOEN:  May I have a minute, your Honor?
13            THE COURT:  Okay.  I will give you one minute.
14            MR. SCHOEN:  Your Honor, just in brief response.
15            I'm not sure how the last thing fits in with not
16   kicking the can down the road but, in any event, I know
17   Ms. Ferguson is trying but the idea here, it is just
18   transparent.  They have different experts in the region.  There
19   is no special expert for Varda Guetta.  There are other mothers
20   in the case who suffered the kind of injury and damage.
21   They're the same experts, that's the whole point here why we
22   don't dismiss the case here, it is the same trial.
23            THE COURT:  I thought she was moreso -- maybe I am
24   incorrect, moreso referring to experts on what law would apply
25   rather than experts.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C895sok2                        argument

1          MR. SCHOEN:  Those were two different subjects.  She
2    raised that and then raised this and because she said how
3    difficult it is for them to conduct discovery in the United
4    States.  That's an argument for Congress.  They're conducting
5    the same discovery -- we have the ATA.  Congress made that
6    decision and the Licci case, again, nobody is going to tell the
7    Court about that case, the Court knows the case better than
8    anyone, but that has to do with the American Express Bank
9    there, their only role in the case was transactions.  That's
10   not someone situated like Ms. Guetta or these other people
11   because that case is already here.  Are you trying that other
12   case?  In that case are you not otherwise trying a bank
13   transaction case?  The facts of this case are the facts of this
14   case and that doesn't change whether these plaintiffs are in it
15   or these state law claims are in it.
16          By the way, the idea of this Palestinian law and that
17   they can just throw this out there again, we have lost all
18   concept of burdens here.  Again, they are the law.  If there is
19   law that's inconsistent or in conflict with New York or Israeli
20   law, they should have told you that.  It probably isn't,
21   frankly, because of the mandated authority that operated there
22   but I don't know, we don't need to guess.  It is not an issue
23   in this case.
24          Anyway, thanks, Judge.
25          THE COURT:  This is what I am going to do because I
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

C895sok2                    argument

```
 1   think it is time to move this case forward so I am going to
 2   rule today on both of these motions.
 3            With regard to the defendant's motion I'm going to
 4   deny defendant's motion.  I think that in this case that it is
 5   inappropriate at this stage of the proceeding to grant the
 6   defendant's motion to dismiss for lack of capacity on this
 7   record.  I will do so without prejudice to revisit this issue
 8   on a record after discovery.
 9            This is an affirmative defense.  It is the burden of
10   the defendant to prove this defense and it is the burden of the
11   defendant to demonstrate on what evidence they intend to prove
12   this defense of a lack of capacity either on summary judgment
13   or before -- quite frankly, I'm not even sure that I can
14   imagine a situation where this is a jury question but, you
15   know, if there are factual disputes it could be possibly.  But,
16   clearly, it is the defendant's burden to prove its affirmative
17   defense and having that burden the defendant can't simply rely
18   on the pleadings or prior litigation.  It must specifically
19   point to evidence on which they say indisputably demonstrates
20   that affirmative defense to the exclusion of any other
21   conclusion.  At this stage of the proceeding defendants have
22   not done that nor are they in a position because no discovery
23   is -- even outstanding discovery requests have not -- related
24   to this issue have not yet been responded to.
25            So, on this record I think it is inappropriate for me
```

C895sok2                      argument

```
 1   to dismiss this case based on any finding that the defendant
 2   has demonstrated and met its burden to demonstrate its
 3   affirmative defense of lack of capacity when there is no
 4   evidence in this record, there has been no discovery in this
 5   case, there isn't even an articulable set of facts that have
 6   been developed in this case for me to make a decision that
 7   these sets of facts demonstrate the affirmative defense of lack
 8   of capacity without disputed evidence and leading to only one
 9   conclusion for that, the PLO lacks the capacity and the PA
10   lacks the capacity to sue and be sued on New York Law.   In
11   fact, the defendants even raised an additional issue by the
12   discussion today with regard to which actual law applies.  So,
13   if the issue is to be whether or not and it is argued that
14   somehow I should decline to assert jurisdiction over these
15   claims because it is a complicated issue to determine which law
16   applies with regard to non-federal ATA claims, then it is
17   obviously I am not in a position if I can't even determine at
18   this point that, which laws apply with regard to these claims
19   that somehow the defendant has already met its burden to
20   demonstrate that it has an affirmative defense with regard to
21   the applicability of New York Law.  One cannot argue that some
22   other law other than New York Law would apply, might apply with
23   regard to this or other issues and then say at the same time
24   that indisputably they have a lack of capacity to be sued
25   because New York Law says that they cannot be sued as an
```

