**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:21-cv-03043-RM-STV

SHELLEY LEVINE, *et al.*,

      Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION
and THE PALESTINIAN AUTHORITY (a/k/a "The
Palestinian Interim Self-Government Authority" and/or
"The Palestinian National Authority"),

      Defendants.
------------------------------------------------------------------------X

## <u>DECLARATION OF DR. BOAZ SHNOOR</u>

 **a.** <u>Professional Background</u>

  1. I am a Senior Lecturer at the Academic Center for Science and Law (Shaarei

Mishpat College), in Hod Hasharon, Israel, and have been a faculty member there since 2019.

Before that I was a faculty member at the Academic Center of Law and Business, in Ramat Gan,

Israel. During the last two decades I also held positions teaching law at the Faculty of Law of the

Hebrew University in Jerusalem, and at the College of Management (Academic Studies Divi-

sion) in Rishon Letzion, Israel. During the academic year 2010-2011 I was a visiting scholar at

Cornell University's law school.

  2. My teaching and research fields focus primarily on Israeli tort law, libel law, en-

vironmental law, psychological analysis of law, and honor litigation in an historical context. I am

the author of the book <u>Toxic Torts</u> (2011, Sacher Institute) (Hebrew), co-author of the book <u>Li-</u>

<u>bel Law - De Lege Lata and De Lege Ferenda</u> (2005, Sacher Institute; 2nd. Edition, 2019, Sacher

Institute) (Hebrew), and have authored and co-authored numerous other academic and professional papers on Israeli tort law and other legal topics.

3.     I hold LL.D, LL.M and LL.B degrees from the Hebrew University. My doctoral dissertation dealt with toxic torts. I am a member of the Israeli Bar and licensed to practice law in the State of Israel. A copy of my current curriculum vitae is attached hereto.

**b.  <u>Purpose of this Declaration</u>**

4.     The purpose of this Declaration, which I provide at the request of counsel for the plaintiffs in the above-captioned case, is to provide my opinion regarding assertions relating to Israeli law (detailed below), which are contained in the defendants' Motion to Dismiss Plaintiffs' First Amended Complaint Under Rule 12(b)(2) and Rule 12(b)(6)" (the "Motion").

5.     The bases for my opinion as set forth herein are my professional and academic legal studies, research, teaching and publishing over the course of many years, as well as the statutes, cases and authorities cited in this Declaration.

**c.  <u>Negligence Liability May Be Imposed on Multiple "But-For" Tortfeasors</u>**

6.     The defendants assert in their Motion that because the plaintiffs allege in a different law suit that Syria and Iran are liable to the plaintiffs because they provided material support to the PFLP, the plaintiffs cannot show in this action that the defendants' actions were a "but-for" cause of their injuries, as required for the tort of Negligence under Israeli law. (*Id*. at p. 43).

7.     This assertion simply has no basis in Israeli law. To the contrary, Section 64 of the Israeli Civil Wrongs Ordinance ("CWO") provides in relevant part that "a person shall be deemed to cause damage by his fault when the fault **was the cause or one of the causes** of the damage." (emphasis added). Therefore, multiple tortfeasors may be, and very frequently are

found by Israeli courts to be, "but-for" (*sine qua non*) causes of a single tort, and Israeli courts hold multiple tortfeasors liable in Negligence for a single tort as a matter of course.

8. The rule regarding multiple tortfeasors was clarified in the leading Israeli Supreme Court decision in  C.A. 22/75 **Edri v. Azizian** PD 30(1) 701 (1976), which has been cited dozens of times by the Supreme Court since then. In **Edri**, the Court stated that when two or more tortfeasors are both the sine qua non reason for the Plaintiff`s harm they will be liable jointly and severely for the whole damage, whether they acted jointly or separately, unless the harm each of them caused can be separated from the harm caused by the other, and each separate harm can be attributed to the respective defendant that caused it.

9. For example (and as just one of numerous available examples), in C.A. 12914-06-17 (Mag. Rishon Letzion) **Ilan Tal v. Toby Sivan** (Dec. 5, 2020) (Nevo Publishers), the court found that water damage to the plaintiffs' apartment was caused both (1) by existing building defects (which were the fault of the contractors, who were named as defendants), and (2) by a flood in the apartment above (which was the fault of the upstairs neighbor, who was also named as a defendant). The court concluded that "**each of these factors**" which, as noted, resulted from the independent conduct of different defendants, "**was a sine qua non cause of the creation of the damage**. In other words, **but for the sealing defects**, the flooding event alone would not have harmed the plaintiffs' apartment. So too, **but for the flooding event**, the sealing defect would not have caused the harm." *Id.* at 6 (emphasis added).[1] See also for example the following Supreme Court cases: C.A. 7436/12 **Clal Insurance v. B.I.M. Building Company Inc.** (July 6, 2017); C.A. 7008/09 **Al Rahim v. Al Kader** (Sep. 7, 2010)

---

[1] I read Hebrew and English fluently and I confirm the accuracy of this translation.

