IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**SHELLEY LEVINE**, et al.,

Plaintiffs,

v.

**THE PALESTINE LIBERATION ORGANIZA-TION** and **THE PALESTINIAN AUTHORITY**,

Defendants.

Case No. 1:21-cv-03043-RM-STV

INTERVENOR UNITED STATES OF AMERICA'S
BRIEF IN SUPPORT OF THE CONSTITUTIONALITY OF
THE PROMOTING SECURITY AND JUSTICE
FOR VICTIMS OF TERRORISM ACT OF 2019

**Table of Contents**

Introduction ...............................................................................................................1

Statutory Background ................................................................................................3

Argument ..................................................................................................................7

    I.    The PSJVTA Is Consistent with Fair Play and Substantial Justice. ...............................7

        A.    Consent Provided by the PSJVTA Is Knowing and Voluntary...........................................7

        B.    The Activities Deemed Consent To Personal Jurisdiction under PSJVTA Have a Connection to the United States. .......................................................10

        C.    The PSJVTA's Consent Provisions Advance Federal Interests and Must Be Accorded Deference....................................................................................11

    II.    Consent Can Be Valid Even Without an Exchange of Benefits. .................................13

    III.    District Courts That Found the PSJVTA Unconstitutional Were Wrong. ...........................16

Conclusion ...............................................................................................................19

TABLE OF AUTHORITIES

**Cases**

*Ayers v. Tanami Trading Corp.*,
   No. 2:08-CV-00472-DB, 2009 WL 1362402 (D. Utah May 14, 2009) ................................... 9, 10, 11

*Bank Markazi v. Peterson*,
   578 U.S. 212 (2016) ........................................................................................................................ 13

*Bristol-Myers Squibb v. Superior Court of Cal.*,
   137 S. Ct. 1773 (2017) ..................................................................................................................... 9

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ................................................................................................................. *passim*

*Center for Const. Rights v. CIA*,
   765 F.3d 161 (2d Cir. 2014) ........................................................................................................... 13

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
   527 U.S. 666 (1999) .................................................................................................................. 17, 18

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .................................................................................................................... 4, 8

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
   722 F.3d 81 (2d Cir. 2013) .............................................................................................................. 7

*Estate of Klieman ex rel. Kesner v. PA*,
   923 F.3d 1115 (D.C. Cir. 2019), *vacated*, 140 S. Ct. 2713 (2020) ........................................ 5, 11, 18

*Estate of Klieman v. PA*,
   82 F. Supp. 3d 237 (D.D.C. 2015) ................................................................................................... 4

*Estate of Klieman v. PA*,
   467 F. Supp. 2d 107 (D.D.C. 2006) .................................................................................................. 4

*Estates of Ungar ex rel. Strachman v. PA*,
   153 F. Supp. 2d 76 (D.R.I. 2001) .................................................................................................... 4

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021) ..................................................................................................................... 7

*Fuld v. PLO*,
   578 F. Supp. 3d 577 (S.D.N.Y. 2022),
   *appeal filed*, No. 22-76 (2d Cir. Jan. 13, 2022),
   *appeal filed*, No. 22-496 (2d Cir. Mar. 8, 2022) ....................................................................... 16, 17, 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
   564 U.S. 915 (2011) ............................................................................................................4

*Hanson v. Denckla,*
   357 U.S. 235 (1958) ............................................................................................................8

*Hess v. Pawloski,*
   274 U.S. 352 (1927) ..........................................................................................................16

*Holder v. Humanitarian Law Project,*
   561 U.S. 1 (2010)...............................................................................................................13

*In re Mid-Atlantic Toyota Antitrust Litig.,*
   525 F. Supp. 1265 (D. Md. 1981) .....................................................................................14

*Ins. Cor. of Ireland v. Compagnie des Bauxites de Guinee ("Bauxites"),*
   456 U.S. 694 (1982) ............................................................................................1, 7, 14, 18

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement,*
   326 U.S. 310 (1945) ........................................................................................................ 7, 9

*J. McIntyre Mach., Ltd. v. Nicastro,*
   564 U.S. 873 (2011) ..........................................................................................................17

*Klinghoffer v. SNC Achille Lauro Ed Altri-Gestione Motonave Achille Lauro,*
   937 F.2d 44 (2d Cir. 1991).................................................................................................5

*Knox v. PLO,*
   248 F.R.D. 420 (S.D.N.Y. 2008).......................................................................................4

*Kulko v. Superior Court of Cal.,*
   436 U.S. 84 (1978) ..............................................................................................................8

*Leonard v. USA Petroleum Corp.,*
   829 F. Supp. 882 (S.D. Tex. 1993) ...................................................................................14

*Livnat v. PA,*
   851 F.3d 45 (D.C. Cir. 2017).......................................................................................4, 18

*Moran v. Burbine,*
   475 U.S. 412 (1986) ..........................................................................................................15

*New York v. Quarles,*
   467 U.S. 649 (1984) ..........................................................................................................15

*Oregon v. Elstad,*
   470 U.S. 298 (1985) ..........................................................................................................15

iv

*Pa. Fire Ins. Co. v. Gold Issue Mining & Milling Co.,*
    243 U.S. 93 (1917) ...................................................................................................16

*Peay v. BellSouth Med. Assistance Plan,*
    205 F.3d 1206 (10th Cir. 2000) ........................................................................ 9, 11

*Roell v. Withrow,*
    538 U.S. 580 (2003) .................................................................................................14

*Ruggieri v. General Well Serv. Inc.,*
    535 F. Supp. 525 (D. Colo. 1982)..........................................................................16

*Schneckloth v. Bustamonte,*
    412 U.S. 218 (1973) .................................................................................................15

*Shaffer v. Heitner,*
    433 U.S. 186 (1977) ...................................................................................................9

