UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
-----------------------------------------------------------------x

SHELLEY LEVINE, et al.,                          Case No. 21-cv-03043

                          Plaintiffs,

            v.

THE PALESTINE LIBERATION
ORGANIZATION and
THE PALESTINIAN AUTHORITY,

                          Defendants.
-----------------------------------------------------------------x

**<u>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT
UNDER RULE 12(b)(2) AND RULE 12(b)(6)</u>**

**SQUIRE PATTON BOGGS (US) LLP**

Gassan A. Baloul
gassan.baloul@squirepb.com
Mitchell R. Berger
mitchell.berger@squirepb.com

2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

717 17th Street, Suite 1825
Denver, CO 80202
Telephone: (303) 830-1776
Facsimile: (303) 894-9239

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I.    EXERCISING PERSONAL JURISDICTION OVER DEFENDANTS WOULD
      VIOLATE DUE PROCESS............................................................................................. 2

      A.    Defendants Have Not Consented To Personal Jurisdiction Under The
            PSJVTA. .............................................................................................................. 2

      B.    Defendants Do Not Have Sufficient Contacts With The United States To
            Support Specific Jurisdiction. ........................................................................... 10

      C.    The PA And PLO Are Persons Under The Due Process Clause. ........................ 13

      D.    Rule 23.2 Does Not Create Personal Jurisdiction Over Defendants................... 15

            1.    Federal procedural rules cannot create jurisdiction that exceeds the
                  limits of personal jurisdiction under the Due Process Clause................. 16

            2.    Rule 23.2 does not apply because Plaintiffs do not seek to sue a
                  class of the membership of the PA and PLO. ......................................... 17

            3.    Ambassador Mansour cannot be sued under Rule 23.2 because the
                  FAC does not allege that he participated in tortious conduct. ............... 18

            4.    Plaintiffs misrepresent the *Sokolow* record in support of their claim
                  that the Ambassador is a member of the PA and PLO. .......................... 19

II.   THE PSJVTA VIOLATES SEPARATION OF POWERS............................................ 21

III.  PLAINTIFFS' DIRECT LIABILTY CLAIM FOR AN ACT OF
      INTERNATIONAL TERRORISM UNDER 18 U.S.C. § 2333(A) SHOULD BE
      DISMISSED. ................................................................................................................. 21

      A.    The FAC Fails To Plausibly Allege Proximate Cause........................................ 22

      B.    The FAC Fails To Plausibly Allege That Defendants Committed An "Act
            of International Terrorism."............................................................................... 25

      C.    The FAC Does Not Plausibly Allege Defendants Provided Material
            Support to an FTO, Or Intended That Such Support Would Be Used For
            Terrorism............................................................................................................ 27

IV.   PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE THE ESSENTIAL ELEMENTS
      OF *RESPONDENT SUPERIOR* LIABILITY................................................................ 28

V.    PLAINTIFFS' SECONDARY LIABILTY CLAIMS SHOULD BE DISMISSED........ 29

      A.    Plaintiffs' Claim For Conspiracy Liability Should Be Dismissed...................... 29

B.     Plaintiffs' Claim For Aiding And Abetting Liability Should Be Dismissed. ....... 31

     1.     The FAC fails to show that the Defendants were "generally aware" they were assuming a role in terrorist activity. ........................................ 31

     2.     The FAC fails to show that the defendants knowingly and substantially assisted the Attack. ............................................................ 34

VI.     PLAINTIFFS HAVE FAILED TO ALLEGE LIABILITY UNDER ISRAELI LAW. ..................................................................................................................... 36

CONCLUSION ..................................................................................................................... 37

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*1-800 Contacts v. Lens.Com,*
  722 F.3d 1229 (10th Cir. 2013) ............................................29

*Alfaro-Huitron v. Cervantes Agribusiness,*
  982 F.3d 1242 (10th Cir. 2020) ...........................................28

*American-Arab Anti-Discrimination Comm. v. Reno,*
  119 F.3d 1367 (9th Cir. 1997) ........................................24, 33

*Atchley v. AstraZeneca,*
  22 F.4th 204 (D.C. Cir. 2022) ................................... 23-24, 34

*Bakalar v. Vavra,*
  237 F.R.D. 59 (S.D.N.Y. 2006) ...........................................17

*Bell v. Brockett,*
  922 F.3d 502 (4th Cir. 2019) .............................................17

*Bernhardt v. Islamic Republic of Iran,*
  47 F.4th 856 (D.C. Cir. 2022) ........................................32, 34

*Boerne v. Flores,*
  521 U.S. 507 (1997) ......................................................21

*Boim v. Holy Land Found. For Relief & Dev.,*
  549 F.3d 685 (7th Cir. 2008) .............................................25

*Brill v. Chevron Corp.,*
  2017 U.S. Dist. LEXIS 4132 (N.D. Cal. Jan. 9, 2017) .........................26

*Brown v. Lockheed Martin Corp.,*
  814 F.3d 619 (2d Cir. 2016)................................................3

*Burnett v. Al Baraka Inv. & Dev. Corp.,*
  274 F. Supp. 2d 86 (D.D.C. 2003) .......................................28

*Cabrera v. Black & Veatch Special Projects Corps.,*
  2021 U.S. Dist. LEXIS 152218 (D.D.C. July 30, 2021)........................26

*Calagaz v. Calhoon,*
  309 F.2d 248 (5th Cir. 1962) .............................................17

*College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999)............................................................................................................3, 5, 6

*Collins v. Daniels*,
    916 F.3d 1302 (10th Cir. 2019) ...............................................................................................15

*Colon v. Twitter, Inc.*,
    14 F.4th 1213 (11th Cir. 2021) ................................................................................................33

*Coniglio v. Highwood Servs.*,
    60 F.R.D. 359 (W.D.N.Y. 1972)...............................................................................................18

*Copeland v. Twitter, Inc.*,
    352 F. Supp. 3d 965 (N.D. Cal. 2018) ...............................................................................33, 34

*Crosby v. Twitter*,
    303 F. Supp. 3d 564 (E.D. Mich. 2018)............................................................................23, 24, 27

*Crosby v. Twitter, Inc.*,
    921 F.3d 617 (6th Cir. 2019) ..............................................................................................33, 35

*Daimler v. Bauman*,
    571 U.S. 117 (2014)....................................................................................................................6

*Douglass v. Nippon Yusen Kabushiki Kaisha*,
    46 F.4th 226 (5th Cir. 2022) (en banc) ....................................................................................16

*Fields v. Twitter, Inc.*,
    881 F.3d 739 (9th Cir. 2018) ....................................................................................................22

*First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*,
    462 U.S. 611 (1983)...................................................................................................................14

*United States ex rel. Fisher Sand & Gravel Co. v. Kirkland Constr.*,
    76 F. Supp. 3d 1199 (D. Colo. 2014).......................................................................................27

*Ford Motor v. Montana Eighth Judicial Dist. Ct.*,
    141 S. Ct. 1017 (2021).........................................................................................................12, 13

*Freeman v. HSBC Holdings*,
    413 F. Supp. 3d 67 (E.D.N.Y. 2019) ..................................................................................27, 30

*Fuld v. PLO*,
    578 F. Supp. 3d 577 (S.D.N.Y. 2022).......................................................................... *passim*

*Gater Assets v. Moldovagaz*,
    2 F.4th 42 (2d Cir. 2021) ..........................................................................................................14

*Gill v. Arab Bank*,
893 F. Supp. 2d 542 (E.D.N.Y. 2012) .................................................... 33, 36

*Gilmore v. Palestinian Interim Self-Gov't Auth.*,
53 F. Supp. 3d 191 (D.D.C. 2014) ................................................................. 34

*Gonzalez v. Google*,
2 F.4th 871 (9th Cir. 2021) ..................................................................... 26, 30

*GSS Group Ltd. v. Nat'l Port Auth.*,
680 F.3d 805 (D.C. Cir. 2012) ................................................................. 13, 14

*Halberstam v. Welch*,
705 F.2d 472 (D.C. Cir. 1983) ...................................................................... 34

*Hammond Packing Co. v. Ark.*,
212 U.S. 322 (1909) ....................................................................................... 5

*Hernandez v. Office of the Comm'r of Baseball*,
2018 U.S. Dist. LEXIS 168597 (S.D. Ohio Sep. 30, 2018) ........................... 15

*Hess v. Pawloski*,
274 U.S. 352 (1927) ....................................................................................... 6

*Honickman v. BLOM Bank*,
6 F.4th 487 (2d Cir. 2021) ........................................................................... 33

*Honickman v. BLOM Bank*,
432 F. Supp. 3d 253 (E.D.N.Y. 2020) .......................................................... 32

*Honorato v. Mount Olympus Enters.*,
2021 U.S. Dist. LEXIS 156963 (W.D. Wis. Aug. 18, 2021) ......................... 12

*Hood v. Am. Auto Care*,
21 F.4th 1216 (10th Cir. 2021) ................................................................. 12, 13

*Hovey v. Elliot*,
167 U.S. 409 (1897) ....................................................................................... 5

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) ................................................................................ 4, 5, 8

*In re Integra Realty Res.*,
262 F.3d 1089 (10th Cir. 2001) .................................................................... 17

*Kaplan v. Al Jazeera*,
2011 U.S. Dist. LEXIS 61373 (S.D.N.Y. June 7, 2011) ............................... 23

*Kaplan v. Lebanese Canadian Bank,*
    999 F.3d 842 (2d Cir. 2021)....................................................................30, 31, 32

*Kemper v. Deutsche Bank,*
    911 F.3d 383 (7th Cir. 2018) .............................................................23, 24, 26, 30

*Kendall v. Visa U.S.A., Inc.,*
    518 F.3d 1042 (9th Cir. 2008) .......................................................................19

*Klieman v. Palestinian Auth.,*
    923 F.3d 1115 (D.C. Cir. 2019) ..............................................................7, 10, 11

*Klinghoffer v. S.N.C. Achille Lauro,*
    937 F.2d 44 (2d Cir. 1991)..........................................................................10, 14

*Legacy Funeral Grp. v. Damiano,*
    2021 U.S. Dist. LEXIS 74059 (S.D. Tex. Apr. 16, 2021) ......................................12

*Leonard v. USA Petroleum Corp.,*
    829 F. Supp. 882 (S.D. Tex. 1993) ................................................................5, 7

*Linde v. Arab Bank,*
    97 F. Supp. 3d 287 (E.D.N.Y. 2015) ...............................................................36

*Linde v. Arab Bank, PLC,*
    882 F.3d 314 (2d Cir. 2018).......................................................................25, 36

*Livnat v. Palestinian Auth.,*
    851 F.3d 45 (D.C. Cir. 2017) .....................................................................11, 14

*Llacua v. W. Range Ass'n,*
    930 F.3d 1161 (10th Cir. 2019) .....................................................................18

*Lumbermen's Underwr. Alliance v. Mobil Oil,*
    612 F. Supp. 1166 (D. Idaho 1985) .................................................................19

*Marchwinski v. Oliver Tyrone Corp.,*
    81 F.R.D. 487 (W.D. Pa. 1979) ......................................................................17

*Mendelsohn v. Meese,*
    695 F. Supp. 1474 (S.D.N.Y. 1988)..................................................................9

*NAACP v. Claiborne Hardware,*
    458 U.S. 886 (1982)......................................................................................18

*Niz-Chavez v. Garland,*
    141 S. Ct. 1474 (2021)...................................................................................35

*NYC v. Mickalis Pawn Shop*,
   645 F.3d 114 (2d Cir. 2011)........................................................................8

*O'Sullivan v. Deutsche Bank AG*,
   2020 WL 906153 (S.D.N.Y. Feb. 25, 2020)..........................................30

