# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1:21-cv-03043-RM-STV

SHELLEY LEVINE, *et al.*,

                            Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION
and THE PALESTINIAN AUTHORITY (a/k/a "The
Palestinian Interim Self-Government Authority" and/or
"The Palestinian
National Authority"),

                            Defendants.

---

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
## TO STAY DISCOVERY AND RELATED PROCEEDINGS PENDING
## RESOLUTION OF DEFENDANTS' MOTION TO DISMISS

---

Pursuant to this Court's Minute Order of December 14, 2022, Plaintiffs hereby submit their Opposition to Defendants' Motion to Stay Discovery and Related Proceedings Pending Resolution of Defendants' Motion to Dismiss (DE 82).

## INTRODUCTION

This is a civil action under the Antiterrorism Act ("ATA"), 18 U.S.C. § 2331, *et seq*., and related causes of action, arising from a terrorist attack carried out on November 18, 2014, during morning prayers in a synagogue in Jerusalem, Israel.

Since the filing of this action, the Parties have jointly requested to continue the scheduling conference, pending the production of certain documents, amendment of the complaint, and completion of briefing on Defendants' Rule 12(b)(6) motion. (DE 21, 46).

Defendants have now moved to stay discovery (and the scheduling conference) indefinitely, pending disposition of Defendants' Rule 12(b) motion.

For the reasons below, the Court should deny Defendants' motion. Alternatively, the Court should permit Plaintiffs to depose by video two older witnesses whose testimony may be lost.

## ARGUMENT

**I.    Defendants Fail to Meet Their Burden to Show Good Cause for a Stay: The Relevant *String Cheese* Factors Weigh Against a Stay and in Favor of the Case Proceeding Expeditiously**

"[T]he right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Com'n v. Chilcott Portfolio Mgmt., Inc*., 713 F.2d 1477, 1484 (10th Cir. 1983) (citations omitted). Therefore, "[i]n this District, a stay of all discovery is generally disfavored." *Estate of Reat v. Rodriguez*, No. 12-CV-02531-REB-MEH, 2013 WL 424784, at *2 (D. Colo. 2013). "The party who seeks a stay of discovery has the burden of

1

demonstrating good cause[.]" *Boulter v. Noble Energy, Inc*, No. 20-CV-00861-WJM-KLM, 2020 WL 13568320, at *1 (D. Colo. Nov. 16, 2020). "When considering whether to grant a stay, the Court considers the following factors: (1) the interest of the plaintiff in proceeding expeditiously with discovery and the potential prejudice to the plaintiff of a delay; (2) the burden on the defendant of proceeding with discovery; (3) the convenience to the Court of staying discovery; (4) the interests of nonparties in either staying or proceeding with discovery; and (5) the public interest in either staying or proceeding with discovery." *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-CV-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). As established below, these factors weigh against a stay.

## A.     A Stay Will Prejudice the Plaintiffs

The first *String Cheese* factor—"plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay"—strongly militates against a stay. 2006 WL 894955, at *2. In civil actions arising from acts of death and violence, the memories of witnesses to such traumatic events can be compromised in unique ways. *Est. of Reat*, 2013 WL 424784, at *4. Plaintiffs thus have a powerful interest in proceeding expeditiously with their case, given the horrific circumstances from which it arises, and the grave nature of their injuries. This case is not a commercial dispute or a garden-variety tort case. Plaintiffs are the widows, orphans and other family members of American citizens viciously murdered in a cold-blooded terrorist attack while peacefully saying their morning prayers, and other Americans who were savagely maimed and injured in that attack. *Id.* ("the Court agrees that Plaintiffs have articulated reasons beyond those common to all plaintiffs for proceeding with more deliberate speed. Several of the named Plaintiffs … were passengers in the vehicle during the shooting and death of Jimma Reat.")

