1

1        IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
2
     Case No. 21-cv-03043-RM-STV
3    _____

4    LEVINE, et al.,

5         Plaintiffs,

6    vs.

7    PALESTINE LIBERATION ORGANIZATION, THE, PALESTINIAN
     AUTHORITY, THE, and RIYAD MANSOUR,
8
          Defendants.
9    _____

10

11        Proceedings before SCOTT T. VARHOLAK, United

12   States Magistrate Judge, United States District Court for

13   the District of Colorado, commencing at 11:18 a.m., January

14   10, 2023, in the United States Courthouse, Denver, Colorado.

15   _____

16        WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

18   _____

19                      APPEARANCES

20        DANIEL CALISHER, ASHER PERLIN and JASON

21   SPITALNICK, Attorneys at Law, appearing for the Plaintiffs.

22        MITCHELL BERGER, BRENT OWEN and GASSON BALOUL,

23   Attorneys at Law, appearing for the Defendants.

24   _____

25                      MOTION HEARING

2

1                    P R O C E E D I N G S

2              (Whereupon, the within electronically recorded

3    proceedings are herein transcribed, pursuant to order of

4    counsel.)

5              THE COURT:  This is 21-cv-3043.  Can I have

6    entries of appearance, please.

7              MR. CALISHER:  Good morning, Your Honor.  Dan

8    Calisher with my colleague Jason Spitalnick on behalf of

9    plaintiffs.  And on the phone is Asher Perlin.

10              THE COURT:  Good morning.

11              MR. BERGER:  Good morning, Your Honor.  Mitchell

12    Berger from Squire Patton Boggs for the defendant with my

13    colleague Brent Owen.  And I have a colleague Gasson Baloul

14    who is on the telephone.

15              THE COURT:  And good morning.

16              So currently pending before me is Document Number

17    82.  This is the motion to stay filed by the defendants in

18    this matter.  I have reviewed the motion and all related

19    briefing associated with it.

20              I'll take any further argument that either side

21    wishes to make.  Since it's defendant's motion, I'll hear

22    from defendant first and then I'll hear from plaintiff.

23              MR. BERGER:  Thank you, Your Honor.

24              I'll be brief, and if Mr. Calisher raises

25    something that's new, perhaps Your Honor will give me a

3

1   minute to talk about that, but since we filed our reply

2   brief and I know the Court has read it, I just want to

3   emphasize a few points.

4         One is that Your Honor has dealt with many of

5   these motions before.  I read the decision we cited in our

6   brief that you issued in the Frederick vs. Caltera, which is

7   2017 WestLaw, 1908121 from 2017.  It really sets forth the

8   rationale for why a stay should be granted here.

9         There is a serious, fully briefed, ripe pending

10  motion to dismiss for lack of personal jurisdiction.  Among

11  other reasons, that was the rationale Your Honor used in the

12  Caltera case to grant a stay of discovery.  The balancing of

13  factors is largely the same here.

14        THE COURT:  Let me ask this:  One thing that is

15  different in case is that the plaintiffs allege that there

16  is at least two witnesses here who are -- who have relevant

17  information who are in their 70s.  I will say I don't know

18  what their health is, but, you know, they're in their 70s

19  and they requested a video deposition.

20        I don't want to bring up the issue of the apex

21  doctrine here because I don't think it's been adequately

22  briefed to this point, but why shouldn't I order those --

23  the limited discovery of those two depositions, certainly

24  not overly burdensome, reserving the apex issue for the

25  parties to submit a joint discovery dispute statement on

4

1   that limited issue?  Because again, I don't think that's

2   been fully briefed.  It was raised for the first time in the

3   reply brief.  I'm not faulting you for that.  The way this

4   came about and that they requested two witnesses and then

5   you addressed those two witnesses, but what -- why not allow

6   that again, subject to the apex doctrine?

7          MR. BERGER:  And here is why not.  And part of the

8   reason we raised it for the first time in reply, as Your

9   Honor knows is, one of the two depositions they asked for,

10  they never mentioned to us briefly.  We heard about it for

11  the first time in the opposition brief.

