# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case No. 1:21-cv-03043-GPG-STV

SHELLEY LEVINE, *et al.*,

        Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION
and THE PALESTINIAN AUTHORITY (a/k/a "The
Palestinian Interim Self-Government Authority" and/or
"The Palestinian National Authority"),

        Defendants.

## DEFENDANTS' SUPPLEMENTAL BRIEF CONCERNING *MALLORY*

In *Mallory v. Norfolk Southern Railway Co.*, 143 S. Ct. 2028 (2023), the Supreme Court reaffirmed two points central to Defendants' arguments: (1) *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee* ("*Bauxites*"), 456 U.S. 694, 704-05 (1982), provides the due process framework for evaluating whether "some 'actions of the defendant … amount to a legal submission to the jurisdiction of the court'" (MTD 6, quoting *Bauxites*); and (2) under that framework, a court may infer "consent" or submission to personal jurisdiction from a defendant's choice to accept a government benefit "with jurisdictional strings attached." *Mallory* 143 S. Ct. at 2044. From the start, Defendants have pointed to business registration statutes as exemplifying implied consent to jurisdiction: when a defendant accepts the benefit of "doing business in the state," it "freely and voluntarily" accepts "the conditions the forum places on such activities." MTD 10-11 & n.6; Reply 6 & n.2.

*Mallory* thus applies the same, well-established standards for "consent" addressed in Defendants' prior briefs. The PSJVTA does not provide valid "consent" to jurisdiction under this framework because there is no benefit for Defendants to accept or reject in exchange for their purported consent. Further, none of Defendants' alleged activities supports a presumption that Defendants knowingly and voluntarily submitted to personal jurisdiction. This Court should also reject Plaintiffs' improper new arguments on the PSJVTA's factual predicates.

## I. *Mallory* Confirms the Due Process Standards for Consent to Personal Jurisdiction.

Despite the fractured opinions in *Mallory*,[1] all nine Justices agreed that *Bauxites* provides

---

[1] The Court's actual holding in *Mallory* is narrow. Five Justices agreed only on a statement of the case and that the Court's prior decision in *Pennsylvania Fire* —which upheld a similar business-registration statute—"controls this case" and remains good law. *See Mallory*, 143 S. Ct. at 2032-33 (section I), 2037-38 (section III-B). The Government's reliance on other sections is misplaced: *Mallory* does not present a plurality opinion that requires lower courts to read tea-leaves.

1

the standard for evaluating "consent" to personal jurisdiction under the Due Process Clause. *Mallory*, 143 S. Ct. at 2039, 2044 (plurality op.); *id.* at 2045-46 (Jackson, J., concurring); *id.* at 2048, 2051 (Alito, J., concurring in part); *id.* at 2057 (Barrett, J., dissenting) (each citing *Bauxites*).

As Defendants previously explained, *Bauxites* provides the key to distinguishing between valid "consent" to jurisdiction and "mere assertions of power" by the forum to unilaterally impose jurisdiction. *See* Reply 3-5 (quoting *Bauxites*). *Bauxites* explains that a "variety of legal arrangements" can create consent to personal jurisdiction. 456 U.S. at 703-04. Sometimes, as with a forum selection clause, consent is express. *See Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964) ("parties to a contract may agree in advance to submit to the jurisdiction of a given court"). Other times, courts may infer consent based on litigation conduct that a defendant intends to submit to jurisdiction. *See, e.g.*, *Roell v. Withrow*, 538 U.S. 580, 584 (2003) (parties who "voluntarily participated in the entire course of proceedings" through trial without objecting to jurisdiction "clearly implied their consent"); *Hooper v. Wyant*, 502 F. App'x 790, 792 (10th Cir. 2012) (implied consent through litigation conduct).

But "whether express or implied," a party's consent must be "knowing and voluntary." *Wellness Int'l Network v. Sharif*, 575 U.S. 665, 685 (2015). An "effective waiver of a constitutional right" generally requires proof of "the 'intentional relinquishment or abandonment of a known right or privilege.'" *College Savings Bank v. Fla. Prepaid Postsec. Educ. Expense Bd.*, 527 U.S. 666, 679, 682 (1999). Because implied or "constructive" consent "is not a doctrine commonly associated with the surrender of constitutional rights," federal courts "indulge every reasonable presumption against waiver." *Id.* at 681-82.

