# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-03043- GPG-STV

SHELLEY LEVINE, et al.,

       Plaintiffs,

   v.

THE PALESTINE LIBERATION
ORGANIZATION and
THE PALESTINIAN AUTHORITY,

       Defendants.

---

## DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT
## OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST
## AMENDED COMPLAINT UNDER RULE 12(b)(6)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.      PLAINTIFFS' CLAIM FOR AIDING AND ABETTING SHOULD BE
        DISMISSED. ............................................................................................................... 2

        A.      The FAC Fails To Show That Defendants Knowingly And Substantially
                Assisted The Attack. ....................................................................................... 2

        B.      The FAC Fails To Show That Defendants Were "Generally Aware" They
                Were Assuming A Role In Terrorist Activity. ................................................ 8

II.     PLAINTIFFS' CLAIM FOR CONSPIRACY LIABILITY SHOULD BE
        DISMISSED. ............................................................................................................... 10

III.    PLAINTIFFS' PRIMARY LIABILTY CLAIM UNDER 18 U.S.C. § 2333(a)
        SHOULD BE DISMISSED. ........................................................................................ 13

        A.      The FAC Fails To Plausibly Allege Proximate Cause ................................... 13

        B.      The FAC Fails To Plausibly Allege That Defendants Committed An "Act
                of International Terrorism." .......................................................................... 18

                i.      The FAC Does Not Plausibly Allege That Defendants Acted With
                        The Terroristic Intent Required By 18 U.S.C. § 2333(a) .......................... 19

                ii.     The FAC Fails To Plausibly Allege That Defendants Engaged In
                        "Violent Acts Or Acts Dangerous To Human Life." ............................... 20

        C.      The FAC Does Not Plausibly Allege Defendants Provided Material
                Support To An FTO, Or Intended That Such Support Would Be Used For
                Terrorism ....................................................................................................... 20

IV.     PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE RESPONDEAT SUPERIOR
        LIABILITY .................................................................................................................. 22

CONCLUSION ....................................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abolaji v. Parker 1833 LLC*,
    No. 23-CV-02945-GPG-TPO, 2025 WL 2379644 (D. Colo. Jan. 8, 2025) ...........................24

*Ahmad v. Christian Friends of Israeli Cmtys.*,
    2014 WL 1796322 (S.D.N.Y. May 5, 2014) ........................................................................21

*Alfaro-Huitron v. Cervantes Agribusiness*,
    982 F.3d 1242 (10th Cir. 2020) ....................................................................................10, 24

*American-Arab Anti-Discrimination Comm. v. Reno*,
    119 F.3d 1367 (9th Cir. 1997) ...........................................................................................10

*Arroyo v. Privett*,
    2024 WL 4129820 (10th Cir. Sept. 10, 2024) ....................................................................24

*Ashley v. Deutsche Bank Aktiengesellschaft*,
    144 F.4th 420 (2d Cir. 2025) ...................................................................................... *passim*

*Averbach v. Cairo Amman Bank*,
    2022 WL 2530797 (S.D.N.Y. Apr. 11, 2022) .....................................................................16

*Baker v. Baxa Corp.*,
    2011 WL 650002 (D. Colo. Feb. 11, 2011) .......................................................................23

*Bayview Loan Servicing, LLC v. Boland*,
    2009 WL 3234270 (D. Colo. Sept. 30, 2009) ....................................................................23

*Bernhardt v. Islamic Republic of Iran*,
    2020 WL 6743066 (D.D.C. Nov. 16, 2020) .......................................................................10

*Bernhardt v. Islamic Republic of Iran*,
    47 F.4th 856 (D.C. Cir. 2022) ...................................................................................5, 8, 10

*Blackmon-Logan v. Jenkins*,
    623 F. Supp. 3d 1161 (D. Colo. 2022) ...............................................................................23

*Bonacasa v. Standard Chartered PLC*,
    2023 WL 7110774 (S.D.N.Y. Oct. 27, 2023) ......................................................................6

*Brightspot Sols., LLC v. A+ Prods., Inc.*,
    2021 WL 2935942 (D. Colo. July 13, 2021) ......................................................................23

*Brightspot Sols., LLC v. A+ Prods., Inc.*,
 2021 WL 1251512 (D. Colo. Apr. 5, 2021) ....................................................23

*Brill v. Chevron Corp.*,
 804 F. App'x 630 (9th Cir. 2020) ...............................................................14

*Brinkley v. Farmers Elevator Mut. Ins. Co.*,
 485 F.2d 1283 (10th Cir. 1973) .................................................................24

*In re Chiquita Brands Int'l, Inc.*,
 284 F. Supp. 3d 1284 (S.D. Fla. 2018) .......................................................21

*Cnty. of Los Angeles, Calif. v. Mendez*,
 581 U.S. 420 (2017) .............................................................................13, 14

*Crosby v. Twitter, Inc.*,
 303 F. Supp. 3d 564 (E.D. Mich. 2018) ......................................................22

*Crosby v. Twitter, Inc.*,
 921 F.3d 617 (6th Cir. 2019) .....................................................................13

*Est. of Parsons v. Palestinian Auth.*,
 715 F. Supp. 2d 27 (D.D.C. 2010) ..............................................................25

*Fields v. Twitter, Inc.*,
 200 F. Supp. 3d 964 (N.D. Cal. 2016) .........................................................17

*Freeman v. HSBC Holdings PLC*,
 413 F. Supp. 3d 67 (E.D.N.Y. 2019) .................................................16, 17, 20

*Freeman v. HSBC Holdings PLC*,
 57 F.4th 66 (2d Cir. 2023) ............................................................... *passim*

*Frutos v. Am. Mod. Prop. & Cas. Ins. Co.*,
 2020 WL 5517111 (D. Colo. Mar. 20, 2020) ................................................24

*Furber v. Taylor*,
 685 F. App'x 674 (10th Cir. 2017) ..............................................................14

*Gill v. Arab Bank, PLC*,
 893 F. Supp. 2d 542 (E.D.N.Y. 2012) ..........................................................18

*Halberstam v. Welch*,
 705 F.2d 472 (D.C. Cir. 1983) .............................................................3, 4, 12

*Haney v. Castle Meadows, Inc.*,
 868 F. Supp. 1233 (D. Colo. 1994) .............................................................23

*Hill v. Bache Halsey Stuart Shields Inc.*,
790 F.2d 817 (10th Cir. 1986) ............................................................25

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010) ..............................................................................21

*Honickman v. BLOM Bank SAL*,
6 F.4th 487 (2d Cir. 2021) ...................................................................9

*Jarmon v. Pac. Rail Servs., LLC*,
2007 WL 678644 (D. Colo. Mar. 1, 2007) ..........................................25

*Kaplan v. Lebanese Canadian Bank, SAL*,
405 F. Supp. 3d 525 (S.D.N.Y. 2019).......................................11, 14, 20

*Kemper v. Deutsche Bank AG*,
911 F.3d 383 (7th Cir. 2018) ....................................................10, 11, 19

*Keren Kayemeth LeIsrael - Jewish Nat'l Fund v. Educ. for a Just Peace*,
66 F.4th 1007 (D.C. Cir. 2023) ........................................................7, 10

*King v. Habib Bank Ltd.*,
2022 WL 4537849 (S.D.N.Y. Sept. 28, 2022)...................................18, 21

*KKW Trucking, Inc. v. Castellano 03 Trucking, L.L.C.*,
2020 WL 13470239 (D. Colo. Oct. 20, 2020) .......................................23

*Lavi v. UNRWA USA Nat'l Comm., Inc.*,
2025 WL 2300038 (D. Del. Aug. 8, 2025) ..........................................8, 10

*Levine v. PLO*,
688 F. Supp. 3d 1001 (D. Colo. 2023) ................................................14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)...........................................................................14

*Licci v. Lebanese Canadian Bank*,
673 F.3d 50 (2d Cir. 2012)..................................................................18

*Linde v. Arab Bank, PLC*,
882 F.3d 314 (2d Cir. 2018)....................................................... *passim*

*Lokhova v. Halper*,
995 F.3d 134 (4th Cir. 2021) ..............................................................24

*Martin v. Perman*,
2019 WL 3976058 (D. Colo. Apr. 12, 2019).........................................22

*Mauldin v. Worldcom, Inc.*,
263 F.3d 1205 (10th Cir. 2001) ...................................................................25

*Miller v. Arab Bank, PLC*,
372 F. Supp. 3d 33 (E.D.N.Y. 2019) ...........................................................14

