**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:21-cv-03043-GPG-STV

SHELLEY LEVINE, *et al.*,

                    Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION
and THE PALESTINIAN AUTHORITY (a/k/a "The
Palestinian Interim Self-Government Authority" and/or
"The Palestinian National Authority"),

                    Defendants.

---

**SCHEDULING ORDER**

---

**1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL AND PRO SE PARTIES**

The Fed. R. Civ. P. 16(b) Scheduling Conference is set for December 10, 2025, at 2:30

p.m. in Courtroom A 402 of the Alfred A. Arraj Courthouse before Magistrate Judge Scott T.

Varholak.

The names, addresses, and telephone numbers of counsel for each party, and the identity

of the party they represent, are as follows:

Plaintiffs:

> Daniel K. Calisher
> Foster Graham Milstein & Calisher, LLP
> 360 South Garfield Street, 6th Floor
> Denver, Colorado 80209
> Telephone: 303-333-9810
> Email: calisher@fostergraham.com

Asher Perlin
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Telephone: 786-233-7164
Email: asher@asherperlin.com
*Attorneys for Plaintiffs*

Defendants:

Gassan A. Baloul
Mitchell R. Berger
Amy Brown Doolittle
Joseph S. Alonzo
Alex Hyman
Squire Patton Boggs (US) LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: 202-457-6000
Email: gassan.baloul@squirepb.com
Email: mitchell.berger@squirepb.com
Email: amy.doolittle@squirepb.com
Email: joseph.alonzo@squirepb.com
Email: alex.hyman@squirepb.com

## 2. STATEMENT OF JURISDICTION

This Court has original subject-matter jurisdiction to adjudicate Plaintiffs' claims under the

Antiterrorism Act (ATA), 18 U.S.C. § 2333, pursuant to 18 U.S.C. § 2338 and 28 U.S.C. § 1331.

Plaintiffs also assert supplemental (pendent) subject-matter jurisdiction pursuant to 28

U.S.C. § 1367, for their nonfederal claims.

Defendants reserve their right to challenge Plaintiffs' assertion of supplemental (pendent)

subject-matter jurisdiction pursuant to 28 U.S.C. § 1367.  *See* ECF No. 140 at ¶ 7(e).

## 3. STATEMENT OF CLAIMS AND DEFENSES

Plaintiffs' Statement

This is a civil action pursuant to the Antiterrorism Act (ATA), 18 U.S.C. § 2331 et seq., and supplemental causes of action, seeking damages resulting from a terrorist attack carried out on November 18, 2014, in a synagogue in Jerusalem, Israel.

Plaintiffs are the heirs and personal representatives of the estates of five individuals who were murdered in the attack, seven individuals who were present and injured at the scene of the attack, and family members of the decedents and of the plaintiffs who were present at the attack.

Plaintiffs allege the terrorist attack was executed by a constituent faction of defendant Palestine Liberation Organization (PLO), known as the "Popular Front for the Liberation of Palestine" (PFLP). The PFLP has been designated as a Foreign Terrorist Organization by the United States since 1997. Plaintiffs allege the PLO and co-defendant Palestinian Authority (PA) aided and abetted and conspired with the PFLP to carry out the terrorist attack, and that the PFLP carried out the attack as an agent of the PLO and PA.

Plaintiffs assert four claims against the PLO and PA under the ATA: (i) direct primary liability under ATA § 2333(a); (ii) primary liability under ATA § 2333(a) on the basis of agency and respondeat superior (because the PFLP carried out the attack as Defendants' agent); (iii) aiding and abetting liability under ATA § 2333(d); and (iv) conspiracy liability under ATA 2333(d).

Plaintiffs also assert pendent claims for negligence and vicarious liability under Israeli law.

Plaintiffs respectfully note that the above is a brief synopsis of their claims, and should not be construed as exhaustive of every detail of their claims, or as limiting their claims.

Plaintiffs also note that they disagree with Defendants' Statement of Claims and Defenses below, including Defendants' characterizations of Plaintiffs' Claims, and of the applicable legal standards.

Defendants' assertion below that Plaintiffs are improperly using this proposed scheduling order "as a vehicle for raising a host of unripe discovery disputes and circumventing the Court's well-defined discovery dispute procedure" (*infra*) is unfounded.

Plaintiffs' discussion herein of the deficiencies in Defendants' Initial Disclosures, and failure to provide details of their information storage and retrieval systems, is meant to illustrate why Plaintiffs will need the number of interrogatories, requests for production and requests for admissions they are seeking, and why they seek to bifurcate their Rule 30(b)(6) depositions of the Defendants (as discussed below).

Defendants' raft of tortured (and meritless) explanations below as to why their deficiencies should be excused as technically sufficient serve only to **strengthen** Plaintiffs' point. Defendants' approach toward their discovery duties, clearly reflected in their arguments below, is to do the minimum they can get away with. Defendants' attitude mandates Plaintiffs be given adequate discovery tools to obtain the documents and testimony they legitimately require.

Defendants' Statement

As an initial matter, Defendants note that the prolixity of this proposed scheduling order is caused by Plaintiffs' improper use of this forum as a vehicle for raising a host of unripe discovery disputes and circumventing the Court's well-defined discovery dispute procedure, including the requirement that the parties meet and confer and submit their positions via email rather than filing briefs on the docket. *See* D. Colo. Uniform Civil Practice Standards of the United States Magistrate Judges at 18-19. While Defendants oppose the use of this proposed order for that purpose, they are compelled to respond in kind. As explained below, Defendants' discovery positions advocate an incremental approach—because "discovery is, by necessity, an iterative

process", *Poitra v. Sch. Dist. No. 1*, 311 F.R.D. 659, 667 (D. Colo. 2015)—based on the parties'
actual experience as discovery proceeds and the anticipated needs of this case, rather than on
ancient history from unrelated cases regarding different attacks and different theories of liability..
Plaintiffs, on the other hand, appear more interested in fomenting discovery disputes at this early
stage than obtaining actual discovery.

On the merits, Plaintiffs allege that they are the victims of an attack that was carried out by
individuals affiliated with the Popular Front for the Liberation of Palestine ("PFLP").  Plaintiffs
have not sued the individual attackers (or their estates) or the terrorist organization they claim
committed the attack at issue in this case. Plaintiffs do not allege that members of the PA or PLO
planned or carried out the attack. Instead, they have brought a lawsuit against the PA and PLO
alleging that they provided the PFLP with the same support provided to all PLO factions—
including funding, radio frequency, and internet service—and that members of the PFLP allegedly
committed the attack.

Plaintiffs' secondary-liability claims fail because they do not plausibly allege that
Defendants consciously or culpably took actions to facilitate the attack at issue or that they had an
agreement with the two individuals who committed the attacks, Uday Abu Jamal and Ghassan Abu
Jamal, to commit terrorism.  *See* ECF Nos. 58, 76, 151.  The operative complaint, moreover, fails
to plausibly allege that Uday Abu Jamal and Ghassan Abu Jamal were PFLP operatives, and that
the PFLP was responsible for the attack at issue.  *See, e.g.*, ECF No. 151 at 7.

Plaintiffs' ATA primary liability claims fail because they apply only in circumstances
irrelevant here—*i.e.*, when the defendant's conduct is itself an act of international terrorism that
proximately causes the attack at issue. *See* ECF Nos. 58, 76, 151. Plaintiffs' ATA *respondeat*

*superior* claim fails for additional reasons, including that it does not plausibly allege that the attackers or the PFLP had actual authority from Defendants to commit the attack or that the attackers or the PFLP had a reasonable belief that any such grant of actual authority encompassed the attack in question. *Id.* Supplemental briefing on Defendants' pending Rule 12(b)(6) motion to dismiss all of Plaintiffs' claims concludes on December 22, 2025.  ECF 159 (minute order).

Plaintiffs' pendent claims for negligence and vicarious liability under Israeli law fail (1) for lack of supplemental jurisdiction under 28 U.S.C. § 1367, and (2) because Plaintiffs do not plausibly plead any connection between Defendants' actions and the attack at issue, let alone that Defendants' actions were the "but-for" cause of Plaintiffs' injuries.  *See* ECF No. 76 at 36-37.

## 4.  UNDISPUTED FACTS

The following facts are undisputed:

1.    Uday Abu Jamal and Ghassan Abu Jamal personally carried out the November 18, 2014, attack from which this action arises, and were killed at the scene. (Source: Levine-699-702; Levine-707-709; Levine-2066).