78

C895sok2                        argument

```
 1   unincorporated association.  If the defense wishes to prove
 2   that affirmative defense and establish that affirmative
 3   defense, then they have an obligation to exchange this
 4   information and the evidence on that that they intend to rely
 5   upon, the specific evidence that they intend to rely upon, and
 6   then they have an obligation to meet their burden of proof to
 7   demonstrate that they are in fact what they wish this Court to
 8   conclude at this stage without any evidence in the record
 9   that's been developed during this litigation, that they are in
10   fact an unincorporated association.  As I stated, I think it is
11   inappropriate for me to simply say that such a determination
12   that that burden is met simply because Courts in other
13   litigation, first with regard to specific issues that the Court
14   was addressing, even with regard to similar issues that have
15   been addressed in this Court, have made a determination that
16   for the purpose of those issues that they would accept that as
17   having a premise and that may prove, in this case, I see no
18   evidence which I can review which gives me basis to understand
19   that any Court has gone through an analysis -- a factual
20   analysis with regard to the nature of the PA and the PLO, its
21   establishment and its organization to articulate on what facts
22   that an independent objective conclusion is to be made, that it
23   is an unincorporated association and that its status is an
24   unincorporated association would preclude their bringing
25   non-federal claims under New York or Israeli law.
```

79

C895sok2                    argument

1        So, I'm going to deny that motion because the
2   defendant is not able to demonstrate, based on this record at
3   this stage of the proceeding, that they have indisputably an
4   affirmative defense of lack of capacity that would preclude
5   liability in this case.
6        Also, I am denying the application and decline to
7   assert ancillary pending jurisdiction over the nonfederal
8   claims.  In this case, given all the consideration of what
9   factors to consider with regard to assertive or decline to
10  assert jurisdiction, primarily any issues that are
11  determinative here that makes no sense to turn this one case
12  into more than one case in more than one jurisdiction.  There
13  is no compelling argument for me to do that.  The only
14  compelling argument to, which would give me a scenario that's
15  different than that is that, as I say as I heard it in a movie,
16  to get one big falling object and turn it into a number of big
17  falling dangerous objects isn't a compelling argument.
18       The only argument that this would somehow simplify
19  rather than complicate for all parties and -- the argument that
20  this would put a lesser burden than a greater burden on any of
21  the parties would simply be the argument that I should decline
22  jurisdiction because it would preclude the plaintiffs from
23  pursuing these claims in any jurisdiction because of the
24  statute of limitations.  Again, that is not a compelling
25  argument for me to decline jurisdiction if I know that it

C895sok2                        argument

1    simply denies the plaintiff the forum that they have already
2    chosen and they have no reasonable alternative of forum at this
3    point to resolve these issues and they have a legal right to
4    resolve those issues in this forum.  If they have a legal right
5    to resolve these issues in this forum it is not compelling to
6    say that I should decline jurisdiction knowing that they will
7    be denied the right to go in an alternative forum because the
8    statute of limitations has already run.
9         All of your arguments made with regard to the
10   complication of proceeding with these issues and resolving
11   these other issues, whether they would be in conflict of law
12   issues or issues of practical discovery and trial, I think that
13   this Court will be, whatever issues that this Court is
14   confronted with in court, any additional Court that has to deal
15   with those issues separately are going to also have to be
16   confronted with.
17        So, I think that this Court, particularly since they
18   are ATA claims and there are ATA claims which will not go away
19   and those claims arise out of the same set of facts and actions
20   which underlie all of the other claims and there is no related
21   claims that don't arise out of the same set of facts, the most
22   efficient and effective way to resolve the issues and the
23   claims that arise out of the activities at issue is in one
24   lawsuit in one jurisdiction and not in duplicate lawsuits in
25   different jurisdictions simply because they're alleged as

81

C895sok2                    argument

1    different causes of action in different jurisdictions under
2    different law.
3              So, I am going to deny both the motion for partial
4    summary judgment -- I mean motion for judgment on the pleadings
5    and I'm going deny the motion to assert jurisdiction over the
6    pending ancillary claims.
7              There is also a motion -- I believe that there was
8    also a motion by the plaintiffs to, alternatively, to convert
9    this into a Rule 56 motion.  I think that that is inappropriate
10   at this stage of the proceeding.  The defendants have not moved
11   on the basis of independent evidence that's been disclosed in
12   discovery.  Both sides have clearly given indication and
13   particularly the plaintiffs have given an indication that there
14   is significant other evidence that they would be entitled to
15   review in this issue to combat or to determine whether or not
16   the defendants can assert the affirmative defense and so I
17   think that given the status of discovery and the nature of this
18   issue, that it would be inappropriate to convert this to any
19   other motion and the motion as it was stated.
20             With regard to the plaintiff's motion to strike, I'm
21   going to deny that motion.  I think with regard to the issues
22   that have already been resolved a motion to strike is
23   unnecessary and is not appropriate spending time and effort on
24   that.
25             With regard to the motion to strike based on waiver or