10.     Therefore, under Israeli law, even if the court hearing the plaintiffs' action against Syria and Iran finds that their support to the PFLP was a *sine qua non* cause of the terrorist attack, that finding would in no way undermine or conflict with the plaintiffs' assertion that the defendants in the above-captioned action are liable to the plaintiffs for Negligence under the CWO.

### d.  The Defendants Confuse Different Types of "Vicarious Liability" Under the CWO

11.     Defendants also assert in their Motion that the plaintiffs' vicarious liability claims under Israeli law fail because they cannot show "that the Attackers were affiliated with Defendants," or that "the PA or PLO ever authorized or ratified the actions of the Attackers," or that "the PA or PLO expressly authorized the Attack." (*Id*. p. 44). In support of this claim, Defendants cite *Botvin v. Islamic Republic of Iran*, 772 F. Supp. 2d 218, 229-30 (D.D.C. 2011). As explained below, this assertion, too, is not correct.

12.     The CWO includes three different sections § 12, § 13, and § 14, which allow the court to hold a defendant vicariously liable for the actions of the direct tortfeasor. Each of these three alternative sections stands alone, and has its own requirements.

13.     Section 12 of the CWO provides that a person "who participates in, assists, advises or solicits an act or omission, committed or about to be committed by another person, **or** who orders, authorizes, or ratifies such an act or omission, shall be liable" for such act or omission. CWO § 12 (emphasis added). I have emphasized the word "or" because each of the various categories of conduct listed in CWO § 12 constitutes an alternative basis for liability. Thus, a defendant which "assists" the direct tortfeasor may be liable under CWO § 12, even if the defendant did not "participate in," "advise," "solicit," "order," "authorize," or "ratify" the tort. Contrary to the defendants' assertions, therefore, aiding and abetting liability under CWO § 12 does **not require** any authorization or ratification.

4

14.    In fact, the vast majority of Israeli court decisions under CWO § 12 involve the "assists" element of § 12 only—*i.e.*, cases where the defendant only **assisted** the direct tortfeasor. Thus, CWO § 12 functions mainly as Israel's civil "aiding and abetting" provision.

15.    The plaintiffs' First Amended Complaint ("FAC") asserts a claim for aiding and abetting under CWO § 12. (FAC at ¶¶ 233-34). The allegations that the PFLP carried out the attack (FAC at ¶¶ 172-73) and that for years prior to the attack the defendants provided the PFLP funding and various types of in-kind support that enabled and enhanced the PFLP's ability to carry out terrorist attacks in Israel (FAC at ¶¶ 126-46), if true, would certainly make the defendants liable for the attack under CWO § 12.[2]

16.    Section 13 of the CWO deals with vicarious liability arising from an employer-employee relationship, which is not relevant to this case, and is not cited in the FAC.

17.    Section 14 of the CWO deals with vicarious liability arising from a principal-agent relationship (other than an employer-employee relationship). In other words, CWO § 14 provides for **respondeat superior** liability. In the case cited by the defendants, *Botvin*, the plaintiffs sought to impose liability on the basis of CWO § 14, not § 12, and the federal court made clear that it was not addressing § 12. (*Botvin*, p. 230, fn. 13 ("Because the plaintiffs have not asserted the defendants' liability under Article 12, the court will not address this potential theory of

---

[2] The FAC separately alleges that the defendants are liable under the "ratification" prong of § 12, because they make payments to the families of the terrorists who carried out the attack. (*Id*. ¶ 236). The defendants do not appear to address this assertion in their Motion, but I note that the Israeli Supreme Court recently held that because the Palestinian Authority ("PA") maintains a standing program for making payments to imprisoned terrorists, and to the families of terrorists killed carrying out terrorist attacks, the PA can be held liable under § 12 for post facto ratification of a terrorist attack, solely on the basis of the fact that it made post-attack payments to the perpetrators, or to the families of the perpetrators, of the specific attack from which the suit arises. C.A. 2362/19 *Does v. Palestinian Authority* (April 10, 2022) *rehearing denied* C.R. 2744/22 (Aug. 30, 2022).

liability.")). Thus, the language from *Botvin* quoted by the defendants relates only to CWO § 14 (respondeat superior), **not** to CWO § 12.

18.     As the defendants correctly state (quoting *Botvin*), CWO § 14 provides that "[a]ny person who employs an agent ... to do any act or class of acts on his behalf shall be liable for anything done by such agent in the performance of, and for the manner in which such agent does such act or class of acts." (Motion at p. 44).