*Shatsky v. PLO,*
    No. 18-CV-12355 (MKV), 2022 WL 826409 (S.D.N.Y. Mar. 18, 2022)................... 17, 18

*Sokolow v. PLO,*
    No. 04 Civ. 397, 2011 WL 1345086 (S.D.N.Y. Mar. 30, 2011),
    *vacated sub nom. Waldman v. PLO*, 835 F.3d 317 (2d. Cir. 2016) ........................... 3-4

*Sokolow v. PLO,*
    No. 04 Civ. 397 (GBD), 2022 WL 719261 (S.D.N.Y. Mar. 10, 2022),
    *appeal filed*, No. 22-1060 (2d. Cir. May 9, 2022) .....................................................17

*United States v. O'Brien,*
    926 F.3d 57 (2d Cir. 2019)......................................................................................15

*United States v. Taylor,*
    745 F.3d 15 (2d Cir. 2014).......................................................................................15

*United States v. Velez,*
    354 F.3d 190 (2d Cir. 2004).....................................................................................15

*Waldman v. PLO,*
    835 F.3d 317 (2d Cir. 2016).................................................................................. 4, 18

*Waldman v. PLO,*
    925 F.3d 570 (2d Cir. 2019), *vacated sub nom. Sokolow v. PLO*, 140 S. Ct. 2714 (2020)..........................5

*Wash. State Grange v. Wash. State Republican Party,*
    552 U.S. 442 (2008) ...................................................................................................3

*Wellness Int'l Network v. Sharif,*
  575 U.S. 665 (2015) ........................................................................................ 7, 9, 14

*WorldCare Ltd. Corp. v. World Ins. Co.,*
  767 F. Supp. 2d 341 (D. Conn. 2011) ........................................................................ 17


**U.S. Constitution**

U.S. Const. Art. I, § 8 ........................................................................................................ 9

U.S. Const. Art. II, § 2 ....................................................................................................... 9


**Statutes**

18 U.S.C. § 2334(e) .................................................................................................. *passim*

22 U.S.C. § 5201 ............................................................................................................. 12

22 U.S.C. § 5202 .................................................................................................... 4, 5, 12

*Anti-Terrorism Act of 1992 ("ATA"),*
  18 U.S.C. § 2333(d)(2) ......................................................................................... *passim*

*Anti-Terrorism Clarification Act of 2018 ("ATCA"),*
  Pub. L. No. 115-253, 132 Stat. 3183 (2018) ........................................................ *passim*

*Department of State, Foreign Operations, & Related Programs Appropriations Act of, 2022,*
  Pub. L. No. 117-103, 136 Stat. 49 (2022) ............................................................... 12

*Federal Courts Administration Act of 1992,*
  Pub. L. No. 102-572, 106 Stat. 4506 (1992) ............................................................. 3

*Middle East Peace Facilitation Act of 1993*
  Pub. L. No. 103-125, 107 Stat. 1309 (1993) ........................................................... 12

*Palestinian Ant-Terrorism Act of 2006,*
  Pub. L. No. 109-446, 120 Stat. 3318 (2006) ........................................................... 12

*Promoting Security & Justice for Victims of Terrorism Act of 2019 ("PSJVT"),*
  Pub. L. No. 116-94, 133 Stat. 2534 (2020) .......................................................... *passim*

*Taylor Force Act,*
  Pub. L. No. 115-141, 132 Stat. 348 (2018) ............................................................. 13

**Legislative Materials**

166 Cong. Rec. S627 (daily ed. Jan. 28, 2020) (statement of Sen. Leahy)...............................................11

165 Cong. Rec. S7182 (daily ed. Dec. 19, 2019) (statement of Sen. Lankford and Sen. Grassley). 6, 11

*Antiterrorism Act of 1992 ("1992 House Report")*,
    H.R. Rep. No. 1040, 102d Cong., 2d Sess. (1992) ............................................................................... 3 11

*Anti-Terrorism Clarification Act of 2018 ("ATCA")*,
    H.R. Rep. No. 858, 115th Cong., 2d Sess. (2018) ....................................................................................10

*Federal Courts Administration Act of 1992*,
    S. Rep. No. 342, 102d Cong., 2d Sess. (1992) .............................................................................................1


**Rules**

Fed. R. Civ. P. 12(h) ..............................................................................................................................18

**Introduction**

The United States respectfully submits this memorandum in support of the constitutionality of 18 U.S.C. § 2334(e), as amended by the Promoting Security and Justice for Victims of Terrorism Act of 2019 ("PSJVTA"). Through several statutes over four decades, in particular the Anti-Terrorism Act of 1992 ("ATA"), 18 U.S.C. § 2333(d)(2), Congress has provided civil damages remedies for United States nationals harmed by acts of international terrorism. The PSJVTA is the most recent of Congress's efforts to "open[] the courthouse door to victims of international terrorism," S. Rep. No. 102-342, at 45 (1992), to allow victims to vindicate their interests in federal court and receive just compensation for their injuries. After judicial decisions in the Second and D.C. Circuits held that defendants in this case, the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO"), were not subject to personal jurisdiction in U.S. courts, Congress enacted two statutes—the Anti-Terrorism Clarification Act of 2018 ("ATCA") and the PSJVTA—that detailed actions taken by the PA, the PLO, or affiliates or successor entities, that would be deemed consent to personal jurisdiction only for civil cases under the ATA.

Assuming for the purposes of defending the constitutionality of the PSJVTA that the PA and PLO have due process rights under the Fifth Amendment, an issue which this Circuit has not addressed, the PSJVTA provides a constitutional basis for personal jurisdiction. The Supreme Court has long recognized that parties may consent to personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee ("Bauxites")*, 456 U.S. 694, 703 (1982) (confirming that a defendant may consent to a court's exercise of personal jurisdiction through a "variety of legal arrangements.").