*Osborn v. Visa Inc.*,
   797 F.3d 1057 (D.C. Cir. 2015)...............................................................19

*Owens v. BNP Paribas*,
   897 F.3d 266 (D.C. Cir. 2018).............................................................23, 24

*Plaut v. Spendthrift Farm*,
   514 U.S. 211 (1995)................................................................................21

*Retana v. Twitter*,
   1 F.4th 378 (5th Cir. 2021) ....................................................................36

*Richter v. LG Chem, Ltd.*,
   2022 U.S. Dist. LEXIS 184847 (N.D. Ill. Sep. 27, 2022) ......................12

*Roell v. Withrow*,
   538 U.S. 580 (2003)..................................................................................3

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013).............................................................23, 24, 25

*Russello v. United States*,
   464 U.S. 16 (1983)..................................................................................35

*Saville v. IBM*,
   127 Fed. Appx. 404 (10th Cir. 2005)......................................................27

*Shatsky v. PLO*,
   2017 U.S. Dist. LEXIS 94946 (D.D.C. June 20, 2017)................22, 30, 35

*Shatsky v. PLO*,
   2022 U.S. Dist. LEXIS 48721 (S.D.N.Y. Mar. 18, 2022) ............. *passim*

*Shatsky v. PLO*,
   292 F. Supp. 3d 188 (D.D.C. 2017).....................................................24, 34

*Shatsky v. PLO*,
   955 F.3d 1016 (D.C. Cir. 2020).........................................................9, 10, 11

*Shatsky v. Syrian Arab Republic*,
   795 F. Supp. 2d 79 (D.D.C. 2011).......................................................29, 31

*Sokolow v. PLO*,
    2022 U.S. Dist. LEXIS 43096 (S.D.N.Y. Mar. 10, 2022) ............................................... *passim*

*Sokolow v. PLO*,
    2022 U.S. Dist. LEXIS 107122 (S.D.N.Y. June 15, 2022).......................................................1

*Sokolow v. PLO*,
    60 F. Supp. 3d 509 (S.D.N.Y. 2014)........................................................21, 28, 30, 35

*Stansell v. BGP, Inc.*,
    2011 U.S. Dist. LEXIS 39808 (M.D. Fla. Mar. 31, 2011).......................................26

*Strauss v. Credit Lyonnais*,
    925 F. Supp. 2d 414 (E.D.N.Y. 2013) ...............................................................34

*Taylor v. Bywater*,
    1994 U.S. Dist. LEXIS 4176 (D. Kan. Mar. 29, 1994)....................................17, 19

*United States v. Pink*,
    315 U.S. 203 (1942) ...........................................................................13

*United States v. PLO*,
    695 F. Supp. 1456 (S.D.N.Y. 1988)......................................................9, 10, 19

*V&A Collection v. Guzzini Props.*,
    46 F.4th 127 (2d Cir. 2022) ............................................................3

*Waldman v. PLO*,
    835 F.3d 317 (2d Cir. 2016)............................................................10, 11, 14

*Waldman v. PLO*,
    925 F.3d 570 (2d Cir. 2019).........................................................7, 11, 21

*Warth v. Seldin*,
    422 U.S. 490 (1975)............................................................................15

*Weiss v. Nat'l Westminster Bank*,
    768 F.3d 202 (2d Cir. 2014).........................................................................26

*Wellness Int'l Net. v. Sharif*,
    575 U.S. 665 (2015)............................................................................3

*Zadvydas v. Davis*,
    533 U.S. 678 (2001)..............................................................................13

## Rules

Fed. R. Civ. P. 12 ...................................................................................22, 27

Fed. R. Civ. P. 17 .........................................................................................18

Fed. R. Civ. P. 23 .................................................................................. *passim*

## Statutes

18 U.S.C. § 2331(1) ...............................................................................25, 26

18 U.S.C. § 2334(e) .........................................................................6, 9, 10

18 U.S.C. § 2339B ..................................................................................32, 35

22 U.S.C. § 5201(b) .......................................................................................9

Colo. Rev. Stat. §7-30-106(3) .....................................................................18

## Other Authorities

Omar Dajani, *Stalled Between Seasons: The International Legal Status of
Palestine During the Interim Period*, 26 Denv. J. Int'l L. & Pol'y 27 (1997).......................32

DOJ, Office of Legal Counsel, *Mutual Consent Provisions in the Guam
Commonw. Legis.* (July 28, 1994) .........................................................15

G.A. Res, *State of Palestine in the UN* (Nov. 29, 2012),
https://undocs.org/en/A/RES/67/19 .........................................................19

K. Toameh, *Facing bankruptcy, terror group accuses Abbas of 'political
blackmail,'* Jerusalem Post (Apr. 25, 2020).............................................31

Restat. (Third) Agency, § 2.01...................................................................28

Restat. (Third) Agency, § 7.04(1)...............................................................28

UN Press Release, *State of Palestine to Gain Enhanced Rights, Privileges in G.A.
Work, Sessions When It Assumes 2019 Group of 77 Chairmanship* (Oct. 16,
2018), https://www.un.org/press/en/2018/ga12078.doc.htm ...................................19

## PRELIMINARY STATEMENT

Plaintiffs' brief spends little time discussing the PSJVTA—a tacit acknowledgment of its constitutional infirmities. Plaintiffs do not deny the statute purports to <u>impose</u> personal jurisdiction by declaring Defendants shall be "deemed" to "consent" to jurisdiction when they engage in the same conduct previously held insufficient to support jurisdiction under the Due Process Clause. Plaintiffs and the Government argue that "fair warning" and a "reasonable relationship" to a government objective is all that is needed, but courts have rejected their idea that Congress can legislate that any conduct shall be deemed consent under due process tests. The Due Process Clause instead requires that conduct cannot be "deemed" to be implied consent to jurisdiction, unless it is a reasonable proxy for actual consent—otherwise it "would effectively mean that there are no due process limitations on the exercise of personal jurisdiction." *Fuld v. PLO*, 578 F. Supp. 3d 577, 590 (S.D.N.Y. 2022) ("*Fuld*"); *Sokolow v. PLO*, 2022 U.S. Dist. LEXIS 43096 (S.D.N.Y. Mar. 10, 2022) ("*Sokolow*"), *recon. denied*, 2022 U.S. Dist. LEXIS 107122 (June 15, 2022); *Shatsky v. PLO*, 2022 U.S. Dist. LEXIS 48721 (S.D.N.Y. Mar. 18, 2022) ("*Shatsky*").

This Court should follow these unanimous decisions and hold that the PSJVTA is unconstitutional. Apart from the PSJVTA, Plaintiffs' other jurisdictional theories also fail. Plaintiffs cannot establish specific jurisdiction, for the same reason that every other post-*Walden* court has held—namely, Plaintiffs cannot connect the actions of the PA and PLO, or an attack in Israel or Palestine, to the United States. In every other case, like this one, the claims did not arise from Defendants' alleged U.S. conduct, and Defendants' alleged conduct in Palestine was not aimed at the United States. Equally, Plaintiffs' Rule 23.2 theory fails because the Federal Rules do not trump the Due Process Clause, and thus cannot supply jurisdiction by rule when jurisdiction is constitutionally deficient. In addition, Rule 23.2 requires a class comprised of *members* of the

unincorporated associations—whereas Plaintiffs are trying to make a class of the associations themselves, both of which are already named as stand-alone Defendants.

Independent of jurisdiction, this Court can dismiss the FAC's primary liability claims because its attempts to tie Defendants to the Attack are speculative rather than factual—indeed, the FAC does not even plausibly allege the PFLP committed the Attack. Plaintiffs speculate about the Attackers' motivations and history, the effects of the funding provided by the PLO to Palestinian political factions, and the activities of the PFLP. They fail to plead proximate causation, material support, or that Defendants committed an "act of international terrorism."

Plaintiffs' other claims fare no better. Plaintiffs fail to plausibly allege an agreement by Defendants to commit the Attack or any other terrorist act. This failure to show Defendants were aware of the Attackers' activities likewise forecloses aiding-and-abetting liability. Nor do Plaintiffs plausibly allege that generalized aid provided by Defendants to the PLO's second-largest political faction knowingly and substantially assisted the Attackers or the Attack. Plaintiffs also fail to plead proximate and but-for causation under Israeli law. Plaintiffs do not trace the alleged support of the PFLP to the Attackers—nor could they, even if the PFLP were responsible, given that the PFLP has many sources of funding, precluding a but-for cause finding as to Defendants.

## ARGUMENT

## I. EXERCISING PERSONAL JURISDICTION OVER DEFENDANTS WOULD VIOLATE DUE PROCESS.

### A. Defendants Have Not Consented To Personal Jurisdiction Under The PSJVTA.

This Court should follow the unanimous decisions in *Fuld*, *Sokolow*, and *Shatsky* that the PSJVTA cannot constitutionally impose "deemed consent" jurisdiction upon Defendants. Relying on bedrock Supreme Court precedent, this trio of decisions held that "the conduct to which

Congress attached jurisdictional consequence in the PSJVTA is not 'of such a nature as to justify the fiction' that Defendants actually consented." *Fuld* at 587 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 318 (1945)). They explained that "due process requires more than notice and the opportunity to conform one's conduct for effective consent to jurisdiction." *Shatsky* at 15-16. When Congress deems specific conduct to be "consent," that conduct must be a reasonable stand-in for actual consent—or it "would effectively mean that there are no due process limitations on the exercise of personal jurisdiction." *Fuld* at 590; *Sokolow* at 18-20.

These three decisions reflect the Supreme Court's holding that implied consent is "a deeply factbound analysis" that requires courts to infer "whether [defendant's] actions evinced the requisite knowing and voluntary consent." *Wellness Int'l Net. v. Sharif*, 575 U.S. 665, 685-86 (2015); *see also Brown v. Lockheed Martin Corp.,* 814 F.3d 619, 640 (2d Cir. 2016) (explaining a defendant may "submit to jurisdiction" that a court "would otherwise be unable to exercise" through "free and voluntary consent"). And "[t]hat inference is reasonable, however, only where the defendant's statements or conduct actually signal approval or acceptance." *Fuld* at 586. *See, e.g.*, *Roell v. Withrow*, 538 U.S. 580, 584 (2003) (holding parties who "voluntarily participated in the entire course of proceedings" through trial without objecting to jurisdiction "clearly implied their consent" "by their actions").

An "effective waiver of a constitutional right" generally requires proof of "the 'intentional relinquishment or abandonment of a known right or privilege.'" *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999) (citation omitted). Because implied or "constructive" consent "is not a doctrine commonly associated with the surrender of constitutional rights," federal courts "indulge every reasonable presumption against waiver." *Id.* at 681-82 (internal quotations omitted). Plaintiffs cite *V&A Collection v. Guzzini Props.*, 46 F.4th

127, 132 (2d Cir. 2022), to argue otherwise, but that case describes the inapposite circumstance in which *the party bringing suit* impliedly consents to jurisdiction for all claims arising out of *the same transaction*. The PSJVTA involves no similar actions within the litigation itself.

Conduct by a party within litigation is expressly included in *Bauxites*' catalogue of "legal arrangements [that] have been taken to represent express or implied consent to the personal jurisdiction of the court," including submission "by appearance," forum-selection clauses, arbitration, stipulation, "constructive consent" through "the voluntary use of certain state procedures," and failure to assert a jurisdictional defense in a responsive pleading. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982). None of those "legal arrangements," reflecting "actions of the defendant" that "amount to a legal submission to the jurisdiction of the court," *id.* at 704-05, is present under the PSJVTA or in this case.