By the same token, a stay will cause "potential prejudice" to the Plaintiffs. "[P]otential prejudice" to a plaintiff includes "witnesses' fading memories, aging or loss of evidence, etc." *Burba v. United States*, No. 119CV00155CMASKC, 2020 WL 4207518, at *2 (D. Colo. July 22, 2020). Plaintiffs have well-founded concerns that a stay of discovery would cause them serious and irreparable prejudice due to loss of testimony and evidence. As discussed below in Part II, some of Defendants' officials who have personal knowledge of facts and/or have made statements that are highly relevant to the merits issues in this case are in their 70s and will unavoidably retire in the not-distant future (which would relieve Defendants of the duty to produce them for deposition and so likely render them unavailable), or very possibly pass away.

Additionally, a serious risk of spoliation exists in this case unless Defendants demonstrate the proper preservation of all relevant categories of documents and information. In previous civil actions against them under the Antiterrorism Act, these same Defendants have asserted an inability to locate responsive documents or information. For example, *Shatsky v. PLO, et al.*, 02-cv-2280 (D.D.C.) was filed in 2002. After numerous delays engineered by Defendants (including a default), the Defendants submitted their Initial Disclosures only in 2011. Those Disclosures repeatedly referenced the purported "destruction of records of military, police, law enforcement and security organizations" relevant to the case, that had been held by the Defendants. (Exhibit A at 3-4).

Therefore, on December 20, 2022, Plaintiffs' counsel wrote Defendants' counsel and requested that the latter "advise specifically … what actions, if any, have been taken by Defendants and counsel to identify all potentially relevant documents and information and to place them under a litigation hold." (Exhibit B). Defense counsel have simply ignored that request. Spoliation is therefore a very serious concern.

Defendants' argument that Plaintiffs "delay[ed] in filing this case after the underlying incident" (DE 82 at 9) does not change this result under the first *String Cheese* factor and is a red herring because it ignores the relevant pre-suit jurisdictional legal and factual circumstances. Plaintiffs filed this action immediately after the dust settled on those issues. As discussed in the Parties' briefing on Defendants' Rule 12(b) motion, the question of whether personal jurisdiction could be exercised over these Defendants was thrown into a state of constant flux—by Defendants themselves—following the Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117 (2014). Soon after *Daimler* came down (and even before the terrorist attack from which this action arises), Defendants began aggressively challenging the exercise of personal jurisdiction over them. *Cf. Klieman v. PA*, No. CV 04-1173 (PLF), 2014 WL 2927517, at *1 (D.D.C. June 27, 2014) ("In 2006, this Court held that it could exercise general personal jurisdiction over defendants Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO"). The defendants have moved for reconsideration of the Court's jurisdictional decisions in light of the Supreme Court's recent decision in *Daimler*.").

In early 2015, federal courts began dismissing actions against Defendants for lack of personal jurisdiction. *Cf. Klieman v. PA*, 82 F. Supp. 3d 237 (D.D.C. 2015); *Livnat v. PA*, 82 F. Supp. 3d 19 (D.D.C. 2015), *aff'd*, 851 F.3d 45 (D.C. Cir. 2017). In late 2018 Congress sought to remedy this situation by enacting the Anti-Terrorism Clarification Act ("ATCA"), but the ATCA's jurisdictional predicates were not triggered. *Klieman v. PA*, 923 F.3d 1115, 1128 (D.C. Cir. 2019).

Congress again stepped in and enacted the Promoting Security and Justice for Victims of Terrorism Act ("PSJVTA") in 2019. The PSJVTA establishes personal jurisdiction over the PLO and PA, if, after April 18, 2020, either "makes any payment, directly or indirectly" to a family

member of an individual who died while committing an act of terrorism that injured or killed an American, or if Defendants engage in certain conduct in the United States after January 4, 2020. *Shatsky v. PLO.*, No. 18-CV-12355 (MKV), 2022 WL 826409, at *2 (S.D.N.Y. Mar. 18, 2022). Thus, jurisdiction under the PSJVTA turns on whether Defendants took certain actions <u>after</u> April 2020.