12         So I don't like raising new issues in reply, but

13  when they raised new issues in --

14         THE COURT:  No.  Again, I'm not suggesting you

15  did.  I get why it came out the way it did, is that in their

16  response they mentioned two specific people and then you

17  addressed those two specific people.  So I'm not suggesting

18  it's waived in any way.

19         MR. BERGER:  And let me explain why and let me

20  start with Mr. Al-Einein, who is the one they had mentioned

21  previously.

22         First of all, he's not under our control.  But

23  getting beyond that, the reason why mischief is going to be

24  created, if we get into merits discovery of witnesses before

25  the jurisdictional question is resolved is really

5

1    exemplified by Mr. Al-Einein.  This is a one-question

2    deposition, one question:  Are the Facebook pages ones that

3    he posted?

4           To allow a seven-hour deposition when their

5    opposition papers are replete with all of their rhetorical

6    observations and views about Mr. Al-Einein is a recipe for a

7    sideshow when it doesn't need to be, whether you look at the

8    apex doctrine or not.  If their sole concern is preservation

9    of evidence from an aging witness, then all they need to

10   know from Mr. Al-Einein can be answered in a single

11   interrogatory.

12          THE COURT:  Well, why -- well, maybe, but like you

13   said, he's not under your control.

14          So let's say -- you know, because it takes -- in

15   this district, it can take -- there are dispositive motions

16   pending for two years.  Let's say it takes, on average,

17   eight months, is what it used to take prepandemic.  I think

18   it's probably longer than that now.

19          But let's say we get a ruling in a year from Judge

20   Moore on this.  And again, I have no idea sort of where he

21   is in this process, but let's say it's a year, and let's say

22   the witness dies between now and then.

23          They ask the interrogatory will:  Did you create

24   these Facebook pages?  And your response is going to be:  I

25   don't know, he's not under our control, we can't answer

6

1    that.

2              MR. BERGER:  Well, if he's not under our control

3    respectfully, Your Honor, then we can't be forced to produce

4    him either, so --

5              THE COURT:  Well, that's a different question, but

6    they can attempt to subpoena him.  I don't know how that

7    process is going to play out, but that's a separate question

8    as to whether I should allow limited discovery into that.

9              And if it's one question, it's certainly not

10   burdensome.  It's an hour-long deposition.

11             MR. BERGER:  I can guarantee you my bottom dollar,

12   Your Honor, this will not turn into a one-hour deposition.

13             But the word you used, Your Honor, why I want to

14   seize on, which I think is the solution here, which is

15   limited, there is absolutely no reason not to take an

16   incremental approach here.  I would respectfully suggest

17   that if the Court is concerned about preservation, let us

18   start with the logical way of doing this.

19             I see Your Honor has spoken in CLE about targeted

20   discovery.  Let's be targeted about these issues, which is

21   if it's one issue for Mr. Al-Einein, and if it's a

22   documentary numerical issue for Mr. Khoury, who is the head

23   of the P&F, let's start with interrogatories.  If it's going

24   to take eight to ten months -- and who knows -- to get a

25   decision on the dispositive motion, then we won't have

1   really lost any ground if we have a 30-day period to respond

2   to an interrogatory that says, Can you verify that

3   Mr. Al-Einein then posted these Facebook pages?  And as to

4   Mr. Khoury, what are the numbers in terms of support from

5   the PLO -- for the PFLP, then we'll know.  And if at the end

6   of 30 days we don't have a decision and we've already made

7   headway and we can answer these things in writing, then we

8   don't have to go through what is an extremely difficult

9   process of getting depositions of these witnesses.

10          And if I may just offer 30 seconds of context,

11   because we had jurisdictional discovery depositions in a

12   related case in the Southern District of New York, another

13   case like this in the Southern District of New York, the

14   witnesses generally cannot get out of Palestine for

15   deposition.  Usually, the best they can do is get to Amman

16   Jordan for their deposition.

17          So you're already dealing with the difficulties of

18   a virtual deposition taken across nine time zones, which is

19   a difficult feat to do and there is no reason why, if Your

20   Honor is inclined to do something because of preservation

21   purposes, why we shouldn't start with the least intrusive

22   alternative.