To give rise to valid consent under the Due Process Clause, *Bauxites* explains that the

2

defendant's conduct must be sufficient to support a "presumption of fact" that the defendant submitted to jurisdiction in the forum. 456 U.S. at 705-06 (compliance with the "*Hammond Packing* presumption" is necessary to "secure[]" the "preservation of due process"). Inferring consent "is reasonable," in other words, "only where the defendant's statements or conduct actually signal approval or acceptance" of the court's jurisdiction, and thereby serve as a reasonable "proxy" for consent. *Fuld v. PLO*, 578 F. Supp. 3d 577, 586-87 (S.D.N.Y. 2022).

*Mallory* does not make new law—quite the opposite. Its majority opinion (143 S. Ct. at 2032-33 (section I), 2037-38 (section III-B)), is limited to <u>affirming</u> the old business registration statute case, *Pennsylvania Fire*. Applying this framework, *Mallory* held that the defendant's specific conduct—registering to do business in Pennsylvania and "tak[ing] full advantage" of that opportunity by hiring nearly 5,000 employees, maintaining 2,400 miles of track, and spending over $1 billion—was sufficient to support the presumption it had submitted to jurisdiction. 143 S. Ct. at 2041-42. By complying with the statute, Norfolk Southern obtained "the benefits and burdens shared by domestic corporations"—including consent to suit in state court. *Id.* at 2037.

None of the *Mallory* opinions cited, let alone purported to reject, *College Savings*, whose framework for distinguishing "consent" to jurisdiction from legislatively-imposed jurisdiction is fully in line with *Bauxites*. *Contra* Gov't Br. 2. *Mallory* involved the defendant's acceptance of an in-forum benefit conditioned on consent to suit in Pennsylvania. The statute at issue in *College Savings*, by contrast, offered no benefit, but rather imposed jurisdiction to punish conduct that Congress wanted to curtail. The Court rejected such statutes, explaining that the imposition of jurisdiction by legislative fiat presents a "fundamentally different" case than implying consent from a defendant's acceptance of a benefit or "gratuity" from the forum conditioned on consent.

3

*College Savings*, 527 U.S. at 686-87; *see also Bauxites*, 456 U.S. at 705-06 (distinguishing between valid consent and the improper imposition of jurisdiction as "punishment").

The specific conduct relied upon by Plaintiffs in this case—Defendants' diplomatic activities in the U.S. and social welfare payments in Palestine—does not depend on any "benefit" or allowance by the U.S. government, nor does it otherwise support a presumption that Defendants voluntarily submitted to personal jurisdiction in the United States. To the contrary, courts have repeatedly held the same conduct is insufficient to support personal jurisdiction over Defendants under the Due Process Clause. *See* MTD 16-17; Reply 10-11. Because that conduct is insufficient to support jurisdiction, Defendants' decision to continue engaging in the same, <u>jurisdictionally-insufficient</u> conduct after enactment of the PSJVTA signifies nothing about jurisdiction, let alone consent to jurisdiction. Instead, the PSJVTA <u>imposes</u> jurisdiction as punishment for conduct Congress dislikes, just as in *College Savings*.

## II. *Mallory* Reaffirms that Acceptance of a Government Benefit May Create Consent—But the PSJVTA Fails to Provide Any Such Benefit.

In holding that Norfolk Southern consented to jurisdiction by registering to do business in the State, the Court relied on the same "exchange-of-benefits" theory discussed in Defendants' briefs. *See* MTD 10-11; Reply 6-7, 10. The statute at issue in *Mallory* required out-of-state corporations to consent to personal jurisdiction "<u>in exchange for</u> status as a registered foreign corporation and the <u>benefits</u> that entails." 143 S. Ct. at 2033 (emphasis added).

Consistent with Defendants' prior briefing, *Mallory* explained that "state laws requiring consent to suit <u>in exchange for</u> access to [the State's] markets" are one of the "variety of legal arrangements" under *Bauxites* that can give rise to implied consent to jurisdiction. *Id.* at 2041 n.8 (plurality opinion) (emphasis added); *see also id.* at 2041 (the statute "gave the company the right

4

to do business in-state <u>in return for</u> agreeing to answer any suit against it," and "the company had taken full advantage of its opportunity to do business in the Commonwealth" (emphasis added)). By accepting the invitation to register, Norfolk Southern agreed to "both the benefits and burdens shared by domestic corporations"—including consent to jurisdiction in the State. *Id.* at 2037.