*Moses v. Diocese of Colorado*,
863 P.2d 310 (Colo. 1993)......................................................................23, 24

*Murphy v. Islamic Republic of Iran*,
740 F. Supp. 2d 51 (D.D.C. 2010) ..............................................................24

*Ofisi v. BNP Paribas, S.A.*,
77 F.4th 667 (D.C. Cir. 2023) ........................................................4, 13, 16

*Owens v. BNP Paribas S.A.*,
235 F. Supp. 3d 85 (D.D.C. 2017) ...............................................................17

*Owens v. BNP Paribas, S.A.*,
897 F.3d 266 (D.C. Cir. 2018) ..............................................................15, 16

*Parizer v. AJP Educ. Found., Inc.*,
2025 WL 2382933 (E.D. Va. Aug. 15, 2025) ................................... *passim*

*Paroline v. U.S.*,
572 U.S. 434 (2014)......................................................................................14

*Rothstein v. UBS AG*,
708 F.3d 82 (2d Cir. 2013)......................................................................14, 17

*Sandoval v. Martinez-Barnish*,
435 F. App'x 775 (10th Cir. 2011) ...............................................................25

*Sesay v. Att'y Gen. of U.S.*,
787 F.3d 215 (3d Cir. 2015)..........................................................................22

*Shatsky v. PLO*,
2017 WL 2666111 (D.D.C. June 20, 2017) ..........................................15, 16, 22

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
605 U.S. 280 (2025)...........................................................................1, 3, 7, 8

*Sokolow v. PLO*,
60 F. Supp. 3d 509 (S.D.N.Y. 2014)......................................................17, 20

*Sotloff v. Qatar Charity*,
674 F. Supp. 3d 1279 (S.D. Fla. 2023) .........................................................3

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 118 (2d Cir. 2013)..................................................................................14

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) .................................................................................. *passim*

*U.S. v. Awan*,
    459 F. Supp. 2d 167 (E.D.N.Y. 2006) ...................................................................21

*U.S. v. Durango & Silverton Narrow Gauge R.R. Co.*,
    2021 WL 6118727 (D. Colo. Oct. 28, 2021) ........................................................23

*U.S. v. Sattar*,
    314 F. Supp. 2d 279 (S.D.N.Y. 2004)....................................................................21

*U.S. v. Stewart*,
    590 F.3d 93 (2d Cir. 2009)....................................................................................21

*U.S. v. Taleb-Jedi*,
    566 F. Supp. 2d 157 (E.D.N.Y. 2008) ...................................................................21

*U.S. v. Tarantino*,
    846 F.2d 1384 (D.C. Cir. 1988) ............................................................................11

*Villoldo v. Cuba*,
    659 F. Supp. 3d 1158 (D. Colo. 2023)...................................................................14

*Weiss v. Nat'l Westminster Bank PLC*,
    768 F.3d 202 (2d Cir. 2014)..................................................................................19

*Wenz v. Memery Crystal*,
    55 F.3d 1503 (10th Cir. 1995) ................................................................................7

*Wildman v. Deutsche Bank Aktiengesellschaft*,
    2022 WL 17993076 (E.D.N.Y. Dec. 29, 2022) .......................................................9

*Zapata v. HSBC Holdings PLC*,
    414 F. Supp. 3d 342 (E.D.N.Y. 2019) .......................................................16, 17, 19

*Zapata v. HSBC Holdings PLC*,
    825 F. App'x 55 (2d Cir. 2020) .............................................................................13

*Zobay v. MTN Grp. Ltd.*,
    695 F. Supp. 3d 301 (E.D.N.Y. 2023) ..............................................................10, 12

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................1

**Statutes**

18 U.S.C. § 2331 ................................................................................................. 18, 19, 20

18 U.S.C. § 2333 ...................................................................................................... *passim*

18 U.S.C. § 2339A .............................................................................................. 13, 18, 20, 21

18 U.S.C. § 2339B ..................................................................................................... *passim*

18 U.S.C. § 2339C .............................................................................................. 13, 18, 20, 21

Anti-Terrorism Act .................................................................................................... *passim*

**Other Authorities**

Israel National News, "PFLP to boycott Abbas" (Mar. 15, 2018) ................................................ 25

Jerusalem Post, "Hamas, Islamic Jihad celebrate Jerusalem attack, call for
escalation of 'resistance'" (Sept. 8, 2025) ................................................................................ 8

The Palestinian Information Center, "PFLP boycotts PLO meeting" (Oct. 2, 2010) .................... 25

Reuters, "Hamas, Islamic Jihad claim responsibility for bomb blast in Tel Aviv"
(Aug. 19, 2024) ...................................................................................................................... 8

## PRELIMINARY STATEMENT

Defendants the Palestine Liberation Organization ("PLO") and Palestinian Authority ("PA") respectfully submit this supplemental brief pursuant to the Court's September 11, 2025 Order (ECF No. 141)[1] to address significant judicial authority issued since the parties last briefed Defendants' Rule 12(b)(6) arguments for dismissal—most prominently, *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025), *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420 (2d Cir. 2025), and *Freeman v. HSBC Holdings PLC*, 57 F.4th 66 (2d Cir. 2023). Collectively, those decisions confirm that Plaintiffs' allegations should be analyzed under JASTA, the secondary-liability provisions of the Anti-Terrorism Act ("ATA"), rather than under the ATA's primary-liability provisions, because Plaintiffs' premise is that Defendants facilitated, but did not commit, the November 18, 2014 attack in Har Nof, Israel (the "Attack"). The substantial new judicial authority further confirms that Plaintiffs' secondary-liability claims fail because they do not plausibly allege that Defendants consciously or culpably took actions to facilitate the Attack or that they had an agreement with Uday Abu Jamal and Ghassan Abu Jamal (the "Attackers") to commit terrorism. Equally, because ATA primary liability applies only in circumstances irrelevant here—*i.e.*, when the defendant's conduct is itself an act of international terrorism that proximately causes the Attack—Plaintiffs' ATA primary-liability claims fail.

To frame the Rule 12(b)(6) analysis as *Taamneh* and the other new authority require, this supplemental brief addresses Plaintiffs' secondary-liability claims first, and demonstrates[2]:

---

[1] This brief supplements Defendants' briefing filed in support of their motion to dismiss the First Amended Complaint ("FAC"). *See* ECF Nos. 58, 76, 93, 101, 104, and 110. Defendants do not abandon any arguments in their earlier briefing and expressly incorporate all arguments therein by reference.

[2] Pursuant to the Court's September 11, 2025 Order (*see* ECF Nos. 140 & 141), this brief only addresses FAC Causes of Action ##1-4. In the event those claims are dismissed, the parties will file supplemental briefs addressing the dismissal of Plaintiffs' non-ATA claims (FAC Causes of Action ##5-6) for lack of supplemental jurisdiction. *Id.*

- Plaintiffs' claim for aiding-and-abetting under JASTA (Cause of Action #3) fails under *Taamneh* and its progeny because Defendants' alleged financial support of the Popular Front for the Liberation of Palestine ("PFLP") (a political faction of the PLO umbrella organization) is neither "conscious, voluntary, and culpable participation in another's wrongdoing"—*i.e.*, the Attack—nor an "'affirmative act' 'with the intent of facilitating the offense's commission.'" *Taamneh*, 598 U.S. at 490, 493. Plaintiffs therefore cannot show (1) "knowing and substantial assistance" to the Attack or (2) Defendants' "general awareness" of their role in "illegal or tortious activity" at the time they allegedly provided assistance. *Id.* at 486.

- Plaintiffs' JASTA conspiracy claim (Cause of Action #4) fails because Plaintiffs do not plausibly plead that by providing the PFLP the same support provided to all PLO factions—including funding, radio frequency, and internet service—Defendants had an agreement with the Attackers to carry out the Attack or any other act of international terrorism. Likewise, the provision of such limited support neither shows that Defendants and the Attackers were "pursuing the same object" nor that they had a "common intent." *Freeman*, 57 F.4th at 79-80.

- Plaintiffs' ATA primary-liability claim (Cause of Action #1) fails because Plaintiffs do not plausibly allege that Defendants proximately caused the Attack, or that Defendants committed an "act of terrorism" by providing limited support to the PFLP, a PLO faction.

- Plaintiffs' respondeat superior claim (Cause of Action #2) fails because respondeat superior claims are not stand-alone claims in this Circuit, and because Plaintiffs have neither established the elements of their other substantive claims nor plausibly alleged that the Attackers were employed by, or agents of, Defendants.