## 5.  COMPUTATION OF DAMAGES

Plaintiffs' Position

Some of the plaintiffs who are, and the estates of decedents who were, American citizens, earlier brought an action against Syria and Iran pursuant to the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605(A), for their provision of material assistance to the PFLP. *Heching v. Syria*, 17-cv-1192 (D.D.C.) and *Heching v. Iran*, 17-cv-1659 (D.D.C.) ("*Heching*"). Those

- 6 -

plaintiffs and estates were awarded various types of compensatory damages in *Heching*, which are detailed in *Heching v. Syrian Arab Republic*, 2025 WL 2959909 (D.D.C. Oct. 20, 2025).[1]

The plaintiffs and decedents herein who received a judgment in *Heching* seek an award of compensatory damages in this action in the amounts awarded them in *Heching*.[2] They also seek treble damages, as well as attorneys' fees, costs and expenses, pursuant to 18 U.S.C. § 2333, and punitive damages in amounts to be determined by the jury.

The plaintiffs and estates herein who did not receive a judgment in *Heching* seek compensatory damages in this action in the categories and amounts below:

| Plaintiff/Estate | Emotional Distress, Solatium, Loss of Consortium, Pain & Suffering | Economic Damages |
|---|---|---|
| H.Y.A. | $1.25 million | |
| L.Y.P. | $1.25 million | |
| Y.M.P. | $1.25 million | |
| N.B.P., | $1.25 million | |
| Y.C.P. | $1.25 million | |
| Dana-Lee Salis | One million dollars | |

---

[1] **None** of the sums awarded in *Heching* have been collected (whether from the U.S. Victims of State-Sponsored Terrorism Fund (USVSSTF) or otherwise), and it is notoriously difficult to enforce terrorism judgments against foreign states. "[A] number of practical, legal and political obstacles have made it all but impossible for plaintiffs in these FSIA terrorism cases to enforce their default judgments against Iran." *In re Islamic Republic of Iran Terrorism Litig.*, 659 F.Supp.2d 31, 49 (D.D.C. 2009). (Annual distributions from the USVSSTF to FSIA judgment holders are not guaranteed and not made every year, and even when made are for only a few percent of the judgment amount, roughly equal to the post-judgment interest).

[2] The damages awards in *Heching* were based on reports by a Special Master, who prepared his reports utilizing documents, expert opinions and declarations, and other evidentiary materials proving the nature and extent of the harms suffered by the American plaintiffs and decedents. The Special Master's reports and the evidence on which he relied have already been produced to Defendants.

| | | |
|---|---|---|
| E.Y.S. | $1.25 million | |
| R.T.(1) | $1.25 million | |
| C.T. | $1.25 million | |
| E.T.(1) | $1.25 million | |
| Y.T. | $1.25 million | |
| M.T. | $1.25 million | |
| E.T.(2) | $1.25 million | |
| S.T. | $1.25 million | |
| A.T. | $1.25 million | |
| I.T. | $1.25 million | |
| R.T.(2) | $1.25 million | |
| Y.A.W. | $1.25 million | |
| I.W. | $1.25 million | |
| Y.W. | $1.25 million | |
| I.C. | $1.25 million | |
| E.C. | $1.25 million | |
| Rinal Saif | Five million dollars | |
| Estate of Zidan Saif | | $986,276.91 |
| L.S. | Five million dollars | |
| Nuhad Saif | Five million dollars | |
| Julia Saif | Five million dollars | |
| Briana Hazel Goldberg | Five million dollars | |
| Deborah (Goldberg) Hammond | Five million dollars | |
| Libby Goldberg | Five million dollars | |

| Rivka (Goldberg) Sireling | Five million dollars | |
|---|---|---|
| Hadassa (Goldberg) Treuhaft | Five million dollars | |
| Adrian Goldberg | Five million dollars | |
| Elisheva Goldberg | Five million dollars | |

In addition to the compensatory damages set forth above, each of the plaintiffs in the chart above seeks punitive damages in an amount to be awarded by the jury.

Plaintiffs H.Y.A., L.Y.P., Y.M.P., N.B.P., Y.C.P., E.Y.S., R.T.(1), C.T., E.T.(1), Y.T., M.T., E.T.(2), S.T., A.T., I.T., R.T.(2), Y.A.W., I.W., Y.W., I.C. and E.C. also seek treble damages in an amount equal to three times the amount of their compensatory damages awards, as well as attorneys' fees, costs and expenses, pursuant to 18 U.S.C. § 2333.

The intangible damages figures set forth in the chart above are calculated on the basis of the intangible damages typically awarded by federal juries and judges for the death of, or injury to, a family member in a terrorist attack. The economic damages to the estate of Zidan Saif are calculated based on his monthly salary at the time of his death, NIS 13,557.60 (about $3,526).

Defendants' Position

As an initial matter, Defendants are not liable to Plaintiffs for the claims in the First Amended Complaint ("FAC"), and therefore, are not liable to Plaintiffs for any of the claimed damages. Defendants also note that, at this early stage, it would be premature to assess Plaintiffs' claimed damages based on partial and incomplete information.

Further, as Plaintiffs note above, some Plaintiffs in this case are also plaintiffs in the *Heching* cases in which plaintiffs sued Syria and Iran under the Foreign Sovereign Immunities Act

for providing material support to the terrorists that carried out the attack that is also at issue in this case. Syria and Iran both defaulted, and therefore there was no traditional robust and adversarial process as to plaintiffs' claimed damages in the *Heching* cases. *Cf. Abbott Lab'ys v. Adelphia Supply USA*, No. 15-CV-5826, 2020 WL 7643213, at \*2-3 (E.D.N.Y. Dec. 23, 2020) (discussing default judgments and importance of distinguishing liability of defaulting and non-defaulting defendants). In March 2023, the *Heching* court granted plaintiffs' motion for a default judgment. *Heching*, 2025 WL 2959909, at \*1. The court then appointed a special master to evaluate plaintiffs' claims for compensatory damages. *Id.* After reviewing plaintiffs' *ex parte* submissions on damages, the special master issued his reports and recommendations. *Id.* Plaintiffs then filed an emergency motion with the *Heching* court requesting that the court promptly adopt the special master's reports and recommendations so that plaintiffs could meet a deadline for recovering money from the U.S. Victims of State-Sponsored Terrorism Fund in 2026. *Id.* The *Heching* court then granted the motion so that plaintiffs could meet the deadline and be eligible to participate in the sixth distribution from the fund, which is scheduled to occur in 2026. *Id.* at \*1-2; *see also* https://www.usvsst.com/Home/Announcements?id=20251031. In short, *Heching* involved a default judgment with uncontested damages, and the *Heching* court speedily granted plaintiffs' emergency motion so that plaintiffs would be able to recover from the U.S. Victims of State-Sponsored Terrorism Fund.

Finally, while Plaintiffs claim to have produced the damages evidence submitted to the special master in the *Heching* cases, there are 34 Plaintiffs in this case who did not receive any compensatory damages in *Heching*. With respect to this sizable group, Plaintiffs have produced no evidence supporting damages, and their initial disclosures do not identify any documents (or

- 10 -

the location of such documents) that purportedly support their damages claims. Defendants,

therefore, are unable to evaluate their damages claims at this time.

### 6.  REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a.      Date of Rule 26(f) meeting.

November 12, 2025.

b.      Names of each participant and party he/she represented.

Daniel Calisher and Asher Perlin for Plaintiffs. Elliott Fladen and Mordechai Haller also

attended the call on Plaintiffs' side. Mitchell Berger, Amy Brown Doolittle, Alex Hyman,

and Joseph Alonzo for Defendants.

c.      Statement as to when Rule 26(a)(1) disclosures were made or will be made.

The parties exchanged initial disclosures on November 26, 2025.

d.      Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).

None.

e.      Statement concerning any agreements to conduct informal discovery:

None.

f.      Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.

The parties agree that if they or their counsel have or obtain "official" English-language

translations (i.e., translations created by a third-party translator or third-party AI program) of

foreign-language documents that are disclosed or produced in discovery, they will also disclose or

produce the text of such translations; provided that: (1) the parties are under no obligation to obtain

or create any such translations; (2) the production or disclosure of the text of a translation shall not

- 11 -

constitute a representation or warranty as to the accuracy or completeness of such translation; and

(3) the parties shall be required to produce or disclose only the raw text of any such translation.