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

82

C895sok2                    argument

1   and/or failure to state -- sufficiently state the affirmative
2   defenses, I find that the affirmative defenses, as alleged,
3   have articulated what the nature of the affirmative defenses
4   are and sufficiently put the defendant -- the plaintiff on
5   notice as to what affirmative defenses, the nature of those
6   affirmative defenses, and to the extent that there is a
7   question about the underlying facts which would support those
8   affirmative offenses, I believe that is appropriate for
9   discovery.  There it already has been the subject of discovery
10  requests and those issues are to be resolved in discovery.  To
11  the extent that defendant does not wish to engage in discovery
12  in those issues that are relevant to any of the affirmative
13  defenses, then they can withdraw those affirmative defenses or
14  those affirmative defenses can be precluded.
15          So, I think that the appropriate thing is to move
16  forward efficiently with discovery at this point.  I think that
17  I am not satisfied with the pace of discovery.  I think I told
18  Magistrate Judge Ellis that I expected him to be firm with
19  discovery.  I have also indicated to him that any position, if
20  I deny the motions that are on standing here, my issue is going
21  to be that any position is going to be that other than one
22  summary judgment motion after the close of discovery, there are
23  to be no other motions filed without first a pre-motion
24  conference with Magistrate Judge Ellis, and that pre-motion
25  conference must be preceded by no more than a two-page letter

83

C895sok2                        argument
1    indicating what the nature of the motion is that the parties
2    believe are appropriate at this stage of the proceeding and the
3    nature of the motion and the underlying basis for the motion
4    and why the motion is timely made and is not premature in
5    discovery motion.
6            I think that the motions that have been made, there
7    have been too many piecemeal motions and I think one issue that
8    we have discussed and I think that primarily some is probably
9    even related to the plaintiff's motion to strike in an attempt
10   to preclude piecemeal, untimely motion, I will be able to
11   preclude that from all parties at this stage of the proceeding.
12   All the motions to dismiss should have been made.  If they have
13   not been made I think you need to have a pre-motion conference
14   with the magistrate judge and give him that letter and tell him
15   what motion you intend to make and tell him why that motion is
16   not untimely or premature short of completion of discovery and
17   summary judgment.
18           So, the parties should move forward to complete
19   discovery, move forward in anticipation of full summary
20   judgment briefing if that's the step to take after discovery,
21   and to anticipate that you will be spending, devoting your time
22   to completing discovery on these issues for the rest of the
23   year rather than engaging in further motions generating other
24   pleadings or generating other claims or affirmative defenses.
25           So, what I am going to do is I am going to schedule

C895sok2                    argument
1   before me -- discovery is supposed to be completed in December.
2   I am going to schedule before me a conference January 17th at
3   10:00.  We may not have to meet on that date.  If things move
4   efficiently I would anticipate that you would be complete with
5   discovery by then and you can agree upon a motion schedule for
6   full summary judgment submission and you can give me that
7   schedule and then I can, unless there are other issues to be
8   addressed on January 17th, we can move that date until after
9   the summary judgment motion is fully submitted and if you want
10  to be heard on summary judgment motion.
11          So, as I say, I am going to have further conversation
12  with Magistrate Judge Ellis to make sure that things are moving
13  efficiently and that he makes sure that they're moving
14  efficiently.  If, for some reason, there are some applications,
15  letter applications that are submitted to Magistrate Judge
16  Ellis and he holds a pre-motion conference and he determines
17  that it is a timely and not premature motion that should be
18  addressed in substance on its merits, then he can indicate to
19  me the nature of that motion and I will grant him the authority
20  to tell the parties to go ahead and brief that issue for me or
21  for him or make an independent determination based on my review
22  of the nature of the letter response -- the letter and response
23  and the record before him at the conference whether or not
24  that's a motion that is both ripe and timely to be made in this
25  case.

85

C895sok2                    argument

1        Otherwise, I will see the parties on January 17th at
2   10:00 and we will see where we are at that point in time.  If
3   any issues arise with regard to discovery, they should be
4   raised in writing right away with Judge Ellis.  If we need to
5   meet again before that time let me know and I will schedule a
6   conference before me to address any issues that need to be
7   addressed before that time.  But, otherwise, I will instruct
8   Magistrate Judge Ellis to make sure the parties are on schedule
9   and move forward efficiently and resolve quickly an issue that
10  might otherwise delay the completion of discovery in this case.
11        Is there anything else we need to address?
12        MR. SCHOEN:  No, your Honor.
13        THE COURT:  Anything else by defense?
14        MS. FERGUSON:  No, your Honor.
15        THE COURT:  Thank you, and I will see you, and good
16  luck and I will talk to Magistrate Judge Ellis as soon as I get
17  off the bench.
18        MR. SCHOEN:  Thank you.
19        MS. FERGUSON:  Thank you.
20                         o0o
21
22
23
24
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300