19.     Contrary to the defendants' arguments, CWO § 14 does not require that the principal "authorized or ratified" the tortious actions of the agent, much less "expressly authorized" those actions.[3] Rather, under § 14, a principal is liable for any act done by an agent in the course of fulfilling his duties as an agent. The liability of the principal is strict and it does not matter whether the defendant intended the agent to perform the tort or not, whether the defendant knew about the possibility of the occurrence of the tort or not, or whether the defendant was negligent or not in appointing the agent. Under controlling Israeli Supreme Court precedent, pursuant to CWO § 14, the mere fact that the agent was indeed the principal's agent is sufficient to deem the principal liable for any tort done by the agent in the course of fulfilling the agency. (C.A. 502/78 *State of Israel v. Nissim*, PD 35(4) 748 (1981)).

20.     The FAC asserts a respondeat superior claim under CWO § 14, on the grounds that the defendants used the PFLP as their agent to carry out terrorist attacks in order to achieve their goal (shared with the PFLP) of ending the Israeli and Jewish presence in certain territories.

---

[3] Until 2005, the CWO contained a provision (§ 25) that a principal would not be liable for an assault committed by its agent unless the principal had expressly authorized or ratified the assault. However, that provision was repealed in 2005, almost a decade before the attack at issue here.

(FAC ¶¶ 237-38).[4] The FAC contains numerous allegations asserting that the defendants employed terrorism to achieve this goal, and used to PFLP to carry out that terrorism. If these allegations are true, the FAC easily states a valid claim for respondeat superior liability under § 14.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: September 18, 2022

_____
Dr. Boaz Shnoor

---

[4] The FAC alleges an agency relationship between the defendants **and the PFLP**. Therefore, the relevant question is whether the PFLP, as an organization, was the agent of the defendants, and not whether the individual perpetrators were the defendants' agents.

<u>**CURRICULUM VITAE – BOAZ SHNOOR**</u>

1. <u>**Higher Education**</u>
   **Undergraduate and Graduate Studies**

| Period of Study | Name of Institution and Department | Degree | Year of Approval of Degree |
|---|---|---|---|
| 2015 – 2021 | Open University | Psychology (B.A.) | 2021 |
| 1997-2004 | Hebrew University Law School | LL.D. | 2005 |
| 1996-1999 | Hebrew University Law School | LL.M. (part of accelerated LL.D. program) | 1999 |
| 1991-1995 | Hebrew University Law School | LL.B. (magna cum laude) | 1995 |

2. <u>**Academic Ranks and Tenure in Institutes of Higher Education**</u>

| Dates | Name of Institution and Department | Rank/Position |
|---|---|---|
| 2019- | The Academic Center for Law and Science (Sha'arei Mishpat College), Hod Hasharon | Senior Lecturer |
| 2013-2019 | Law faculty, Academic Center of Law and Business, Ramat Gan | Senior Lecturer |
| 2010-2011 | Cornell University Law School | Visiting Scholar |
| 2007-2008 2018-2019 | The Academic Center for Law and Science (Sha'arei Mishpat College), Hod Hasharon | Adjunct Lecturer |

| 2004-2013 | Law faculty, Academic Center of Law and Business, Ramat Gan | Lecturer |
|---|---|---|
| 2003-2004 | Law faculty, Academic Center of Law and Business, Ramat Gan | Adjunct Lecturer |
| 2002-2017 | School of Law, the College of Management Academic Studies, Rishon LeZion | Adjunct Lecturer |
| 2002-2016 2021-2022 | Law faculty, Hebrew University, Jerusalem | Adjunct Lecturer |

### 3. Offices in Academic Administration

2022 -  Head of Teaching Committee, The Academic Center for Law and Science (Sha'arei Mishpat College)

2020 -  Member of the Institutional Ethical Review Board, The Academic Center for Law and Science (Sha'arei Mishpat College)

2019 - 2022  Head of the Research Authority, The Academic Center for Law and Science (Sha'arei Mishpat College)

2013 - 2018  Chairperson, Institutional Ethical Review Board, Academic Center of Law and Business

2011 – 2018  Chairperson, Students' Disciplinary Appeals Board, Academic Center of Law and Business

2006 – 2010  Chairperson, Students' Disciplinary Board, Academic Center of Law and Business

2005 - 2013  Founder and Academic Supervisor of the Environmental Law Clinic, Academic Center of Law and Business

### 4. Scholarly Positions and Activities outside the Institution

#### a. Membership in Scientific Editorial Boards

2019 - 2021  Co-Editor, The Oñati Socio-Legal Series, 'Too Much Litigation?' issue