The PSJVTA's jurisdictional provisions are consistent with the constitutional requirements of due process under the Fifth Amendment because they allow for knowing and voluntary consent.

Congress gave "fair warning" to defendants "that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (alteration in original).  PSJVTA detailed what activities would be considered consent: payments made to family members or designees of those who injure or kill Americans in terrorist attacks and certain activities of the PA or PLO in the United States.  The Act also provided time for the PA and PLO to cease those specific activities before consenting to jurisdiction.[1]

Asserting personal jurisdiction based on deemed consent in the PSJVTA is also fair and reasonable.  The statute applies only to PA/PLO and their affiliates—non-sovereign foreign entities that have historically been the subject of conditions placed by Congress and the Executive Branch on their presence and activities in the United States.[2]  In our constitutional system, the political branches are responsible for foreign relations, and Congress has broad discretion to legislate in a range of areas concerning foreign affairs.  Congress's enactment, and the President's signature into law of the PSJVTA, are well in accord with the political branches' broad power to act in the field of foreign

---

[1] The government understands that the defendants have conceded that they have made certain payments described in 18 U.S.C. § 2334(e)(1)(A).  *See* Mot. to Dismiss, ECF No. 58, at 5, n.4 ("MTD") ("Defendants do not contest they have made at least one such payment after the PSJVTA's effective date"), but they continue to contest that certain "U.S. activities" satisfy the factual predicates required.  *See id.* at 11 n.7.  The government takes no position on whether any of the statute's factual predicates have been satisfied; rather, assuming the Court finds that one or both of those predicates has been satisfied, the government urges that the PSJVTA is constitutional. *See also note 3 infra.*

[2] The PLO has been recognized by the United Nations as the representative of the Palestinian people; the PA was created pursuant to the 1993 Oslo Accords to exercise interim governance authority for the Palestinian people in Gaza and the West Bank.  The United States does not recognize either the Palestinian Authority or the Palestine Liberation Organization as a sovereign government.  As a matter of historical practice, Congress and the Executive Branch have historically worked together to determine U.S. policies with respect to those entities.  At present the United States is cooperating on training of PA security forces, a key partner of the United States and Israel in stabilizing the West Bank and combating terrorism.  The United States is also engaged with the PA in discussions on how to reform or end the prisoner and "martyr" payment system that underlies one of the bases for deemed personal jurisdiction under the PSJVTA.

affairs, a power repeatedly invoked in addressing the relationship of the United States with the PA and PLO, and in addressing issues of international terrorism that harms U.S. nationals.

If the Court reaches the constitutional question,[3] it should hold that 18 U.S.C. § 2334(e), as amended by the PSJVTA's deemed consent provisions, is constitutional.

### Statutory Background

In 1992, in order "to develop a comprehensive legal response to international terrorism," Congress enacted the ATA, creating a civil damages remedy for United States nationals harmed by an act of international terrorism committed by a foreign terrorist organization. H.R. Rep. No. 102-1040, at 5 (1992) ("1992 House Report"); *see* Federal Courts Administration Act of 1992, Pub. L. No. 102-572, title X, § 1003(a), 106 Stat. 4506, 4521–24 (1992) (adding 18 U.S.C. §§ 2331, 2333–2338). The ATA allows United States nationals to sue "any person who aids and abets, by knowingly providing substantial assistance, or who conspires [to commit] an act of international terrorism." 18 U.S.C. § 2333(d)(2). Congress wanted to "open[] the courthouse door to victims of international terrorism" by "extend[ing] the same jurisdictional structure that undergirds the reach of American criminal law to the civil remedies that it defines." S. Rep. 102-342, at 45.

In the ensuing years, courts found personal jurisdiction over the PLO and the PA in ATA cases, holding that "the totality of activities in the United States by the PLO and the PA justifies the exercise of general personal jurisdiction." *Sokolow v. PLO*, No. 04 Civ. 397, 2011 WL 1345086, at *3

---

[3] Plaintiffs allege many grounds for personal jurisdiction. *See* Am. Compl., ECF No. 50, ¶¶ 7–16. If the Court finds that grounds other than the PSJVTA exist for personal jurisdiction, the Court need not and should not opine on the constitutionality of the Act. *See, e.g., Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) ("courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied'" (citation omitted)).

(S.D.N.Y. Mar. 30, 2011), *vacated sub nom. Waldman v. PLO*, 835 F.3d 317 (2d Cir. 2016); *accord, e.g.,*
*Estates of Ungar ex rel. Strachman v. PA*, 153 F. Supp. 2d 76, 91 (D.R.I. 2001); *Knox v. PLO*, 248 F.R.D.
420, 427 (S.D.N.Y. 2008); *Estate of Klieman v. PA*, 467 F. Supp. 2d 107, 113 (D.D.C. 2006).

However, in 2014, the Supreme Court clarified that general personal jurisdiction was appro-
priate under the Due Process Clause of the Fourteenth Amendment only when the defendant was
"essentially at home in the forum," and explained that for non-natural persons, "at home" was usually
limited to the place of incorporation or principal place of business. *Daimler AG v. Bauman*, 571 U.S.
117, 139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).
Courts applying the *Daimler* standards to pending ATA cases concluded that the PA and PLO were
not "at home" in the United States and thus not subject to general jurisdiction. *See Waldman*, 835 F.3d
at 337; *Livnat v. PA*, 851 F.3d 45, 48–52 (D.C. Cir. 2017); *Estate of Klieman v. PA*, 82 F. Supp. 3d 237,
246 (D.D.C. 2015). Courts also did not find specific personal jurisdiction because "these [terrorist]
actions, as heinous as they were, were not sufficiently connected to the United States to provide spe-
cific personal jurisdiction in the United States." *Waldman,* 835 F.3d at 337; *accord Livnat*, 851 F.3d at
57; *Estate of Klieman*, 82 F. Supp. 3d at 248–49.