Plaintiffs argue that *Bauxites* eliminated the need for "voluntary" consent to jurisdiction, but it did no such thing. Pl. Br. 11. *Bauxites* distinguished between inferring a defendant's knowing and voluntary choice to submit to jurisdiction by its own litigation conduct, and "mere assertions of power" by the forum to impose jurisdiction. *Bauxites*, 456 U.S. at 705. The Court examined whether the defendant's failure to comply with court-ordered jurisdictional discovery was a constructive waiver of its objection to personal jurisdiction. *Id.* The Court held that it was, but only because the defendant's specific conduct—its "failure to supply the requested information as to its contacts with [the forum]"—"was but an admission of the want of merit in the asserted defense." *Id.* at 705, 709 (quoting *Hammond Packing Co. v. Ark.*, 212 U.S. 322, 351 (1909)). By refusing to participate in jurisdictional discovery, the defendant implicitly acknowledged it had sufficient contacts to support jurisdiction. *Id.* at 706 ("[T]he sanction is nothing more than the invocation of a legal presumption, or what is the same thing, the finding of a constructive waiver.").

To illustrate the "due process limits" that apply to implied consent, *Bauxites* distinguished *Hovey v. Elliot*, 167 U.S. 409 (1897), which held "it <u>did</u> violate due process for a court to [find consent to jurisdiction] as '<u>punishment</u>' for failure to obey an order" unrelated to the defendant's defenses. *Bauxites*, 456 U.S. at 706 (emphasis added). The defendant's conduct (failure to pay "a certain sum of money") did not support the presumption of a "want of merit" in its jurisdictional defense. *Id.* at 705-06. Consequently, subjecting the defendant to jurisdiction constituted an improper penalty, rather than a constructive waiver of a jurisdictional defense fairly drawn from the defendant's own conduct. *Id.* at 706 ("Due process is violated only if the behavior of the defendant will not support the *Hammond Packing* presumption.").

The Supreme Court again distinguished between valid, implied <u>consent</u> to jurisdiction and the improper <u>imposition</u> of jurisdiction in *College Savings Bank,* 527 U.S. at 679-82, which held that mere <u>notice</u> of Congress's intent to create jurisdiction if the defendant "voluntarily" engaged in "federally regulated conduct" was insufficient to confer jurisdiction. If the activity giving rise to "consent" does not require authorization from the forum, the defendant's choice to engage in the activity does not reflect any agreement to submit to jurisdiction in the forum because the defendant's ability to engage in the activity did not depend on any benefit (or "gratuity") conferred by the forum in the first instance. *Id.* at 680-81. "Without a received benefit," in other words, "there is no bargain, and without a bargain, there is no due process." *Leonard v. USA Petroleum Corp.,* 829 F. Supp. 882, 889 (S.D. Tex. 1993).

The Government argues that *College Savings Bank* addresses sovereign immunity and not personal jurisdiction. Gov't Br. 17-18. The decision itself, however, refutes this narrow interpretation. Relying on the "classic description of an effective waiver of a constitutional right," the Court explained that "constructive consent is not a doctrine commonly associated with the

surrender of <u>constitutional rights</u>." *College Savings Bank*, 527 U.S. at 681-82 (emphasis added).

Because "[s]tate sovereign immunity, no less than the right to trial by jury in criminal cases, is

constitutionally protected," courts should "indulge every reasonable presumption against waiver."

*Id.* at 682. As *Fuld* recognized, "the principles underlying *College Savings Bank* are not specific

to the Eleventh Amendment, but rather apply to constitutional rights broadly."[1] *Fuld* at 588.

The PSJVTA's failure to establish valid, implied consent to jurisdiction is perhaps best

illustrated by contrasting the PSJVTA with its predecessor statute, the Anti-Terrorism Clarification

Act of 2018 ("ATCA"). The ATCA provided that Defendants "shall be deemed" to consent to

personal jurisdiction if they accepted either of two government benefits: (1) U.S. foreign aid, or

(2) the "benefit" of a formal "waiver or suspension" of the prohibitions on Defendants' U.S.

activities under the 1987 ATA, which would have permitted them to maintain an embassy in

Washington. *See* 18 U.S.C. § 2334(e)(1) (2018) (superseded by PSJVTA). The ATCA applies

the principle that a party can choose to accept benefits offered by a forum in exchange for consent

to jurisdiction. For example, by "accept[ing]" the "rights and privileges" of driving on public

roads, a non-resident defendant signifies its "agreement" to submit to personal jurisdiction in the

forum. *Hess v. Pawloski*, 274 U.S. 352, 354-57 (1927). Similarly, business registration statutes

offer the right to do business in a state in exchange for consent to personal jurisdiction.[2]

In defending the constitutionality of the ATCA, the Government drew on this principle to

argue that because "[t]he political branches have long imposed <u>conditions on these benefits</u>,"

---

[1] State sovereign immunity and lack of personal jurisdiction are also both jurisdictional defenses grounded in the Constitution. The Government fails to explain why precedent addressing the waiver of a jurisdictional defense is less instructive than its own cases, which involve Miranda rights and warrantless car searches. *See* Gov't Br. 15.

[2] The Supreme Court recently granted certiorari in a case addressing the continued vitality of business registration statutes following *Daimler v. Bauman*, 571 U.S. 117 (2014), which curtailed the exercise of general jurisdiction over foreign corporations on due process grounds. *See Mallory v. Norfolk Southern Ry.*, No. 21-1168 (cert. granted April 25, 2022).

Congress could "determine that the [PLO's] maintenance of an office in this country …, or the [PA's] continued receipt of certain foreign assistance, should be 'deemed' consent to personal jurisdiction in civil cases under the ATA." U.S. Brief at 12-13, *Klieman*, No. 15-7034 (D.C. Cir. Mar. 13, 2019) (emphasis added). The ATCA satisfied due process, in other words, because it grounded "deemed consent" on Defendants' choice to accept or reject distinct government benefits conditioned upon consent. Courts held the ATCA did not establish personal jurisdiction because Defendants had not accepted those benefits. *Waldman v. PLO*, 925 F.3d 570, 574-76 (2d Cir. 2019); *Klieman v. Palestinian Auth.,* 923 F.3d 1115, 1128-31 (D.C. Cir. 2019). Personal jurisdiction thus turned on Defendants' choice <u>not</u> to accept the ATCA's enumerated benefits.

The PSJVTA, by contrast, does not confer any benefit on Defendants in exchange for their purported "consent." It does not authorize Defendants to engage in activities in the United States (which are prohibited by the 1987 ATA), nor does it extend any government benefit (such as foreign aid). Accordingly, "there is no bargain—no social compact" that could evince Defendants' implied agreement to submit to jurisdiction in the United States. *Leonard*, 829 F. Supp. at 889.

Nor, as *Fuld* explained, even absent consent by acceptance of a benefit, does the PSJVTA base "deemed consent" jurisdiction on a reasonable stand-in for consent. Instead, the conduct that creates "deemed consent" jurisdiction under the PSJVTA—payments made in Palestine, maintenance of Palestine's UN Mission, and UN-related activities—does not "even remotely signal[] approval or acceptance of the Court's jurisdiction." *Fuld* at 587. The payments "have no direct connection to the United States, let alone to litigation in a United States court," and inferring consent to jurisdiction on this basis would "strain the idea of consent beyond its breaking point." *Id*. While the U.S. activities prong at least relates to "conduct in the United States," "the conduct (at least as alleged in this case) is too thin to support a meaningful inference of consent to

jurisdiction in this country." *Id*. "To pass muster, however, the predicate conduct would have to be a much closer proxy for actual consent than the predicate conduct at issue is here." *Id*.

Unable to show actual consent, Plaintiffs fall back on <u>involuntary</u> consent by taking a phrase from *Bauxites* out of context. *Bauxites* explained that "[t]he expression of legal rights is often subject to certain procedural rules: The failure to follow those rules may well result in a curtailment of the rights." 456 U.S. at 705. Accordingly, a defendant that fails to object to personal jurisdiction (or fails to comply with court-ordered jurisdictional discovery) may impliedly submit to the court's jurisdiction, "whether voluntary or not." *Id*. at 704-05; *see also Fuld* at 593 n.9 (acknowledging this distinction). The same is also true of a defendant that initially challenges jurisdiction, but then willfully withdraws from the litigation and defaults. *NYC v. Mickalis Pawn Shop*, 645 F.3d 114, 133-36 (2d Cir. 2011). The principle that parties before a court are responsible for following its rules, which accounts for all the cases cited by Plaintiffs (Pl. Br. 11-14), does not mean that Congress may impose involuntary "consent" on anyone for any action anywhere, so long as they have "fair warning."

The Government, on the other hand, argues that the PSJVTA is a reasonable <u>imposition</u> of jurisdiction: "whether or not labeled 'consent,'" jurisdiction can go "beyond conventional general and specific jurisdiction" so long as it satisfies "fairness and reasonableness." Gov't Br. 8. But the cases the Government cites do not support that proposition. Rather, each cited case still predicates jurisdiction on minimum contacts with the forum, express consent to jurisdiction, or implied consent through actions demonstrating consent—such as litigation conduct, a forum selection clause, or taking advantage of benefits offered by a forum. None of those cited cases allows the imposition of jurisdiction based on mere notice and reasonableness. *Fuld* accordingly was correct in holding that legislatively imposed "deemed consent" to jurisdiction must be based

on a reasonable proxy for actual consent, because otherwise, "Congress or a state legislature could provide for jurisdiction over *any* defendant for *any* conduct so long as the conduct post-dated enactment of the law at issue." *Fuld* at 590 (emphasis in original).

The Government also asserts the PSJVTA is constitutional because it is "reasonably linked" to protecting U.S. nationals. Gov't Br. 13. But courts have already held that payments in Palestine to prisoners or families entirely outside the United States are not sufficiently connected to the United States to create jurisdiction under the Due Process Clause. *Shatsky v. PLO*, 955 F.3d 1016, 1022-23 (D.C. Cir. 2020) ("martyr payments" did not confer specific jurisdiction). Nor are the PSJVTA's "US activities" provisions linked to the attacks, providing instead that Defendants "shall be deemed to have consented to personal jurisdiction" if they conduct "any activity while physically present in the United States." 18 U.S.C. § 2334(e)(1)(B)(iii). The FAC does not attempt to link the U.S. activities to the Attack, but instead claims PSJVTA jurisdiction because Palestine's UN Mission conducts "social media and other public relations activities." FAC ¶¶ 24-25.

Finally, the Government implies that the PSJVTA offers a reciprocal benefit because Congress controls whether Defendants can operate in the United States. Gov't Br. 12. But the PSJVTA does not grant any such rights, nor does it modify the Anti-Terrorism Act of 1987, which denies Defendants all "benefit" of "operating in the United States." 22 U.S.C. § 5201(b). That statute is a "wide gauged restriction of PLO activity within the United States," *United States v. PLO*, 695 F. Supp. 1456, 1471 (S.D.N.Y. 1988), that deprives Defendants of the "many benefits which accrue to organizations operating in the United States, including political stability [and] the patina of legitimacy." *Mendelsohn v. Meese*, 695 F. Supp. 1474, 1484 (S.D.N.Y. 1988).

Nor is Defendants' ability to operate their UN Mission traceable to the PSJVTA. The UN Headquarters Agreement ("UNHQA") guarantees all "invitees" of the UN rights of "entry, access,

and residence" in the UN Headquarters District. *United States v. PLO*, 695 F. Supp. at 1465-68. Under the UNHQA, the United States has a freestanding "obligation … to refrain from impairing the function of" Defendants' UN Mission, which falls outside U.S. "jurisdiction." *Id.* at 1465-68, 1471. UN-related activities thus cannot "properly be considered as a basis of jurisdiction." *See Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44, 51 (2d Cir. 1991). The PSJVTA does not modify the UNHQA, instead providing that "no court may consider" Defendants' UN-related activities or "any personal or official activities conducted ancillary" thereto. 18 U.S.C. § 2334(e)(3). The PSJVTA thus fails to offer any "benefit" Defendants can accept or reject in exchange for consent to personal jurisdiction.