Soon after the PSJVTA's 2020 effective dates had passed, the plaintiffs in *Shatsky v. PLO*, 18-cv-12355-MKV-DCF (S.D.N.Y.) moved for leave to take jurisdictional discovery from the Defendants to determine whether they had triggered the PSJVTA's jurisdictional predicates. (*Id*. at DE 41). That motion was granted, and on October 4, 2021, the *Shatsky* plaintiffs filed papers showing—on the basis of the jurisdictional discovery that they had obtained—that the Defendants had triggered the factual predicates of the PSJVTA. (*Id*. at DE 130-133). This action was filed just five weeks later, on November 11, 2021.

As the facts above make clear, from early 2014 until October 2021 (when the *Shatsky* plaintiffs filed their papers based on the results of their jurisdictional discovery) the question of whether jurisdiction exists over these Defendants was in ever-shifting limbo. This action was filed promptly thereafter, and on December 30, 2021, the parties jointly informed this Court that they "reached an agreement under which Defendants will provide Plaintiffs with certain documents"— namely, the *Shatsky* jurisdictional discovery materials—"potentially relevant to Defendants' challenge to personal jurisdiction." (DE 21 at ¶ 4).

Defendants' claim about Plaintiffs' litigating pace in this case is likewise frivolous. As noted above in the Introduction, the Parties <u>jointly</u> requested to continue the scheduling conference until now, for purposes of efficiency. (DE 21, 46). That certainly does not imply any inertia on

Plaintiffs' part. Notably, Defendants could have, but did not, move for a stay of discovery until now.

**B.    Defendants Fail to Demonstrate Any Burden on Them**

The fact that Defendants challenge this Court's personal jurisdiction over them does not automatically entitle them to a discovery stay; rather, this Court considers all five *String Cheese* factors, even when the defendant has moved to dismiss for lack of personal jurisdiction. *Cf. Vora v. Dionne*, No. 22-CV-00572-CNS-MDB, 2022 WL 14813723 (D. Colo. Oct. 26, 2022) (weighing all *String Cheese* factors even though defendant had moved to dismiss for lack of personal jurisdiction); *Otter Prod., LLC v. Flygrip, Inc.*, No. 21-CV-03298-DDD-KLM, 2022 WL 3099202 (D. Colo. Apr. 18, 2022) (same); *E.I. Du Pont De Nemours & Co. v. Teflon Blood Inc.*, No. CIVA09CV02717WDMKMT, 2010 WL 1957306 (D. Colo. May 13, 2010) (same); *Morrill v. Stefani*, No. 17-CV-00123-WJM-KMT, 2017 WL 1134767 (D. Colo. Mar. 13, 2017) (same).

Moreover, this is not a case where the plaintiff has asserted a single basis for personal jurisdiction over the defendant. As discussed in the Parties' Rule 12(b) briefing, Plaintiffs have asserted four independent bases for exercise of personal jurisdiction over the Defendants. Indeed, as the United States pointedly noted in its amicus brief, it is an open question in this Circuit whether these Defendants have Due Process rights in the first place. "Assuming for the purposes of defending the constitutionality of the PSJVTA that the PA and PLO have due process rights under the Fifth Amendment, an issue which this Circuit has not addressed, the PSJVTA provides a constitutional basis for personal jurisdiction." (DE 73 at 1). Notably, the last court to have opined on this question found that, "It is inconsistent with our constitutional system … to extend due process protections to foreign governments" such as these Defendants. *Shatsky*, 2022 WL 826409,

at *5. And while Defendants rely on out-of-circuit lower court decisions holding the PSJVTA unconstitutional, those decisions are all on appeal, where they will undergo de novo review.