23          THE COURT:  What targeted discovery would you

24   suggest with respect to Mr. Khoury?

25          MR. BERGER:  I would say if they want to know for

8

1    what they claim is the relevant period, which is -- this is

2    the issue they identify, which is what amounts of money for

3    whatever calendar years we would say are within the relevant

4    discovery period.  And remember, this is an attack that

5    occurred in 2014, so we're talking 2014 going back some

6    period in time.

7            What are the amounts of funding that were provided

8    by the PLO to the PFLP?  That's going to be a

9    documentary-based answer under any circumstances anyway.

10   There is no way Mr. Khoury would know that off the top of

11   his head, both because it's ancient history and because he

12   is the senior official.  He would have to look at documents.

13   We can look at the documents the same way.

14           THE COURT:  Okay.  Just one moment.  Okay.  Let me

15   hear from --

16           MR. BERGER:  Thank you, Your Honor.

17           THE COURT:  Thank you.

18           MR. CALISHER:  May it please the Court, Dan

19   Calisher on behalf of plaintiffs.

20           Your Honor, a few things.

21           With respect to Mr. Al-Einein, we could do away

22   with all of this trouble if counsel would stipulate that

23   it's his Facebook page, which he can do right now, and we

24   would not need to --

25           THE COURT:  But you just answered the limited

9

1    question.  If I -- if I allow a single interrogatory that

2    says -- or request for admission, "Please admit or deny that

3    this is his Facebook page," they've got to answer that in 30

4    days.  If they admit, great, you've got what you need.  If

5    they deny, then you come back to me and say, Hey, we -- I

6    mean, the exact concern that I had in questioning counsel,

7    if you're going say you don't know, then we need a

8    deposition.

9          So it seems to me that that's the incremental

10    mental approach that I should allow is, you know, within the

11    next, you know -- whenever you want -- I mean, it's your

12    timeframe -- you're permitted to a request for admission to

13    the defendant to admit or deny that it's his Facebook page.

14    And if their answer is, We don't have enough information to

15    admit or deny, then I would be more inclined to say, All

16    right.  Well, I took their approach, I took the incremental

17    approach, they won't answer it, now you get your deposition.

18          MR. CALISHER:  I would just add that our expert's

19    testimony about who these people are, their role in the

20    organization as -- with both the PA and the PLO is

21    unrebutted.

22          So to the extent that we get into the issues of

23    custody and control, I just want to say at this point the

24    burden of proof has not shifted and they carry it, and that

25    our -- I think our request is -- is well-founded.

1          Your Honor, I would like to just call attention to

2     the fact that this is just such a unique case that is not

3     like a lot of the other cases that are decided for stay for,

4     I'm sure all the reasons that the Court understands from the

5     briefing.

6          I would just say litigants --

7          THE COURT:  I would agree with you, but it's

8     unique both ways.  I mean, it's -- in all of these cases

9     that have been brought, there have been certainly a number

10    of courts -- and I have no idea what Judge Moore is going to

11    do with the motion to dismiss -- but certainly a number of

12    them that have said there is no personal jurisdiction.

13         In the constitutionality -- I know you say you've

14    got multiple ways to get personal jurisdiction.  But as they

15    point out, if that were true, or if you truly believed that,

16    then it sort of cuts against you on the motion to stay

17    because you could have brought this four years ago.

18         And my guess is you felt that the statutes that

19    were passed give you better personal jurisdiction questions,

20    but there is at least the one court that held that

21    unconstitutional.

22         So I do -- I hear your concerns with respect to

23    Mr. Al-Einein and Mr. Khoury, but I don't -- I can tell you

24    I'm not inclined to open this completely up to discovery.

25    But I'm willing to try to find a way that you can preserve a

11

1   70-year-old and a 76-year-old what you need from them.  So

2   that's what I'm trying to get to the bottom of here is, I

3   don't want -- I don't want relevant discovery to disappear

4   because it takes -- because we've got too many cases in this

5   district compared to the number of judges we have and it's

6   taking forever to get -- not forever -- but it takes a while

7   to get you rulings.