The PSJVTA does not provide any government benefit for Defendants to accept or reject. Unlike its predecessor statute, the Anti-Terrorism Clarification Act, the PSJVTA does not ground "deemed consent" on acceptance of foreign assistance or a waiver of the ATA's prohibition on Defendants' operations in the United States. Reply 6-7. The PSJVTA thus falls outside the "exchange-of-benefits" line of cases reaffirmed by *Mallory*, which hinge on the defendant "accepting an in-[forum] benefit with jurisdictional strings attached." 143 S. Ct. at 2044.

The PSJVTA instead imposes "deemed consent" even though Defendants have not accepted any government benefit conditioned on consent, or engaged in other conduct that would support the presumption they have submitted to suit in the United States. Nothing in *Mallory* suggests the Court would accept the legislative imposition of personal jurisdiction over Defendants in the absence of such conduct. *See* 143 S. Ct. at 2038 ("To decide this case, we need not speculate whether any other statutory scheme and set of facts would suffice to establish consent to suit.").

**III.** *Mallory* **Does Not Change the Analysis of the PSJVTA's Factual Predicates.**

This Court should reject Plaintiffs' attempt to improperly use their *Mallory* brief to make new arguments on the PSJVTA's factual predicates—though those arguments fall under their own weight in any case. Defendants produced the entire jurisdictional discovery record from *Shatsky v. PLO*, No. 18-12355 (S.D.N.Y.), where <u>identical</u> PSJVTA jurisdictional issues were litigated. The *Shatsky* record included thousands of documents, and four days of 30(b)(6) testimony on the

Payments Predicate from the Palestinian Deputy Minister of Finance and the Director of Salary and Financials.  That record shows Defendants' program applies equally to every Palestinian imprisoned or killed in connection with the conflict with Israel, such that the payments in this case are qualitatively identical to those found insufficient to support jurisdiction in prior cases.  *See, e.g., Fuld*, 578 F. Supp. 3d 577; *Shatsky v. PLO*, 955 F.3d 1016, 1022-23, 1037 (D.C. Cir. 2020) ("martyr payments" did not confer personal jurisdiction).

Plaintiffs also ask for new discovery on the U.S. Activities Predicate, despite comprehensive paper discovery on that issue and five 30(b)(1) depositions in *Shatsky* from Defendants' UN Ambassador, Deputy UN Ambassador, UN Media Affairs Advisor, and others.  Plaintiffs guess things may have changed, but "pure speculation as to the existence of helpful facts" cannot support additional jurisdictional discovery.  *Dental Dynamics v. Jolly Dental Grp.*, 946 F.3d 1223, 1234 (10th Cir. 2020).  For more than 35 years, courts have held that the activities of Palestine's UN Mission are protected and limited under the UNHQA and do not depend on U.S. government authorization.  *U.S. v. PLO*, 695 F. Supp. 1456 (S.D.N.Y. 1988).

The U.S. government—fully empowered by the 1987 ATA to enjoin Defendants' activities if they exceed UNHQA bounds, *see* 22 U.S.C. §§ 5202-5203—has never (even here) claimed that Defendants' U.S. activities exceed those bounds.  Instead, the activities alleged in the FAC are all diplomatic or UN-related—Defendants do <u>nothing</u> in the U.S. that is illegal under the ATA.  *See* MTD 5-6, 11-12, 16-17; Reply 9-10, 11, 12-13, 19.  Defendants' "activities in furtherance of the Mission's work" are official UN actions as defined by the United Nations itself.  *See* MTD 11; Report, UN CEIRPP, UN Doc. A/75/35 (Oct. 10, 2020) (describing the official purpose and activities of the UN committee in which Palestine's UN Mission participates).

Dated: August 3, 2023										Respectfully submitted,

										*s/ Gassan A. Baloul*
										Gassan A. Baloul
										Mitchell R. Berger
										Squire Patton Boggs (US) LLP
										2550 M Street, N.W.
										Washington, D.C. 20037
										Telephone: (202) 457-6000
										Facsimile: (202) 457-6315
										gassan.baloul@squirepb.com
										mitchell.berger@squirepb.com

										*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of August, 2023 a true and correct copy of the foregoing **DEFENDANTS' SUPPLEMENTAL BRIEF CONCERNING *MALLORY*** was electronically served upon all counsel of record via *CM/ECF*.

*s/ Gassan A. Baloul*
Gassan A. Baloul