## ARGUMENT

## I.    PLAINTIFFS' CLAIM FOR AIDING AND ABETTING SHOULD BE DISMISSED.

Plaintiffs' JASTA aiding-and-abetting claim must be dismissed because the FAC fails to plausibly allege the essential elements for such claims—(1) that Defendants "knowingly and substantially assist[ed] the principal violation," and (2) that Defendants were "generally aware" of their role "as part of an overall illegal or tortious activity" at the time of the alleged assistance. *Taamneh*, 598 U.S. at 485-87; *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018).

### A.    The FAC Fails To Show That Defendants Knowingly And Substantially Assisted The Attack.

Plaintiffs do not plausibly allege that Defendants provided <u>any</u> funds, services, or other assistance—let alone "knowing" and "substantial assistance"—to the "person[s] who committed" the Attack, as required by 18 U.S.C. § 2333(d). "JASTA expressly provides that liability only

attaches for aiding and abetting a particular terrorist attack." *Ashley*, 144 F.4th at 448.[3]  To state

a claim, the FAC must plausibly allege that Defendants took "some 'affirmative act' 'with the

<u>intent of facilitating</u> the [Attack's] commission'" such that Defendants "<u>consciously, voluntarily,</u>

<u>and culpably participate[d] in</u>" the Attack "so as to help 'make it succeed.'"  *Taamneh*, 598 U.S.

at 489-90, 493-94, 497, 505-06 (emphasis added); *id.* at 494 ("the rule imposes liability for a wrong

on those who 'hel[p] another to complete <u>its commission</u>'"); *see also Smith & Wesson*, 605 U.S.

at 291-92 (same).  This is an exacting standard, and purposefully so, as "courts have long

recognized the need to cabin aiding-and-abetting liability to cases of truly culpable conduct."

*Taamneh*, 598 U.S. at 489; *see also id.* at 491 (defendant's assistance must "have been calculated

and intended to produce" the tort (quotations omitted)).  Here, nothing in the FAC (other than post-

Attack statements, which are insufficient as a matter of law, *infra* 17, 20) plausibly alleges that

Defendants "culpably associated" themselves with the Attack or in any way "'participate[d] in it

as something that [they] wishe[d] to bring about,' or sought 'by [their] action to make it succeed.'"

*Id.* at 497-98, 504; *see also Ashley*, 144 F.4th at 440 (same).

"In enacting JASTA, Congress provided additional context by pointing to *Halberstam v.*

*Welch*, 705 F.2d 472 (CADC 1983), as 'provid[ing] the proper legal framework' for 'civil aiding

and abetting and conspiracy liability.'"  *Taamneh*, 598 U.S. at 485.  In *Halberstam*, the D.C. Circuit

"identified six factors relevant to determining 'how much encouragement or assistance is substantial

enough'" to satisfy the requirement that the defendant "must knowingly and substantially assist the

principal violation."[4]  *Linde*, 882 F.3d at 329 (quoting *Halberstam*, 705 F.2d at 487).  The Supreme

---

[3] Plaintiffs have previously argued that cases that "dealt with ATA suits against banks" or other commercial actors are not relevant here.  ECF No. 69 at 41, 50.  However, courts broadly apply *Taamneh* and other commercial-actor cases to all secondary-liability theories where the attacker is not the defendant.  *See, e.g., Sotloff v. Qatar Charity*, 674 F. Supp. 3d 1279, 1320-22 (S.D. Fla. 2023) (applying *Taamneh* to charity run by Qatar's royal family), *vacated on other grounds*, 2023 WL 6471413 (S.D. Fla. Sept. 29, 2023).

[4] *See* ECF No. 58 at 41 (discussing the six *Halberstam* factors).

Court has since counseled that the *Halberstam* factors are not "inflexible codes; rather, they should be understood in light of the common law and applied as a framework designed to hold defendants liable when they consciously and culpably 'participate[d] in' a tortious act in such a way as to help 'make it succeed.'" *Taamneh*, 598 U.S. at 497.

In *Taamneh*, the Supreme Court applied *Halberstam* to a JASTA aiding-and-abetting claim, and in so doing announced a significantly more stringent standard for pleading the knowing and substantial assistance element of such claims. *Taamneh* expressly distinguished JASTA's two state-of-mind requirements—the "knowing" element of substantial assistance, and the separate "general awareness" element—and held that the "knowing" provision of substantial assistance is <u>more demanding</u> than the "general awareness" element. *Id.* at 503-04; *see also Ashley*, 144 F.4th at 438 n.12 ("*Twitter* warns that it is inappropriate to collapse the general awareness element into the <u>knowing</u> and substantial assistance element."). The Court explained that the "'knowing' part of that inquiry is … designed to capture the defendants' state of mind <u>with respect to their actions and the tortious conduct</u> … not the same general awareness that defines *Halberstam*'s second element." *Taamneh*, 598 U.S. at 503-04 (emphasis added).

To satisfy the "knowing" requirement, the defendant must have had the "intent of facilitating" the attack committed by the primary wrongdoer. *Id.* at 490. It is not enough for a plaintiff to have "demonstrate[d] 'knowledge, acquiescence, carelessness, indifference, [or] lack of concern.'" *Ashley*, 144 F.4th at 443 (quoting *Direct Sales Co. v. U.S.*, 319 U.S. 703, 713 (1943)); *see also Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667, 675 (D.C. Cir. 2023) ("[a]iding and abetting 'requires more than the provision of material support to a terrorist organization'" and "as the Supreme Court recently reiterated, 'the concept of 'helping' in the commission of a crime—or a tort—has never been boundless'" (quoting *Taamneh*, 598 U.S. at 488)). Rather, a plaintiff must

show "interested cooperation, stimulation, instigation." *Ashley*, 144 F.4th at 443. That decidedly is a more demanding state of mind than mere general awareness that the primary wrongdoer was involved in some overall illegal activity. For that reason, courts hold: "A defendant who lacks general awareness cannot be said to have knowingly assisted a foreign terrorist organization." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 870 (D.C. Cir. 2022). In distinguishing JASTA's two state-of-mind elements, the Supreme Court explicitly rejected the test applied by the Ninth Circuit which equated those two states of mind by "analyz[ing] the 'knowing' subelement as a carbon copy of the antecedent element of whether the defendants were 'generally aware' of their role in ISIS' overall scheme." *Taamneh*, 598 U.S. at 503.

Moreover, Section 2333(d) requires a plaintiff to plausibly allege a <u>substantial link</u> or a "discernable nexus between [the defendant's assistance] and the attacks committed against Plaintiffs." *Ashley*, 144 F.4th at 444. *Taamneh* rejected the Ninth Circuit's "fram[ing of] the issue of substantial assistance as turning on defendants' assistance to ISIS' activities in general" and concluded that the Ninth Circuit erred in focusing "on the value of defendants' platforms <u>to ISIS</u>, rather than whether defendants culpably associated themselves with ISIS' actions." *Taamneh*, 598 U.S. at 503-04; *see also id.* at 501 (rejecting "the expansive scope of plaintiffs' claims" that "[g]iven the lack of any concrete nexus between defendants' services and the [attack] … would necessarily hold defendants liable as having aided and abetted each and every ISIS terrorist act committed anywhere in the world"). *Taamneh* therefore confirms that the limited governmental support to the PFLP alleged in the FAC cannot show knowing and substantial assistance to the Attack at issue here—particularly where Defendants' relationship with the PFLP was no different (and, if anything, more fraught) than their relationship with other political factions. *See id.* at 504.

The Supreme Court also held that "the more attenuated the nexus" between the defendants'

alleged conduct and the act of international terrorism at issue, "the more courts should demand that plaintiffs show culpable participation through intentional aid that substantially furthered the tort." *Id.* at 506; *see also id.* at 503 ("plaintiffs' failure to allege any definable nexus between the defendants' assistance and that attack . . .—at minimum—drastically increases their burden to show that defendants somehow consciously and culpably assisted the attack"); *Ashley*, 144 F.4th at 444 ("it is not enough to say that the defendant assisted the terrorist organization's 'activities in general'"). Thus, the "knowing" and "substantial assistance" prongs must be considered in tandem: "less substantial assistance require[s] more scienter" to "infer conscious and culpable assistance" and "vice versa"—"if the assistance were direct and extraordinary, then a court might more readily infer conscious participation in the underlying tort." *Taamneh*, 598 U.S. at 492; *see also Ashley*, 144 F.4th at 440 (complaint failed to plead aiding-and-abetting where "Plaintiffs [did] not allege that [defendant] directly aided the [terrorists] in carrying out the bombings. Nor d[id] Plaintiffs allege that [defendant] took steps to help the downstream actors[.]").