For the avoidance of doubt, the parties are not obligated to disclose or produce "unofficial"

English-language translations of the aforementioned foreign-language documents, that may have

been created by, without limitation, the parties' counsel or their counsel's staff.

The parties intend to cooperate on a document/exhibit numbering system and other

litigation efficiencies, such as on-line/remote depositions.

g.    Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

Plaintiffs' Position:

Plaintiffs are private individuals, and their documents do not involve any ESI databases.

Moreover, Plaintiffs have already produced to Defendants, along with their Initial Disclosures, the

documents currently in their possession, custody, or control, that they "may use to support [their]

claims or defenses." Rule 26(a)(1)(A)(ii).

Defendants state below that some of the documents and information in their possession

that Plaintiffs may request are stored as ESI, and have informed Plaintiffs that they "anticipate

negotiating" an ESI Protocol. Plaintiffs have no objection in principle to an appropriate ESI

Protocol (if one is necessary), but they oppose any delay in discovery pending for the purpose of

"negotiating" an ESI Protocol.

Furthermore, because Defendants have **already** violated their disclosure obligations, the

development of any ESI Protocol is not yet possible, as explained below:

The instructions to Section 6(g) of the Court's model scheduling order provide: "In advance of the Rule 26(f) meeting, counsel [must] carefully investigate their client's information management systems so that they are knowledgeable as to its operation, including how information is stored and how it can be retrieved." Obviously, this provision is highly relevant to ESI.

During the Rule 26(f) call on November 12, 2025, Plaintiffs' counsel asked Defendants' counsel to provide the information mandated by the aforementioned instruction, but Defendants' counsel stated he needed to make further inquiries and would revert with the information. This statement cannot be reconciled with the fact that Defendants represented to this Court over three years ago that they "are aware of and complying with their document preservation obligations." ECF 90 at 6. (cleaned up). *Cf*. Tr. 1/27/23, ECF 94, at 16:18-22 (same). It is well established that "[o]nce a 'litigation hold' is in place … counsel must become fully familiar with her client's document retention policies, as well as the client's data retention architecture. This will invariably involve speaking with information technology personnel, who can explain system-wide backup procedures and the actual (as opposed to theoretical) implementation of the firm's recycling policy. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) (footnote omitted).

In any event, Defendants' counsel did not revert to Plaintiffs' counsel to provide the information mandated by the instructions to Section 6(g). Therefore, on November 20, 2025, Plaintiffs' counsel wrote to Defendants' counsel, again requesting that information. (Ex. A). Defense counsel simply **<u>ignored</u>** Plaintiffs' November 20, 2025, email.

Given the conduct described above, it appears that no inquiry (certainly no adequate inquiry) has been made by counsel regarding Defendants' information management systems, or

how information is stored or retrieved. It also appears questionable whether a litigation hold was issued or implemented for Defendants' ESI systems or otherwise.

Discovery should not be delayed pending the negotiation of an ESI Protocol the necessity and substance of which cannot presently be determined due to Defendants' failure to provide the information required by the instructions to Section 6(g).

Additionally, Defendants have hampered the creation of any ESI Protocol – and the conduct of discovery overall – by violating their duty under Rule 26(a)(1)(A)(ii) to provide "a description by category and location" of documents in their possession that they "may use to support [their] claims or defenses." Defendants' Initial Disclosures identify "*Documents relating to any financial transfers to PLO factions, including the PFLP*"[3] and "*Documents relating to the laws of Palestine*"[4] as two such categories. (Ex. B at 4, §§ 4, 6 ). And no "location" is given for **any** of the documents held by Defendants, in violation of Rule 26(a)(1)(A)(ii). (Ex. B, *id*. at §§ 4-6).

This putative document "disclosure" is grossly defective. "[T]his type of broad description, with no indication of where these documents could be located, does little to 'help focus the discovery that is needed' and does not sufficiently enable [Plaintiffs] '(1) to make an informed decision concerning which documents might need to be examined, at least initially, and (2) to frame their document requests in a manner likely to avoid squabbles resulting from the wording of the requests.'" *Nat'l Cas. Co. v. Fed. Ins. Co.*, 2022 WL 17222254, at *3 (C.D. Cal. Aug. 3,

---

[3] During the period addressed in Plaintiffs' FAC (1999-2014) the PLO had some **six different factions**.

[4] There is no defined body of law known as "the laws of Palestine." If Defendants intend this phrase to mean the laws in force in the West Bank and Gaza Strip, that law is an multilayer collage of statutes, ordinances, regulations, rules and executive orders issued by Ottoman Empire, the British Mandate (1917-1947), Jordan and Egypt (1948-1967), and the PA (since 1994). Plaintiffs cannot begin to guess what specific "laws of Palestine" Defendants are referring to.

2022) (quoting Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a) (emphasis added). *Cf. Dhaliwal v. Singh*, 2014 WL 2957310, at *8 (E.D. Cal. June 30, 2014) (categories with labels like "loan documents" and "financial records and reports of Defendants" are too vague to allow an informed decision about whether documents should be examined.); *N. Am. Lubricants Co. v. Terry*, 2011 WL 5828232, at *5 (E.D. Cal. Nov. 18, 2011) (Listing "business files" is "wholly insufficient and amounts to abuse of the discovery process. Those terms are so broad as to be meaningless and do not provide defendants with any notice as to which documents, or at least which categories of documents, [the party] may use to support its claims.").

In sum: Defendants have impeded a determination of whether an ESI Protocol is even necessary, and if so what it should contain – **and delayed discovery overall** – by: (1) violating their obligation to provide Plaintiffs with details of their information management systems, including how information is stored and retrieved; and by (2) "disclosing" vague and overbroad categories of documents without any information about their "location," which would necessarily indicate whether some or all of these documents are held as ESI.

Below, Defendants argue that they did not violate their obligation to provide Plaintiffs with information regarding how ESI is stored or retrieved on their computer systems, because (so they now claim) some of this information is contained in materials previously provided to Plaintiffs.[5]

---

[5] Defendants refer repeatedly to materials produced in "jurisdictional discovery." But there was no jurisdictional discovery in **this** case. Those materials were produced by Defendants (under court order) during jurisdictional discovery in the *Shatsky v. PLO* case pending in the SDNY. Defendants agreed to provide those **pre-existing** materials to the instant Plaintiffs, in order to avoid the need for duplicative jurisdictional discovery in this case. Except for the fact that they **happen** to include (incomplete) copies of Defendants' "Martyr Files" for the perpetrators in this case, there is very little in those materials of use in this case, now that the jurisdictional issue has been resolved.

But if Defendants believed this were true, they would have said so during the November 12, 2025, Rule 26(f) conference, or at the very latest in response to Plaintiffs' email of November 20, 2025, to which Defendants have never responded. Instead, Defendants first mentioned this putative excuse in their December 5, 2025, draft of this proposed scheduling order. In any event, this excuse falls flat: some of the materials cited by Defendants say nothing at all about ESI, and some mention the existence of ESI, but **none** discuss **retrieval** of ESI. Obviously, retrieval of ESI, including the existence, *vel non*, of search mechanisms, is crucial for discovery.

Furthermore, by their own admission below, Defendants have provided no information at **all about** the storage and retrieval of ESI concerning any topics others than "financial transfers to the PFLP" and "payments to prisoners or families of the deceased [terrorists]." Defendants' claim below that this limitation is based on statements made by Plaintiffs' counsel at the Rule 26(f) conference and "the allegations in the FAC" is baseless. Plaintiffs counsel said nothing about any such limitation, and the allegations in the FAC clearly relate to **multiple** other topics (as just one example: all the other types of material support Defendants provided the PFLP beyond funding) for **each** of which Defendants should have provided details of their ESI storage and retrieval.

Finally, Defendants' claim below that they limited their ESI storage and retrieval disclosures regarding the merits in light of "the jurisdictional discovery previously sought by Plaintiffs," simply makes no sense.

Defendants' Position:

Defendants anticipate that certain documents and information that will be requested by Plaintiffs are ESI. It is likely that certain documents Defendants anticipate requesting from Plaintiffs (i.e., medical records) may involve ESI.