2017-2018  Guest Co-Editor, the International Journal of the Legal Profession

2

| 2016-2017 | Co-Editor, The Oñati Socio-Legal Series, 'Too Few Judges: Regulating the Number of Judges in Society' issue |
|---|---|
| 1993-1994 | Co-Editor in Chief "Mishpatim" (Hebrew University Law Review) |
| 1992–1993 | Member of the Editorial Board "Mishpatim" (Hebrew University Law Review) |

**b.   Reviewing Articles for Law Reviews**

| 2021 | "Hamishpat" - the College of Management, Academic Studies Law journal |
|---|---|
| 2020 | "Mishpat Va`Asakim" – IDC Law Review |
| 2020 | "Moznei Mishpat" – Netanya Law Review |
| 2020 | "Mishpatim online" - Hebrew University Online Law Journal |
| 2019 | "Mishpatim" - Hebrew University Law Review |
| 2019 | "Mishpat Va`Asakim" – IDC Law Review |
| 2018 | "Mishpatim online" - Hebrew University Online Law Journal |
| 2014 | "Mishpatim" - Hebrew University Law Review (two articles) |
| 2012 | "Mishpatim" - Hebrew University Law Review |
| 2012 | "Mehkarei Mishpat" - Bar Ilan Law Studies |
| 2011 | "Alei Mishpat" - Academic Center of Law and Business Law Review |
| 2010 | "HaMishpat" - the College of Management, Academic Studies Law journal |
| 2009 | "Hukim" – Journal on Legislation |
| 2008 | "Din U`Dvarim" - Haifa University Law Review |
| 2008 | "Alei Mishpat" - Academic Center of Law and Business Law Review |
| 2007 | "Hapraklit" - Israeli Bar Review |
| 2007 | "Mishpatim" – Hebrew University Law Review |
| 2006 | "Hapraklit" - Israeli Bar Review |

**c.   Reviewing Dissertations, Theses and Books**

| 2019 | Reviewing a Proposal for Master`s Thesis – Bar Ilan University Law Faculty |
|---|---|
| 2018 | Reviewing a Doctoral Dissertation – The Hebrew University Law Faculty |
| 2015 | Reviewing a book - the Harry Sacher Institute for Legislative Research and Comparative Law |

**d.   Public Committees**

3

2015-2016  The Ministry of Health Public Committee for the Regulation of Procedures regarding Living Organ Donors – member

2013     The Public Commission on Age as a Criteria for Receiving Organ Donations - member

  **5. Participation in Scholarly Conferences**

  a. **Active Participation**

**Conferences Abroad**

| Date | Name of Conference | Place of Conference | Subject of Lecture/Discussion | Role |
|------|--------------------|--------------------|------------------------------|------|
| June 2019 | Workshop on Too Much Litigation?: Facts, Reasons, Consequences, and Solutions | Oñati, Spain | Don Quixote de la Corte: Serial Litigants, Emotions, and Access to Justice (with Eyal Katvan) | Speaker |
| June 2016 | Workshop on Too Few Judges: Regulating the Number of Judges in Society | Oñati, Spain | Judges' Precious Time: Let's talk about it (with Eyal Katvan) | Speaker |
| July 2015 | Workshop on Consumer Redress When Lawyers Are Negligent | Oñati, Spain | Informed Consent to Legal Treatment (with Eyal Katvan) | Speaker |
| May 2014 | How Objective Can Judges Be: Legal Rule, Evidence, Narratives, Society Conference | Antwerp | Courts as the Creators of Legal Rules :The Case, the Judge, the Court and the State | Speaker |
| November 2011 | The 6th Annual Conference on Empirical Legal Studies | Chicago | Cases, Judges, States, or Politics - What is it that Changes the Law? A Study of States' Supreme Courts' Decisions to Accept or Reject the Loss of Chance Doctrine | Speaker |
| June 2011 | Association for Israel Studies | Boston | Terms of Betrayal – Legal and behavioral aspects of ringworm | Speaker |

4

| | | | treatment in Israel (with Eyal Katvan) | |
|---|---|---|---|---|
| July 2006 | 17th Congress of the International Academy of Comparative Law | Utrecht, the Netherlands | Pure Economic Loss in Israel (with Tamar Gidron) | Speaker |