Congress responded in 2018 by enacting the ATCA. Section 4 of the ATCA provides that
"for purposes of any civil action" under the ATA, "a defendant shall be deemed to have consented to
personal jurisdiction in such civil action if, . . . the defendant," after January 31, 2019, either accepts
certain forms of foreign assistance or maintains an office within the United States pursuant to a waiver
or suspension of 22 U.S.C. § 5202 (which prohibits the PLO from maintaining an office in the United
States). ATCA Pub. L. No. 115-253, § 4, 132 Stat. 3183, 3184 (2018) (adding 18 U.S.C. § 2334(e)).

After the ATCA's enactment, the PA and PLO structured their affairs to avoid consenting to
jurisdiction. On December 26, 2018, the PA informed the Secretary of State that it was declining to

accept the forms of foreign assistance listed in the ATCA (the PLO does not receive U.S. foreign assistance). The PLO continues to occupy its United Nations Observer Mission in New York, but that does not require any waiver or suspension of 22 U.S.C. § 5202, so it did not operate as consent under the ATCA. *See Klinghoffer v. SNC Achille Lauro Ed Altri-Gestione Motonave Achille Lauro*, 937 F.2d 44, 46 (2d Cir. 1991). Since prior to the enactment of the ATCA, the PLO has not operated any other office in the United States pursuant to a waiver or suspension of 22 U.S.C. § 5202.

Because the PLO and PA had restructured their activities, the factual predicates to consent under the ATCA were not satisfied and the D.C. and Second Circuits continued to find no general or specific personal jurisdiction over the PA/PLO in ATA cases. *See Estate of Klieman ex rel. Kesner v. PA*, 923 F.3d 1115, 1128 (D.C. Cir. 2019), *vacated*, 140 S. Ct. 2713 (2020). Courts held "that plaintiffs have not made an adequate showing that any of [the ATCA's] factual predicates has been triggered," and so those courts did not reach the question of whether the consent-to-jurisdiction provisions of the ATCA were constitutional. *Id.* at 1128; *Waldman v. PLO*, 925 F.3d 570, 575 (2d Cir. 2019), *vacated sub nom. Sokolow v. PLO*, 140 S. Ct. 2714 (2020)

The plaintiffs in those cases filed petitions for certiorari. While those petitions were pending, the PSJVTA was enacted. PSJVTA, Pub. L. No. 116-94, § 903, 133 Stat. 2534, 3082 (2019). Among other things, the PSJVTA superseded the personal jurisdiction provisions in the ATCA and removed predicates related to accepting foreign aid.[4] The Act defined "defendant" to mean only "the Palestinian Authority," "the Palestine Liberation Organization," or their affiliates or successors. *Id.* § 903(c)(1)(A), 133 Stat. 3085–86.

---

[4] The Act also included provisions that are not at issue here, aimed at facilitating the resolution of ATA claims. *Id.* § 903(b), 133 Stat. 3028. The portions of the PSJVTA challenged here are the jurisdictional amendments in § 903(c), which this brief refers to as the PSJVTA.

The PSJVTA substituted new factual predicates for conduct that is deemed consent to personal jurisdiction for ATA civil actions. The Act first focused on the practice of paying designees of terrorists serving sentences in Israeli prisons, or to families of those who died committing an act of terrorism, when such acts of terrorism involve U.S. victims. A defendant "shall be deemed to have consented to personal jurisdiction" in civil ATA cases if, after April 18, 2020, it "makes any payment, directly or indirectly—

> (i) to any payee designated by any individual who, after being fairly tried or pleading guilty, has been imprisoned for committing any act of terrorism that injured or killed a national of the United States, if such payment is made by reason of such imprisonment; or
>
> (ii) to any family member of any individual, following such individual's death while committing an act of terrorism that injured or killed a national of the United States, if such payment is made by reason of the death of such individual[.]"

18 U.S.C. § 2334(e)(1)(A).

The PSJVTA next established what PLO or PA activities within the United States would be deemed consent to personal jurisdiction in ATA civil actions. A defendant "shall be deemed to have consented to personal jurisdiction" if after January 4, 2020, it maintains, establishes, or procures any office in the United States or "conducts any activity while physically present in the United States on behalf of the Palestine Liberation Organization or the Palestinian Authority" outside limited exceptions. 18 U.S.C. § 2334(e)(1)(B)(i)-(iii), (e)(3). As the PSJVTA's lead sponsor explained generally, the Act "allow[s] the PA/PLO to conduct a very narrow scope of activities on U.S. soil—such as activities pertaining to official business at the United Nations, engagements with U.S. officials necessary to our national interest, and legal expenses related to adjudicating or resolving claims filed in U.S. courts—without consenting to personal jurisdiction in civil ATA cases." 165 Cong. Rec. S7182 (daily ed. Dec. 19, 2019) (statement of Sen. Lankford).

## Argument

The United States submits this brief to explain why, assuming the PA and PLO have due process rights,[5] the PSJVTA's provisions that certain actions will be considered consent to personal jurisdiction in ATA civil actions are constitutional.

I.  <u>The PSJVTA Is Consistent with Fair Play and Substantial Justice.</u>

The PSJVTA provides a constitutional mechanism for the PA and PLO to consent to personal jurisdiction.  "[T]he test for personal jurisdiction requires that the maintenance of the suit not offend traditional notions of fair play and substantial justice."  *Bauxites*, 456 U.S. at 702–03 (some quotation marks omitted) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316–17 (1945)); *accord Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021); *Burger King*, 471 U.S. at 476–77.  If a defendant's consent is "knowing and voluntary," the court's exercise of jurisdiction is consistent with due process.  *Wellness Int'l Network v. Sharif*, 575 U.S. 665, 685 (2015).  Personal jurisdiction based on consent "does not offend due process" as long as the consent was not "unreasonable and unjust."  *Burger King*, 471 U.S. at 472 n.14 (citation omitted); *accord Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).