**B.    Defendants Do Not Have Sufficient Contacts With The United States To Support Specific Jurisdiction.**

The Second and D.C. Circuits have consistently held that Defendants are not subject to personal jurisdiction in the United States for claims based on their alleged involvement in indiscriminate third-party attacks in Israel or Palestine. Those courts explained that Defendants' "suit-related conduct"—namely, their alleged involvement in terrorist attacks in Israel—is "not sufficiently connected to the United States." *Waldman v. PLO*, 835 F.3d 317, 335-37 (2d Cir. 2016). The Attack at issue in this case is similarly "not expressly aimed at the United States," but rather "affected United States citizens only because they were victims of indiscriminate violence." *Id.* at 337; *Shatsky*, 955 F.3d at 1037 (finding no evidence of "intentional targeting of Americans or some other form of 'intentional conduct by the defendant' is needed to 'create the necessary contacts with the forum'"); *Klieman*, 923 F.3d at 1124-26 (noting lack of any basis "for inferring that the terrorists … were instructed, or endeavored, to injure American nationals"). "[A]bsent intentional targeting, the fact that an American died in a terrorist incident abroad" is exactly the

type of "'random, fortuitous, or attenuated' contact" between Defendants and the forum that is insufficient to support specific jurisdiction. *Klieman,* 923 F.3d at 1126 (citation omitted).

Those circuits further explained that Defendants' UN activities are not connected to the terrorist attacks that gave rise to plaintiffs' claims. "[I]n a 'jurisdictional inquiry focuse[d] on the relationship among the defendant, the forum, and the litigation,' the 'litigation' element requires tangible allegations relating the attack … to defendant's contacts with the forum." *Klieman*, 923 F.3d at 1124. They held that "the connections the defendants do have with the United States … revolve around lobbying activities that are not proscribed by the ATA and are not connected to the" attacks at issue. *Waldman*, 835 F.3d at 337, 342; *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56-57 (D.C. Cir. 2017) (plaintiffs failed to establish requisite "link" between attacks and Defendants' "lobbying and fundraising activities inside the United States"); *Shatsky*, 955 F.3d at 1037 (no evidence "connecting the [attack] to the alleged public relations campaign").

Plaintiffs repeat the same arguments made by the plaintiffs in those four cases, claiming that Defendants' work at the UN and in Washington, D.C., is somehow linked to the Attack in this case. Pl. Br. 17-18, 20. But *Waldman, Livnat, Shatsky,* and *Klieman* all rejected this argument. *Waldman*, for example, noted that Defendants maintained a Washington, D.C. office, conducted "diplomatic activities" from that office, "promoted the Palestinian cause in speeches and media appearances," and engaged in "lobbying" and "extensive public relations activities" to "influence United States policy." 835 F.3d at 323, 326, 337. The court held that none of those activities created a "substantial connection" between the alleged attack and the U.S. *Id.* at 335-37.[3]

---

[3] *See also Shatsky*, 955 F.3d at 1022-23, 1037 ("martyr payments" and "public relations campaign" insufficient to support personal jurisdiction); *Klieman*, 923 F.3d at 1118, 1123-26 ("campaign" to "influence" U.S. foreign policy "through the use of U.S. offices, fundraising, lobbying, [and] speaking engagements" insufficient); *Livnat*, 851 F.3d at 56-57 (no link between alleged attack and Defendants' "lobbying" and "plan to influence opinion and policy in the United States" because the plaintiffs did "no more than infer that because some attacks against Jews and Israelis have

Plaintiffs ask this Court to ignore this unbroken line of precedent, claiming that *Ford Motor v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017 (2021), "effected a sea-change in specific jurisdiction." Pl. Br. 20. But the opposite is true: "*Ford* wrought ***no sea change*** in the law of specific personal jurisdiction." *Richter v. LG Chem, Ltd.*, 2022 U.S. Dist. LEXIS 184847, *6 (N.D. Ill. Sep. 27, 2022) (emphasis added); *Legacy Funeral Grp. v. Damiano*, 2021 U.S. Dist. LEXIS 74059, *2 (S.D. Tex. Apr. 16, 2021) (*Ford* "did not materially change the basic requirements of the 'connection' required between a plaintiff's suit and a defendant's activities."); *Honorato v. Mount Olympus Enters.*, 2021 U.S. Dist. LEXIS 156963, *2 (W.D. Wis. Aug. 18, 2021) ("*Ford Motor* did not meaningfully change the standard for establishing personal jurisdiction."). *Ford* itself concerned the "relate to" prong of "purposeful-<u>availment</u>" jurisdiction—a theory of jurisdiction that is not implicated in this case. *Ford*, 141 S. Ct. at 1024-25 (emphasis added). The Supreme Court rejected the idea that "anything goes" for the "relate to" prong, but instead held that the cultivation of a market in the forum for a product (*i.e.*, the availment) that later malfunctions will create "the necessary connection between a defendant's in-state activity and the plaintiff's claims." *Id.* at 1022-23, 1026, 1031.

In contrast to the plaintiffs in *Ford*, Plaintiffs chiefly advance a purposeful-<u>direction</u> theory based on the prisoner payments, which hypothesizes that Defendants' actions in Palestine are specifically directed to cause harm in the United States. Likewise, Defendants' UN-related activities in the United States do not satisfy *Ford*. The Tenth Circuit has interpreted *Ford* to require that "the plaintiff's claim arises from essentially <u>the same type of activity</u>, even if the activity that gave rise to the claim was not directed at forum residents." *Hood v. Am. Auto Care*, 21 F.4th 1216,

---

been aimed to influence U.S. policy, the Joseph's Tomb attack was, too"). Plaintiffs' vague claims that the U.S.-based activities were somehow supporting a "terrorist program" (*see* Pl. Br. 19-20 & n.11) suffer from the same problems.

1224 (10th Cir. 2021) (emphasis added).  Defendants' UN-related conduct does not relate to the Attack under the purposeful-availment reasoning in *Ford* and *Hood* because United Nations work is hardly the "same type of activity" as the terrorist attack at issue here.

### C.    The PA And PLO Are Persons Under The Due Process Clause.

No court has ever denied due process to the PA and PLO.  The Second and D.C. Circuits rejected such arguments because all non-sovereign entities are entitled to jurisdictional due process—and Defendants are not sovereign under U.S. law.  The Government agreed, with the Solicitor General arguing that *Waldman*'s decision that Defendants receive jurisdictional due process was in accord with Supreme Court precedent and "does not conflict with any decision of another court of appeals."  U.S. Amicus Br. at 7-12, *Sokolow v. PLO*, No. 16-1071 (U.S. Feb. 22, 2018).[4]  Given this uniformity, this Court should not foment a circuit-split by becoming the only court to hold that Defendants are not entitled to due process protections from jurisdiction.

The Supreme Court has long held that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001); *United States v. Pink,* 315 U.S. 203, 246 (1942) ("[T]he benefits of [Fifth Amendment due process] extend to alien friends as well as to citizens.").  Foreign defendants are "forced to appear in the United States" and are therefore "entitled to the protection of the due process clause." *GSS Group Ltd. v. Nat'l Port Auth.,* 680 F.3d 805, 816 (D.C. Cir. 2012).  And "because the form of organization by which a defendant does business is irrelevant to any policy governing acquisition of jurisdiction" there is

---

[4] Plaintiffs rely on outdated government papers from the 1980s, Pl. Br. 5-6, which was before the PA's formation in 1994 and before the U.S. and Israel recognized the PLO as a legitimate representative of Palestinians in 1993.

"no reason to distinguish between corporate and non-corporate organizations in this regard." *Klinghoffer,* 937 F.2d at 50 (cleaned up).

The sole exception is that state or foreign <u>sovereigns are not entitled to jurisdictional due process</u>—and even that exception is limited to entities that, in effect, are the sovereign. In *First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 613-14, 620-30 (1983), the Supreme Court held that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." Government agencies and instrumentalities that are juridically independent from a sovereign are thus entitled to due process. *See GSS Group,* 680 F.3d at 816 (state-owned businesses have due process rights). So "only the sovereign itself and its 'alter egos' are not 'persons'" for due process purposes, whereas "[a]gencies and instrumentalities of foreign sovereigns retain their status as 'separate legal person[s]'" and therefore are entitled to jurisdictional due process. *Gater Assets v. Moldovagaz*, 2 F.4th 42, 49 (2d Cir. 2021). No circuit holds otherwise.

Applying these principles, the Second and D.C. Circuits held that Defendants have jurisdictional due process rights, just like any other non-sovereign entity. The plaintiffs in those cases argued (as do Plaintiffs here) that any entity that "functions as a government" cannot have due process rights. *Livnat*, 851 F.3d at 48. But the D.C. Circuit explained that sovereignty "represents a rare exception to the general rule that the Due Process Clause protects all litigants in our courts, especially by limiting the power of courts to hale defendants before them." *Id*. Similarly, the Second Circuit explained that "the cases cited by the plaintiffs stand for the proposition that sovereign governments lack due process rights, and these cases have not been extended beyond the scope of entities that are separate sovereigns." *Waldman*, 835 F.3d at 329.

The same analysis applies here.  Plaintiffs do not cite any cases holding that a non-sovereign entity lacks due process rights.  Pl. Br. 3-5.  Subdivisions of our state and federal governments are considered parts of the sovereign itself.  The DOJ memorandum highlighted by Plaintiffs (p. 4-5) explains that U.S. territories cannot exercise due process rights because they are "political subdivisions … of the United States," in the same way cities are "political subdivisions of states."  DOJ, Office of Legal Counsel, *Mutual Consent Provisions in the Guam Commonw. Legis.,* p. 9-10 (July 28, 1994); U.S. Amicus Br. at 7-12, *Sokolow*, No. 16-1071 (explaining that the Supreme Court applies due process rights to every type of entity except for sovereigns).

Finally, Plaintiffs rely on dicta in *Shatsky* that Defendants should not have "more favored" rights than States.[5]  Pl. Br. 6.  But that argument applies equally to foreign individuals, foreign corporations, and other foreign entities—which are all "outside our constitutional system" and yet are entitled to due process.  Indeed, Plaintiffs *admit* that Defendants are "unincorporated associations" under U.S. law, which means they are entitled to due process.  *See Warth v. Seldin*, 422 U.S. 490, 511 (1975) (an association "may have standing in its own right to seek judicial relief from injury to itself … [and] its members").[6]  Plaintiffs' admission that Defendants are unincorporated associations should end the matter, and this Court should reject Plaintiffs' attempt to place the PA and PLO in a constitutional no-man's land as neither a person nor a sovereign.

### D.    Rule 23.2 Does Not Create Personal Jurisdiction Over Defendants.

Plaintiffs' attempts to use Rule 23.2 to establish personal jurisdiction (*see* Pl. Br. 29) violate both the rule itself and due process.  Although Rule 23.2 applies only to suits "against the *members of an unincorporated association*," Plaintiffs want this Court to certify a "class" consisting of solely

---

[5] Defendants' entitlement to due process was not briefed before Judge Vyskocil.
[6] *See Collins v. Daniels*, 916 F.3d 1302, 1312 (10th Cir. 2019) (an unincorporated association with standing may represent its members' interests); *Hernandez v. Office of the Comm'r of Baseball*, 2018 U.S. Dist. LEXIS 168597, *8 (S.D. Ohio Sep. 30, 2018) (exercising jurisdiction over unincorporated association would violate due process).

the associations themselves (the PA and PLO)—excluding all members of either association. They name Palestine's UN Ambassador as the "class" representative despite admitting he had no connection to the underlying tort. Plaintiffs also grossly misrepresent the record in *Sokolow* in a strained attempt to claim that the Ambassador is a "member" of the PA and PLO.