Defendants have also moved to dismiss for failure to state a claim, but "granting a stay of discovery solely because Defendants have asserted a Rule 12(b)(6) defense would suggest that a stay is appropriate nearly any time a defendant files a motion to dismiss." *Noriega v. Marillac Clinic, Inc.*, No. 22-CV-01082-CMA-NYW, 2022 WL 2702891, at *3 (D. Colo. July 12, 2022) (cleaned up). *Cf. LS3 Inc. v. Cherokee Fed. Sols., L.L.C.*, No. 120CV03555PABNYW, 2021 WL 4947284, at *1 (D. Colo. Aug. 26, 2021) ("[s]tays of discovery pending the resolution of a Rule 12(b)(6) motion are disfavored in this District."). In any event, Plaintiffs have asserted and adequately pled numerous theories of liability over Defendants (*e.g.* primarily liability, aiding and abetting, conspiracy, and respondeat superior), and their Rule 12(b)(6) motion is hopeless. Furthermore, it is well established that Defendants must "offer specific prejudice they would suffer absent a stay apart from bearing the costs of litigation. … a party seeking a stay based on undue burden or expense must explain in detail the nature and extent of the claimed burden or expense. Conclusory statements will not satisfy Defendants' burden." *Gallan v. Bloom Bus. Jets, LLC*, No. 119CV03050WJMSKC, 2020 WL 9424245, at *2 (D. Colo. July 6, 2020) (citations omitted). *Cf. Boulter v. Noble Energy, Inc*, 2020 WL 13568320, at *1 ("The party who seeks a stay of discovery . . . cannot sustain [its] burden by offering simply conclusory statements. Generally, the Court requires a particular and specific demonstration of fact in support of a request for a stay.") (cleaned up). Yet, Defendants fail to make—or even try to make—any specific or detailed showing of burden.

Furthermore, Defendants' claim that conducting any merits discovery will cause them "irreparable harm" rings hollow, given that Defendants <u>elected</u> to unnecessarily invoke the Court's authority, and burden themselves, the Court, and Plaintiffs, by moving to dismiss this action on <u>non-jurisdictional</u> grounds, *i.e.*, for failure to state a claim under Rule 12(b)(6). (DE 58 at 27-44). If avoiding non-jurisdictional litigation burdens was really so important to Defendants, they would have waited to assert their Rule 12(b)(6) arguments in a Rule 12(c) motion, if and after the Court rejects their jurisdictional defense. "[A]lthough Rule 12(g)(2) precludes successive motions under Rule 12, it is expressly subject to Rule 12(h)(2), which allows parties to raise certain defenses, including the failure to state a claim upon which relief may be granted by a motion for judgment on the pleadings under Rule 12(c)." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1101-02 (10th Cir. 2017) (cleaned up). It is well established that Rule 12(b)(6) and Rule 12(c) are substantively identical, and differ only as to timing. "A motion for judgment on the pleadings pursuant to Rule 12(c) is evaluated under the same standard applicable to a Rule 12(b)(6) motion to dismiss." *Rodriguez v. Payler*, No. 19-CV-01388-CMA-KMT, 2020 WL 5026932, at *3 (D. Colo. Aug. 10, 2020). *Cf. Slagel v. Golden Bell Retreat*, No. 19-CV-01371-REB-NYW, 2019 WL 9089596, at *2 (D. Colo. Dec. 18, 2019) ("courts employ the same standard when evaluating Rule 12(b)(6) and Rule 12(c) motions.").