8           I don't want you to lose discovery, but give me

9   something more targeted, and you've given with

10  Mr. Al-Einein.

11          What do you need with Mr. Khoury in order to

12  assure that we don't lose discovery in this case?

13          MR. CALISHER:  Well, I would just -- I would

14  just -- I'm not sure exactly what we're going to need from

15  him.  The -- we couldn't have brought this case the way we

16  brought it four years ago.  There was the interim passage of

17  the clarification of the ATA and then -- and then the PSJVTA

18  and other developments.  The statutes were certainly in

19  flux.  It's a ten-year statute of limitations so we brought

20  it as soon as we could.  And we brought it just five weeks

21  after we got the documents, which demonstrated that the

22  defendants in this case knowingly subjected themselves to

23  jurisdiction by making payments to the families of

24  terrorists who killed Americans.

25          So we did it as quickly as we could and that's a

1    very powerful basis for -- for jurisdiction in this case.

2            So I don't want there to be this question about

3    delay when it doesn't -- when that's not actually the case.

4    It is unfortunate that sometimes these cases take a long

5    time and justice delayed is justice denied.

6            We've already had one of our plaintiff pass away

7    since the incident.  We know about kind of the traumatic

8    effect and federal courts are pretty clear that preserving

9    testimony even before suit is appropriate.

10           We have grave concerns about the preservation of

11    not just these two -- these two witnesses, but we've asked

12    defense counsel to work with us to identify documents and

13    people and custodians and we have not gotten any assurances

14    on that.  The defendants say, Trust us, the evidence is

15    being preserved.  We're not so sure.

16           So on the sliding scale of considering a stay, if

17    the Court wants some interim measures, all we're asking is

18    that, please, Judge, allow us to make sure that when this

19    case is ultimately decided, we're not in a worse position

20    than we would have been today.

21           So I don't know whether that is, you know,

22    dialoguing with defense counsel about real preservation, the

23    who, what, where, when.

24           They have a history of not taking sort of

25    responsibility for who knows what and when.  You have

13

1  30(b)(6) witnesses identifying people like Mr. Khoury as the

2  person most knowledgeable.

3       And we know what we know and we're trying to

4  preserve that with respect to Mr. Al-Einein and Mr. Khoury,

5  but we also don't know what we don't know.

6       And if this takes a long time for Judge Moore to

7  decide, as the Court is concerned about and we're concerned

8  about, you know, most of the cases, including -- including

9  Your Honor's where you do grant a stay, it's usually for a

10 short period of time.  It's 30 days or it's some -- it's

11 some reasonable amount of time.  But if you look at the --

12       THE COURT:  Well, I don't -- I don't agree.  I

13 mean, typically, when I grant a stay -- and I generally

14 don't grant a stay simply because a motion to dismiss is

15 pending.

16       MR. CALISHER:  Right.

17       THE COURT:  The exceptions to that are qualified

18 immunity is the obvious one.

19       MR. CALISHER:  Right.

20       THE COURT:  Subject matter or personal

21 jurisdiction is the other one.

22       MR. CALISHER:  Right.

23       THE COURT:  And it's because -- I mean, it's

24 because those jurisdictional questions need to be determined

25 first, in my view, and it's not for -- it's -- I grant it

14

1   until whenever the motion to dismiss, or the question of

2   either immunity or jurisdiction is determined.

3           MR. CALISHER:  Right.

4           THE COURT:  And I can't control that.

5           On a case that's not with me on consent, I just

6   can't control that.  It's up to -- it's up to Judge Moore.

7           MR. CALISHER:  I understand that, Your Honor.

8           Certainly the String Cheese factors apply, even

9   when it's a personal jurisdiction question, so that's why

10  you do the balancing test.

11          THE COURT:  They do, yes.

12          MR. CALISHER:  You know, it's not automatic just

13  because it's personal jurisdiction.

14          But, you know, I would say that the length of the

15  stay and the complexity actually militates in favor of

16  letting us do some more discovery, at least preservation.