Here, as in *Taamneh*, Plaintiffs fail to plausibly allege the requisite "definable nexus" between Defendants' generalized support for the PFLP and the Attack. *Taamneh* instructs that the "focus must remain on assistance to the tort for which plaintiffs seek to impose liability"—*i.e.*, the act of international terrorism at issue in the case. *Taamneh*, 598 U.S. at 505-06; *see also Bonacasa v. Standard Chartered PLC*, 2023 WL 7110774, at *9 (S.D.N.Y. Oct. 27, 2023) ("*Twitter* directs courts to focus on the <u>defendant's actions</u> vis-à-vis the specific attack that injured the plaintiffs"); *id.* at *7 ("[I]t is not enough to generally assist the terrorist organization without consideration of the <u>specific attack</u> that injured plaintiffs. Thus, the *Twitter* plaintiffs could have stated a claim if they plausibly alleged that defendants aided and abetted ISIS in carrying out the <u>Reina attack</u>." (emphasis added)); *Ashley*, 144 F.4th at 448 (same).

Critically, it "is not enough … that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Taamneh*, 598 U.S. at 495; *see also Smith & Wesson*, 605 U.S. at 294 (a complaint must "pinpoint, as most aiding-and-abetting claims do, a[] specific criminal transaction[] that the defendants (allegedly) assisted").   Plaintiffs have not identified any pre-Attack or contemporaneous assistance provided by Defendants to the Attackers.  And, the alleged assistance to the PFLP—funding, radio frequency, and internet service[5]—was neither "substantial" nor tied by the FAC <u>in any way</u> to the Attack.  *See Parizer v. AJP Educ. Found., Inc.*, 2025 WL 2382933, at *18 (E.D. Va. Aug. 15, 2025) ("Plaintiffs do not plead specific facts adequate to '<u>draw a sufficient connection</u> between the cause of action Plaintiffs seek—aiding and abetting Hamas's October 7, 2023 attack overseas—and Defendants' domestic conduct.'" (cleaned up)).

The FAC, moreover, even fails to plausibly allege that the Attackers were PFLP operatives. The FAC offers only "mere conclusory allegations" that the Attackers were "operatives" of the PFLP and that the PFLP was responsible for the Attack (FAC ¶¶ 165, 172, 173), which should not be credited even on a motion to dismiss.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *Smith & Wesson*, 605 U.S. at 295 ("[W]e cannot take the allegation here at face value, because [the plaintiff] has not said enough to make it plausible.").  In this case, Plaintiffs rely on unreliable after-the-fact claims of responsibility by PFLP leaders (FAC ¶¶ 172, 173) despite there being no allegations in the FAC that the PFLP had advance knowledge of the Attack.  *See Parizer*, 2025 WL 2382933, at *19; *see also* ECF No. 76 at 33-34 & n.19.  "[U]ncertainty about who perpetrated the incendiary" Attack precludes the aiding-and-abetting claim.  *Keren Kayemeth*

---

[5] *Taamneh* explains that communications providers do not incur aiding-and-abetting liability for illegal activity. *Taamneh*, 598 U.S. at 498-99.  Any provision of communications services by Defendants (*i.e.*, radio frequency and internet service) should be treated similarly.

*LeIsrael - Jewish Nat'l Fund v. Educ. for a Just Peace*, 66 F.4th 1007, 1016-17 (D.C. Cir. 2023).[6]

Finally, Plaintiffs' theory is not logically limited to the Attack. Therefore, "Plaintiffs' claims would necessarily hold defendants liable as having aided and abetted each and every terrorist act committed by the terrorist organization anywhere in the world. Under those circumstances, Plaintiffs thus must allege that Defendant so systematically and pervasively assisted the terrorist organization that Defendant could be said to aid and abet every single attack by that organization." *Lavi v. UNRWA USA Nat'l Comm., Inc.*, 2025 WL 2300038, at *7 (D. Del. Aug. 8, 2025) (cleaned up and quoting *Taamneh*, 598 U.S. at 501). The Supreme Court has held that this is an exceptionally "high bar," *Smith & Wesson,* 605 U.S. at 294, and, "[v]iewed in that light, the allegations here certainly fall short." *Lavi*, 2025 WL 2300038, at *7. The FAC does not allege that Defendants have so "systematically and pervasively" assisted the PFLP such that they could be said to aid and abet every single attack by the PFLP, and for good reason. Any limited support was in aid of the legal functions carried out by the PFLP as a political faction of the PLO, and was neither "knowing" nor "substantial," let alone systematic and pervasive.

### B. The FAC Fails To Show That Defendants Were "Generally Aware" They Were Assuming A Role In Terrorist Activity.

Plaintiffs equally fail to satisfy the separate "general awareness" element that JASTA requires, although the Court need not reach this element, given Plaintiffs' failure to plead the more demanding "knowing" requirement. *See Bernhardt*, 47 F.4th at 870. The FAC does not plausibly allege that Defendants were "aware" that they were assuming a "role" in any violent or life-endangering activity by allegedly providing generalized support to the PFLP, independently

---

[6] That is particularly true where following attacks, numerous factions (including some who are rivals), often claim responsibility for the same attack. *See, e.g.*, Jerusalem Post, "Hamas, Islamic Jihad celebrate Jerusalem attack, call for escalation of 'resistance,'" https://tinyurl.com/yj2zhyd3 (Sept. 8, 2025) ("Hamas, Palestinian Islamic Jihad, and other Palestinian terror organizations celebrated the Jerusalem terror attack"); Reuters, "Hamas, Islamic Jihad claim responsibility for bomb blast in Tel Aviv," https://tinyurl.com/4v8ap78c (Aug. 19, 2024).

requiring dismissal of the aiding-and-abetting claim.  *See Taamneh*, 598 U.S. at 486-87.

Secondary liability under JASTA requires the defendant to be "generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance."  *Id.* at 486. In other words, secondary liability "requires the secondary actor"—here, the PA and PLO—"to be 'aware' that, by assisting the principal, [they were themselves] assuming a 'role' in terrorist activities" and that the intent of those activities "was to intimidate or coerce civilians or to affect a government."  *Linde*, 882 F.3d at 329-30.  Further, the "principal" must be "the person who committed [the] act of international terrorism."  *Id.* at 320.

For a showing of general awareness, "[i]t is not enough for a defendant to be aware 'of the organization's connection to terrorism[,]'" "[n]or is it even sufficient for a defendant to knowingly violate laws which were designed to prevent terrorist activity."  *Wildman v. Deutsche Bank Aktiengesellschaft*, 2022 WL 17993076, at *7 (E.D.N.Y. Dec. 29, 2022), *aff'd sub nom. Ashley*, 144 F.4th 420; *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 498-99 (2d Cir. 2021) (rejecting argument that, because "[m]oney is fungible," JASTA aiding-and-abetting liability can be premised solely on knowing and material support to an FTO); *Ashley*, 144 F.4th at 444 (rejecting "theory [of liability] based on money's fungibility").

Plaintiffs have failed to allege that Defendants' provision of limited and generalized support to the PFLP as a political faction of the PLO would have made Defendants "aware" that they were playing a "role" in the Attackers' terrorist activities, let alone that the Attack was foreseeable.  *See Honickman*, 6 F.4th at 496 (requiring a showing that Defendants "must be generally aware of [their] role in an overall illegal activity from which the act that caused the plaintiff's injury was <u>foreseeable</u>").  Indeed, the FAC fails to draw any link whatsoever between the Attack (or Attackers) and the support allegedly provided by Defendants.  To the contrary,

Defendants as governmental entities "invariably maintain legitimate government activities," *Bernhardt*, 47 F.4th at 868, including political interaction with the PFLP, which courts have concluded is "engaged in a wide range of lawful activities, including the provision of 'education, day care, health care, and social security, as well as cultural activities, publications, and political organizing." *American-Arab Anti-Discrimination Comm. v. Reno*, 119 F.3d 1367, 1370 (9th Cir. 1997), *vacated on other grounds*, 525 U.S. 471 (1999); *see also id.* ("[t]he government … does not dispute the district court's finding that the [PFLP] conducts lawful activities"); *Keren Kayemeth LeIsrael*, 66 F.4th at 1017 (dismissing aiding-and-abetting claim where no general awareness that defendant's "donations to the Boycott National Committee were used unlawfully, given that the Boycott National Committee also engages in lawful civil resistance").