As set forth below, as is common in any complex litigation where electronic documents from organizational defendants or governmental entities are at issue, Defendants anticipate negotiating an ESI Protocol with Plaintiffs. Indeed, Defendants' discussion of such a protocol (which they initially proposed as a joint statement, but which was dismissed out-of-hand by Plaintiffs), contemplates the production of documents in advance of the parties entering into an ESI Protocol.

The same can be said for Plaintiffs' allegation that "Defendants have **already** violated their disclosure obligations." As an initial matter, Defendants' counsel did not ignore Plaintiffs' November 20 request about their clients' information management systems. Information responsive to that request (which was made in the context of "[t]he instructions to Section 6(g) of the Court's model scheduling order") was provided to Plaintiffs in Defendants' December 1 draft of this scheduling order, supplementing information provided years ago by Defendants during voluntary jurisdictional discovery production as explained below.

The PA and PLO are governmental entities with different agencies and departments, and like most governments, there is no one system or database where all information maintained by the PA and PLO are stored. *Cf. McKinley v. F.D.I.C.*, 807 F. Supp. 2d 1, 6-7 (D.D.C. 2011) (requests for government information must be reasonably tailored in light of the large volume of information stored by a government across various agencies, departments, and systems); *Caetano v. IRS*, No. 1:22-CV-00837, 2023 WL 3319158, at *6 (E.D. Cal. May 9, 2023) (same), *report and recommendation adopted*, 2023 WL 4087634 (E.D. Cal. June 20, 2023); *Brown v. Chaney*, 469 U.S. 1090, 1096 (1984) (Burger, C.J., dissenting from the denial of certiorari) (noting decisions holding that "sweeping requests for all information in the government's files are not 'specific'").

Thus, during the Rule 26(f) conference, counsel for Defendants asked Plaintiffs' counsel to identify the types of documents and information they intended to seek from Defendants.  Based on the response of Plaintiffs' counsel, the allegations in the FAC, and the jurisdictional discovery previously sought by Plaintiffs, Defendants understood that there are two main categories of information and documents that Plaintiffs have indicated that they intend to seek from Defendants: (1) documents relating to financial transfers to the PFLP; and (2) documents relating to payments to prisoners or families of the deceased.

Guided by that understanding, Defendants' counsel obtained a first wave of ESI-related information from Defendants[6] which Defendants provided in their inserts to the proposed scheduling order.  Specifically, Defendants disclosed that at least some of those two categories of documents and information are stored and used in electronic formats in the ordinary course of business, whereas many other such documents are maintained as paper files.  In addition, as to the financial transfers, through an interrogatory response verified by the PA's then-Deputy Minister of Finance on March 23, 2023, Defendants previously disclosed that the "[Palestinian National Fund] maintains documentation relating to payments made by or on behalf of the PLO and/or PNF, including payments to the PFLP by the PLO and/or PNF."  Defs' Objs. & Ans. To Pls.' First Interrog. ("Response") at 6, attached hereto as Exhibit C.  As further explained in that Response, "the PNF maintains complete and accurate records of the PNF's payment flows, including for the

---

[6] "[L]ike an initial client interview, the custodian interview can be an iterative process, requiring follow up. Sedona Conference, The Sedona Conference "Jumpstart Outline:" Questions to Ask Your Client & Your Adversary to Prepare for Preservation, Rule 26 Obligations, Court Conferences & Requests for Production (2011)." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 927 (N.D. Ill. 2021). Once Plaintiffs begin propounding discovery requests, Defendants will continue working with relevant custodians, as necessary, to obtain and produce responsive information.

time period specified in the Interrogatory," which was November 18, 1999 through November 18, 2014. *Id.* at 3, 5. Thus, as the Response makes clear, the documents relating to financial transfers to the PFLP, both electronic and paper files, are maintained by the PNF, and the PNF has preserved these files going back to at least 1999, although Defendants dispute the relevance of such information going back so many years before the 2014 attack at issue.

Likewise, as disclosed during jurisdictional discovery, documents relating to payments to families of prisoners or the deceased also include ESI. Again, as the FAC acknowledges, Defendants have already produced documents reflecting payments to families of prisoners and the deceased, including documents reflecting payments to the families of Uday Abu Jamal and Ghassan Abu Jamal. FAC ¶¶ 22-23. Moreover, during jurisdictional discovery, Defendants provided Plaintiffs with discovery that addressed how their files were organized and maintained in the ordinary course of business. For example, Plaintiffs were provided with a transcript of the July 29, 2021 deposition of Farid Ghannam, then-Deputy Minister of Finance, where Mr. Ghannam testified as a Rule 30(b)(6) witness for Defendants on the topic of payments made to families of deceased individuals who were involved in specified attacks. Mr. Ghannam's testimony addressed the files of the Martyrs and Wounded Affairs, including ESI, and the various employees responsible for such files. Farid Ghannam Dep. Tr. at 31:03-34:04 (July 29, 2021) (produced to Plaintiffs on January 10, 2022). Plaintiffs were also provided with transcripts of the July 27 and 28, 2021 deposition of Abdel Jabbar Salem, Director of Salary and Financial at the Ministry of Finance, where Mr. Salem testified as a Rule 30(b)(6) witness for Defendants on the topic of prisoner payments. As Mr. Salem testified, the prisoner payment records are kept in the

ordinary course of business by the Ministry of Finance on CD. Abdel Jabbar Salem Dep. Tr. at 31:22-32:09 (July 27, 2021) (produced to Plaintiffs on January 10, 2022).

*First*, in light of the above, it is clear that Defendants have not violated any disclosure obligations. To the contrary, Defendants' counsel is conversant with how potentially relevant documents and information are stored, and this information has likewise been provided to Plaintiffs' counsel. Plaintiffs fault Defendants for not perfectly anticipating all discovery that Plaintiffs will seek from Defendants, but "[c]ourts cannot and do not expect that any party can meet a standard of perfection" regarding electronic discovery. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 461 (S.D.N.Y. 2010). This is especially true where Defendants have provided ESI information for financial transfers made to the PFLP – the categories of documents that were discussed in the Rule 26(f) conference and alleged in the FAC. Indeed, Plaintiffs recognize in their supplemental brief in opposition to Defendants' motion to dismiss that the crux of their claims is support of the PFLP as an organization. ECF No. 157 at 9. Defendants have provided ESI information for financial transfers they made to the PFLP, and Plaintiffs have not identified any other categories of documents for which they requested ESI information but Defendants were unwilling to provide.

Plaintiffs also try to now downplay the substantial jurisdictional discovery that they received in this case, but their current position ignores the representation they made to the Court with Defendants in a joint status report that the parties had reached "an agreement" pursuant to which Defendants would share certain jurisdictional discovery with Plaintiffs. ECF No. 21, ¶ 4. It is also ironic that Plaintiffs now claim that this discovery is of little "use" in this case when they rely on such material for the allegations in their FAC. *See, e.g.,* FAC ¶¶ 22-23.

*Second*, Plaintiffs' claims that Defendants have not preserved relevant information and documents are baseless, and nonetheless belied by the information that has already been provided in discovery. Plaintiffs' rank speculation that Defendants did not even issue a litigation hold rings as hollow today as it did when Plaintiffs' counsel cast similar unsupported aspersions at the end of 2022/beginning of 2023. As Defendants have repeatedly represented, they "are aware of and complying with their document preservation obligations." ECF No. 80, ¶ 29; *see also* ECF No. 90 at 6-7; Hr'g Tr., ECF No. 94, at 16 (July 27, 2023). Such representations are sufficient to address Plaintiffs' generalized concerns of document preservation. *See PacifiCorp v. United States Env't Prot. Agency*, No. 13-cv-02187, 2013 WL 5799953, at *5 (D. Colo. Oct. 28, 2013) (denying motion for an order compelling preservation, explaining that the movant had "presented no evidence that Defendant has or will destroy any records related to the requests" and that "Defendant has represented to the Court that it is aware of its obligations").

*Third*, as to Plaintiffs' claims that Defendants' Rule 26(a) disclosures are somehow deficient, this challenge is not appropriately litigated in the context of the proposed scheduling order. Indeed, it is telling that Plaintiffs did not raise any alleged deficiencies with Defendants' disclosures until December 3, 2025, the date the proposed scheduling order was originally due, and only in the context of this filing. Specifically, they did not seek a telephonic or in-person meet and confer with Defendants' counsel, nor did they follow any of the other procedures for pursuing a discovery dispute set forth in this Court's Civil Practice Standards.