Conferences in Israel

| Date | Name of Conference | Place of Conference | Subject of Lecture/Discussion | Role |
|---|---|---|---|---|
| June 2016 | Research Workshop of the Israel Science Foundation - Honor in a Changing Society | Ramat-Gan | Honor in Informal Courts in Mandatory Palestine (with Eyal Katvan) | Speaker |
| June 2016 | 32nd annual Conference of the Association for Israel Studies | Jerusalem | Eastern or Western 'Kavod'? Honor in Informal Courts in Mandatory Palestine" (with Eyal Katvan) | Speaker |
| October 2015 | The Association for Law & History Annual Conference | Jerusalem | `But Your Honor, he Started it`: Honor and the Regulation of Emotions in Informal Courts in Mandatory Palestine (with Eyal Katvan) | Speaker |
| April 2015 | Conference on Lawyers' Legal Ethics and Professional Responsibility – Hamishpat Law Review | Tel-Aviv | Judges' Perceptions of Counsels' Behavior in Court | Speaker |
| October 2013 | The Law and History Association Annual conference | Jerusalem | The History of the Struggle between Freedom of Speech and Honor – Legislation vs. Adjudication (Heb.) | Speaker |

| December 2012 | The Law and Society Conference | Ramat-Gan | Cases, Judges, or Politics – What makes American Courts Change Tort Law? (Heb.) | Speaker |
|---|---|---|---|---|
| October 2012 | The Law and History Association Annual conference | Jerusalem | Archives with Honor (Heb.) (with Eyal Katvan) | Speaker |
| October 2012 | The Legal Year Conference | Haifa | Libel Law in Israel 2012 (Heb.) | Speaker |
| May 2012 | 3rd Annual Conference of the Israeli Association of Private Law | Ramat-Gan | Cases, Judges, States, or Politics - What is it that Changes the Law? A Study of States' Supreme Courts' Decisions to Accept or Reject the Loss of Chance Doctrine (Heb.) | Speaker |
| May 2012 | Intermediary Liability in the Digital Age | Haifa | Intermediaries' Liability for Libel - Lessons from Past Developments in Israeli Courts and the Knesset | Speaker |
| April 2012 | Regulation of Off-Shore Drilling Conference | Tel-Aviv | Torts as Regulation of Off-Shore Drilling (Heb.) | Speaker |
| December 2011 | Annual Conference of the Israeli Association of Law and Society | Ramat-Gan | A Community with Its Own Dignity (Heb.) (with Eyal Katvan) | Speaker |
| November 2008 | Between Criminal and Civil | Ramat-Gan | Punitive Damages, Compensation for Non-pecuniary Harm and Compensation without Proof of Harm (Heb.) | Speaker |
| June 2008 | Conference on Economic Incentives in Environmental Law | Ramat-Gan | Economic Incentives and Pollution: Goal and Methods (Heb.) | Speaker |

6

| May 2008 | Evidence Law | Haifa | Evidence Law and Uncertainty in Tort Law (Heb.) | Speaker |
| March 2007 | Libel Law | Jerusalem | Libel law – Theory and Reality (Heb.) | Speaker, part of panel |
| May 2006 | Conference on Animal Rights and Biodiversity | Ramat-Gan | Pets, Torts and Animal Rights (Heb.) | Speaker |
| June 2005 | 8th International Conference of the Israel Society for Ecology and Environmental Quality Sciences - Living with Global Change: Challenges in Environmental Sciences | Rehovot | Environmental Law: From Public to Private Enforcement | speaker |
| December 2003 | The 13th annual conference of the Rationality Center of the Hebrew University | Ein Gedi | The Causal Connection in the Shamgar Committee Report on the Kishon River (Heb.) | speaker |
| December 2002 | Annual convention of the Israel Society for Ecology and Environment | Tel-Aviv | Causation in Environmental Torts (Heb.) | speaker |

b. **Organization of Conferences or Sessions**

| Date | Name of Conference | Place of Conference | Subject of Conference/ Role at Conference/ Comments | Role |
|---|---|---|---|---|
| June 2019 | Workshop on Too Much Litigation?: Facts, Reasons, Consequences, and Solutions | Oñati, Spain | The litigants in Courts | Coordinator (Member of the scientific board) |

7

| June 2016 | Research Workshop of the Israel Science Foundation - Honor in a Changing Society | Ramat-Gan | Honor in a Changing Society | Member of the scientific board, member of the organizing committee |
| June 2016 | Workshop on Too Few Judges: Regulating the Number of Judges in Society | Oñati, Spain | Regulation of the Number of Judges in Society | Coordinator (Member of the scientific board) |
| May 2006 | Conference on Animal Rights and Biodiversity | Ramat-Gan | Animal rights and Biodiversity | Organizer |

6. **Invited Lectures\ Colloquium Talks**

| Date | Place of Lecture | Name of Forum | Presentation/Comments |
| --- | --- | --- | --- |
| November 2021 | Sha`arei Mishpat – The Academic College of Law and Science | Israeli bar – Libel and Privacy Law | Defenses in Defamation |
| October 2021 | Peres Academic Center, Rehovot | Law school, Faculty Seminar | Critique on Omer Aloni, "The League of Nations and the Protection of the Environment" |
| October 2020 | Zoom | Jewish History and Emotions on-line workgroup | "Honorably – Theodor Herzl" (With Eyal Katvan and Meron M. Piotrkowski) |
| March 2018 | Tel-Aviv – Jaffa Civil Court | Judges` Workshop | Libel and the Judicial Process |
| June 2017 | Tel-Aviv University | Environmental Law Program | Substance and Practice in Mass Environmental Torts |
| November 2016 | Tel-Aviv University | Environmental Clinic Workshop | Toxic Torts |
| December 2013 | Ashkelon | The Institute for Judges` Training | Defenses in Libel Suits |