A.  <u>Consent Provided by the PSJVTA Is Knowing and Voluntary.</u>

A defendant may consent to a court's exercise of personal jurisdiction through a "variety of legal arrangements."  *Bauxites*, 456 U.S. at 703; *accord Burger King*, 471 U.S. at 472 n.14.  The PSJVTA is one such arrangement that is consistent with due process.

The PSJVTA sets out a reasonable "legal arrangement[ ]" through which Congress specified a defendant consents to personal jurisdiction, *Bauxites*, 456 U.S. at 703, and gives potential defendants

---

[5] The Tenth Circuit has not previously determined whether the PA and PLO, as non-sovereign foreign entities, are entitled to due process rights under the Fifth Amendment.

"fair warning that a particular activity may subject [them] to the jurisdiction" of U.S. courts, *Burger King*, 471 U.S. at 472 (citation omitted). The PSJVTA expressly states what actions will cause a defendant to be "deemed to have consented" to personal jurisdiction for the limited purpose of civil ATA claims. 18 U.S.C. § 2334(e). The Act gives the defendants fair warning about what conduct will subject them to personal jurisdiction for certain terrorism-related claims, and also provides a reasonable period to "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Daimler*, 571 U.S. at 139 (quoting *Burger King*, 471 U.S. at 472).[6]

The PA/PLO argue the PSJVTA is not consistent with due process because it relies on conduct that has been found to be insufficient to independently support a finding of specific or general personal jurisdiction. MTD, at 6. That argument conflates separate jurisdictional doctrines and conflicts with a long-standing body of Supreme Court precedent consistently recognizing that consent can be a stand-alone basis for personal jurisdiction, regardless of whether specific or general jurisdiction have otherwise been established. *Burger King*, 471 U.S. at 472. The Supreme Court has, for example, repeatedly suggested a legislature can enact a special jurisdictional statute (whether or not labeled "consent") that goes beyond conventional general and specific jurisdiction, but that is nonetheless consistent with *International Shoe*'s overall requirements of fairness and reasonableness. *See Hanson v. Denckla*, 357 U.S. 235, 252 (1958) (explaining the result in an earlier case as having been based on "special legislation" enacted by the forum state); *Kulko* v. *Superior Court of Cal.*, 436 U.S. 84, 98 (1978)

---

[6] The Act has a 120-day period before consent will be deemed from payments related to terrorism that killed or injured a U.S. national, 18 U.S.C. § 2334(e)(1)(A), and a fifteen-day period for non-excepted activities on behalf of the PA or PLO while physically in the United States, *id.* § 2334(e)(1)(B).

("California has not attempted to assert any particularized interest in trying such cases in its courts by, e.g., enacting a special jurisdictional statute"); *Shaffer* v. *Heitner*, 433 U.S. 186, 216 (1977) ("[A]ppellants had no reason to expect to be haled before a Delaware court. Delaware, unlike some States, has not enacted a statute that treats acceptance of a directorship as consent to jurisdiction in the State"); *see also* U.S. Br. at 33 n.6, *Bristol-Myers Squibb* v. *Superior Court of Cal.*, 137 S. Ct. 1773 (2017) (No. 16-466) (citing cases to suggest that a state may, in some circumstances, "craft a well-defined rule" that "reaches beyond the circumstances in which the exercise of specific jurisdiction has been sustained by this Court").[7]

Exercising personal jurisdiction based on the PSJVTA's deemed consent provisions ultimately would not be unfair or unreasonable. *Burger King*, 471 U.S. at 473; *see also Int'l Shoe*, 326 U.S. at 320 (exercising personal jurisdiction satisfies due process if it is "reasonable and just according to our traditional conception of fair play and substantial justice"); *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000) (noting that the assertion of personal jurisdiction should comport with fair play and substantial justice); *Ayers v. Tanami Trading Corp.*, No. 2:08-CV-00472-DB, 2009 WL 1362402, at *5 (D. Utah May 14, 2009) (courts will "inquire into the reasonableness of conferring jurisdiction where the basis of that jurisdiction lies in the purported consent of the defendant."). Since the PSJVTA's enactment, the PA and PLO have known (or should have known) what activities will be deemed consent and have had the opportunity to voluntarily choose whether or not to continue those activities. *Wellness Int'l*, 575 U.S. at 684–85. Under the circumstances here, if they engaged in

---

[7] Furthermore, cases describing state power under the Fourteenth Amendment's Due Process Clause do not limit Congress's authority under the Fifth Amendment. Congress and the Executive have unique constitutional responsibilities to manage international relations that have no State analog. *See* U.S. Const. Art. I, § 8; id. Art. II, § 2.

those activities, they have validly consented to personal jurisdiction for the limited purpose of ATA civil actions.

B.  The Activities Deemed Consent To Personal Jurisdiction under PSJVTA Have a Connection to the United States.

The activities that are deemed consent under the PSJVTA are also fair and reasonable because the specified actions have a close relationship with the United States.  *See Ayers*, 2009 WL 1362402, at *6.  The first provision conditions certain PLO or PA activities within the borders of the United States on their consent to personal jurisdiction for a narrow set of terrorism-related civil claims.  *See* H.R. Rep. No. 115-858, at 7 (2018) (committee report in support of ATCA) (explaining that "Congress has repeatedly tied [the PA's and PLO's] continued receipt of these privileges [including presence in the United States] to their adherence to their commitment to renounce terrorism," and that it is appropriate to deem the continued acceptance of these benefits to be "consent to jurisdiction in cases in which a person's terrorist acts injure or kill U.S. nationals").