1. **Federal procedural rules cannot create jurisdiction that exceeds the limits of personal jurisdiction under the Due Process Clause.**

The fundamental problem with Plaintiffs' approach to Rule 23.2 is that rules of civil procedure cannot create personal jurisdiction where prohibited by the Constitution. *See* Def. Mtn 20-21. A Fifth Circuit decision is instructive: the plaintiffs in *Douglass v. Nippon Yusen Kabushiki Kaisha,* 46 F.4th 226, 233 (5th Cir. 2022) (en banc), argued that Rule 4(k)(2) was "the substantive source of personal jurisdiction over" defendants in that case. The court, sitting en banc, explained that such a "rule-centric view obscures the purely constitutional nature of the personal jurisdiction question at issue." *Id*. It further held that a "rule does not—and cannot—control the constitutional inquiry whether due process prohibits a court from exercising personal jurisdiction over the defendant." *Id.* The same analysis applies here—Rule 23.2 cannot supply jurisdiction where, as in this case, neither the "minimum contacts" or "consent" requirements have been satisfied.

Plaintiffs attempt to elide the constitutional inadequacy of jurisdiction over the PA and PLO by responding that this Court need not have personal jurisdiction over "absent" class members. Pl. Br. 26. But that is a *non sequitur* because Plaintiffs invoke Rule 23.2 to establish jurisdiction over the PA and PLO, which are not absent at all—both are present in this Court to contest personal jurisdiction. And Plaintiffs concede they are suing only those two unincorporated associations, and not seeking to impose liability on Ambassador Mansour or the absent members (*i.e.*, the membership of the PA and PLO). Pl. Br. 30 (defining the "defendant classes" as "the

associations, which are the tortfeasors"). Because Defendants' members are not the subject of Plaintiffs' claims, their cases about absent class members are inapposite.

Moreover, Plaintiffs' cases (*see* Pl. Br. 26) exclusively concern ***plaintiff*** classes, which have different due process considerations than defendant classes. "[T]he very notion of a defendant class raises immediate due process concerns." *Marchwinski v. Oliver Tyrone Corp.*, 81 F.R.D. 487, 489 (W.D. Pa. 1979). The Tenth Circuit has emphasized that "defendant class actions create a special need to be attentive to the due process rights of absent parties." *In re Integra Realty Res.*, 262 F.3d 1089, 1105 (10th Cir. 2001). Due process accordingly puts "greater limits on the use of defendant classes than plaintiff classes," especially "where the unnamed class members risk exposure to liability." *Bakalar v. Vavra*, 237 F.R.D. 59, 63-64 (S.D.N.Y. 2006). When monetary damages are involved, as here, the "[f]ailure to provide notice and/or opt out rights may deprive an unnamed defendant class member of the ability to challenge issues such as personal jurisdiction, venue and choice of law." *Bell v. Brockett*, 922 F.3d 502, 511 n.3 (4th Cir. 2019) (cleaned up).

## 2. Rule 23.2 does not apply because Plaintiffs do not seek to sue a class of the membership of the PA and PLO.

Rule 23.2 does not allow class actions directed at associations rather than members, as it only "applies to an action brought ... against the <u>members</u> of an unincorporated association." Yet Plaintiffs admit they are not suing "members of an unincorporated association as a class," but instead are using the rule only to assert personal jurisdiction over the associations themselves (the PA and PLO). Pl. Br. 23, 29-30. But Rule 23.2 requires a plaintiff "to sue, not the [unincorporated association] itself, but the [unincorporated association's] members." *Taylor v. Bywater,* 1994 U.S. Dist. LEXIS 4176, *8 (D. Kan. Mar. 29, 1994). As such, Plaintiffs' reliance on cases like *Calagaz*, *see* Pl. Br. 24-25, is misplaced as those plaintiffs "denie[d] any intention of making [the association] a party defendant." *Calagaz v. Calhoon,* 309 F.2d 248, 253 (5th Cir. 1962).

Plaintiffs also fail to meaningfully distinguish cases (Def. Mtn 21-24) showing that a class action is inappropriate under Rule 23.2 when the entity can be sued directly. For example, they argue *Coniglio v. Highwood Servs.,* 60 F.R.D. 359 (W.D.N.Y. 1972), "merely rejected the plaintiffs' attempt to name the defendant association itself as the representative of the association's members." Pl. Br. 29. To the contrary, *Coniglio* held that because the "NFL has been named and served as a party defendant pursuant to Rule 17(b) ... the maintenance of a defendant class action pursuant to Rule 23.2 would be inappropriate in the present action." 60 F.R.D. at 364. Plaintiffs ask this Court to break new ground contrary to the rule's language and the Due Process Clause: They *have not found a single case* applying Rule 23.2 to an association (with the capacity to be sued in the forum) to circumvent a court's lack of personal jurisdiction over the association.

### 3. Ambassador Mansour cannot be sued under Rule 23.2 because the FAC does not allege that he participated in tortious conduct.

Plaintiffs concede they have no independent claim against Ambassador Mansour, arguing that the FAC "need not allege any specific tortious conduct by Mansour because he is being sued as [a] representative of the defendant classes—the associations, which are the tortfeasors." Pl. Br. 30. They name Ambassador Mansour <u>solely</u> for his purported membership. *Id.* This is improper: "Civil liability may not be imposed merely because an individual belonged to a group." *NAACP v. Claiborne Hardware,* 458 U.S. 886, 920 (1982). Federal and Colorado law recognize that a defendant cannot be liable for tortious activity based on association membership alone. *See, e.g., Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1181 (10th Cir. 2019) (rejecting the argument that "all members of an association could be deemed to have entered into an antitrust conspiracy simply because they joined the association, participated in its governance, and agreed to abide by its rules"); Colo. Rev. Stat. §7-30-106(3) ("A person is not liable for a tortious act or omission for

which a nonprofit association is liable merely because the person is a member of the nonprofit association [or] is authorized to participate in [its] management.").[7]

Because liability cannot be imposed on a member solely based on membership, no claims can lie against Ambassador Mansour under Rule 23.2. *Lumbermen's Underwr. Alliance v. Mobil Oil*, 612 F. Supp. 1166, 1170-72 (D. Idaho 1985) (where members cannot be liable for association's torts, "a procedural mechanism for such a suit is, of course, superfluous"); *Taylor*, 1994 U.S. Dist. LEXIS 4176, *8 (dismissing Rule 23.2 action against union members because "federal law prohibits actions for monetary damages against individual union members").

Relatedly, Plaintiffs' argument that Ambassador Mansour is not an "invitee" because the PA "has no status at all at the UN" (Pl. Br. 33) is incorrect. The UN recognizes Palestine as a Non-member Observer State,[8] and a permanent member of various UN committees, with the ability to participate (and lead) in UN-related organizations.[9] Courts have long recognized that Palestine's UN Mission "is an invitee of the United Nations under the Headquarters Agreement and its status is protected by that agreement." *United States v. PLO*, 695 F. Supp. at 1471. U.S. courts therefore have an "obligation … to refrain from impairing the function of the PLO Observer Mission to the United Nations.'" *Id*. Exercising personal jurisdiction based on the Ambassador's presence would violate the United States' obligations to the UN.

### 4. Plaintiffs misrepresent the *Sokolow* record in support of their claim that the Ambassador is a member of the PA and PLO.

---

[7] *See also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) (association membership, and even "participation on the association's board of directors" is insufficient alone to make a member liable); *Osborn v. Visa Inc.*, 797 F.3d 1057, 1067 (D.C. Cir. 2015) ("'[m]ere membership in associations is not enough to establish participation in a conspiracy with other members of those associations'") (citation omitted).

[8] G.A. Res, *State of Palestine in the UN*, A/RES/67/19 (Nov. 29, 2012), https://undocs.org/en/A/RES/67/19; *see also* U.S. Stat. of Interest, *Ungar v. Palestinian Auth.*, No. 18-0302, at 25 (S.D.N.Y. Sept. 12, 2005) (asking court to defer to the UN on the rights of Palestine's mission). The UN recognizes the PA as the government of the State of Palestine.

[9] UN Press Release, *State of Palestine to Gain Enhanced Rights, Privileges in G.A. Work, Sessions When It Assumes 2019 Group of 77 Chairmanship* (Oct. 16, 2018), https://www.un.org/press/en/2018/ga12078.doc.htm.

Finally, Plaintiffs grossly distort the *Sokolow* record (Pl. Br. 30-32) to argue that Defendants are estopped from denying that Ambassador Mansour is a member of the PA and PLO. Defendants' discovery responses in *Sokolow* do <u>not</u> provide "detailed definitions of [the PA and PLO's] respective memberships" as Plaintiffs claim. In fact, the *Sokolow* plaintiffs reached the <u>opposite</u> conclusion after reviewing those same responses, arguing that "defendants admitted that they <u>could not identify their 'members'</u> within the meaning of the rule in *Martin v. Curran*." *See* Pl. Mem. in Supp. MSJ, *Sokolow*, DE 492, at 5 (S.D.N.Y. May 6, 2014).

Defendants have always maintained their membership is context-dependent. *See* Ex. J., DE 69-11, Interrog. Obj. Nos. 6(a), 7-9. In the hearing cited by Plaintiffs, Defendants explained that the PA and PLO are "*sui generis*" entities, and that they could not "tick off the elements of the PA and ... link them directly to a definition of an unincorporated association." Perlin Decl., Ex. I, DE 69-10, *Sokolow* Hr'g Tr., at 11-12, 16, 65. On one hand, the PLO could be considered "an umbrella group for a variety of political parties and factions," but on the other, might be said to include "all [] Palestinians." *Id.* at 10-11; Perlin Decl., Ex. J., Interrog. Answ. No. 7 ("all Palestinian persons may be viewed as represented by the PLO from the time of birth until the time of death").

Plaintiffs claim that the directory pages they attached (Perlin Decl., Ex. K) show the members of the PA and PLO. But in their interrogatories, the *Sokolow* plaintiffs defined the PA and PLO as including "any ministry, agency, division, bureau, department or instrumentality thereof." Perlin Decl., Ex. J, Pls.' Specific Definitions Nos. 1-2. As a result, Defendants' responses did not distinguish between entities, instrumentalities, or otherwise—nor did they state that the directory shows the "members" of the PA and the PLO. Defendants only stated that the directory contains "the names of certain elected, appointed, and employed officials." *See* Perlin

Decl., Ex. J, Interrog. Answ. Nos. 8-9. Defendants never specified which, if any, of the officials in the directory (which includes municipality and village councils) were "members."[10]

Far from being "critical" as Plaintiffs claim (Pl. Br. 32), Judge Daniels never mentioned the membership issue in his decision. *Sokolow v. PLO*, 60 F. Supp. 3d 509, 523-24 & n.21 (S.D.N.Y. 2014). While acknowledging Defendants "do not fit perfectly within the description of an unincorporated association", he held that Defendants were unincorporated associations. *Id*. Neither Judge Daniels, nor any opinion he cited, attempted to define the membership of either organization. *Id*. This Court should reject Plaintiffs' estoppel argument.