Thus, Defendants could have easily spared themselves (and the Court and Plaintiffs) the motion practice and other burdens of litigating their non-jurisdictional Rule 12(b)(6) arguments pending a ruling on their jurisdictional challenge, with no prejudice whatsoever to their Rule 12(b)(6) arguments (which could have been presented in a later Rule 12(c) motion, if and as necessary). Instead, Defendants elected to affirmatively invoke the power of this Court for their

own benefit (dismissal under Rule 12(b)(6) is on the merits), and to voluntarily assume those litigation burdens. Defendants should not now be heard to argue that engaging in any discovery prior to the resolution of their jurisdictional defense is improper and will cause them "irreparable harm," when they choose—wholly unnecessarily—to expend extensive resources to seek affirmative relief (*i.e.*, a merits dismissal under Rule 12(b)(6)) prior to any ruling on personal jurisdiction. *Cf. Baldwin v. United States*, No. 11-CV-02033-MSK-KLM, 2011 WL 5177698, at *2 (D. Colo. Nov. 1, 2011) (concluding that the defendant would not be prejudiced in the absence of a stay pending resolution of its Motion to Dismiss because the "ordinary burdens associated with litigating a case do not constitute undue burden," and noting "motions relating to a failure to state a claim are not unique nor do they raise similar concerns that the defendants are unnecessarily subject to litigation*."); Chavez v. Young Am. Ins. Co.*, No. CIVA 06CV02419PSFBNB, 2007 WL 683973, at *2 (D. Colo. Mar. 2, 2007) ("Defendants always are burdened when they are sued, whether the case ultimately is dismissed; summary judgment is granted; the case is settled; or a trial occurs. That is a consequence of our judicial system and the rules of civil procedure. There is no special burden on the defendant in this case.").

## C.     The Public Interest Strongly Favors Proceeding Expeditiously

Defendants make short shrift of the public interest factor, citing only a "general" interest in judicial efficiency. But there is an overwhelming public interest in this case proceeding promptly. It is well established that civil actions under the ATA such as this case vindicate critical national interests:

> [T]he District Court properly recognized that the interests of the United States weigh heavily in this [ATA] case, even though it is a private lawsuit brought by individual victims of terrorism…[T]he ATA's legislative history reflects that Congress conceived of the ATA, at least in part, as a mechanism for protecting

> the public's interests through private enforcement. One of the Act's sponsors noted that the Act would ensure that "justice [is] sought" against terrorists "even if not by [foreign governments or] the United States." 137 Cong. Rec. S. 1771 (daily ed. Feb. 7, 1991) (Senator Grassley commenting after enactment). Furthermore, he declared that the Act would "empower[ ] victims with all the weapons available in civil litigation, including: [s]ubpoenas for financial records, [and] banking information [of alleged terrorists]." Id. The District Court here appropriately recognized the important U.S. interests at stake in arming private litigants with the "weapons available in civil litigation" to deter and punish the support of terrorism. *Id*.

*Linde v. Arab Bank, PLC*, 706 F.3d 92, 112 (2d Cir. 2013)

Thus, the American public has a very strong interest in this action proceeding.

Furthermore, this Court has consistently found that the *String Cheese* "public interest" factor weighs squarely against a stay, where, as here, the defendants are public entities alleged to have acted unlawfully. *Cf. McGinn v. El Paso Cnty., Colorado*, No. 22-CV-01387-WJM-MDB, 2022 WL 16924058, at *4 (D. Colo. Nov. 14, 2022) ("the public interest tends to cut against a stay … the public … has an interest in moving matters forward and a more substantial interest in learning about the policies and practices of the El Paso County Jail to ensure it is operating within the bounds of the law.") (cleaned up); *Morgan v. Clements*, 12-cv-00936-REB-KMT, 2013 WL 950876, at *5 (D. Colo. Mar. 12, 2013). ("It may be that Defendants' conduct will pass constitutional muster, in which case the public is better served by knowing that ... as fairly determined by the judicial process, sooner rather than later."); *A.A. v. Martinez*, 2012 WL 2872045, at *14 (D. Colo. July 12, 2012) ("[T]he public interest is well-served by prompt and efficient handling of litigation, particularly where the litigation involves allegations against public officials.").