17          And if you look at the String Cheese case, they

18  granted a 30-day extension, but then said that it would be

19  lifted, because after 30 days it starts to prejudice the

20  plaintiff and they even required, I think, disclosures ten

21  days after the stay was lifted.

22          And -- and on this sliding scale of, you know,

23  what's fair to both parties, I just think that normally, the

24  burden on the defendant is something that courts focus on.

25  But the unique nature of this case in really three ways:

15

1    One, the plaintiff's potential prejudice if evidence is

2    lost, plus just the passage of time.  But the public

3    interest here is on -- in the plaintiff's favor sort of on

4    steroids.

5             There are no cases where the public interest is as

6    high in this case, and we cited a lot of those cases in our

7    brief, Your Honor.  But the bottom line is, the public has

8    a -- has a grave interest -- and courts have said this -- in

9    holding people accountable who fund terrorism that kills

10   Americans.

11            And in a lot of the more pedestrian garden-variety

12   tort cases or contract cases involving companies, you

13   certainly don't have the same level of -- of public interest

14   as you do in this case where Congress has actually passed a

15   law targeting these specific defendants to hold them

16   accountable.

17            And so I would -- I would just say that as the

18   Court is weighing the balancing factors of the String Cheese

19   incident case, it should give appropriate consideration to

20   the very high public interest, which militates against a

21   stay, or, in the alternative, if the Court is so inclined

22   to, to at least allow more robust limited interim discovery

23   if the decision is going to take a long time, or as a

24   backup, please allow some governed preservation that we know

25   that when this case does move forward, we won't be in a

16

1    worse position.

2         That's just very important to plaintiffs.

3         THE COURT:  Let me ask defendant:  What control

4    does your client have over Mr. Khoury?

5         MR. BERGER:  The short answer is that I believe

6    that we could produce him if we were required to.

7         THE COURT:  Let me -- it wasn't a very good

8    question.

9         Do you acknowledge that if Mr. Khoury were --

10   between now and whenever the motion to dismiss is denied --

11   obviously, you're hoping it's not denied, but if it is -- if

12   he were to destroy evidence between now and then, do you

13   agree that that would be the responsibility of your client

14   and I could issue appropriate sanctions against your client

15   for that?

16        MR. BERGER:  Yes, Your Honor, and I -- I --

17        THE COURT:  Okay.

18        MR. BERGER:  But let me be clear about this,

19   because we were clear.

20        In a filing with the Court, in a status report --

21   and we don't say these things likely -- documents are being

22   preserved.  Respectfully, I don't want to get into an

23   argument here, but the kind of rhetoric that we're hearing

24   from Mr. Calisher is precisely why a deposition is going to

25   be a sideshow.  He talks about issues that are irrelevant to

17

1    the Court's determination of jurisdiction.  I understand he

2    wants to make a point to the Court; he wants to display his

3    clients as sympathetic.  But that is exactly the wrong

4    direction in which to be heading in targeted increment

5    discovery before we get a ruling on the motion to dismiss.

6            This case is unique because how many cases has

7    Your Honor come across, respectfully, where the predicate

8    jurisdiction primarily in a statute that three federal

9    courts have held unconstitutional?

10           He talks about public interest.  Public interest

11   has got to be, not in having federal courts exercise

12   jurisdiction by ordering discovery, when the statute under

13   which they're seeking jurisdiction is unconstitutional.

14           So put aside the rhetoric that public interest is

15   as it's always been stated under the String Cheese factors

16   in judicial economy, letting jurisdictional issues be

17   resolved first.  I understand Your Honor's concern.

18           They raised two issues.  I've offered a solution

19   to two issues.  Now, Mr. Calisher has some amorphous, well,

20   maybe some more robust inter limited discovery, I'm hearing

21   this for the first time.  It's a moving target.  Let us try

22   to deal with the two issues they raised.