## II.  PLAINTIFFS' CLAIM FOR CONSPIRACY LIABILITY SHOULD BE DISMISSED.

The FAC fails at the very first step by not plausibly alleging the most basic requirement of any conspiracy—an agreement.  "The crux of any conspiracy is an agreement between the co-conspirators." *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 395 (7th Cir. 2018) (citing *Ocasio v. U.S.*, 578 U.S. 282, 286-88 (2016)); *see also Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1262 (10th Cir. 2020) (same).

To plead a conspiracy, Plaintiffs must "adequately allege[] an agreement in furtherance of a common scheme … to commit an act of international terrorism." *Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 354-55 (E.D.N.Y. 2023); *see also Bernhardt v. Islamic Republic of Iran*, 2020 WL 6743066, at *8 (D.D.C. Nov. 16, 2020) (dismissing conspiracy claim where plaintiffs failed to "plausibly allege an agreement to commit an act of international terrorism"), *aff'd*, 47 F.4th 856 (D.C. Cir. 2022); *Lavi*, 2025 WL 2300038, at *8 (same).

In *Kemper*, the Seventh Circuit affirmed dismissal of a complaint alleging that the

defendant had conspired to provide Iran with banking services in violation of U.S. sanctions, holding that the defendant "may have engaged in business dealings that <u>incidentally assisted</u> a separate terrorism-related conspiracy involving Iran," but that the facts did not plausibly suggest the defendant "<u>ever agreed to join</u> that conspiracy." *Kemper*, 911 F.3d at 395 (emphasis added). Indeed, a "person who is indifferent to the goals of an ongoing conspiracy does not become a party to this conspiracy merely because that person knows that his or her actions might somehow be furthering that conspiracy." *Id.* And, as with any conspiracy claim, the need for an agreement between a defendant and a perpetrator becomes more important the more "wide-ranging" the alleged conspiracy is. *Id.* at 395-96. Here, the FAC pleads a "wide-ranging conspiracy" that started in the 1990s and continued until the Attack to "hold defendants liable who were not the proximate cause of the plaintiff's injury." *Id.* at 395; FAC ¶ 217. But, regardless of how sprawling Plaintiffs' theory may be, they fail to plausibly plead an illicit agreement (overt or otherwise) between Defendants and the terrorists that perpetrated the Attack.

The FAC, moreover, also fails to plausibly allege that Defendants and the terrorists were "pursuing the same object" or had a "common intent." *Freeman*, 57 F.4th at 79-80. Indeed, it is a basic principle of conspiracy law that "one cannot join a conspiracy through apathy." *Kemper*, 911 F.3d at 395. Therefore, "although 'a conspirator need not agree to commit or facilitate each and every part of the offense,' she must 'reach an agreement with the <u>specific intent</u> that' the conspiratorial goal be completed." *Id.* (quoting *Ocasio*, 578 U.S. at 288) (cleaned up); *see also U.S. v. Tarantino*, 846 F.2d 1384, 1392 (D.C. Cir. 1988) (conspiracy requires evidence that "each conspirator had the specific intent to further the common unlawful objective"); *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 534 (S.D.N.Y. 2019) ("Plaintiffs must allege that Defendant and Hizbollah entered into an agreement to commit an act of international terrorism"),

*vacated in part*, 999 F.3d 842 (2d Cir. 2021); *Zobay*, 695 F. Supp. 3d at 354-55 (dismissing conspiracy claim where defendants did not "share[] in [the] goal" of "'expelling the United States from the Middle East' through the commission of terrorist acts").

In *Freeman*, the Second Circuit affirmed the dismissal of JASTA conspiracy claims because the plaintiffs failed to allege a common intent among the defendants and the terrorist perpetrators. The court concluded that "[n]owhere in the Complaint … do Plaintiffs plead that the [defendants] intended to kill or injure U.S. service members in Iraq," and "[i]n the absence of any allegation that the [defendants] and the terrorist groups engaged in a common pursuit, we cannot identify any agreement that could form the basis of a JASTA conspiracy between the [defendants] and the terrorist groups, whether they conspired directly or indirectly with one another." *Freeman*, 57 F.4th at 80 (cleaned up). Plaintiffs' allegations that Defendants provided the PFLP, like all Palestinian political factions, with support—specifically, funding, a "geographic base of operations," advocating for the release of prisoners, and "communications and broadcast facilities"—is insufficient to show "common intent" (let alone, a conspiratorial agreement) between Defendants and the PFLP to engage in terrorism. Thus, the FAC's conspiracy claim suffers from the same infirmities as *Kemper* and *Freeman*—it is "devoid of any fact suggesting that" Defendants "conspired – either <u>directly or indirectly</u> – with the terrorist perpetrators" to commit any act of "international terrorism," let alone the Attack at issue in this case. *Id.* at 79.

Finally, even if Plaintiffs alleged a shared conspiratorial goal between Defendants and the PFLP, they fail to plausibly allege that the goal was to commit acts of international terrorism—the only conspiracy that is actionable under JASTA. *See id.* at 75-76. As the D.C. Circuit previously held, absent allegations of a common scheme between a defendant and the terrorist organization that committed the attacks, a plaintiff cannot allege a conspiracy claim under the *Halberstam*

framework—the conspiracy framework that applies in a JASTA conspiracy case.  *See Ofisi*, 77 F.4th at 671.  Plaintiffs' failure to plausibly allege this element requires dismissal.

## III.     **PLAINTIFFS' PRIMARY LIABILTY CLAIM UNDER 18 U.S.C. § 2333(a) SHOULD BE DISMISSED.**

The FAC fails to state a material-support claim under 18 U.S.C. §§ 2339A, 2339B or 2339C because it does not plausibly allege that:  (1) Defendants proximately caused the Attack or Plaintiffs' injuries; (2) Defendants <u>themselves</u> committed "an act of international terrorism"; or (3) Defendants provided material support or resources either with the heightened state of mind required for a Section 2339A or 2339C claim—*i.e.*, that Defendants <u>knew or intended</u> that any resources provided would be used to prepare for or to carry out the Attack—or that Defendants provided <u>material</u> support to an FTO, as required for a Section 2339B claim.  Each of these deficiencies independently requires dismissal of the material-support claim, because Plaintiffs have not "plausibly allege[d] that in <u>their</u> case, defendants' conduct satisfies each element required by the statute."  *Zapata v. HSBC Holdings PLC*, 825 F. App'x 55, 56 (2d Cir. 2020).

### A.     **The FAC Fails To Plausibly Allege Proximate Cause.**

Plaintiffs' failure to plausibly allege that Defendants' conduct proximately caused Plaintiffs' injuries requires dismissal of their primary liability claims.  *Crosby v. Twitter, Inc.*, 921 F.3d 617, 623 (6th Cir. 2019) (the "language of the statute" makes clear and courts have "conclu[ded]: proximate cause is required under the ATA").  Proximate cause for ATA claims requires "some direct relation between the injury asserted and the injurious conduct alleged."  *Cnty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 431 (2017) (quoting *Paroline v. U.S.*, 572 U.S. 434, 444-45 (2014)).  Because the FAC does not plausibly allege that Plaintiffs' injuries directly resulted from Defendants' alleged actions, it does not satisfy the ATA proximate-cause requirement that those injuries occurred "by reason of" an act of international terrorism committed

by Defendants. *See id.*[7]

Proximate cause requires that "the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). In other words, a plaintiff must plausibly show that the defendant's conduct "was a 'substantial factor in the sequence of responsible causation and [plaintiff's] injury was reasonably foreseeable or anticipated as a natural consequence.'" *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 46 (E.D.N.Y. 2019); *Villoldo v. Cuba*, 659 F. Supp. 3d 1158, 1182 (D. Colo. 2023) (same). "[P]roximate cause thus serves … to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Paroline*, 572 U.S. at 445; *Furber v. Taylor*, 685 F. App'x 674, 678 (10th Cir. 2017) (same).