Leaving aside the procedural infirmities with Plaintiffs' challenge to Defendants' Rule 26(a) disclosures, their claims that Defendants' Rule 26(a) disclosures are "grossly defective" is also substantively without merit. Consistent with 26(a)(1)(A)(ii), Defendants identified the

categories of documents that they may use to support their claims or defenses in the case, and moreover, in light of the discovery that Plaintiffs have already propounded and Defendants have already provided, it strains credulity for Plaintiffs to argue that they are unable to make an informed decision about which documents may need to be examined. *See, e.g.*, *3M Co. v. Kanbar*, No. C06-01225, 2007 WL 1725448, at *1 (N.D. Cal. June 14, 2007) (holding that document "categories as defined in the initial disclosures were adequate to meet the requirements of Fed. R. Civ. P. 26(a)(1)(B), and that [opposing party was] improperly demanding a trial exhibit list as an initial disclosure").

ESI Protocol:  Defendants anticipate that at least some of the documents and information to be produced in discovery are stored and used in electronic formats in the ordinary course of business. Defendants are not aware of any issues concerning the preservation, identification, disclosure, discovery, or cost of production of ESI at this time. Defendants anticipate negotiating and entering into an ESI Protocol with Plaintiffs that will govern, inter alia, the anticipated form(s) of electronic discovery, procedures for minimizing and resolving discovery disputes, and how to assert and resolve claims of confidentiality and/or privilege, and otherwise agree to meet and confer about the need for and/or format of any additional custodians, search terms, or other ESI-related issues.

Defendants anticipate that, unless otherwise discussed and agreed in advance of production (including but not limited to by way of entering into an ESI Protocol), electronically-stored files shall be produced in TIFF, JPEG, or PDF format, with the exception of Excel or similar spreadsheets and audio, video, or similar media files, which will be produced in native format. Documents containing color shall be produced in color. Defendants further anticipate that

documents produced in TIFF, JPEG, or PDF format will include Bates numbers and any

confidential designations, and the parties will make reasonable efforts to avoid obscuring any part

of the underlying image with the Bates numbers and confidentiality designations. Moreover,

Defendants anticipate that documents produced in native format will be produced with an

accompanying TIFF image slip-sheet containing the Bates number of the document, stating that

the document has been produced in native format, and stating the confidentiality designation (if

any) of the document. To the extent the parties have issues or concerns with a production or the

form of a production, they should meet and confer (either before and/or after production) in a good

faith effort to resolve those issues or concerns before raising them with the Court.

h.      Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

The parties have discussed settlement.  However, at this time it appears the chances of a

settlement are non-existent or exceedingly remote in the near term.

### 7. CONSENT

The parties have not consented to the exercise of jurisdiction of a magistrate judge.

### 8. DISCOVERY LIMITATIONS

a.      Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.  **Court: presumptive limits on depositions, 35 interrogatories**

Plaintiffs' position regarding depositions:

The presumptive limit on the total number of depositions should apply. However, Plaintiffs

will need Rule 30(b)(6) testimony at two different stages during the discovery period. Though

most Rule 30(b)(6) topics will need to be addressed toward the end of the discovery period (e.g.,

merits issues and facts needed to foundationalize evidence obtained during discovery), Plaintiffs

also require some Rule 30(b)(6) testimony at the outset of discovery, regarding the existence, location and storage of relevant categories of documents (including ESI), and the identities of witnesses. This preliminary Rule 30(b)(6) testimony is necessary for two reasons:

*First*, as discussed, Defendants have violated their obligations to describe **properly-defined categories** and provide **the locations** of documents in their possession, and to provide the details of the **storage and retrieval** of information on the computer systems;

*Second*, Defendants have also blatantly violated their duty under Rule 26(a)(1)(A)(i) to provide "the name … of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Defendants' Initial Disclosures do not name of **<u>any</u>** such individuals. Instead, Defendants merely reference **<u>unnamed</u>** "representatives" from various PA and PLO departments. (Ex. B at pp. 2-3, referencing anonymous "representatives" from the Palestine National Fund, the PA Communication Ministry, the PA General Intelligence Service, and the "'Martyrs' Institute").

It is black-letter law that this type of "disclosure" violates Rule 26(a)(1)(A)(i). "Categorical identification of unnamed 'corporate representatives' is insufficient under Rule 26(a)(1)(A)(i) ... Defendant's use of generic categories of unnamed individuals could apply to many individuals within its company and **does not advance the goal of exchanging basic discoverable information about individuals** likely to have discoverable information Defendant may use to support its claims or defenses. **It also impedes the goal of eliminating the need for serving and responding to separate written discovery requests to obtain this information**." *Berry v. Olson*

*Assocs. P.C.*, 2025 WL 3089784, at \*2 (D. Utah Nov. 5, 2025) (cleaned up) (emphasis added).[7] "An adverse party **should not have to guess** which undisclosed witnesses may be called to testify." *Poitra v. Sch. Dist. No. 1*, 311 F.R.D. 659, 663 (D. Colo. 2015) (cleaned up) (emphasis added).

Defendants have had years to investigate this case. They promised this Court in 2021 that they had imposed a litigation hold, and they have long known that their Initial Disclosures would be due on November 26, 2025. There is no excuse for Defendants' blatant violation of their obligations to disclose witnesses, documents, and details of their ESI storage and retrieval systems. The fastest and simplest way to remedy Defendants' disclosure failures is to permit Plaintiffs to obtain the missing information through a Rule 30(b)(6) deposition now, without prejudice to Plaintiffs' right to take another Rule 30(b)(6) deposition later in the case. "[A] party may notice multiple 30(b)(6) depositions on non-overlapping topics, but it may not notice multiple 30(b)(6) depositions with overlapping topics" and each such notice counts toward the 10-deposition limit). *HVAC Tech. LLC v. Southland Indus.*, 2016 WL 11753779, at \*1 (N.D. Cal. Apr. 8, 2016).

Accordingly, if Rule 30(a)(2)(A)(ii) would otherwise bar them from taking two Rule 30(b)(6) depositions of each Defendant,[8] Plaintiffs request leave to do so.

Defendants' position regarding depositions:

---

[7] Defendants fail to cite any case from within **this Circuit** approving this type of witness disclosure. Defendants' attempt to take refuge in the fact that Plaintiffs "disclosed as witnesses 'current or former employees of the State of Israel' and 'current or former employees of the United States government' 'who may have knowledge of the facts set forth in the FAC'" fails, because – unlike Defendants' witnesses – those are potential third-party witnesses who are currently unknown to Plaintiffs.

[8] "[L]egal authority is split as to whether Rule 30(a)(2)(A)(ii) applies to Rule 30(b)(6) depositions." *Novitzky v. Transunion LLC*, 2025 WL 1723168, at \*2 (C.D. Cal. May 12, 2025) (cleaned up). It appears that the Tenth Circuit has never addressed this question.

The presumptive limits on the number of depositions should apply. Plaintiffs' proposal that they should be granted leave to take Rule 30(b)(6) testimony at "two different stages during the discovery period" is unsupported by any caselaw, and Plaintiffs have failed to even try to argue why successive Rule 30(b)(6) depositions are necessary or appropriate. At a minimum, their request is premature. Courts in this Circuit have found that the "majority rule is that Rule 30(a)(2)(A)(ii) applies to Rule 30(b)(6) depositions since '[t]here is nothing in the text of Rule 30 that supports the conclusion that Rule 30(b)(6) depositions should be treated differently from depositions of individuals.'" *City of Las Cruces v. United States*, No. 17-809, 2021 WL 330062, at *6 (D.N.M. Feb. 1, 2021) (collecting cases), *objections overruled*, 2021 WL 1890132 (D.N.M. May 11, 2021). The *Las Cruces* court reasoned that "[e]xempting Rule 30(b)(6) depositions from Rule 30(a)(2)(A)(ii) undermines its cost reduction and harassment-prevention purposes" and "disincentivizes litigants to notice all of their topics at once, opens the door for them to wield Rule 30(b)(6) depositions and their concomitant expenses as vexatious cudgels against corporations, and removes courts as the balancers of the costs, benefits, and fairness of additional Rule 30(b)(6) depositions." *Id.* at *8.