8

| January 2013 | Ashkelon | The Institute for Judges` Training | Psychology of Causation |
|---|---|---|---|
| March 2012 | Ma`aleh HaHamisha | Ministry of Environmental Protection | Nuisance Law and Remedies in Torts |
| February 2012 | Neve Ilan | The Institute for Judges` Training | Challenges of Environmental Protection – Policy, Law, and Action |
| November 2011 | Academic Center of Law & Business | Law faculty, Faculty Seminar | Cases, Judges, States, or Politics - What is it that Changes the Law? A Study of States' Supreme Courts' Decisions to Accept or Reject the Loss of Chance Doctrine |
| October 2011 | Yad Hashmona | Ozmat forum for legal aids | Toxic Torts |
| March 2011 | Cornell University | Berger International Legal Studies Program Speaker Series | The Influence of Betrayal on Law Making: Lessons from the United States and Israel |
| December 2008 | Faculty Seminar, Academic Center of Law and Business | Faculty Seminar, Law School | Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts |
| November 2008 | The Law Faculty, Tel Aviv University | The Yuval Levy & Co. Law & Environment Workshop | Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts |
| June 2008 | The College of Management Academic Studies, Rishon LeZion | Faculty Seminar, Law School | Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts |
| May 2008 | Haifa University | Judges` Conference | Uncertainty and Causation in Tort Cases |

| October 2007 | Neve Ilan | The Institute for Judges` Training | Toxic Torts |
|---|---|---|---|
| January 2006 | Netanya College | Environmental Law Professors Forum | The Future of Toxic Torts |

## 8.  Research Grants

### e.  Grants Awarded

| Role in Research | Co-Researchers | Topic | Funded by/ Amount | Year |
|---|---|---|---|---|
| Co-PI | Eyal Katvan (PI), Tamar Ashkenazi (PI), Israel Doron, and Eitan Mor | The Consequences of Policy Changes regarding the use of Age Criteria in Organ Transplantation<br><br>Publications: article No. 11 | The Israel National Institute for Health Policy Research 123,000 NIS | 2017 |
| PI | Eyal Katvan | Honor in a Changing Society - Research Workshop Grant | Israel Science Foundation<br><br>68,000 NIS | 2015 |
| PI | Eyal Katvan<br><br>Chemi Ben Noon | Lawyers (in)Civility in Courts – Empirical Research of Judges' Attitudes<br><br>Publications: article No. 9 | David Weiner Center for Lawyers Ethics and Professional Responsibility<br><br>5,000 NIS | 2014 |
| PI | Eyal Katvan | Kavod (honor) and its Legal Defense in Mandatory Palestine: Values in "Melting Pot" Societies<br><br>Publications: articles No. 16, 18, 19, 20 | Israel Science Foundation 360,000 NIS | 2013 |

**9.** **Teaching**

**Courses Taught in Recent Years**

| Year | Name of Course | Type of Course Lecture/Seminar/ Workshop/High Learn Course/ Introduction Course (Mandatory) | Degree | Number of Students |
|------|----------------|---------------------------------------------------------------------------------------------|--------|---------------------|
| 2002-2022 | Tort law | Mandatory Introductory Course 6-8 credits | LL.B. | 70-200 (most years I gave the course more than once) |
| 2004 - 2012 | Environmental law | High Learn Course | LL.B. | 20-90 |
| 2008 - 2010 | Environmental law and Policy | High Learn Course | LL.B. | 20-90 |
| 2018 - 2021 | Environmental law and Policy | High Learn Course | M.A. | 50 - 75 |
| 2013-2015 2017 2021 | Environmental law and Policy | Seminar | LL.B. | 12-25 |
| 2002-2005 2019 | Causation in torts | High Learn Course | LL.B. | 20-50 |
| 2004-2009 2011-2013 | Causation in torts | Seminar | LL.B. | 12-25 |
| 2008-2009 | Tortious adjudication under uncertainty | Seminar | LL.B. | 12 |
| 2009 2010 | Negligence | Seminar | LL.B. | 10 |
| 2015-2017 | Tortious protection of personal and economic interests | Seminar | LL.B. | 12-20 |
| 2005 - 2008 | Libel law | High Learn Course | LL.B. | 15-50 |

| 2015-2021 | Libel and privacy law | Seminar | LL.B. | 12-25 |
|---|---|---|---|---|
| 2017-2021 | Libel and privacy law | Seminar | LL.M. | 12-20 |
| 2015-2017 2019 2021 | Psychology of Judging | High Learn Course | LL.B. | 15-50 |