Actions under the second prong, payments that are deemed consent under § 2334(e)(1)(A), also have a nexus to the interests of the United States because only payments made in relation to an act of terrorism killing or injuring a U.S. national are considered consent under the PSJVTA.  If Defendants make payments described in the PSJVTA after the effective date to individuals (or their family members) who harmed or killed Americans, the connection between Defendants' proscribed activity (payments) and the United States (harm to an American) is sufficient to satisfy due process. The PSJVTA gave Defendants 120 days to halt payments related to acts of terrorism that harmed or killed U.S. nationals.  18 U.S.C. § 2334(e)(1)(A).[8]

---

[8] Other courts analyzing specific personal jurisdiction—a separate doctrine—have focused on the facts of the underlying terrorist attack and found that the American nationality of a victim

C.   The PSJVTA's Consent Provisions Advance Federal Interests and Must Be Accorded Deference.

The PSJVTA is also fair and reasonable because it advances important federal interests. *Ayers*, 2009 WL 1362402, at *6 (noting that factors for consideration should include "the federal policies advanced by the statute, the relationship between [the scope of the consent] and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy.") (quoting *Peay*, 205 F.3d at 1213).  Congress enacted, and the President signed into law, the PSJVTA as a response to international terrorism, and the political branches acted against an extensive backdrop of statutes concerning the PLO and PA.  The ATA's civil-liability provision is intended "to develop a comprehensive legal response to international terrorism."  1992 House Report at 5.  The consent provisions in the PSJVTA serve to further the goal of deterring international terrorism.  *See* 166 Cong. Rec. S627 (daily ed. Jan. 28, 2020) (statement of Sen. Leahy) ("Congress is committed to pursuing justice for American victims of terrorism while ensuring appropriate standards regarding the ability of foreign missions to conduct official business in the United States."); 165 Cong. Rec. S7182 (daily ed. Dec. 19, 2019) (statement of Sen. Lankford) (bill "strike[s] a balance between Congress's desire to provide a path forward for American victims of terror to have their day in court and the toleration by the Members of this body to allow the PA/PLO to conduct a very narrow scope of activities on U.S. soil"); *id.* (statement of Sen. Grassley) ("these lawsuits disrupt and deter the financial support of terrorist organizations.  By

---

was not enough of a connection to provide specific personal jurisdiction because a victim's nationality was "random, fortuitous, or attenuated."  *Estate of Klieman ex rel. Kesner*, 923 F.3d at 1123-26.  But that reasoning is irrelevant to the questions at issue here—whether PA/PLO kept making payments related to terrorist attacks that harmed or killed an American and whether those payments would be sufficient to be consent to personal jurisdiction.  Unlike the attacks, payments like those described in the PSJVTA and made 120 days after enactment, are not "random, fortuitous, or attenuated."  *Id.*

cutting terrorists' financial lifelines, the ATA is a key part of the U.S. arsenal in fighting terrorism and protecting American citizens.").

The deemed consent provisions relating to Defendants' activities within the United States are consistent with these legislative goals of deterring international terrorism that harms or kills Americans. The PA and PLO are *sui generis* foreign entities that exercise governmental power but have not been recognized as sovereign governments by the Executive Branch. They have a unique relationship with the United States government premised on their renunciation of terrorism and commitment to peace in the Middle East. Their ability to operate within the United States is dependent on the judgments of the political branches, which have long imposed restrictions on these entities' U.S. operations based in part on the same concerns that motivated enactment of the ATCA and PSJVTA—namely, concerns about their historical support for acts of terrorism. *See* 22 U.S.C. § 5201 (enacted 1987; determining "that the PLO and its affiliates are a terrorist organization and a threat to the interests of the United States, its allies, and to international law and should not benefit from operating in the United States"); *id.* § 5202 (prohibiting PLO from maintaining an office in the United States); Middle East Peace Facilitation Act of 1993, Pub. L. No. 103-125, § 3(b)(2), 107 Stat. 1309, 1310 (1993) (authorizing temporary waiver of that prohibition if the President certifies that "it is in the national interest of the United States" and "the Palestine Liberation Organization continues to abide by" its Oslo Accords commitments); Department of State, Foreign Operations, and Related Programs Appropriations Act, 2022, Pub. L. No. 117-103, div. K, title VII, § 7041(l)(3)(B)(i), 136 Stat. 49, 641 (2022) (authorizing temporary waiver if the President determines the Palestinians have not obtained United Nations membership status as a state and have not "actively supported an [International Criminal Court] investigation against Israeli nationals for alleged crimes against Palestinians"); *see also* Palestinian Anti-Terrorism Act of 2006, Pub. L. No. 109-446, § 7, 120 Stat. 3318, 3324 (2006) (22 U.S.C. § 2378b

note) (prohibiting the establishment or maintenance in the U.S. of any office of the PA during any period for which it is effectively controlled by or unduly influenced by Hamas, absent a waiver).

Similarly, deeming payments to designees or family members of those imprisoned for or killed while committing acts of terrorism killing or harming Americans as consent to personal jurisdiction furthers critical foreign policy interests in discouraging support for international terrorism harming Americans. *See* Taylor Force Act, Pub. L. No. 115-141, div. S, title X, § 1002(1), 132 Stat. 348, 1143 (2018) (Findings) (22 U.S.C. § 2378c-1 note); *see Holder v. Humanitarian Law Project*, 561 U.S. 1, 8–10 (2010) (discussing national security interests in deterring support for terrorism); *Center for Const. Rights v. CIA*, 765 F.3d 161, 169 (2d Cir. 2014) ("incit[ing] violence against American interests at home and abroad [will cause] damage to the national security").