## II.     THE PSJVTA VIOLATES SEPARATION OF POWERS.

The Government notes that the PSJVTA still allows courts to engage in fact-finding (Gov't Br. 18 n.13) but does not deny the PSJVTA prohibits courts from determining whether Defendants have actually consented to jurisdiction. The PSJVTA oversteps Congressional authority by pre-determining which facts will constitute consent. Congress cannot simply "require federal courts to exercise the judicial power in a manner that" they have already held the Constitution forbids in *Waldman* and *Livnat*. *Plaut v. Spendthrift Farm*, 514 U.S. 211, 218, 238-39 (1995). Though the PSJVTA "attempt[s] a substantive change in constitutional protections," it is "precedent, not [the statute], which must control." *Boerne v. Flores*, 521 U.S. 507, 532, 536 (1997).

## III.    PLAINTIFFS' DIRECT LIABILTY CLAIM FOR AN ACT OF INTERNATIONAL TERRORISM UNDER 18 U.S.C. § 2333(a) SHOULD BE DISMISSED.

Plaintiffs fail to identify non-conclusory factual allegations in the FAC showing that Defendants: (1) proximately caused Plaintiffs' injuries; (2) committed an "act of international terrorism"; or (3) provided material support to an FTO, or support to others with the knowledge or

---

[10] Ambassador Mansour's name appears in the directory only as the head of the UN Mission. *See, e.g.,* Perlin Decl., Ex. K, at 02:008808, 02:008811-12, 02:008835, 02:008839, 02:008862, & 02:008866.

intent that such support would be used to prepare for, or to carry out, a criminal act of terrorism. Consequently, Plaintiffs' direct liability claim under Section 2333(a) must be dismissed.

### A. The FAC Fails To Plausibly Allege Proximate Cause.

This Court should follow the weight of authority dismissing "material support" ATA claims for lack of proximate cause where, as here, there are no allegations connecting the alleged FTO support to the Attack. *See* Def. Mtn 30-33; *see also Fields v. Twitter, Inc.*, 881 F.3d 739, 744-49 (9th Cir. 2018) (holding that to establish proximate causation under the ATA, there must be "some direct relation between the injury asserted and the injurious conduct alleged").

Plaintiffs wrongly claim that "none of [the ATA cases Defendants cite] is relevant to the facts, allegations, or posture of this case." Pl. Br. 40.[11] The summary judgment decision in *Shatsky v. PLO*, 2017 U.S. Dist. LEXIS 94946 (D.D.C. June 20, 2017), is a legal-insufficiency ruling made on undisputed facts and a theory of liability that mirror the allegations and claims in the FAC. *See id.* at *29-32 (dismissing ATA claims premised on Defendants' support and funding to the PFLP, including by: (1) paying rent for a PFLP office, (2) paying salaries to PFLP leaders, and (3) paying families of incarcerated PFLP members). Specifically, *Shatsky* dismissed ATA claims for lack of proximate cause because the plaintiffs failed to show any direct link between Defendants' payments and the specific attack. *Id.* at *19, 29-32; *see also* Def. Mtn 32-42 (discussing *Shatsky*). Just as in *Shatsky*, Plaintiffs have not alleged a causal link between the Attack and the limited support Defendants allegedly provided to the PFLP.

While Plaintiffs take issue with Defendants' description of the alleged support as "limited" and "generalized" (Pl. Br. 40), they do not dispute that the forms of support the FAC alleges

---

[11] Defendants cite no Rule 12(b)(6) dismissals of ATA claims against the PA and PLO because such claims instead have been dismissed on jurisdictional grounds.

Defendants provided the PFLP—including (1) general funding, (2) permission to maintain office space in Palestine, (3) access to radio frequencies and website domains, and (4) payments to released prisoners under Palestinian social welfare programs—are the same types of governmental support Defendants provide other PLO constituent factions. *See* FAC ¶¶ 133, 135, 137-144. Thus, Plaintiffs are essentially asking this Court to find the PA and PLO liable because the PFLP is a political faction within the PLO. However, as set forth in the Motion, because the PA and PLO are governmental entities, Plaintiffs must allege specific facts linking Defendants' governmental acts to the Attack. *See* Def. Mtn 29. Governmental entities, such as Defendants, have "many legitimate agencies, operations, and programs to fund," *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013), so when a material support claim is dependent on governmental actions, as it is in this case, "the need for facts specifically connecting a defendant's actions to the ultimate terrorist attack is especially acute." *Kemper v. Deutsche Bank*, 911 F.3d 383, 393 (7th Cir. 2018); *see also Owens v. BNP Paribas*, 897 F.3d 266 (D.C. Cir. 2018). Moreover, courts have found the type of limited and generalized support alleged in the FAC to be too incidental, speculative and attenuated to amount to proximate causation under the ATA.[12]

Plaintiffs' reliance on *Atchley v. AstraZeneca*, 22 F.4th 204 (D.C. Cir. 2022) to argue that they do not have to plausibly allege a connection between the support to the PFLP and the Attack is misplaced. The allegations of targeted support in *Atchley* are fundamentally different than the FAC's allegations of generalized governmental support. *Id.* at 234-36 (explaining that the plaintiffs' injuries directly related to the monetization of goods defendants allegedly provided to a terrorist group). Moreover, *Atchley* distinguished *Owens, Rothstein,* and *Kemper*—which, like

---

[12] *Crosby v. Twitter*, 303 F. Supp. 3d 564, 579 (E.D. Mich. 2018) (provision of media services is too attenuated to raise a plausible inference of causation); *Kaplan v. Al Jazeera*, 2011 U.S. Dist. LEXIS 61373, *22 (S.D.N.Y. June 7, 2011) (no proximate cause without allegations that "broadcasts were used by Hezbollah to better target their rockets").

here, involved governmental entities (albeit state sponsors of terrorism, which Defendants are not)—because, unlike those cases, the *Atchley* "plaintiffs d[id] not allege that defendants aided an autonomous nation with many functions and priorities. Rather, they allege[d] that defendants gave to a single agency that had been overtaken by terrorists." *Id*. at 228. In contrast, the FAC acknowledges that the PLO, as a governmental entity, provides general funding and resources to all PLO political factions, one of which is the PFLP. FAC ¶ 113. Thus, as in *Owens, Rothstein,* and *Kemper,* a causal chain cannot be presumptively drawn between the Attack and Defendants' general funding and support of the PFLP as one PLO constituent faction.[13]

Finally, Plaintiffs do not dispute that to establish proximate causation between the Defendants' alleged support to the PFLP and their alleged injuries, they must connect the Attackers to the PFLP. However, the only allegations they can point to in order to make this connection are the after-the-fact claims of credit allegedly made by PFLP members. Pl. Br. 39. The FAC contains no allegations that the PFLP and the Attackers were in contact prior to the Attack or that the PFLP had any involvement in planning or committing the Attack. *See Crosby,* 303 F. Supp. 3d at 579 (no proximate causation where "the only communications between anyone that could have remotely involved the defendants' services and that even arguably related directly to the shooting were claims of responsibility by ISIS news sources <u>after the attack was completed</u>; nothing in the amended complaint even alludes to any contacts or communications between anyone—let alone between ISIS and [the attacker]—that directly concerned the attack beforehand"); *see also Shatsky*

---

[13] Plaintiffs argue *Owens, Rothstein,* and *Kemper* do not apply (Pl. Br. 41), but they interpret those cases too narrowly because "one of the links on a causal chain" in this case is a government entity. *Kemper*, 911 F.3d at 393. Moreover, Plaintiffs ignore that the PFLP engages in myriad of government activities unrelated to terrorism. *See American-Arab Anti-Discrimination Committee v. Reno*, 119 F.3d 1367, 1370 (9th Cir. 1997) (the PFLP "is engaged in a wide range of lawful activities, including the provision of education, day care, health care, and social security, as well as cultural activities, publications, and political organizing") (quotations omitted), *vac'd on other gnds*, 525 U.S. 471 (1999).

*v. PLO,* 292 F. Supp. 3d 188, 194-95 (D.D.C. 2017) (terrorists' after-the-fact claims of credit are not trustworthy because "[i]n such a morally-twisted environment," attacks on civilians reflect "glory" and thus, there is an "incentive to lie") (collecting cases).

**B.      The FAC Fails To Plausibly Allege That Defendants Committed An "Act of International Terrorism."**

Plaintiffs' allegations of generalized government funding and services provided to the PFLP are insufficient to plead that Defendants *themselves* committed an "act of international terrorism," as defined in Section 2331(1). *Linde v. Arab Bank, PLC*, 882 F.3d 314, 326 (2d Cir. 2018). The FAC does not plausibly allege the required elements of an "act of international terrorism," including that Defendants' conduct: (1) "involve[d] violent acts or acts dangerous to human life"; and (2) "appear[ed] to be intended to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination or kidnapping." 18 U.S.C. § 2331(1); *see, e.g.*, *Linde*, 882 F.3d at 319-322; *Rothstein*, 708 F.3d at 97.

Plaintiffs' reliance on *Boim v. Holy Land Found. For Relief & Dev.*, 549 F.3d 685, 690 (7th Cir. 2008) as support for their contention that Defendants' provision of funding necessarily qualifies as an act "dangerous to human life" irrespective of whether such support directly aided any of the PFLP's terrorist activities is misplaced. Pl. Br. 35-36. *Boim* was decided before Congress enacted JASTA, and courts have found that liability of the kind recognized in *Boim* is now properly lodged under the secondary liability provision of JASTA. *See Linde*, 882 F.3d at 326-331. While Plaintiffs fail to state a claim under the framework for JASTA aiding and abetting liability, they also do not state a claim for primary liability because "material support to a terrorist organization does not invariably equate to an act of international terrorism." *Id.* at 326.

Likewise, Plaintiffs baldly assert that "the FAC alleges Defendants' actions appeared to be and were intended to influence a government and population." Pl. Br. 35. The "appear to be intended" requirement is an objective, external-appearance standard, not one of subjective intent. *Weiss v. Nat'l Westminster Bank,* 768 F.3d 202, 207 n.6 (2d Cir. 2014). Courts regularly dismiss ATA claims where plaintiffs fail to plausibly allege that a defendant appeared to act with the terroristic intent Section 2331(1) requires. *See, e.g.*, *Kemper*, 911 F.3d at 390 (dismissing ATA claims in part because the defendants did not appear to act with terroristic intent, but appeared to be "motivated by economics"); *Gonzalez v. Google*, 2 F.4th 871, 900-01 (9th Cir. 2021) (dismissing direct ATA claims premised on the provision of material support to an FTO because the defendants appeared to be motivated by "economic self-enrichment").

More particularly, courts have found that general allegations of payments made to entities known to engage in violent activities do not satisfy the ATA's terroristic-intent requirement absent some plausible allegation that those payments reflected the defendant's own intentional involvement in a terrorist attack. In *Brill v. Chevron Corp.*, 2017 U.S. Dist. LEXIS 4132 (N.D. Cal. Jan. 9, 2017), the court found that it "is not enough" that the defendant turned a "blind eye" to whether its payments might be funneled to Saddam Hussein's regime because an allegation that defendant "should have, but didn't take a harder look" fails to demonstrate any "outward appearance" of terroristic intent by defendant. *Id.* at *18-20.[14]

Rather than alleging Defendants outwardly appear to have terroristic intent, the FAC claims Defendants <u>avoid</u> any outward association with terrorism. Pl. Br. 43-44 (citing FAC ¶¶ 108-153)

---

[14] *See also Cabrera v. Black & Veatch Special Projects Corps.*, 2021 U.S. Dist. LEXIS 152218, *57, 60 (D.D.C. July 30, 2021) (defendants only had an "appearance of ambivalence" in providing funds to the Taliban); *Stansell v. BGP, Inc.*, 2011 U.S. Dist. LEXIS 39808, *26 (M.D. Fla. Mar. 31, 2011).