Federal courts have repeatedly and expressly recognized that there is a strong public interest in allowing terrorism actions against <u>these</u> Defendants to proceed on the merits:

> Whether, as Plaintiffs contend, … high ranking PLO and PA officials harbored terrorism and murder as official policy; whether they … provided financing for the acts of murder they stand charged with having committed in this action and others like it … are all weighty matters with far-reaching implications. The answers to such questions touch upon interests beyond those of the immediate parties to this litigation … [M]eriting consideration are potential concerns of members of the international community—including this country—which have recognized Defendants as legitimate leaders of a governmental entity. They would be interested in knowing whether the public institutions and officials they have accorded their recognition and have dealt with at arms length are what they purport to be, and that any funds they provided Defendants to support valid public purposes in the areas within Defendants' authority have been employed solely for the intended use, and not, as Plaintiffs' allegations suggest, to finance terrorism … [T]here are many other persons who for various personal or professional reasons may have some valid stake in the truth of the historical record as regards the issues raised by Plaintiffs' allegations in this case, including the general public's right to know the facts relating to matters of great moment that may affect their own public or private interests.

*Knox v. PLO*, 248 F.R.D. 420, 431 (S.D.N.Y. 2008). *Cf. Saperstein v. PA*, No. 04-20225-CIV-SEITZO, 2008 WL 4467535, at *15 (S.D. Fla. Sept. 29, 2008) ("There is a strong public interest in learning the truth of the Plaintiff's allegations: whether the Defendants [PLO and PA] contributed to terrorist activities … The truth of these allegations impact on both the interests of the people that Defendants serve and the interests of the members of the international community."); *Gilmore v. PA*, 675 F. Supp. 2d 104, 113 (D.D.C. 2009) (same).

Thus, the "public interest" test also strongly disfavors a stay.

## II.     Alternatively, Plaintiffs Should Be Permitted to Depose Two Older Witnesses by Videoconference

In the alternative, *i.e.*, if the Court is inclined to grant a stay, Plaintiffs should nonetheless be permitted to depose <u>by video</u> two important witnesses, discussed below, who are in their 70s.

The federal courts and the Federal Rules of Civil Procedure place a premium on preventing the loss of evidence and testimony, even <u>before</u> a court has determined whether the action will proceed. Thus, a defendant's duty to preserve potentially relevant evidence does not arise upon the filing of the suit—much less upon denial of the defendant's motion to dismiss—but even prior to suit, *i.e.* once it is aware that litigation will be initiated. *KeyBank Nat'l Ass'n v. Williams*, No. 119CV03714CMASKC, 2022 WL 3446019, at *2 (D. Colo. Aug. 17, 2022).

Similarly, Fed. R. Civ. P. 27 permits a potential plaintiff to seek a deposition "to perpetuate testimony," even prior to filing suit. Such relief is typically allowed where, as here, the "witness is aged." *Clark v. Dunlap*, No. 14-MC-00018-BNB, 2014 WL 1089559, at *2 (D. Colo. Mar. 19, 2014) (citing *Texaco, Inc. v. Borda*, 383 F.2d 607 (3rd Cir. 1967)). *Cf. Penn Mut. Life Ins. Co. v. United States*, 68 F.3d 1371, 1375 (D.C. Cir. 1995) ("Advanced age certainly carries an increased risk that the witness will be unavailable by the time of trial.").

Notably, in *Borda*, which has been repeatedly cited with approval by this Court,[1] the Court of Appeals held that, "It would be ignoring the facts of life to say that a 71-year old witness will be available, to give his deposition or testimony, at an undeterminable future date." *Texaco, Inc. v. Borda*, 383 F.2d 607, 609 (3rd Cir. 1967). Here, as discussed below, the witnesses are 71 and 76.

---

[1]     Cf. *In re McBean*, No. 12-CV-00579-MSK-KLM, 2012 WL 769521, at *1 (D. Colo. Mar. 8, 2012); *In re Lopez*, No. 10-CV-01149-BNB, 2010 WL 2802541, at *1 (D. Colo. July 15, 2010).