23           THE COURT:  Here -- here is what I'm going to do.

24           So pending before me is Document Number 82.  This

25   is a motion to stay.  And all parties agree that the proper

18

1   analysis falls under the String Cheese incident factors and

2   I agree.  Those are as follows:

3         The first is plaintiff's interest.  And,

4   certainly, plaintiff does have an interest in proceeding

5   with this case.  Oftentimes plaintiffs, when raising this

6   factor, simply raise the generalized interest that they have

7   in proceeding with the case.  And while it does weigh

8   against a stay, I have often, when the countervailing

9   interests are significant, noted that they haven't raised

10  any particular prejudice beyond the delay.

11        Here, however, plaintiffs have raised a particular

12  prejudice, which is the two key witnesses -- potentially key

13  witnesses in this case, are in their 70s:  Mr. Al-Einein and

14  Mr. Khoury.  And I do think that that is unique and I will

15  address my approach to that in a moment in issuing my

16  ruling.

17        The second is the burden to the defendant.  And

18  here, I do agree with the defendant that the burden here is

19  more than simply the burden of participating in the

20  discovery process, which is typically what is argued by

21  defendants, is that personal jurisdiction itself is being

22  challenged.

23        And I find that there is a significant question on

24  that.  I don't know how Judge Moore is going to rule, but

25  there has at least been a number of courts in similar

19

1    situations that have found a lack of personal jurisdiction.

2    And, indeed, that is the underpinning of the constitutional

3    system here, that the courts can only exercise jurisdiction

4    over those who have submitted themselves to jurisdiction,

5    again, putting aside the constitutionality of this very

6    statute that's being raised here.

7           And so I do find that to be a unique burden and I

8    find that that supports a stay.

9           The third is the convenience to the Court.  And

10   here there is two competing interests.  The first is to not

11   have cases just simply linger on the Court's docket, and

12   oftentimes that particular factor can weigh against a stay.

13   And there is some aspect of that here; however, given the

14   nature of this case and the fact that much discovery is

15   abroad, I am certain there is going to be significant

16   questions about what discovery can be conducted.

17          I am virtually certain that this case, if allowed

18   to proceed, is going to involve numerous discovery disputes.

19   And those disputes, if, indeed, there is no personal

20   jurisdiction in this case, need not be undertaken by the

21   Court.  And so here I do find that the convenience to the

22   Court would support a stay.

23          Neither side has really identified any nonparty

24   interests and so I find that to be a neutral factor.

25          The public interest, like many of the other

1    factors that I've analyzed in this case, to some extent cuts

2    both ways.

3            I do agree with plaintiff that there is a public

4    interest in this case.  It's a unique case.  I agree with

5    plaintiff that Congress has passed a statute in an attempt

6    to allow these types of proceedings to move forward and that

7    public interest would weigh in favor of allowing the case to

8    proceed.

9            However, I do agree with the defendants that we

10   have a constitutional system of justice that if

11   constitutionally jurisdiction cannot be exercised over these

12   defendants, there is a public interest in supporting that

13   goal, too.

14           So ultimately I find that the public interest

15   factor -- that those two competing interests outweigh --

16   knock each other out, and that the public interest is

17   largely neutral.

18           So I'm left with two largely neutral factors:

19   Convenience to the Court weighing in favor of a stay, the

20   burden on the defendant weighing in favor on the stay, the

21   plaintiff's interest weighing against a stay; but in order

22   to mitigate the concern, the unique concern raised by

23   plaintiff of these two defendants potentially having

24   evidence that goes away -- or not these two defendants,

25   these two witnesses having evidence that potentially goes

1    away, I will allow targeted discovery.

2            And what I'm going to allow initially is the

3    plaintiff to propound three requests for admission, three

4    requests for production, and three interrogatory requests.

5            I'm hopeful that that limited discovery will, (a),

6    not be overly burdensome on the defendants.  I don't think

7    it will be.  And (b), will allow the preservation of the

8    evidence that has been identified here.

9            If after the response to those three, the

10   defendant does -- or the plaintiff does not get the

11   information that the plaintiff needs to preserve the

12   potential testimony that these two witnesses have, I will

13   allow the parties to go through my discovery dispute process

14   and will consider reopening some portion of discovery in

15   this case.  Potentially, the deposition of Mr. Khoury.  I

16   think the information from Mr. Al-Einein will likely be one

17   request for admission.