Courts have found the "causal link" between a defendant's actions and a plaintiff's injuries to be "too attenuated" to show proximate cause where, for example, a bank provided banking services, but where there were no allegations that the bank recruited terrorists, provided funds for the attacks at issue, or that the terrorist attacks were only possible due to the bank's actions. *See, e.g., Kaplan*, 405 F. Supp. 3d at 533. In this case, the FAC does not plausibly allege that Defendants provided funds directly to terrorists to carry out the Attack, that the alleged support to the PFLP was ultimately sent to the Attackers or used to commit the Attack, or that Defendants' alleged support was a "substantial factor" in the Attack or that the Attack would not have been possible without the support of Defendants. *See Brill v. Chevron Corp.*, 804 F. App'x 630, 632 (9th Cir. 2020) ("The mere fact that oil purchases allegedly included kickbacks that violated United

---

[7] *See also Rothstein v. UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013) ("by reason of" establishes proximate cause requirement); *Taamneh*, 598 U.S. at 495 ("The ATA opens the courthouse doors only if the plaintiff is 'injured ... by reason of an act of international terrorism.'"); *Levine v. PLO*, 688 F. Supp. 3d 1001, 1010 (D. Colo. 2023) ("The PSJVTA provides that any national of the United States who is injured … by reason of an act of international terrorism … may sue the PLO or PA."), *vacated on other grounds*, 2025 WL 1883713 (10th Cir. July 8, 2025); *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 123 (2d Cir. 2013) ("Congress did not 'intend[] to permit recovery under § 2333 on a showing of less than proximate cause'").

Nations-imposed sanctions did not make the purchases terrorist acts. Appellants failed to plausibly allege that their injuries were 'by reason of' Chevron's oil purchases, which requires a proximate causation showing and 'a showing of at least some direct relationship between [Chevron's] acts and [Appellants'] injuries.'"); *Parizer*, 2025 WL 2382933, at *17 ("allegations regarding these Defendants' conduct in relation to alleged support of Hamas <u>prior</u> to the October 7, 2023 attack are quite limited"). For these reasons alone, Defendants "could not have proximately caused the [Attack]." *Shatsky v. PLO*, 2017 WL 2666111, at *10 (D.D.C. June 20, 2017), *vacated on other grounds*, 955 F.3d 1016 (D.C. Cir. 2020).

Plaintiffs rest their claims on non-specific allegations that Defendants provided material support to the PFLP in the form of: (1) cash for political operations; (2) permission to maintain political offices and facilities in Palestine; (3) payments to "PFLP operatives who had been incarcerated … for terrorist activities," as part of a Palestinian government program; and (4) refusal to shut down PFLP websites or radio programming. FAC ¶¶ 128-144. And the FAC itself, moreover, acknowledges that the PLO, as a governmental entity, provides generalized funding and resources to its various political factions (including the PFLP). FAC ¶¶ 113, 128 (alleging that the PLO has political factions; that Defendants provide "direct monetary allocations" to those factions to further their "organizational roles [and] positions"; and that the "PFLP is the second-largest faction in the PLO" yet is "a relatively small group in the Palestinian arena").

Courts have found that where governmental funding is at issue in an ATA case and thus the "defendant is more than one step removed from a terrorist act or organization, plaintiffs suing under the ATA must allege some facts demonstrating a substantial connection between the defendant and terrorism." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 275 (D.C. Cir. 2018). Because governments have "'many legitimate agencies, operations, and programs to fund,' the

- 15 -

need for additional allegations supporting substantiality is all the more acute." *Id.* (quoting *Rothstein*, 708 F.3d at 97); *Ofisi*, 77 F.4th 667, 678 (same).

The FAC is devoid of any allegations connecting these limited and generalized forms of governmental support and the Attack, let alone that Defendants were responsible for "planning, preparation, funding, or execution of the" Attack. *Parizer*, 2025 WL 2382933, at *18; *see Zapata v. HSBC Holdings PLC*, 414 F. Supp. 3d 342, 356 (E.D.N.Y. 2019) (no proximate cause where a "direct link between the conduct (money laundering) and injuries (acts of violence committed by individuals affiliated with the Cartels) is entirely lacking"), *aff'd*, 825 F. App'x 55 (2d Cir. 2020); *Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67, 94 (E.D.N.Y. 2019) ("Without a more direct connection between Defendants' conduct and the attacks … the provision of financial services to Iran or various Iranian entities is insufficient on its own to support a plausible inference that the transactions facilitated by Defendants proximately caused the IED explosions in Iraq that injured Plaintiffs."), *aff'd on other grounds*, 57 F.4th 66 (2d Cir. 2023). Indeed, at least one court has held, on similar facts, that incidental support by Defendants to the PFLP by paying rent for a PFLP office, was not a substantial factor in the sequence of causation, because there was no link between the incidental support and the attack at issue. *Shatsky*, 2017 WL 2666111, at *9-10.

By comparison, in *Averbach*, an individual alleged to have <u>directly planned</u> an attack (and who was arrested prior to it) received at least seven transfers through the defendant bank <u>before</u> the attack. *Averbach v. Cairo Amman Bank*, 2022 WL 2530797, at *21 (S.D.N.Y. Apr. 11, 2022), *R&R adopted*, 2024 WL 3677339 (Aug. 6, 2024). Nevertheless, the court found that the bank did not proximately cause plaintiffs' injuries because there were no facts suggesting the bank knew or could have known the individual was using his bank account to finance any terrorist attack. *Id.* The allegations here, about generalized support to a political party, are far more attenuated still.

Nor would Plaintiffs' allegations that Defendants made post-Attack <u>statements</u> "publicly prais[ing]" the Attackers suffice to show proximate cause. FAC ¶ 176. A "showing of support—even post-attack <u>financial support</u> to the families of terrorists—is not sufficient to demonstrate that Defendants were somehow responsible for the attacks." *Sokolow v. PLO*, 60 F. Supp. 3d 509, 517 n.11 (S.D.N.Y. 2014) (emphasis added); *see also Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85, 98 (D.D.C. 2017) (finding "problem[atic]" "facts alleged with respect to defendants' conduct post-date the [attacks]"), *aff'd*, 897 F.3d 266 (D.C. Cir. 2018).

Finally, Plaintiffs fail to plausibly allege that the Attack was "reasonably foreseeable or anticipated as a natural consequence" of Defendants' alleged provision of generalized support to the PFLP. *Rothstein*, 708 F.3d at 91. And "a court cannot allow a plaintiff to proceed under § 2333(a) where he or she alleges only a remote, purely contingent, or overly indirect causal connection." *Freeman*, 413 F. Supp. 3d at 84. Here, the FAC does not allege, other than in the most conclusory way, that Defendants provided anything more than generalized political support. For example, Plaintiffs do not allege a relationship between the alleged support and the acts of violence perpetrated against them, or that the PFLP required the alleged support in order to carry out violence in Israel and Palestine, let alone the specific Attack at issue. *See Zapata*, 414 F. Supp. 3d at 356. And with respect to post-Attack statements, it defies logic that an attack could be "foreseeable" or "anticipated" as a result of a statement made <u>after</u> the Attack. *See Parizer*, 2025 WL 2382933, at *19 (post-attack statements of support "do not support the inference that Defendants' actions specifically assisted with Hamas's October 7, 2023 attack"). Accordingly, the FAC's allegations are simply "too speculative [and] attenuated to raise a plausible inference of proximate causation." *Fields v. Twitter, Inc.*, 200 F. Supp. 3d 964, 974 n.4 (N.D. Cal. 2016).

**B.    The FAC Fails To Plausibly Allege That Defendants Committed An "Act of International Terrorism."**

ATA civil actions require multi-level allegations and proof, not only (1) that the defendant violated a predicate criminal statute (here, Section 2339A, 2339B, or 2339C), but also (2) that the defendant violated the additional elements for the ATA civil cause of action established by 18 U.S.C. § 2333(a).  *See Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 553 (E.D.N.Y. 2012).  To sustain a claim for primary liability under Section 2333(a), Plaintiffs must plausibly allege that Defendants themselves committed an act of "international terrorism" that satisfies each of the elements of Section 2331.  *See, e.g.*, *Linde*, 882 F.3d at 320, 331.  And for an act to be considered international terrorism:

> (1) it must 'involve violent acts or acts dangerous to human life'; (2) it must qualify as 'a violation of the criminal laws of the United States …'; (3) it must 'appear to be intended' to intimidate a civilian population, influence government policy, or affect the conduct of government by certain specified means; and (4) it must occur primarily outside the United States or transcend national boundaries.

*Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 68 (2d Cir. 2012) (citing 18 U.S.C. § 2331(1)).