The court's rationale applies with greater force here where Defendants are foreign entities. "Taking serial depositions of a single corporation may be as costly and burdensome, if not more so, as serial depositions of an individual . . . . [A]llowing for serial depositions, whether of an individual or organization, provides the deposing party with an unfair strategic advantage, offering it multiple bites at the apple, each time with better information than the last." *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 235 (E.D. Pa. 2008).

Accordingly, the Court should not permit Plaintiffs to pursue such a strategy, and certainly not at this time before depositions have even commenced. To the extent Plaintiffs believe they need a second deposition, they should first meet and confer with Defendants, and to the extent a dispute exists, they should seek leave of Court at the appropriate time.

The Court should also reject Plaintiffs' effort to manufacture a dispute over Defendants Rule 26(a)(1)(A)(i) disclosures.  Plaintiffs first alleged that Defendants "violated their duty" under the Rule in a draft of this proposed scheduling order, which is a wholly improper vehicle for taking issue with initial disclosures. Moreover, Plaintiffs have not raised the matter directly with Defendants and have not sought to undertake any "good faith efforts to confer" with Defendants, as this Court's rules require. *See, e.g.*, Sections V & VI.4, D. Colo. Uniform Civil Practice Standards of the United States Magistrate Judges. To the extent Plaintiffs believe Defendants' disclosures are inadequate, they should first meet and confer with Defendants, and to the extent a dispute exists, they should seek relief from the Court at the appropriate time.

In any event, Defendants have fully complied with their duties under Rule 26(a)(1)(A)(i). Where an organizational or "corporate party identifies its 'corporate representatives' or other generic categories of employees as individuals likely to have discoverable information the disclosing party may use to support its claims or defenses," that is sufficient so long as "the subjects of information are disclosed, and the information is corporate in nature and could be elicited from any number of corporate representatives." *See, e.g.*, *Garth v. RAC Acceptance E., LLC*, No. 1:19-CV-192, 2021 WL 4432829, at *3 (N.D. Miss. Sept. 27, 2021). That is precisely what happened here.  Defendants named:  (1) a "[r]epresentative from the Palestine National Fund" who "[m]ay have information relating to any financial transfers to PLO factions, including the [PFLP]"; (2) a

"[r]epresentative from the Palestinian Ministry of Communications and Digital Economy" who "[m]ay have information relating to the regulation of television, radio, and/or internet"; (3) a "[r]epresentative from the Office of the Palestinian General Intelligence Service" who "[m]ay have information relating to intelligence and internal security in Palestine"; and (4) a "[r]epresentative from the Institute for the Care of the Families of the Martyrs and the Wounded, as in operation during the relevant time-period" who "[m]ay have information relating to payments to families of the deceased."

To be sure, each of these organizational representatives would be deposed pursuant to Rule 30(b)(6) and it is unnecessary at this juncture to determine the identity of the natural person who will serve as the corporate representative. *See, e.g.*, *Jones v. RealPage, Inc.*, No. 3:19-CV-2087-B, 2020 WL 6149969, at *2 (N.D. Tex. Oct. 19, 2020) ("Listing 'corporate representatives' of these entities was sufficient, in the first instance, to comply with Rule 26(a)'s initial-disclosure requirements."). At this point in time, Defendants "(1) 'do not know who within the entity would be well-positioned and available to testify,' (2) the information is 'corporate,' and (3) the disclosure still 'puts the nondisclosing party on notice as to the source of the testimony the disclosing party intended to elicit and the subject matter of that testimony.'" *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 2:23-CV-155-Z, 2025 WL 2053286, at *4 (N.D. Tex. July 21, 2025) (cleaned up). Under these circumstances, "[c]ourts have established that when a disclosing party means to disclose a *corporate* person and not a *natural* person, then disclosing an unnamed corporate representative of that entity meets Rule 26(a)'s requirement." *Id.*; *see also Equity Recovery Specialists LLC v. Select Portfolio Servicing Inc.*, No. CV-21-01889, 2023 WL 5278675, at *7 (D. Ariz. Aug. 16, 2023) (holding disclosure sufficient where

"Defendants did not identify Simon by name in their July 2022 disclosure—instead, she was generically identified as '[a] knowledgeable and qualified representative of Select Portfolio Servicing'"); *Pai v. Carnival Corp.*, No. 21-CV-23511, 2023 WL 2866380, at *4 (S.D. Fla. Mar. 7, 2023) ("It is immaterial that a corporate representative was not specifically identified because a representative would testify to corporate policies and documents at issue in the trial."); *Jones*, 2020 WL 6149969, at *2-3 (same). *Poitra*, relied on by Plaintiffs, does not compel a different conclusion, as at issue there was a failure to disclose by the **plaintiff**—who is supposed to know the details supporting his claims before filing—**and** the identity of a **natural person**, not of an **organizational** representative. *See* 311 F.R.D. at 661, 664-68. Plaintiffs, moreover, have shown no prejudice whatsoever at this early stage, particularly where they themselves disclosed as witnesses "current or former employees of the State of Israel" and "current or former employees of the United States government" "who may have knowledge of the facts set forth in the FAC."

Plaintiffs' position regarding interrogatories:

Plaintiffs request a limit of 50 interrogatories, for the following reasons: (1) Plaintiffs are faced in this case with the enormously difficult task of proving sub rosa criminal and conspiratorial activities that occurred outside of the United States. That would normally be a task for law enforcement or intelligence agencies, but Plaintiffs are private persons who lack any of the tools available to the government and law enforcement. Robust discovery is the only real tool Plaintiffs have to prove their case; (2) Defendants have already shown, by violating their initial disclosure obligations, that they will not be forthcoming or cooperative in discovery; (3) strict limits on paper discovery will require more depositions and more Rule 30(b)(6) deposition topics; (4) the activities

of Defendants that give rise to their liability here occurred over a lengthy period of time and involved multiple events and individuals, obtaining proof of which requires a relatively broad scope of discovery; (5) Plaintiffs assert four different theories of liability, each with its own factual elements that need to be proven; (6) Plaintiffs allege that Defendant provided the PFLP with a **wide range of different kinds** of material assistance (including funding paid the PFLP, funding paid directly to convicted PFLP terrorists, providing a safe geographical base for PFLP operations, and granting the PFLP a dedicated frequency for its radio station), each of which will require its own focused subset of discovery requests and (7) proving conspiracy and state of mind requires the use of circumstantial evidence, which in turns requires proof of multiple events and statements.

Defendants' claim that Plaintiffs' discovery should be limited because not all their theories of liability may survive the pending motion to dismiss effectively seeks to relitigate Defendants' request (denied by the Court) to stay discovery pending the motion to dismiss. Plaintiffs' legitimate need for discovery should not be "hedged" due to the pendency of the motion to dismiss.

Defendants' position regarding interrogatories:

The presumptive limits on the number of interrogatories should apply. A single isolated attack is at issue in this case, and by requesting 50 interrogatories, Plaintiffs are setting the stage for a fishing expedition. Plaintiffs offer nothing more to support their request than speculation and unsupported conclusions that more interrogatories may be necessary because this case involves conspiracy and "state of mind" allegations. Not surprisingly, Plaintiffs cite no authority for their request to double the number of permissible interrogatories at this stage of the proceedings. And to the extent Plaintiffs are relying on their assertion of four theories of liability, those are all the subject of a pending motion to dismiss. Therefore, Plaintiffs' four theories may not survive the

- 30 -

Court's dismissal decision. For the avoidance of doubt, Defendants have neither taken the position that "Plaintiffs' discovery should be limited because not all their theories of liability may survive" nor that their purported "need for discovery should [] be 'hedged' due to the pendency of the motion to dismiss." Defendants have simply stated that the presumptive limit should <u>not be doubled</u>, particularly where four theories of liability are at issue and not all four may survive the pending motion.

Leave of Court is required before Plaintiffs may serve additional interrogatories so that "a court may examine the circumstances before the parties propound an unreasonable number of interrogatories." *See, e.g.*, *Capacchione v. Charlotte-Mecklenburg Schs.*, 182 F.R.D. 486, 492 (W.D.N.C. Sept. 16, 1998). The party seeking leave must set forth a "particularized showing," and Plaintiffs have not, and cannot at this juncture, do so here. *Duncan v. Paragon Pub., Inc.*, 204 F.R.D. 127, 128 (S.D. Ind. 2001) (quoting *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 586 (D. Minn. 1999)). If Plaintiffs believe they need additional interrogatories, they should first meet and confer with Defendants, and to the extent a dispute exists, the parties may raise it with the Court at the appropriate time.

b.    <u>Limitations which any party proposes on the length of depositions</u>.    **Court: presumptive limits**

<u>Plaintiffs' position</u>: presumptive limits should apply, with the exception of Rule 30(b)(6) depositions, which may take longer depending on the number of topics and designees, which in turn will be a function of how much information is obtained through paper discovery.