## Publications

**A. Authored Books – Published**

2a. Khalid Genaim, Mordechai Kremnitzer, **Boaz Shnoor**, Libel Law, 2nd Ed., 2019, The Sacher Institute Hebrew University, The Israel Democracy Institute and Nevo Publishing, [556 pages]. Ranked A

2b . Khalid Genaim, Mordechai Kremnitzer, **Boaz Shnoor**, Libel Law - De Lege Lata and De Lege Ferenda, 2005, The Sacher Institute Hebrew University and The Israel Democracy Institute, Heb., [487 pages]. Ranked A

3. **Boaz Shnoor**, Toxic Torts, 2011, Nevo Publishing and The Sacher Institute Hebrew University, Heb., [613 pages]. Ranked A

**B. Edited Books and Special Journal Issues – Published**

4. 'Too Few Judges: Regulating the Number of Judges in Society' issue, Vol. 7(4) *The Oñati Socio-Legal Series*, 2017 (with Eyal Katvan, Ulrike Schultz and Avrom Sherr)

5. 'Too Few Judges' issue, Vol. 26(1), *The International Journal of the Legal Profession*, 2019 (with Eyal Katvan, Ulrike Schultz and Avrom Sherr) Ranked B

6. 'Too Much Litigation?' issue, Vol. 11(2) *The Oñati Socio-Legal Series*, 2021 (with Eyal Katvan, Ulrike Schultz, Guy Seidman and Avrom Sherr)

**C.   Articles in Refereed Journals**

**Published**

7. **Boaz Shnoor**, Volenti Non Fit Injuria: Theory and Reality, 1 *ALEI MISHPAT* 327-354 (2000, Heb.) Ranked B

8. **Boaz Shnoor**, The Theoretical Foundation of Proportional Liability in Israel, 37 *MISHPATIM LAW REVIEW* 177-218 (2007, Heb.) Ranked A

9. **Boaz Shnoor**, Causation in Fact in Toxic Torts, 23(2) *LAW STUDIES* (Bar-Ilan Law Review) 559-620 (2007, Heb.) Ranked A

10. Talma Izak-Biran, Richard Laster, Tamar Berman and **Boaz Shnoor**, Consequences of Ignoring Uncertainty – 'Probability of Causation' in Radiation Cases, 39(1) *ENVIRONMENTAL POLICY AND LAW* 70-72 (2009) [peer reviewed] SJR 0.178

11. **Boaz Shnoor**, Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts, 33(1) *AMERICAN JOURNAL OF TRIAL ADVOCACY*

71-112 (2009)          Ranked 6th out of 32 in civil litigation and dispute resolution in Washington and Lee

12.   Eyal Katvan, **Boaz Shnoor**, Between Civility and Reputation, Following C.A. 1104/07 Kheir v. Gil, 15 *HAMISHPAT* 71-110 (2010, Heb.) Ranked B

13.   **Boaz Shnoor**, On the Relationship between Setting the Legal Rule and Adjudicating the Concrete Case, 10 *ALEI MISHPAT* 7-52 (2012, Heb.) Ranked B

14.   **Boaz Shnoor**, Truth, Lies, and in Between them – Developments in Israeli Libel Law 2012, 8 *DIN U'DVARIM* 197-239 (2014, Heb.) Ranked A

15.   Chemi Ben Noon, **Boaz Shnoor**, Eyal Katvan, Judges' Perception of Lawyers' Behavior in Court, 21 *HAMISHPAT* 11-49 (2015, Heb.) Ranked B

16.   **Boaz Shnoor**, Sub Judice and Freedom of Speech – Words in the Air and the Dead Letter of the Law, 12 *ALEI MISHPAT* 261-284 (2015, Heb.) Ranked B

17    Eyal Katvan, Israel Doron, Tamar Ashkenazi, Hagai Boas, Michal Carmiel-Haggai, Michal Dranitzki Elhalel, **Boaz Shnoor**, Jacob Lavee, Age limitation for organ transplantation: the Israeli example, 46(1) *AGE AND AGEING*, 8–10 (2017)    [peer reviewed] IP 10/2 (3 out of 53 Si: Geriatrics & Gerontology)

18    Eyal Katvan, **Boaz Shnoor**, Informed Consent to Legal Treatment – Lessons from Medical Informed Consent, 24(2) *THE INTERNATIONAL JOURNAL OF THE LEGAL PROFESSION* 125-144 (2017)   [peer reviewed] SJR 0.22 Ranked B  2nd Quartile