Given that the PSJVTA was enacted "on a matter of foreign policy"—namely, combatting international terrorism harming Americans—and the political branches' role with respect to our country's relationship with Defendants, the statute "warrants respectful review by courts." *Bank Markazi v. Peterson*, 578 U.S. 212, 215 (2016). The consent the PSJVTA provides is narrow—limited to *sui generis* foreign entities, applicable only to ATA claims, and in furtherance of U.S. foreign policy of combatting international terrorism harming U.S. nationals. That limited provision must be reviewed in light of the federal government's constitutional responsibilities for, and broad authority, over, international relations and the protection of U.S. nationals abroad—government interests reasonably linked and roughly proportionate to the deemed-consent provisions of the PSJVTA.

Exercising personal jurisdiction through deemed consent under the PSJVTA would be fully consistent with the requirements of due process.

II.   **Consent Can Be Valid Even Without an Exchange of Benefits.**

Defendants argue that consent cannot be truly voluntary unless they receive some benefit in

13

return.  MTD at 10–14.  But as explained above, consent to personal jurisdiction need only be "know-ing and voluntary" and reasonable—nothing in the relevant case law concerning consent to jurisdic-tion suggests a benefit must be given.  *Wellness Int'l*, 575 U.S. at 685; *see Roell v. Withrow*, 538 U.S. 580, 590 (2003).  To the contrary, as the Supreme Court has put it, "the key inquiry is whether 'the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily'" proceeded.  *Wellness Int'l*, 575 U.S. at 685 (quoting *Roell*, 538 U.S. at 590).

There is no basis to read in a requirement that consent to personal jurisdiction must be in exchange for a benefit.  Defendants point to nothing in the text or history of the Fifth Amendment that requires an exchange of benefits before consent to personal jurisdiction can be valid.  Although the Supreme Court has not specifically addressed Defendants' argument, it has upheld the assertion of personal jurisdiction based on a defendant's actions, even when a defendant receives nothing in return.  In *Bauxites*, for example, the Court held that under Federal Rule of Civil Procedure 37(b)(2)(A), a district court could deem personal jurisdiction to have been established as a sanction for the defend-ant's failure to comply with a discovery order directed at establishing jurisdictional facts.  456 U.S. at 703–06.  The Court explained that such an action "amount[s] to a legal submission to the jurisdiction of the court, whether voluntary or not."  *Id.* at 704–05.  The Court likewise observed that a defendant's failure to timely object to personal jurisdiction would have the same effect of waiving the requirement, *id.*, even though the defendant receives nothing in return by consenting through waiver. [9]

_____

[9] Defendants rely on two district court cases that suggest jurisdiction by consent depends on a "bargain." MTD at 11 (citing *Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882, 889 (S.D. Tex. 1993); *In re Mid-Atlantic Toyota Antitrust Litig.*, 525 F. Supp. 1265, 1278 (D. Md. 1981)).  Both cases involved putative consent to widely applicable general jurisdiction, inferred from the defendants' constructive presence in the state through registration; the PSJVTA, which limits jurisdiction to only certain entities, a specific type of civil action, and expressly deems activities to constitute consent, is distinguishable. In any event, neither decision is binding on this Court.

In other contexts, the Supreme Court has confirmed that a decision to waive a right is "knowing" even without a bargained exchange, if that waiver was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it," and is "voluntary" if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (waiver of *Miranda* rights); *accord United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014) (same); *United States v. Velez*, 354 F.3d 190, 196 (2d Cir. 2004) (applying same definition to waiver of inadmissibility of statements made during plea discussions); *United States v. O'Brien*, 926 F.3d 57, 76 (2d Cir. 2019) (consent to search is given "freely and voluntarily" under Fourth Amendment if not "the product of duress or coercion"; upholding consent to search obtained without any exchange (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). Such a waiver can be effected even without "promises" made to obtain it, or any other consideration or exchange. *Oregon v. Elstad*, 470 U.S. 298, 302 (1985).[10]

Thus, consent can be knowing and voluntary even where the person consenting receives no benefit in return. The PSJVTA deems jurisdiction only with respect to certain parties—PA/PLO and their affiliates or successors—over specified civil actions under a single federal statute—the ATA. The PSJVTA puts defendants on notice that their choice to continue those activities specifically enumerated in it will be the "voluntary act" that manifests consent to jurisdiction, even if no quid pro quo

---

[10] Before *Miranda*, the Supreme Court determined the propriety of an accused's statements based on whether they "were 'voluntary' within the meaning of the Due Process Clause," a test that was satisfied in the absence of "techniques and methods offensive to due process" or circumstances demonstrating the "suspect clearly had no opportunity to exercise a free and unconstrained will." *Elstad*, 470 U.S. at 304 (citation omitted); *accord New York v. Quarles*, 467 U.S. 649, 661 (1984) (O'Connor, J., concurring in judgment) (statement not voluntary if "interrogation was deemed unreasonable or shocking, or if the accused clearly did not have an opportunity to make a rational or intelligent choice"). Neither consideration nor reciprocity was required.

is given. *Cf. Pa. Fire Ins. Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 95–96 (1917) (defendant's appointment of agent for service of process constitutionally subjected defendant to suit in state for cases growing out of defendant's activities because the governing statute "ha[d] been held to go to that length" and the execution of the document "was the defendant's voluntary act").[11]

III.   <u>District Courts That Found the PSJVTA Unconstitutional Were Wrong.</u>

Defendants urge the court to follow the reasoning of three district courts in the Southern District of New York that concluded that the PSJVTA's deemed consent provisions were unconstitutional. This Court should not rely on those opinions, which are non-binding and all currently on appeal to the Second Circuit.

The *Fuld* court, for example, held that "the first prong of the 'deemed consent provision' — for 'martyr payments,' [] ha[s] no direct connection to the United States." *Fuld v. PLO*, 578 F. Supp. 3d 577, 587 (S.D.N.Y. 2022) (quoting 18 U.S.C. § 2334(e)(1)(A), *appeal filed*, No. 22-76 (2d Cir. Jan. 13, 2022), *appeal filed*, No. 22-496 (2d Cir. Mar. 8, 2022). But the *Fuld* court ignored that payments only qualify as consent if made in connection with acts of terrorism that harmed or killed U.S. nationals— those payments certainly have a connection to the United States and its interests in the protection of U.S. nationals abroad.