("Defendants carefully remain at arm's-length from the violence ….").[15] Indeed, Defendants' actions appear to be motivated by the need to provide legitimate governmental services and to further legitimate policy goals. As the Government notes, the PA is "a key partner of the United States and Israel in stabilizing the West Bank and combating terrorism." Gov't Br. 2 n.2. This statement belies any conclusion that Defendants acted with terroristic intent.

### C. The FAC Does Not Plausibly Allege Defendants Provided Material Support to an FTO, Or Intended That Such Support Would Be Used For Terrorism.

Plaintiffs do not dispute that the FAC fails to allege that Defendants had prior knowledge of the Attack or provided support or resources directly to the Attackers and therefore Plaintiffs cannot satisfy Sections 2339A or 2339C. *See* Def. Mtn 36. Thus, Plaintiffs' claims premised on those statutes must be dismissed. *See Saville v. IBM*, 127 Fed. Appx. 404, 406 (10th Cir. 2005) (dismissing a claim because the plaintiff failed to dispute, and thus conceded, that the elements of res judicata had been satisfied); *United States ex rel. Fisher Sand & Gravel Co. v. Kirkland Constr.*, 76 F. Supp. 3d 1199, 1204-05 (D. Colo. 2014) (holding that where a party does not dispute an argument in its opposition, it concedes that point).

In addition, while Plaintiffs allege that Defendants provided material support in the form of internet and radio services, such "routine" services do not qualify as "material support" because they were provided by Defendants as part of their governmental responsibilities. *See Crosby*, 303 F. Supp. 3d at 576-77 (allegations "that the defendants provided 'routine' services knowing only generally that some (unidentified) users could be affiliated with terrorism" insufficient for material

---

[15] Plaintiffs' assertion that Defendants were, at minimum, deliberately indifferent to the PFLP's use of funding for terrorism—even if taken as true in the Rule 12 context—does not negate that Defendants outwardly appeared to act in furtherance of their governmental responsibilities. *Freeman v. HSBC Holdings*, 413 F. Supp. 3d 67, 92 (E.D.N.Y. 2019) ("Plaintiffs' allegations that Defendants were deliberately indifferent to Iran's involvement with terrorism or the risk that the transferred funds would end up in the hands of FTOs like Hezbollah are insufficient to overcome [the] appearance" that defendants were motivated by "the opportunity to make money.").

support); *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003) (bank not liable for material support where it provided "routine banking service[s]").

## IV. **PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE THE ESSENTIAL ELEMENTS OF *RESPONDENT SUPERIOR* LIABILITY.**

Plaintiffs fail to show they can bring a respondeat superior liability claim under the ATA. *See* Def. Mtn 37-38. Plaintiffs have also failed to plead essential elements of such a claim under *Alfaro-Huitron v. Cervantes Agribusiness,* 982 F.3d 1242 (10th Cir. 2020), first because they concede that neither the PFLP nor the Attackers can be considered an employee of the PA or PLO. Pl. Br. 43 (noting that in this case, "the agent is <u>not</u> the employee of the principal"). Thus, Plaintiffs' reliance on *Sokolow*, 60 F. Supp. 3d 509, is misplaced because that court dismissed vicarious liability claims against the PLO for lack of evidence of an employment relationship and against the PA where "there [was] insufficient evidence that a PA employee was involved in the June 19, 2002 attack or acted within the scope of his employment." *Id.* at 519-20.

Nor can their claims survive under *Alfaro-Huitron* because the Tenth Circuit stated that if an agent is not an employee, then "a principal is liable" when "the conduct was within the scope of the agent's actual authority." *Alfaro-Huitron,* 982 F.3d at 1252 (citing Restat. (Third) Agency, § 7.04(1)). Actual authority only exists "when ... the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.'" *Id.* at 1251 (citing Restat. (Third) Agency, § 2.01)). Agency here thus requires certain "factual elements: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.'" *Id.* at 1252-53 (citation omitted). "[W]ithin any relationship of agency the principal initially states what the agent shall and shall not do, in specific or general terms." *Id.* at 1252-53. Therefore, "actual authority" requires allegations that the agent both (1) could

reasonably believe that "the principal's grant of actual authority encompassed the act in question," which is an "objective standard" and (2) "that the agent actually hold the belief, a subjective standard." *1-800 Contacts v. Lens.Com*, 722 F.3d 1229, 1251 (10th Cir. 2013) (cleaned up).

Here, Plaintiffs make no plausible allegation that the Attackers themselves were Defendants' agents, and only loosely contend that an agency relationship exists between Defendants and the PFLP (even assuming the PFLP were plausibly alleged to have committed the Attack) based solely on the following allegations: (1) Defendants and the PFLP share the identical ideological goal of gaining control of territories governed by Israel; (2) they have engaged in terroristic acts for years; and (3) Defendants provide the PFLP with certain resources and funding, which is "control" over the PFLP.  Pl. Br. 43; FAC ¶¶ 126-27.  The FAC, however, does not identify any encouragement from Defendants for the PFLP to commit the Attack, or that the PFLP consented to commit the Attack on behalf of Defendants.  The FAC instead acknowledges that Defendants avoid any association with terrorism. Pl. Br. 43-44.  And while the FAC baldly asserts that the PA and PLO could exert control over the PFLP, Plaintiffs do not dispute that the PFLP is currently boycotting PLO meetings or that it previously suspended its participation in the PLO because the PLO objected to its continued support of the use of violence.  *See* Def. Mtn 28; *Shatsky v. Syrian Arab Republic*, 795 F. Supp. 2d 79, 84–85 (D.D.C. 2011).

## V.    PLAINTIFFS' SECONDARY LIABILTY CLAIMS SHOULD BE DISMISSED.

### A.    Plaintiffs' Claim For Conspiracy Liability Should Be Dismissed.

Plaintiffs have failed to state a claim for conspiracy under Section 2333(d) because they fail to show an agreement to commit the Attack between the Defendants on the one hand, and the Attackers or the PFLP on the other.  The "crux of any conspiracy is an agreement between the co-conspirators," and JASTA requires Plaintiffs to connect the alleged agreement to the "act of

international terrorism" for which they sue.  *Kemper*, 911 F.3d at 395 (citation omitted).  "[T]he further down the causal chain a defendant sits, the more diligent a plaintiff must be to plead facts that plausibly suggest that the defendant entered into an agreement."  *Id.* at 395-96.

The FAC does not plausibly allege that Defendants "conspire[d] directly with the person or entity"—here, Uday Abu Jamal and Ghassan Abu Jamal—to commit *any act* of "international terrorism" as defined in the ATA, let alone "the act of international terrorism that injured the plaintiff[s]."  *Freeman*, 413 F. Supp. 3d at 98 n.41; *see also O'Sullivan v. Deutsche Bank AG*, 2020 WL 906153, *6 (S.D.N.Y. Feb. 25, 2020) (complaint "proffers no facts from which the Court can infer that Defendants ... entered into any agreement to commit the acts of international terrorism that injured Plaintiffs").  Indeed, the FAC does not allege any pre-Attack communications between Defendants and the Attackers.[16]

Similarly, Plaintiffs do not plausibly plead that the Defendants had an agreement with the PFLP to carry out the Attack or any other act of international terrorism.  Plaintiffs correctly observe that "few if any conspiracy claims under § 2333(d) have been found viable," but contend that this case is different because the Defendants are "deeply driven by an ideology and political goals" which they share with the PFLP.  Pl. Br. 50.  But these conclusory statements, at most, allege that Defendants and the PFLP have certain overlapping political goals, <u>not</u> an agreement to commit an act of terrorism or use terrorism to advance those goals.  *Kaplan v. Lebanese Canadian Bank,* 999 F.3d 842, 856 (2d Cir. 2021) ("conspiracy involves an agreement to participate in a wrongful activity") (cleaned up); *Gonzalez*, 2 F.4th at 907 n.19 (allegation that Google "conspired with ISIS,

---

[16] At most, the FAC alleges contact between the Defendants and the Attackers <u>after the Attack</u> in the form of payments to their families (FAC ¶¶ 23, 177), which is insufficient to show a <u>pre-Attack</u> agreement to perpetrate the Attack.  *See Sokolow*, 60 F. Supp. 3d at 517 n.11 ("A showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that Defendants were somehow responsible for the attacks."); *Shatsky*, 2017 U.S. Dist. LEXIS 94946, *31-32 (same).

its members[,] and affiliates to promote, plan, and carry out the acts of international terrorism that injured the plaintiffs" was "conclusory" and "insufficient to survive a motion to dismiss") (quotations omitted).  Despite Plaintiffs' claims otherwise (Pl. Br. 40), the PLO and PFLP are distinct political entities with exceedingly different views on the conflict with Israel.[17]

Plaintiffs do not plausibly allege that the PA and PLO, comprising the Palestinian government, had any agreement with the PFLP to commit violence.  To the contrary, the U.S. Government's representation that the United States is "cooperating on training of PA security forces" and its affirmation of the PA as "a key partner of the United States and Israel in stabilizing the West Bank and combating terrorism" belies the very notion of an agreement to commit terrorist attacks.  Gov't Br. 2 n.2.

**B.      Plaintiffs' Claim For Aiding And Abetting Liability Should Be Dismissed.**

Plaintiffs' aiding and abetting claim should be dismissed because the FAC's threadbare allegations fail to show that (a) Defendants were "generally aware" of their role "as part of an overall illegal or tortious activity" at the time of the alleged assistance, and (b) Defendants "knowingly and substantially assist[ed] the principal violation."  *Kaplan*, 999 F.3d at 856.

**1.      The FAC fails to show that the Defendants were "generally aware" they were assuming a role in terrorist activity.**

Plaintiffs fail to plausibly allege that Defendants were "generally aware of [their] role" in an act of international terrorism.  *Kaplan*, 999 F.3d at 863.  General awareness requires "a higher

---

[17] *See Shatsky*, 795 F. Supp. 2d at 84-85 ("The PFLP … 'suspended its participation in the PLO' … and had been outlawed by the PA several months prior to the attack.  Furthermore, in 2002, the PA and PLO leadership detained the leader of the PFLP, thereby verifying the schism between the entities.  In short, defendants argue that these facts show that the PA/PLO had broken with the PFLP and did not share or support PFLP's continued use of violence. ... I find defendants' assertions are sufficient to constitute a defense against plaintiffs' allegations that the PA and PLO were responsible for the attacks through their wide-ranging support of and conspiracy with the PFLP."); *see also* K. Toameh, *Facing bankruptcy, terror group accuses Abbas of 'political blackmail,'* Jerusalem Post (Apr. 25, 2020), https://www.jpost.com/middle-east/facing-bankruptcy-terror-group-accuses-abbas-of-political-blackmail-625863 (describing various efforts by Defendants to minimize the power and influence of the PFLP).

*mens rea* than that sufficient to establish material support in violation of the ATA, which requires only knowledge of the organization's connection to terrorism, not intent to further its terrorist activities or awareness that one is playing a role in those activities." *Honickman v. BLOM Bank*, 432 F. Supp. 3d 253, 264 (E.D.N.Y. 2020) (citation omitted); *Kaplan*, 999 F.3d at 860 ("knowingly providing material support to an FTO, without more, does not as a matter of law satisfy the general awareness element"); *see* U.S. Amicus Br. at *28-29, *Weiss v. Nat'l Westminster Bank*, 2022 U.S. S. Ct. Briefs Lexis 1643 (May 24, 2022) ("Congress's determination in Section 2339B that any material support to an FTO enables terrorism does not mean that every JASTA defendant who provides such support is generally aware that it is playing a role in unlawful activity from which acts of international terrorism are a foreseeable risk—or that the multi-factor substantial assistance standard will always be satisfied.").