**Sultan Abu al-Einein – Age 71**

As detailed in the attached Declaration of Dr. Ronni Shaked, since 2010 until the present day Sultan Abu al-Einein (born 1951) has served as senior official of both the PLO and the PA, directly subordinate to PA President and PLO Chairman Mahmoud Abbas, with the rank of Major-General in the PLO and the rank of Minister in the PA. (*Id*. at ¶¶ 28-33).

Plaintiffs seek to depose Abu al-Einein because immediately following the November 18, 2014, terrorist attack from which this action arises, Abu al-Einein published on his Facebook page several photographs showing two of the decedents[2] in this case dead and bloody, wrapped in their prayer shawls, on the floor of the synagogue, and a large pool of blood on the synagogue floor. In his post above these horrific photographs Abu al-Einein wrote: "**Photos from the place where the _heroic operation_ was carried out**." (Exhibit C, emphasis added).[3] The same day, Abu al-Einein posted photographs of the terrorists who carried out the attack, along with the text: "**Uday and Ghassan Abu Jamal, who carried out _the heroic Jerusalem operation_**." (Exhibit D, emphasis added). The following day, Abu al-Einein posted a text addressed to the "**people of Jerusalem**," and stating: "**_God bless … your kitchen knives, and your excellent axes_. They are the most powerful weapon to fend off our enemy**." (Exhibit E, emphasis added). This post was obviously a reference to the synagogue massacre the day before, which was carried with a butcher's cleaver (as well as a pistol).

---

[2]     Though their faces are not visible, given their location in the sanctuary it appears that the specific men in the photographs are Rabbi Twersky and Rabbi Kupinsky, but for obvious reasons counsel have not sought to confirm this with the plaintiffs.

[3]     The accuracy of the translations of the Facebook posts are confirmed in the attached Declaration of Yaniv Berman.

That senior PA and PLO official Sultan Abu al-Einein repeatedly characterized the attack as "heroic," blessed the "kitchen knives, and … excellent axes" used by the perpetrators to slaughter the Plaintiffs' decedents in the midst of prayer, posted graphic photos from the scene glorifying the attack, along with photos of the "heroic" attackers, are all facts highly relevant to the Defendants' state of mind regarding this attack and their policies toward terrorist attacks generally.

The importance of these statements by Abu al-Einein in 2014, is magnified by the fact that in 2013, a bipartisan group of members of the U.S. House of Representatives sent a letter to PA/PLO leader Mahmoud Abbas asking that he dismiss Abu al-Einein from his position in the PA after he praised a previous terrorist murder. The Congressional letter stated in relevant part: "[W]e were troubled to learn that a senior Palestinian Authority official, Sultan Abu Al-Einein … expressed his open support for the murderer who killed … an Israeli who was stabbed to death … We ask that you publically and officially denounce and condemn Mr. Al-Einein's remarks at once and remove him from his position in your government." (Exhibit F).

Abbas flatly refused to do so. (Exhibit G). Indeed, as discussed in the Shaked Declaration, Abu al-Einein remains in his senior position until today, notwithstanding both his 2013 pro-terrorism statements and his statements praising the November 18, 2014, synagogue attack. Clearly, then, Abu al-Einein's <u>repeated</u> statements are evidence of Defendants' state of mind and policy.

Plaintiffs seek Abu al-Einein's video deposition in order to confirm the fact that the Facebook page on which these posts were published does in fact belong to him. As explained in ¶ 34 of the Shaked Declaration, the Facebook page at issue

(www.facebook.com/AllwaSltanAbwAlynyn) does clearly appear to belong to Sultan Abu al-Einein, but Plaintiffs have no way of proving that absent Abu al-Einein's testimony (or a stipulation from Defendants).

Given Abu al-Einein's official position in the PA and PLO, he is subject to deposition by notice to the Defendants, pursuant to Rule 30(b)(1).