18           If I'm wrong and the defendant's response is, We

19   don't know, then I'll consider opening Mr. Al-Einein's

20   deposition.  But, obviously, there's -- there's some

21   incentive on the defendant to try to find the answer to that

22   deposition -- to that question because it avoids the

23   deposition of Mr. Al-Einein at this point.

24           If the information is not available through this

25   targeted discovery, again, I'll consider reopening the

22

1    question of these two gentlemen's depositions.  You also go

2    through my discovery dispute process for that.

3            And if during -- if that is what is sought, the

4    reopening of the depositions, I want the parties then to

5    address the apex doctrine in the briefing on -- on that

6    discovery dispute process.

7            Go ahead.

8            MR. BERGER:  A couple of questions, Your Honor, if

9    I may.

10           First of all, the subject matter of the three

11   items of discovery --

12           THE COURT:  Limited -- limited to the

13   preservation, the information needed for these two

14   individuals.

15           MR. BERGER:  Thank you, Your Honor.

16           And secondly -- and I guess I'll just put a marker

17   down and we can come back to this at a later time.

18           Your Honor's ruling, which we respect and we'll

19   comply with, creates merits evidence in a case where there

20   may be no jurisdiction.  What happens to this evidence if

21   the Court dismisses the case for lack of jurisdiction?  Is

22   the evidence then not usable?

23           THE COURT:  Let's get to that when we get to that.

24           MR. BERGER:  I simply want to put a marker down on

25   that now, because we do have -- I will tell you that when we

23

1    were dealing with the protective order in this case, we

2    spent needless hours fighting over whether the evidence

3    could be used only in the context of this case.

4           That's the rule under the protective order, but

5    that's the source of our concern.  These hardly -- this is

6    hardly the only lawsuit against these defendants on

7    allegations like these.

8           THE COURT:  Let's get to that when we get -- when

9    and if the ruling is in your client's favor.

10          The other thing I want to make clear -- and again,

11   I'm not casting dispersions either way here -- but

12   plaintiffs do raise a concern about loss of evidence,

13   destruction of evidence.

14          I'm not in any way suggesting that defendant is,

15   or that anybody under defendant's control would do anything,

16   but I do want to make clear in this as in any other case,

17   the representation here today is that the defendant has

18   control over Mr. Khoury, at least to the extent that they

19   would be responsible for any destruction of evidence.  And I

20   do want to make clear that if there is evidence of

21   destruction of evidence and a spoliation motion is filed

22   down the road -- again, that would only occur likely after a

23   motion to dismiss is denied -- and if that spoliation motion

24   is referred to me, given the concerns raised here today, I

25   take very seriously that.

1          Again, I'm not suggesting that that's happening.

2    I just want to put everybody on record that if that happens,

3    given the concerns raised by plaintiff here today, I would

4    take that very seriously.

5          MR. BERGER:  Your Honor, we take it seriously,

6    too.

7          THE COURT:  I have no question --

8          MR. BERGER:  And I would respond to that --

9          THE COURT:  I have no question that counsel does.

10   I just want to put that on the record.

11         MR. BERGER:  Thank you, Your Honor.

12         I am aware of no evidence in the record that would

13   suggest any spoliation.  We've explained with evidence who

14   destroyed records.  I don't want to get into the rhetoric of

15   the fact that it wasn't us that destroyed records.

16         We take it seriously.  We're officers of the

17   Court.  You know, we're here, regardless of whether our

18   clients are subject to jurisdiction, and we -- we have no

19   intention of doing anything but playing this by the numbers.

20         THE COURT:  I don't suggest in any way that you

21   do.  I just -- I'm trying to address the concerns raised by

22   plaintiff --

23         MR. BERGER:  Of course.

24         THE COURT:  -- in their opposition to the stay.

25         All right.  So just for my courtroom deputy's

1  benefit, the Number 82 is granted with the limited exception

2  of the three requests for production, three requests for

3  admission, three interrogatories limited to the preservation

4  of evidence with respect to Mr. Khoury and Mr. Al-Einein.