Here, the FAC does not plausibly allege that Defendants' actions were "violent" or "dangerous," or (independently) that Defendants' actions objectively were intended to intimidate a civilian population or influence policy of some other government.  Both of those disjunctive elements are required to establish that the defendant itself committed an "act of international terrorism."  *Id.*  Indeed, Plaintiffs do not allege that Defendants committed the Attack that injured them, nor that Defendants provided funds to any of the individuals who committed the Attack. Instead, as discussed above, Plaintiffs allege only that Defendants provided limited funding and political support to the PFLP.  *See, e.g.*, FAC ¶ 178.  That alone requires dismissal.  *See King v. Habib Bank Ltd.*, 2022 WL 4537849, at *5 (S.D.N.Y. Sept. 28, 2022) (dismissing primary liability claims where the complaint did not "allege the kind of direct connection to violence or

endangerment of human life" such that the alleged support could be considered "'acts of international terrorism' themselves").

> **i.**    **The FAC Does Not Plausibly Allege That Defendants Acted With The Terroristic Intent Required By 18 U.S.C. § 2333(a).**

To establish the terrorist intent required for ATA primary liability, Plaintiffs must plausibly allege that Defendants' provision of limited and generalized support to the PFLP "appear[ed] to be intended—(i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping."  18 U.S.C. § 2331(1)(B)(i)-(iii).

That is an objective test that "does not depend on the actor's beliefs, but imposes on the actor an objective standard to recognize the apparent intentions of actions."  *Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 207 n.6 (2d Cir. 2014).  An ATA complaint must plausibly allege that the conduct at issue objectively "'appea[red] to be intended' to intimidate civilians or influence a government" and, "[a]s applied to the complaint, this requires Plaintiffs to allege <u>not that the incidents that injured them meet this standard</u>, but that <u>the actions undertaken by [Defendants]</u> … meet this standard."  *Zapata*, 414 F. Supp. 3d at 358 (emphasis added).

The provision of ongoing and undifferentiated general support provided to all Palestinian political factions prior to the Attack, *supra* 2, 15, does not plausibly show objective terroristic intent.  The FAC, therefore, instead focuses on Defendants' post-Attack conduct—*i.e.*, that the "defendants endorsed and ratified" the Attack by "publicly prais[ing]" the Attackers after the Attack (FAC ¶ 176) and following the Attack, the PLO continued to provide limited and generalized funding to the PFLP, and "endorsed the PFLP" (FAC ¶ 178).  However, those allegations do not plausibly plead that Defendants' alleged actions were conducted with "terroristic intent," as the statute requires.  *See Kemper*, 911 F.3d at 390 (where actions were motivated by

economics, support to Iranian entities, objectively, "d[id] not appear intended to intimidate or coerce"); *Freeman*, 413 F. Supp 3d at 92 (same). Indeed, "even <u>post</u>-attack financial support to the families of terrorists" was "not sufficient" to state a claim. *Sokolow*, 60 F. Supp. 3d at 517 n.11 (emphasis added). The allegations of support here are far more attenuated.

### ii.    The FAC Fails To Plausibly Allege That Defendants Engaged In "Violent Acts Or Acts Dangerous To Human Life."

The FAC also fails to allege facts to support a reasonable inference that Defendants engaged in activities that "involve violent acts or acts dangerous to human life" sufficient to constitute an act of "international terrorism" under Section 2331(1). In ATA litigation, courts have instructed that "the provision of material support to a terrorist organization does not invariably equate to an act of international terrorism." *Linde*, 882 F.3d at 326.

In *Kaplan*, 405 F. Supp. 3d at 532, like this case, there was "no dispute that Defendant did not itself perpetrate the [] attacks that injured Plaintiffs." The court held that even if the defendant "was aware that it was providing [financial] services to Hizbollah affiliates and that doing so violated economic sanctions imposed by the U.S. government," that still did not "equate to international terrorism." *Id.* Instead, "Plaintiffs must plausibly allege that Defendant's <u>own</u> actions '<u>also</u> involve[d] violence or endanger[ed] human life.'" *Id.* Here, Plaintiffs do not plausibly allege that Defendants' actions—general political support to the PFLP (*e.g.*, FAC ¶ 153) and <u>post</u>-Attack statements (*e.g.*, FAC ¶ 176)—involved violence or endangered human life.

### C.    The FAC Does Not Plausibly Allege Defendants Provided Material Support To An FTO, Or Intended That Such Support Would Be Used For Terrorism.

The FAC fails to plausibly allege that Defendants acted with the heightened state of mind required to show liability under 18 U.S.C. §§ 2339A and 2339C, or that Defendants provided material support to an FTO, as required for liability under 18 U.S.C. § 2339B.

In contrast to Section 2339B, a civil claim under Section 2339A has a heightened scienter

requirement which requires plaintiffs to show that "the defendant must have known or intended
that [its] support," here support to the PFLP, "would be used in preparation for, or in carrying out,"
the Attack. *Ahmad v. Christian Friends of Israeli Cmtys.*, 2014 WL 1796322, at *3 (S.D.N.Y.
May 5, 2014), *aff'd*, 600 F. App'x 800 (2d Cir. 2015).[8]  In other words, "the statutory language of
§ 2339A includes an explicit specific intent requirement." *U.S. v. Taleb-Jedi*, 566 F. Supp. 2d
157, 179 (E.D.N.Y. 2008).  "[T]he mental state required under § 2339A 'extends both to the
support itself, <u>and</u> to the underlying purposes for which the support is given,' and an ATA plaintiff
proceeding on a 2339A predicate must show evidence of the defendant's specific knowledge of,
or intent to further, the specified underlying crime." *In re Chiquita Brands Int'l, Inc.*, 284 F. Supp.
3d 1284, 1309 (S.D. Fla. 2018).  Section 2339C similarly requires Plaintiffs to plausibly allege
that Defendants "provid[ed] or collect[ed] funds with the intention that such funds be used, or with
the knowledge that such funds are to be used, in full or in part, in order to carry out" the Attack.
18 U.S.C. § 2339C; *see Ahmad*, 2014 WL 1796322, at *3.  Thus, both Sections 2339A and 2339C
require an "intent to further terrorist activity." *Holder*, 561 U.S. at 17.

Here, the FAC does not meet the specific intent requirements because it fails to plausibly
allege that Defendants had prior knowledge of the Attack, or provided support or resources to the
Attackers, or that Defendants "intended" that their generalized support to the PFLP "be used in
preparation for, or in carrying out" the Attack or "with the knowledge that such funds" be used "in
order to carry out" the Attack.  *See Parizer*, 2025 WL 2382933, at *19 ("Plaintiffs do not even
allege sufficient facts to plausibly show that Defendants had prior knowledge of the October 7,
2023 attack.").  Critically, there are no specific factual allegations that the governmental funding

---

[8] *See also Holder v. Humanitarian L. Project*, 561 U.S. 1, 18 n.3 (2010) (distinguishing mental states required for
2339A and 2339C from 2339B based on 2339B's "markedly different language"); *King*, 2022 WL 4537849, at *4
(same); *Linde*, 882 F.3d at 330 n.11 (same); *U.S. v. Awan*, 459 F. Supp. 2d 167, 179 (E.D.N.Y. 2006) (same); *U.S. v.
Sattar*, 314 F. Supp. 2d 279, 301-02 (S.D.N.Y. 2004) (same); *U.S. v. Stewart*, 590 F.3d 93, 118 (2d Cir. 2009) (same).

provided to the PFLP was in any way connected to the Attack.

Section 2339B, by contrast, requires a showing that Defendants "knowingly provide[d] underline material support or resources to a foreign terrorist organization, or attempt[ed] or conspire[d] to do so."  18 U.S.C. § 2339B (emphasis added).  The FAC does not satisfy the statute's requirements because Plaintiffs allege, at most, that Defendants provided *de minimis* support—not "material support," as the statute requires—to the PFLP.  *Sesay v. Att'y Gen. of U.S.*, 787 F.3d 215, 221-22 (3d Cir. 2015) ("'material' must be ascribed some meaning" and "must be more than de minimis in order to give 'material' some independent effect").

Another district court applied that logic to dismiss similar ATA primary-liability claims against these same Defendants based on the plaintiffs' premise that their political support payments for the PFLP was material support for terrorism.  *Shatsky*, 2017 WL 2666111, at *9 ("[P]laintiffs posit a connection between the rent payment [for the PFLP] and the bombing based solely on the fact that Qalqilya is nearby to Karnei Shomron.  To say the least, that is a stretch!"); *see also Crosby v. Twitter, Inc.*, 303 F. Supp. 3d 564, 576-77 (E.D. Mich. 2018) (provision of "'routine' services" where defendants "kn[ew] only generally that some (unidentified) users could be affiliated with terrorism" was insufficient for material support), *aff'd*, 921 F.3d 617 (6th Cir. 2019).