<u>Defendants' position</u>: presumptive limits should apply to all depositions. As Plaintiffs concede above (deposition length "in turn will be a function of how much information is obtained through paper discovery"), discovery is "an iterative process," *Poitra*, 311 F.R.D. at 667, and, at

this stage, Plaintiffs have not shown good cause why depositions "may take longer." *See EEOC v. The Vail Corp.*, No. 7-cv-02035, 2008 WL 5104811, at *1, 3 (D. Colo. Dec. 3, 2008) (ordering "Rule 30(b)(6) deposition of Defendant shall be conducted in no more than seven (7) hours, regardless of the number of designees"). To the extent Plaintiffs believe they need more time, they should first meet and confer with Defendants.  And to the extent a dispute exists, the parties may raise it with the Court at the appropriate time.

c.      <u>Limitations which any party proposes on the number of requests for production and/or requests for admission</u>

**Court: 35 RPF's and 35 RFA's**

<u>Plaintiffs' position</u>:

Unlike interrogatories and depositions, the Federal Rules of Civil Procedure do not limit requests for production of documents and requests for admission. However, if the Court is inclined to impose such limits, Plaintiffs request limits of 50 requests for production and 50 requests for admission on substantive issues, **for all the reasons set forth above** regarding the number of interrogatories.

Plaintiffs also request there be no limit on requests for admission aimed at laying a factual foundation for the admission of evidence and testimony, or confirming the identity of an individual whose picture and/or voice is featured in print or audiovisual materials. Plaintiffs make this request because in other ATA cases, Defendants PLO and PA have (astonishingly) even contested the authenticity of their own records produced by them in discovery. "Defendants ... have refused to

stipulate to the authenticity of 177 exhibits **produced from Defendants' records**." *Sokolow v. Palestine Liberation Org.*, 60 F. Supp. 3d 509, 514 n. 6 (S.D.N.Y. 2014) (emphasis added).[9]

It would be wasteful, inefficient and unfair to force Plaintiffs to expend their limited interrogatories, document requests or depositions, merely in order to prove facts necessary to establish the admissibility of evidence or testimony, or to confirm the identity of an individual known to Defendants, if those matters cannot be legitimately contested by Defendants. Nor should this Court have to waste its time disposing of unnecessary motions in limine on these issue.

As just three of many possible examples:

1)      Defendants have produced some of the PLO's own files concerning the individual perpetrators, Uday Abu Jamal and Ghassan Abu Jamal. Those PLO files list both Uday and Ghassan as having the "military rank" of "combatant," and state that the PLO has designated each of them a "martyr of the Al-Aqsa Intifada" and is paying monthly benefits to their beneficiaries, after an initial "honorary payment of 6000 shekels" from PLO/PA President Mahmoud Abbas.

But based on their conduct in *Sokolow*, Defendants will not voluntarily concede the authenticity of these internal PLO files. Plaintiffs should be permitted to seek to compel them to do so using an RFA. Plaintiffs should also be permitted to use an RFA to show that Defendants do not dispute the facts necessary to establish that such files are "business records" within the meaning of Fed. R. Evid. 803(6). Notably, Defendants have refused to stipulate to the fact – stated explicitly

---

[9] Below, Defendants attempt to justify their refusal in *Sokolow* to concede the authenticity of their own documents because "those exhibits were the subject of motion practice in that court," citing to their summary judgment motion in *Sokolow*. But that's exactly the point: the *Sokolow* case got all the way to summary judgment with Defendants still disputing the authenticity of their own documents. Plaintiffs here seek to prevent a repeat of that scenario, by using RFAs foundationalize evidence.

in the PLO's own files – that Uday and Ghassan Abu Jamal had the "military rank" of "combatant,"

and the PLO is paying benefits to their beneficiaries. Defendants do not and cannot argue

otherwise, yet struck that proposed fact from a draft of this submission.[10]Likewise, Plaintiffs

should be permitted to use RFAs in the same manner to authenticate and establish the admissibility

of other records or documents exchanged or produce in discovery.

2)    Plaintiffs produced to Defendants televised audio and audiovisual interviews with

the wife and adult son of the late PFLP Deputy Secretary-General Abdel Rahim Malouh, in which

they confirm that Defendants (led by PA/PLO leader Abbas) obtained Malouh's release from

prison. That fact is highly relevant to Plaintiffs' claims, because obtaining Malouh's release –

thereby enabling him to continue his PFLP leadership activities – constituted the provision of

material support and resources – namely, "personnel" – to the PFLP. *Cf. United States v. Sattar*,

314 F. Supp. 2d 279 (S.D.N.Y. 2004) (provision of "personnel" as applied to terrorist leaders).

Defendants know Malouh's wife well, Malouh's son currently works in the PA's Foreign

Ministry, and Defendants have no basis to dispute that these audiovisual records are genuine.

Plaintiffs should be allowed to authenticate these recordings, and like materials, using RFAs.

3)    Plaintiffs have produced to Defendants a written statement by the late PLO leader

Saeb Erekat confirming that there had been no halt in the Defendants funding to the PFLP. This

statement is important, because Defendants almost never publicly mention their provision of such

---

[10] Defendants' complaint below that Plaintiffs would not stipulate that "Uday Abu Jamal and Ghassan Abu Jamal were not employed by the PA or PLO" rests on a false symmetry. Plaintiffs have not created any "business records" discussing whether Uday and Ghassan Abu Jamal worked for the Defendants.

funding. The statement was published on the official website of Fatah, which is the majority faction of the PLO led by Mahmoud Abbas. Were Erekat still alive, Plaintiffs would depose him.

Plaintiffs should be allowed to use RFAs to test whether Defendants have any good-faith basis to dispute that Erekat made this statement.

As the three illustrative examples above show, allowing Plaintiffs to freely use RFAs to establish a foundation for evidentiary materials, and confirm the identities of individuals featured in such materials, will greatly streamline the discovery process and eliminate disputes and litigation concerning matters that are not be legitimately contested. Other courts have ruled that requests for admission designed to establish authenticity or admissibility should not be limited. "There shall be no limit on the number of requests for admission for the authenticity of documents or admissibility of evidence, provided, however, that a party may apply to the Court for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure." *Fed. Trade Comm'n v. Whole Foods Mkt., Inc.*, 2007 WL 9605037, at \*1 (D.D.C. June 21, 2007).

Defendants' argument below that Plaintiffs are free to use their RFAs to establish authenticity and admissibility but such RFAs should be deducted from Plaintiffs' total limit is not a little cynical – why should Plaintiffs be forced to waste RFAs to establish foundational facts that are not in dispute? Moreover, Defendants' approach would give them an **incentive** to dispute authenticity and admissibility wholesale, in order to force Plaintiffs to burn through their RFAs.

Defendants' position:

The presumptive limits on the number of requests for production and requests for admission should apply. A single isolated attack is at issue in this case, and by requesting 50 requests for production and 50 requests for admission (in addition to 50 requests for

interrogatories), Plaintiffs are setting the stage for a fishing expedition. To the extent Plaintiffs are relying on their assertion of four theories of liability, those are all the subject of a pending motion to dismiss. Therefore, Plaintiffs' four theories may not survive the Court's dismissal decision. Defendants are also unaware of a conspiracy or "state of mind" exception to the presumptive limits.

To the extent Plaintiffs believe they need additional requests for production or requests for admission, they should first meet and confer with Defendants, and to the extent a dispute exists, the parties may raise it with the Court at the appropriate time.