19a   **Boaz Shnoor**, Eyal Katvan, Court's Precious Time: Transparency, Honor and Judicial Scarce Resources, 7(4) *OÑATI SOCIO-LEGAL SERIES*, 825-846 (2017) [peer reviewed]

19b   **Boaz Shnoor**, Eyal Katvan, A Perfect Façade?: Transparency, Honor and Judicial Scarce Resources, 26(1) *INTERNATIONAL JOURNAL OF THE LEGAL PROFESSION*, 143-158 (2019) [peer reviewed] SJR 0.22 Ranked B 2nd Quartile

20    Limor Zer-Gutman, Eyal Katvan, **Boaz Shnoor,** Lawyers' Honor in the Professional and Private Spheres, 11(2) *HAIFA LAW REVIEW (Din Udvarim)* 457-501 (2018) (Heb.) Ranked B

21    Doron Menashe, **Boaz Shnoor**, Sub Judice and Free Speech: Balancing the Right to a Fair Trial against Freedom of Expression in Israel, 18(1) *SAN DIEGO INTERNATIONAL LAW JOURNAL* 39-70 (2018)    ranked 72 out of 163 under international law, in Washington and Lee ranking  Ranked C

22     Eyal Katvan, **Boaz Shnoor**, An Angry worker: Honor, Anger and the Working Class Emotions in Informal Adjudication in Mandatory Israel, 3 *LAW, SOCIETY & CULTURE* 191-226 (2020) [peer reviewed] (Heb.)

23    Eyal Katvan, **Boaz Shnoor**, Don Quixote de la Corte: Serial Litigants, Emotions, and Access to Justice, 11(2) *OÑATI SOCIO-LEGAL SERIES* 503-533 (2021) [peer reviewed]

24    **Boaz Shnoor**, Eyal Katvan, Freedom of Expression, Honor, and Judicial Independence in Mandate Palestine 26(2) *ISRAEL STUDIES* 66-83 (2021). [peer review] SJR 0.13 Q2

25    Eyal Katvan, **Boaz Shnoor**, Physicians' Honor and Prestige in Pre-Israel Palestine, 25 *KOROT* 7-42 (2021)(Heb.) [peer reviewed]

26    **Boaz Shnoor**, Eyal Katvan, Reputation Struggles: A Jubilee of developments in Libel Law – Chronicles of a dynamic balance, 14 *NETANYA LAW REVIEW* 65-108 (2021) (Heb.) Ranked C

### Accepted for Publication

27    **Boaz Shnoor**, Binding Precedent? Tort Cases not Creating Legal Rules, 28 *HAMISHPAT* __ (to be published 2022, approx. 30 pages)(Heb.) Ranked B

28    Eyal Katvan, **Boaz Shnoor**, In whose honor? The Debate regarding Court Dress *HAPRAKLIT* (TO BE PUBLISHED 2022, APPROX. 40 PAGES) (HEB.) RANKED B

### D.  Articles or Chapters in Scientific Books

#### Published

29.    Khalid Genaim, Mordechai Kremnitzer, **Boaz Shnoor**, *Libel Law*, *in* DEFENDING FREEDOM OF SPEECH IN THE DEMOCRATIC STATE pp. 179 – 233 (M. Kremnitzer ed., 2003, The Israel Democracy Institute, Heb.)

30.    Tamar Gidron, **Boaz Shnoor**, *Pure Economic Loss in Israel*, *in* PURE ECONOMIC LOSS 186-217 (Mauro Bussani, Vernon Palmer, Eds., Routledge-Cavendish publishing, 2009). A different version of this paper was published as part of conference proceedings (see F.1) Ranked A

31.    **Boaz Shnoor**, Israel Gilead, *Causal Uncertainty and Proportional Liability in Israel,* *in* PROPORTIONAL LIABILITY – ANALYTICAL AND COMPARATIVE PERSPECTIVES pp. 183-198 (Israel Gilead, Michael D. Green, Bernhard A. Koch, Eds., De Gruyter publishing, 2013)

32.    **Boaz Shnoor**, Eyal Katvan, *The Ringworm Victims Compensation Law – 1994: Legislation and Court Decisions – between Rhetoric and Compensation,* *in* RINGWORM - THE INTERNATIONAL AND THE ISRAELI SAGA, (eds.: Shvarts S, Sadetzki S., Ben Gurion University Publication, 2018, Heb.) Ranked A

### E. Articles in Conference Proceedings

<u>**Published**</u>

33.    Tamar Gidron, **Boaz Shnoor**, Pure Economic Loss in Israel, in *Israeli Reports to the XVII International Congress of Comparative Law* 199-230 (The Sacher Institute, 2009) A different version of this paper was published as a book chapter (see D.2)