The *Fuld* court also incorrectly described the constitutional standard for consent to personal

---

[11] Even if Defendants were correct that consent under PSJVTA is best understood as an implied consent that could only be given in exchange for some benefit, some of the bases for consent in the PSJVTA would still satisfy that alleged requirement (maintaining an office or otherwise operating within the United States). *See* MTD at 7 (citing *Hess v. Pawloski*, 274 U.S. 352, 354-57 (1927) (defendant's "acceptance" of the "rights and privileges" of driving on public roads constituted "signification of his agreement" to consent to jurisdiction in state court); *Ruggieri v. General Well Serv. Inc.*, 535 F. Supp. 525, 529 (D. Colo. 1982) ("Implied consent may also arise from a defendant's pre-litigation conduct," such as "use of a state's roads.")).

jurisdiction when it held that consent can only be reasonable if the conduct reflects an "intent to submit to the jurisdiction of a United States court." *Id.* at 580. That conclusion is at odds with Supreme Court opinions and the Federal Rules of Civil Procedure which do not require an intent to submit to jurisdiction. The *Fuld* court appears to derive this standard from dicta in a plurality opinion that discusses general and specific jurisdiction. *Id.* at 585 (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (plurality op.). But the plurality opinion in *McIntyre* is not binding precedent, the cited quotes are dicta, and moreover, that case did not involve consent—it described the standards for general or specific jurisdiction. *Id.*[12] The other S.D.N.Y. courts that have considered the constitutionality of the PSJVTA have mistakenly relied on the *Fuld*'s court errant standard of reasonableness. *See Shatsky v. PLO*, No. 18-CV-12355 (MKV), 2022 WL 826409, at *4 (S.D.N.Y. Mar. 18, 2022) (citing and relying on this erroneous standard); *Sokolow v. PLO*, No. 04 CIV. 397 (GBD), 2022 WL 719261, at *5 (S.D.N.Y. Mar. 10, 2022) (same), *appeal filed* No. 22-1060 (2d Cir. May 9, 2022).

The *Fuld* court also relied on a case involving Eleventh Amendment waiver of state sovereign immunity. 578 F. Supp. 3d at 588 (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999)). But *College Savings* was not a Fifth Amendment due process case, 527 U.S. at 672, and the requirements to waive state sovereign immunity are much more stringent than those for personal jurisdiction. *See id.* at 675–76. States have a unique place in our federal system and any waiver of sovereign immunity must "be unequivocal" and can only be through a "'clear declaration' *by the State* of its waiver." *Id.* at 680. Consent to personal jurisdiction does not need a "clear declaration" of an "unequivocal" intent—it can be waived by failing to raise an objection in an answer or even

---

[12] The *Fuld* court also cites to *WorldCare Ltd. Corp. v. World Ins. Co.*, 767 F. Supp. 2d 341, 355 (D. Conn. 2011), but that case analyzed whether registering to do business in Connecticut provided consent to general personal jurisdiction.

exercised over a defendants' explicit objection. *Compare id. with* Fed. R. Civ. P. 12(h) *and Bauxites*, 456 U.S. at 703–06 (holding that Congress through the Rules Enabling Act authorized the judiciary to exercise personal jurisdiction).

Finally, the *Fuld* court ignored that there are constitutional limits beyond "fair notice and an opportunity to conform" for deemed consent to satisfy due process. *Fuld*, 578 F. Supp. 3d at 590. To be sure, those are important parts of due process, but the *Fuld* court ignored that due process also requires consent to be reasonable and fair—standards that place real limits on what can be deemed consent, and that are met here. *See generally id.* The court also gave no consideration that the PSJVTA jurisdictional provisions are limited: they only apply to specific defendants, the activities that are deemed consent have a close connection to the United States and its interests, and the provisions further the federal interest of deterring international terrorism that harms U.S. nationals. *Id.* The court also did not properly consider that the Defendants here are *sui generis* foreign entities and Congress and the Executive have long worked together to set the appropriate parameters for Defendants' relationship with the United States. *Id.*[13]

In short, this Court should not rely on the reasoning or conclusions of those district court decisions.

---

[13] Defendants also contend the PSJVTA violates constitutional separation of powers arguing that the Act is a legislative attempt to undercut judicial decisions. MTD at 14–15 (citing *Shatsky*, *Waldman*, *Livnat*, and *Klieman*). But those decisions addressed personal jurisdiction based on minimum contacts, which is a *separate* ground to find personal jurisdiction. Defendants are also wrong when they argue that the Act cuts the judiciary out of the decision-making process. Courts must determine whether the factual predicates for consent jurisdiction are met, whether Plaintiffs have provided sufficient facts to show that Defendants have engaged in conduct that is deemed consent to personal jurisdiction under the PSJVTA, and whether exercising jurisdiction would be fair and reasonable.

**Conclusion**

The Court should find that the PSJVTA is constitutional.


Dated: September 26, 2022                    Respectfully submitted,

                                             BRIAN M. BOYNTON
                                             Principal Deputy Assistant Attorney General

                                             ALEXANDER K. HAAS
                                             Director, Federal Programs Branch

                                             ANTHONY J. COPPOLINO
                                             Deputy Director

                                             */s/ Zachary A. Avallone*
                                             ZACHARY A. AVALLONE
                                             Trial Attorney
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             1100 L Street, N.W.
                                             Washington, DC 20005
                                             Tel: (202) 514-2705
                                             Fax: (202) 616-8470
                                             Email: zachary.a.avallone@usdoj.gov


                                             *Counsel for Intervenor*
                                             *United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2022, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

/s/ Zachary A. Avallone

ZACHARY A. AVALLONE