The FAC fails to draw any link whatsoever between the Attack (or the Attackers) and support allegedly provided by the Defendants. Absent that connection, Plaintiffs cannot show that Defendants were "aware" that they were playing a "role" in Uday Abu Jamal's and Ghassan Abu Jamal's terrorist activities. Indeed, the paucity of the aiding-and-abetting claim is evident by Plaintiffs' heavy reliance on "generally" as a modifier for "awareness." Pl. Br. 47.

Defendants' alleged limited and generalized support to the PFLP (a "pillar[] of the Palestinian political system" at ¶ 178) does not plausibly show that this support was "for the specific purpose of" enabling terrorism (Pl. Br. 47-48). To the contrary, Defendants as governmental entities "invariably maintain legitimate government activities", including political interaction with the PFLP.[18] *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 868 (D.C. Cir.

---

[18] The PFLP "hold[s] seats on the [Palestine National Council, one of the PLO's two primary policymaking organs] in much the same way as would [a] political part[y] in a national legislature." Omar Dajani, *Stalled Between Seasons: The International Legal Status of Palestine During the Interim Period*, 26 Denv. J. Int'l L. & Pol'y 27, 52 (1997).

2022) (discussing sovereign nations); *American-Arab Anti-Discrimination Comm.*, 119 F.3d at 1370 (the PFLP "is engaged in a wide range of lawful activities, including the provision of education, day care, health care, and social security, as well as cultural activities, publications, and political organizing") (quotations omitted). The provision of generalized support to the PFLP as a PLO political faction did not make the Attack foreseeable or demonstrate Defendants' general awareness of, or involvement in, any alleged terrorist activities. *Honickman v. BLOM Bank*, 6 F.4th 487, 498-99 (2d Cir. 2021) (rejecting "fungibility" of money theory that would "displace the aiding-and-abetting standard with the standard for criminal material support by making 'knowingly providing material support to an FTO, without more' sufficient 'as a matter of law' for the general awareness element"); *Copeland v. Twitter*, 352 F. Supp. 3d 965, 975 (N.D. Cal. 2018) ("The plaintiff must show that the defendant *intended* to further the organization's terrorist activities or at least was 'generally aware' that, through its actions, the defendant 'was thereby playing a 'role' in [the organization's] violent or life-endangering activities.' That means more than just providing material support to such an organization.") (cleaned up; emphasis in original).

The FAC also fails to plausibly allege that the Attackers were PFLP operatives. To be sure, if the PFLP did not "commit, plan, or authorize" the Attack, the aiding-and-abetting claim must be dismissed. *Crosby v. Twitter, Inc.*, 921 F.3d 617, 626 (6th Cir. 2019) (affirming dismissal of secondary liability claim where Plaintiffs pled "insufficient facts to allege that ISIS 'committed, planned, or authorized' the Pulse Night Club shooting"). In this case, Plaintiffs rely on self-serving after-the-fact claims of responsibility by PFLP leaders (FAC ¶¶ 172, 173), despite no allegations in the FAC that the PFLP had advance knowledge.[19] *Colon v. Twitter, Inc.*, 14 F.4th 1213, 1222

---

[19] Courts hold that after-the-fact claims of responsibility to be inherently untrustworthy because terrorists have self-serving motivations to make those claims, regardless of the truth. *Gill v. Arab Bank*, 893 F. Supp. 2d 542, 569

(11th Cir. 2021) ("[Committed, planned, or authorized] connotes conscious actions at the time of or before an act. Here ISIS claimed credit after-the-fact, and there is nothing in the complaint to suggest that ISIS was aware of [the attacker] or knew beforehand about his planned attack.") (citation omitted); *Copeland*, 352 F. Supp. 3d at 974-75 (same); *c.f. Atchley*, 22 F.4th at 219 (Hezbollah's planning role was evident from unique weapons used in attacks).

Plaintiffs' reliance on allegations about an unrelated attack three-and-a-half years earlier fares no better. Pl. Br. 48; FAC ¶ 158. The PFLP's culpability for the 2011 attack on the Fogel family is not probative of whether Defendants were "generally aware" of the Attack here— particularly in light of their status as a "key partner" in "combating terrorism." Gov't Br. 2 n.2.

### 2.      The FAC fails to show that the defendants knowingly and substantially assisted the Attack.

"A defendant who lacks general awareness cannot be said to have knowingly assisted a foreign terrorist organization," *Bernhardt*, 47 F.4th at 870, and for the reasons discussed *supra*, Defendants lacked general awareness and therefore could not have knowingly assisted the Attack.

Plaintiffs also fail to plausibly plead that any assistance allegedly provided by the Defendants was "substantial," and thus played a "major part in prompting," or was integral to, the Attack. *Halberstam v. Welch*, 705 F.2d 472, 484 (D.C. Cir. 1983); *Bernhardt*, 47 F.4th at 871 (failure to show that aid was "significant" "severely undermines a finding of substantiality"). Aiding-and-abetting liability may not rest on the provision of generalized assistance to a terrorist

---

(E.D.N.Y. 2012) ("The motivation of self-interest in a claim of 'credit' for a terrorist attack on a civilian undermines trustworthiness. An incentive exists for an individual or an organization to mislead. Under the perverse assumptions of terrorists, an armed attack on civilians reflects glory. Taking 'credit' for such an attack is deemed a benefit, not a detriment, and is not reliable under the circumstances."); *Strauss v. Credit Lyonnais*, 925 F. Supp. 2d 414, 449 (E.D.N.Y. 2013) ("Hamas actively seeks publicity for its claims of responsibility for attacks against Israelis as part of its propaganda. Thus, in this instance, Hamas' claims of responsibility were not against its interest as an organization such that Hamas only would have made them if it believed them to be true.") (citation omitted); *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191, 205 (D.D.C. 2014) (same); *Shatsky*, 292 F. Supp. 3d at 194–95 (same).

organization,[20] rather than to the actual "act of international terrorism" that injured Plaintiffs, and "[c]ourts now routinely dismiss ATA claims when the plaintiffs fail to allege a direct link between the defendants and the individual perpetrator." *Crosby*, 921 F.3d at 627 n.6 (collecting cases). Section 2333's use of the singular—"an act"—makes clear that a defendant is liable for aiding-and-abetting only when it assists a specific crime, not an overall "enterprise" or "campaign." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1481 (2021) ("Congress's decision to use the indefinite article 'a'" can provide "evidence that it used the term" to mean "a discrete … thing.").

Plaintiffs have not pled facts showing the Defendants provided any pre-Attack or contemporaneous assistance to the Attackers.[21] Generalized support provided by Defendants to the PFLP cannot constitute substantial assistance because, as discussed above, Plaintiffs have not plausibly pled that the Attack was orchestrated by the PFLP. But even if the PFLP were responsible, the alleged assistance—"funding, radio frequency, and internet service that Defendants provided the PFLP" (Pl. Br. 36-37)—was not "substantial." *Shatsky*, 2017 U.S. Dist. Lexis 94946, *29 ("[P]laintiffs posit a connection between [a PFLP office] rent payment and the bombing based solely on the fact that [the office was] nearby to [the bombing location]. To say the least, that is a stretch!"). Specifically, the FAC <u>does not</u> allege that: (1) funds provided by the Defendants to the PFLP were transferred to the Attackers or used to fund the Attack; (2) the Attackers benefited in any way from "support payments" to "experienced and hardened terrorist leaders and operatives" of the PFLP (Pl. Br. 37 (quotations omitted)); or (3) the Attackers were

---

[20] The "material support" provision of 18 U.S.C. § 2339B establishes criminal liability for "knowingly provid[ing] material support or resources to" an FTO. Congress could have used similar language if it intended to create aiding-and-abetting liability for generalized aid—but the fact that Congress did not indicates that it "intentionally and purposely" declined to create such liability. *Russello v. United States*, 464 U.S. 16, 23 (1983).

[21] Nor have Plaintiffs pled any facts showing that the Attackers were motivated by the payments program. *Shatsky*, 2017 U.S. Dist. Lexis 94946, *31 ("these after-the-fact payments are not sufficient for a reasonable jury to conclude that defendants proximately caused the Karnei Shomron bombing"); *Sokolow*, 60 F. Supp. 3d at 517 n.11 (same).

aware of, let alone radicalized by, PFLP radio programs or any website hosted on "Defendants' top-level domain" (Pl. Br. 40).[22]

Finally, as a donor of significant economic assistance to Palestine, the United States was aware of the funding and resources provided by Defendants to the various political factions, including the PFLP. The Government would not have called the PA a "key partner of the United States and Israel in stabilizing the West Bank and combating terrorism" (Gov't Br. 2 n.2) if the Defendants were "knowingly and substantially" assisting in the commission of terrorist attacks.

## VI.    PLAINTIFFS HAVE FAILED TO ALLEGE LIABILITY UNDER ISRAELI LAW.

Plaintiffs' Israeli law expert concedes that negligence requires Defendants' actions to be a "but-for" or "*sine qua non*" cause of Plaintiffs' injuries. Shnoor Decl. (Dkt. 69-13) at ¶ 7. Significantly, Plaintiffs do not argue they have met this strict standard – *i.e.*, that, but-for the limited and generalized governmental support to the PFLP, the Attack would not have occurred. Pl. Br. 51. Nor could Plaintiffs plausibly make such an assertion because much of the governmental support was monetary. Courts have repeatedly recognized that the fungibility of money bars a finding of but-for causation where a terrorist group has multiple funding sources. *Linde v. Arab Bank*, 97 F. Supp. 3d 287, 324 (E.D.N.Y. 2015), *vacated on other grounds,* 882 F.3d 314 (2d Cir. 2018); *Gill*, 893 F. Supp. 2d at 507-08. This is precisely the case here, where Plaintiffs have sued others, including Syria and Iran, for providing support for the same Attack. Nor have Plaintiffs shown that the provision of radio frequencies, web domains, office space, or prisoner payments played any role in the Attack.

---

[22] Providing means of communication, without more, is insufficient for aiding-and-abetting liability. *See Retana v. Twitter*, 1 F.4th 378, 384 (5th Cir. 2021) ("the Dallas shooting was committed solely by Johnson, not by Hamas's use of Defendants' Internet services and social media platforms to radicalize Johnson").

Even if negligence may be imposed on "multiple 'but-for' tortfeasors" (Dkt. 69-13 at 2) that is beside the point because Plaintiffs cannot meet the but-for causation standard as to the Defendants (Dr. Shnoor never undertakes any analysis on that point.) Given that Plaintiffs sued others for this same Attack, they cannot allege that the Attack would not have occurred but-for the alleged support from Defendants—as opposed to support from Syria, Iran, or other entities. And Plaintiffs' claims for negligence and vicarious liability under Israeli law also fail for the same reasons their ATA claims fail—the FAC does not plausibly plead any connection between Defendants' governmental support and the Attack. Def. Mtn 44. Without but-for or proximate causation, Plaintiffs have failed to state a claim for either negligence or vicarious liability under Israeli law.

## CONCLUSION

For the foregoing reasons, Plaintiffs' FAC should be dismissed.

Respectfully Submitted,

November 14, 2022

**SQUIRE PATTON BOGGS (US) LLP**

/s/ *Gassan A. Baloul*
Gassan A. Baloul (DC Bar 1034245)
gassan.baloul@squirepb.com
Mitchell R. Berger (DC Bar 385467)
mitchell.berger@squirepb.com

2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

717 17th Street, Suite 1825
Denver, CO 80202
Telephone: (303) 830-1776
Facsimile: (303) 894-9239

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

Gassan A. Baloul, an attorney duly admitted to practice before this Court, certifies that on November 14, 2022, I caused true and correct copies of the foregoing to be served on Plaintiffs' counsel of record via electronic filing on the Court's CM/ECF system.

Dated: November 14, 2022

_/s/ Gassan A. Baloul_