Pursuant to Local Civil Rule 7.1(a), Plaintiffs' counsel wrote to Defendants' counsel on December 19, 2022, explained why Plaintiffs seek to depose Abu al-Einein, and requested that Defendants' counsel "please advise whether Defendants will agree to produce Abu al-Einein for a video deposition on a mutually convenient date in the near future, or, alternatively, to provide a stipulation that the Facebook page on which these statements were published is indeed Abu al-Einein's Facebook page." (Exhibit H).

Defendants' counsel has not responded in any manner to this email.

Therefore, the Court should permit Plaintiffs (even if it is otherwise inclined to impose a stay) to notice the video deposition of Abu al-Einein.

### Ramzi Khoury– Age 76

Plaintiffs' operative complaint alleges that the November 18, 2014, attack was carried out by the Popular Front for the Liberation of Palestine ("PFLP"), and that: "Between 1999 and the date of the Terrorist Attack, the defendants provided the PFLP with direct monetary allocations totaling (at least) several million dollars every year … during the 15 years prior to the Terrorist Attack, the defendants provided the PFLP with cash funding totaling in the tens of millions of dollars. These funds enabled the PFLP to build, maintain and expand its organizational scope and operational strength and capabilities." (DE 50 at ¶¶ 128-129. *See also e.g.* ¶¶ 156, 178, 181).

A defendant's provision of funding to the terrorist organization that carried out an attack gives rise to primary and/or secondary liability under 18 U.S.C. § 2333, depending on the scope of the funding provided. *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204 (D.C. Cir. 2022).

As explained in ¶ 35 of the Shaked Declaration, the PLO's funding of the PFLP is conducted through the PLO's "treasury," known as the Palestine National Fund ("PNF"). As also explained by Dr. Shaked, the Director-General of the PNF from 2005 until today is Ramzi Khoury, who is a member of the PLO Executive Committee, and holds the rank of Minister in the PA. (*Id.* at ¶ 36). Importantly, "since 2005 Khoury has *personally* conducted an extremely extensive restructuring, auditing, and record archiving program within the PNF, which continues to this day, and … he personally has a unique, bird's-eye understanding of the PNF's payment flows." (*Id.* at ¶ 37).

Thus, Ramzi Khoury is an extremely valuable witness, with unique personal knowledge regarding the PLO's funding of the PFLP (which, as noted above, is an important element of Plaintiffs' liability case against under § 2333 of the Antiterrorism Act).

However, Khoury was born in 1946 (Shaked at ¶ 36), and there is a serious concern that he will retire (and so become unavailable under Rule 30(b)(1)), or become ill or pass away.

Therefore, the Court should permit Plaintiffs (even if it is otherwise inclined to impose a stay) to notice the video deposition of Ramzi Khoury.

**WHEREFORE**, Defendants' motion should be denied in its entirety; alternatively any stay should exclude depositions of the witnesses identified above.

DATED this 28th day of December, 2022.

Respectfully Submitted,


*s/ Daniel K. Calisher*
Daniel K. Calisher
Foster Graham Milstein & Calisher, LLP
360 South Garfield Street, 6th Floor
Denver, Colorado 80209
Telephone: 303-333-9810
Email: calisher@fostergraham.com
*Attorneys for Plaintiffs*


*s/ Jordan Factor*
Jordan Factor
Allen Vellon Wolf Helfrich & Factor, P.C.
1600 Stout Street, Suite 1900
Denver, Colorado 80202
Telephone: 303-534-4499
Email: jfactor@allen-vellone.com
*Attorneys for Plaintiffs*


*s/ Asher Perlin*
Asher Perlin, Esq.
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Telephone: 786-233-7164
Email: asher@asherperlin.com
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of December, 2022, a true and correct copy of the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY AND RELATED PROCEEDINGS PENDING RESOLUTION OF DEFENDANTS' MOTION TO DISMISS** was electronically served upon all counsel of record via *ECF*.

<u>            *s/ Daniel K. Calisher*            </u>