5          Anything further from either side?

6          MR. BERGER:  I assume those are just traditional

7  30-day response periods on the discovery?

8          THE COURT:  Yes --

9          MR. BERGER:  Thank you.

10         THE COURT:  -- once it's issued.  I don't want to

11  suggest what those interrogatories request for production,

12  requests for admission may be, because plaintiff's counsel

13  wasn't exactly sure what they needed, and so that's why I

14  left that open.  So it's whenever they issue it, then you

15  have 30 days to respond.

16         MR. BERGER:  Right, and I appreciate that, Your

17  Honor.  And Your Honor answered the question I had, which

18  was the subject matter guidance, but Your Honor has been

19  clear about that on the record.

20         THE COURT:  Okay.  Anything further?

21         MR. CALISHER:  Yes.  I would just ask whether the

22  Court would look favorably on, perhaps, a dialogue between

23  plaintiffs and defendants generally about preservation of

24  documents and custodians to really hash out where the

25  documents are.  We can identify some limited documents and

26

1    to have something other than just a blank, Hey, we're

2    preserving all evidence, you know, relevant to this case.

3    Something a little bit more that we can -- that we can count

4    on.

5            THE COURT:  You're certainly welcome to, just as

6    in any other case.

7            But I think defendants are aware -- I'm sure

8    defense counsel is aware of their obligations.  I'm sure

9    I've made the defendant aware of the obligation.

10           And just as in any other case, if evidence is

11   destroyed -- I mean, we're not just here as, you know,

12   litigation may be imminent; we're in litigation.  And so if

13   evidence is destroyed and you determine it's destroyed, like

14   I said, to the extent any spoliation motions are referred to

15   me, I won't be lenient on it, because in the same way I

16   wouldn't if IBM were a defendant and IBM went out and

17   destroyed evidence.

18           MR. CALISHER:  Sure, I understand that and thanks

19   for that.

20           My question is less about destruction and more

21   about, you know, preservation, but we can talk with defense

22   counsel about that.

23           THE COURT:  Well, I'm sure they're aware of their

24   obligations to preserve evidence, too; that, you know --

25           MR. CALISHER:  It's a non--

1       THE COURT:  -- that there not might be, you know,

2   a program that will write e-mails every 14 days.  To the

3   extent there were, that needs to end now.

4       You know, I'm quite sure counsel has had those

5   conversations.  And you know, if that hasn't been done and

6   there hasn't been a litigation hold and evidence as a result

7   disappears, whether intentionally or unintentionally, I'm

8   not going to look kindly on it.

9       MR. CALISHER:  Thank you, Your Honor.

10      These organizations are nonsovereign governmental,

11  you know, foreign entities that are designed to sort of

12  avoid accountability in our black box, so it's very hard for

13  us to know, you know, what they're actually saving and not

14  saving.  So that's -- that's unique about this case.

15      MR. BERGER:  This is the first to pass this motion

16  for reconsideration I've ever heard in my life, Your Honor.

17      THE COURT:  And to the extent it is a motion for

18  reconsideration, it is denied --

19      MR. BERGER:  Thank you, Your Honor.

20      THE COURT:  -- with the exception of the limited

21  allowance that I indicated.  Thank you.

22      I appreciate everybody's briefing on this issue.

23  I try to say that when the briefs are well done.  I don't

24  always remember, but I do appreciate it.  It makes my job, I

25  won't say easier, but it at least points me in the right

1    direction, so thank you.

2              (Whereupon, the within hearing concluded at

3    11:51 a.m.)

4

5

6                    TRANSCRIBER'S CERTIFICATE

7         I certify that the foregoing is a correct

8    transcript, to the best of my knowledge and belief (pursuant

9    to the quality of the recording) from the record of

10   proceedings in the above-entitled matter.

11

12   /s/Dyann Labo                    January 11, 2023

13   Signature of Transcriber              Date

14

15

16

17

18

19

20

21

22

23

24

25

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com