## IV.    PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE RESPONDEAT SUPERIOR LIABILITY.

The FAC's conclusory allegations fail to plausibly allege respondeat superior liability—which is "a type of vicarious liability and provides that 'an employer is liable for torts of an employee acting within the scope of employment'"—for at least four independent reasons.  *Martin v. Perman*, 2019 WL 3976058, at *3 n.3 (D. Colo. Apr. 12, 2019), *R&R adopted*, 2019 WL 3973959 (D. Colo. Aug. 22, 2019).

***First***, "[v]icarious liability claims under the doctrine of *respondeat superior* are not

independent claims" or stand-alone claims, and thus must be dismissed for that reason alone. *Brightspot Sols., LLC v. A+ Prods., Inc.*, 2021 WL 2935942, at *9 (D. Colo. July 13, 2021).[9]

**Second**, "Plaintiffs must establish all of the elements of one of their other substantive tort claims before … Defendants would be liable under *respondeat superior*." *Brightspot*, 2021 WL 2935942, at *9 (cleaned up). For the reasons discussed *supra* 2-22, they have not done so. Where "no tort claim survives the Motion [to dismiss], there is no basis to assert vicarious liability." *Id.*

**Third**, Plaintiffs do not allege that the Attackers were themselves employed by Defendants. "To establish a defendant's [vicarious] liability under the [respondeat superior] doctrine, the plaintiff must show that an employer-employee relationship existed and that the act occurred in the course and scope of employment." *KKW Trucking, Inc. v. Castellano 03 Trucking, L.L.C.*, 2020 WL 13470239, at *8 (D. Colo. Oct. 20, 2020), *R&R adopted*, 2020 WL 13470123 (D. Colo. Nov. 12, 2020); *see also Bayview Loan Servicing, LLC v. Boland*, 2009 WL 3234270, at *5 n.2 (D. Colo. Sept. 30, 2009) (the term "respondeat superior" is "usually limited to the employer-employee relationship"). Here, there is no employment relationship alleged whatsoever.

But even if the Court were to overlook Plaintiffs' "app[arent] confus[ion] [of] the doctrine of *respondeat superior* with principal/agent liability," the claim still fails. *Haney v. Castle Meadows, Inc.*, 868 F. Supp. 1233, 1239 n.6 (D. Colo. 1994). Under Colorado law, "[a]gency is ultimately a question of the intention of the parties and is evidenced by their acts and not on what the relationship is called. . . . An 'agent' is generally one who acts for, or in place of, another, or is entrusted with the business of another." *Moses v. Diocese of Colorado*, 863 P.2d 310, 324 (Colo.

---

[9] *See also Baker v. Baxa Corp.*, 2011 WL 650002, at *1 (D. Colo. Feb. 11, 2011) ("to the extent that the *respondeat superior* allegations purport to be a stand alone 'claim,' such 'claim' is dismissed under Rule 12(b)(6)"); *Blackmon-Logan v. Jenkins*, 623 F. Supp. 3d 1161, 1177 n.7 (D. Colo. 2022) (collecting cases); *Brightspot*, 2021 WL 1251512, at *10 (Apr. 5, 2021) (dismissing vicarious liability claims where "they are not properly styled as a discrete 'claim' for relief"); *U.S. v. Durango & Silverton Narrow Gauge R.R. Co.*, 2021 WL 6118727, at *5 (D. Colo. Oct. 28, 2021).

1993); *see also Arroyo v. Privett*, 2024 WL 4129820, at *5 (10th Cir. Sept. 10, 2024). "The control a principal exercises over the manner of work performed by an agent is evidence that an agency relation exists …. The most important factor in determining whether a person is an agent is 'the right to control, not the fact of control.'" *Moses*, 863 P.2d at 324; *see Alfaro-Huitron*, 982 F.3d at 1252 ("control is an essential element of the relationship"); *Brinkley v. Farmers Elevator Mut. Ins. Co.*, 485 F.2d 1283, 1286 (10th Cir. 1973) ("If the principal had no such right to direct and control, then he is not vicariously liable … for the consequences of the agent's tortious conduct.").

"The existence of an agency relationship, whether actual or apparent, must be proven through the conduct of the parties." *Abolaji v. Parker 1833 LLC*, No. 23-CV-02945-GPG-TPO, 2025 WL 2379644, at *4 (D. Colo. Jan. 8, 2025), *R&R adopted*, 2025 WL 2379647 (D. Colo. Jan. 31, 2025). Here, Plaintiffs' allegations of an agency relationship between the PFLP and Defendants (*see* FAC ¶ 203) are "bare, legal conclusions" that are insufficient to support vicarious liability. *Abolaji*, 2025 WL 2379644, at *5; *see also Lokhova v. Halper*, 995 F.3d 134, 147 (4th Cir. 2021) ("mere conclusory language in the complaint does not establish vicarious liability" (cleaned up)). The FAC alleges that "[t]he PFLP carried out the Terrorist Attack as the agent of the defendants, pursuant to the official, long-established policy and practice of the defendants of using terrorism to achieve the supreme goal shared by the defendants and the PFLP, namely: to end the Israeli and Jewish presence in territories governed by Israel." FAC ¶ 202; *see also* FAC ¶ 175 (same). But the provision of generalized support provided to all political factions does not show that Defendants had a "right to control" the PFLP, let alone that the PFLP "acted at the behest and under the <u>operational control</u> of defendants," as required for vicarious liability. *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 72 (D.D.C. 2010) (emphasis added); *see Frutos v. Am. Mod. Prop. & Cas. Ins. Co.*, 2020 WL 5517111, at *2 (D. Colo. Mar. 20, 2020) ("Frutos has

provided no facts to support Premier's supposed control over any of the other defendants."); *Est. of Parsons v. Palestinian Auth.*, 715 F. Supp. 2d 27, 33-34 (D.D.C. 2010) ("no basis on which to assign vicarious liability to the PA for the alleged criminal acts of a few employees").  That is particularly true where allegations of "control" are undercut by the PFLP's boycott of meetings at the highest level of the PLO due to policy disagreements.[10]

Nor do Plaintiffs' allegations that Defendants "ratified" the Attack (FAC ¶¶ 176, 177) save their claim where "it is settled law that full knowledge of the unauthorized act, and of all material matters related to it"—not alleged in the FAC—"is an essential of a valid ratification."  *Hill v. Bache Halsey Stuart Shields Inc.*, 790 F.2d 817, 827 (10th Cir. 1986) (cleaned up); *Mauldin v. Worldcom, Inc.*, 263 F.3d 1205, 1214 (10th Cir. 2001) (same).

***Fourth***, for a defendant to be held liable for the commission of an intentional tort under a theory of respondeat superior, "the agent's intent in committing the tortious act must be to further the employer's business."  *Jarmon v. Pac. Rail Servs., LLC*, 2007 WL 678644, at *5 (D. Colo. Mar. 1, 2007); *see also Sandoval v. Martinez-Barnish*, 435 F. App'x 775, 778 (10th Cir. 2011) (same).  As discussed above, the FAC, at most, alleges the shared objective of resisting the Israeli occupation—not that the PFLP intended to further the interests of Defendants by carrying out the Attack.  Even accepting that shared objective as true—and, to be clear, Defendants deny any such shared objective was properly alleged or actually exists—Plaintiffs' theory would impose unrestrained and limitless liability, contrary to law, on Defendants for the acts of any individual opposing the Israeli occupation.  Plaintiffs' respondeat superior claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' FAC should be dismissed with prejudice.

---

[10] *See, e.g.,* The Palestinian Information Center, "PFLP boycotts PLO meeting," https://tinyurl.com/29xkte6t (Oct. 2, 2010); Israel National News, "PFLP to boycott Abbas," https://tinyurl.com/yc72bxwc (Mar. 15, 2018).

Respectfully Submitted,

October 17, 2025

**SQUIRE PATTON BOGGS (US) LLP**


/s/  *Gassan A. Baloul*
Gassan A. Baloul (DC Bar 1034245)
gassan.baloul@squirepb.com
Mitchell R. Berger (DC Bar 385467)
mitchell.berger@squirepb.com

2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

717 17th Street, Suite 1825
Denver, CO 80202
Telephone: (303) 830-1776
Facsimile: (303) 894-9239

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

Gassan A. Baloul, an attorney duly admitted to practice before this Court, certifies

that on October 17, 2025, I caused true and correct copies of the foregoing to be served on

Plaintiffs' counsel of record via electronic filing on the Court's CM/ECF system.

Dated:  October 17, 2025

/s/ *Gassan A. Baloul*
Gassan A. Baloul