Finally, Plaintiffs' request for "no limit on requests for admission aimed at laying a factual foundation" is overly broad and burdensome. Because Plaintiffs have not defined what constitutes "laying a factual foundation for the admission of evidence and testimony," it will likely become the exception that will swallow the limit on requests for admission imposed by the Court.[11] Plaintiffs instead try to cherry-pick examples, including from an unrelated decades-old litigation (where Defendants were represented by different counsel) and manufacture disputes where none currently exist. For example, Plaintiffs argue that Defendants refused to stipulate to the authenticity of certain exhibits in unrelated prior litigation, but fail to mention that those exhibits were the subject of motion practice in that court. *See* ECF No. 497 at 4, *Sokolow v. PLO*, No. 04-cv-397 (S.D.N.Y). Meanwhile, Plaintiffs themselves have failed to stipulate to certain basic facts—for example, that Uday Abu Jamal and Ghassan Abu Jamal were not employed by the PA or PLO.[12]

---

[11] Plaintiffs' reliance on *Whole Foods*, 2007 WL 9605037, at *1, fares no better. There, the court entered a stipulated joint proposed case management order with no explanation or analysis. Nor was the *Whole Foods* court bound by this District's requirement that "parties propos[ing] more than twenty-five (25) . . . requests for admission . . . should be prepared to support that proposal by reference to the factors identified in Fed. R. Civ. P. 26(b)(2)(C)" at the scheduling conference.

[12] Plaintiffs assert that "Defendants have refused to stipulate to the fact … that Uday and Ghassan Abu Jamal had the 'military rank' of 'combatant,' and the PLO is paying benefits to their beneficiaries."

Plaintiffs do not argue otherwise, yet struck that proposed fact from a draft of this submission. In sum, Plaintiffs' argument that they "should be permitted to use RFAs … to authenticate and establish the admissibility" of materials exchanged or produced in discovery is a red herring. Of course they can (just as parties can in any other case). Nothing is preventing Plaintiffs from serving RFAs seeking to authenticate interviews with Abdel Rahim Malouh's family (Pls.' example 2, *supra*) or a published statement made by Saeb Erekat (Pls.' example 3, *supra*). At this juncture, however, Plaintiffs have not shown good cause to <u>increase presumptive limits</u> based solely on hypotheticals and disputes that have not yet materialized. Plaintiffs' effort to "freely use RFAs" to "establish a foundation for evidentiary materials, and confirm the identities of individuals featured in such materials" is a recipe for discovery abuse.

d.      <u>Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:</u> November 24, 2026.

e.      <u>Other Planning or Discovery Orders</u>

The parties consent to service of discovery requests, responses, productions and notices via email to the attorney of record. The parties agree that any privilege log does not need to log any attorney-client privileged communications occurring after the time litigation commenced.

### 9. CASE PLAN AND SCHEDULE

a.      <u>Deadline for Joinder of Parties and Amendment of Pleadings</u>:

Plaintiffs' Position: 30 days after the district judge resolves Defendants' Motion to Dismiss, if and to the extent necessary, as permitted or directed by the district judge.

**Court: 30 days after a resolution of the motion to dismiss, but per the Federal Rules of Civil Procedure, leave is still needed**

---

Plaintiffs, however, have improperly demanded that Defendants stipulate to the accuracy of Plaintiffs' characterization of the document, rather than the authenticity of the document itself.

Defendants' Position: Plaintiffs have already filed an amended complaint and would require leave of Court to file a successive one.

b.      Discovery Cut-off:

Fact Discovery: December 31, 2026.

Expert Discovery: June 30, 2027.

c.      Dispositive Motion Deadline:   **Court: August 31, 2027**

The later of August 31, 2027, or 60 days after the Court's disposition of all discovery disputes.

d.      Expert Witness Disclosure

1. The parties shall identify anticipated fields of expert testimony, if any.

Plaintiffs:  Plaintiffs will use expert testimony to prove both liability and damages. If necessary, and at the relevant time, Plaintiffs may also submit expert declarations or testimony to the Court only (i.e., not the jury), for the purpose of establishing the factual foundation for the admission of other evidence or testimony.

Defendants: Defendants may use expert testimony to address both their purported liability and Plaintiffs' claimed damages.  If necessary, and at the relevant time, Defendants may also submit expert declarations or testimony to the Court only (i.e., not the jury), for the purpose of establishing the factual foundation for the admission of other evidence or testimony.

2. Limitations which the parties propose on the use or number of expert witnesses.

No more than 5 on liability, and 5 on damages, without good cause.

3.  The party with the burden on an issue shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before: March 15, 2027.

4.  The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:  May 17, 2027.

e.    Identification of Persons to Be Deposed:

| Plaintiffs anticipate deposing: | Estimated Time: |
|---|---|
| Defendant PLO | Depends on number of 30(b)(6) topics and witnesses |
| Defendant PA | Depends on number of 30(b)(6) topics and witnesses |
| Salam Fayyad | 7 hours |
| Ramzi Khoury | 7 hours |
| Adnan Damiri | 7 hours |
| Shareef Malouh or Amal Malouh | 5 hours |
| Mahmoud Abbas | 4 hours |
| Plaintiffs reserve the right to identify other potential deponents as discovery unfolds. | |
| Defendants anticipate deposing: | Estimated Time: |
| Some or all Plaintiffs | Up to 7 hours per Plaintiff |
| Defendants reserve the right to designate other potential deponents identified during the course of discovery | |

Plaintiffs' Position Regarding Defendants' Statement Below:  Plaintiffs disagree with Defendants' statement below, but will address any motion for a protective order if and when the need arises.

- 39 -

Defendants' Position:  Defendants do not agree that certain anticipated witnesses named by the Plaintiffs are appropriate, and reserve their right to move for a protective order at the appropriate time.  For example, certain high-level officials like PA President Mahmoud Abbas and Palestine National Fund Director-General Ramzi Khoury are protected by the apex doctrine. *See, e.g.*, *Naylor Farms, Inc. v. Anadarko OGC Co.*, No. 11-cv-01528, 2011 WL 2535067, at \*1-3 (D. Colo. June 27, 2011). "Absent extraordinary circumstances, high-level government officials should not be called to testify in federal court about their official actions" and "[g]enerally, high-ranking government officials have limited immunity from being deposed in matters about which they have no personal knowledge." *Denver Homeless Out Loud v. Denver, Colorado*, No. 20-CV-2985, 2020 WL 7230641, at \*1 (D. Colo. Dec. 8, 2020) (collecting cases). Thus, courts routinely limit deposition discovery from senior government officials. *See, e.g.*, *Tierra Blanca Ranch High Country Youth Program v. Gonzales*, 329 F.R.D. 694, 696 (D.N.M. 2019), *objections overruled,* No. 2:15-cv-00850, 2019 WL 1487241 (D.N.M. Apr. 4, 2019) (recognizing that the apex doctrine applies to government officials as well as corporate officers). Finally, to the extent applicable, Defendants cannot undertake to produce any witness who is not under their control.

## 10.  DATES FOR FURTHER CONFERENCES

a.      Status conferences will be held in this case at the following dates and times:

_____.

b.      A final pretrial conference will be held in this case on _____at o'clock _____m.  A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11.  OTHER SCHEDULING MATTERS

a.      Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.

The limitations on interrogatories, requests for admission, and requests for production, as described in Section 8.

b.      Anticipated length of trial and whether trial is to the court or jury.

15 day jury trial.

c.      Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, , La Plata County Courthouse 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.

None.

## 12.  NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13.  AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon a showing of good cause, including by showing that the opposing party caused unjustified delays in the discovery process.

DATED at Denver, Colorado, this 10th day of December, 2025.

- 42 -

BY THE COURT:

_____
United States Magistrate Judge

APPROVED:

/s/ Daniel K. Calisher
Daniel K. Calisher
Foster Graham Milstein & Calisher, LLP
360 South Garfield Street, 6th Floor
Denver, Colorado 80209
Telephone: 303-333-9810
Email: calisher@fostergraham.com
*Attorneys for Plaintiffs*


/s/ Jordan Factor
Jordan Factor
Allen Vellon Wolf Helfrich & Factor, P.C.
1600 Stout Street, Suite 1900
Denver, Colorado 80202
Telephone: 303-534-4499
Email: jfactor@allen-vellone.com
*Attorneys for Plaintiffs*


/s/ Asher Perlin
Asher Perlin
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Telephone: 786-233-7164
Email: asher@asherperlin.com
*Attorneys for Plaintiffs*


/s/ Gassan A. Baloul
Gassan A. Baloul
Mitchell R. Berger
Squire Patton Boggs (US) LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: 202-457-6000
Email: gassan.baloul@squirepb.com
Email : mitchell.berger@squirepb.com
*Attorneys for Defendants*