**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-03043-GPG-STV

SHELLEY LEVINE, et al.,

        Plaintiffs,

        v.

THE PALESTINE LIBERATION
ORGANIZATION and
THE PALESTINIAN AUTHORITY,

        Defendants.

---

**DEFENDANTS' SUPPLEMENTAL REPLY BRIEF IN SUPPORT
OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT UNDER RULE 12(b)(6)**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT............................................................................................................................ 3

I.      Plaintiffs' Claim For Aiding And Abetting Should Be Dismissed.................................... 3

II.     Plaintiffs' Claim For Conspiracy Liability Should Be Dismissed..................................... 7

III.    Plaintiffs' Primary Liability Claim Under 18 U.S.C. § 2333(a) Should Be
        Dismissed....................................................................................................................... 8

IV.     Plaintiffs Fail To Plausibly Allege Respondeat Superior Liability. ................................ 11

CONCLUSION........................................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfaro-Huitron v. Cervantes Agribusiness*,
　982 F.3d 1242 (10th Cir. 2020) ...............................................................................11, 12

*Ashley v. Deutsche Bank Aktiengesellschaft*,
　144 F.4th 420 (2d Cir. 2025) .......................................................................................1, 4

*Averbach v. Cairo Amman Bank*,
　2022 WL 2530797 (S.D.N.Y. Apr. 11, 2022)...........................................................11

*Brinkley v. Farmers Elevator Mut. Ins. Co.*,
　485 F.2d 1283 (10th Cir. 1973) ................................................................................12

*Finan v. Lafarge S.A.*,
　2025 WL 2504317 (E.D.N.Y. Aug. 29, 2025)........................................................4, 8

*Freeman v. HSBC Holdings*,
　57 F.4th 66 (2d Cir. 2023) ..........................................................................................7

*Gill v. Arab Bank, PLC*,
　893 F. Supp. 2d 542 (E.D.N.Y. 2012) ........................................................................9

*Gilmore v. Palestinian Interim Self-Gov't Auth.*,
　843 F.3d 958 (D.C. Cir. 2016)....................................................................................3

*Hakimyar v. Habib Bank Ltd.*,
　2025 WL 605575 (S.D.N.Y. Feb. 25. 2025)....................................................5, 8, 9

*Keren Kayemeth LeIsrael - Jewish Nat'l Fund v. Educ. for a Just Peace*,
　66 F.4th 1007 (D.C. Cir. 2023)...................................................................................6

*King v. Habib Bank Ltd.*,
　2022 WL 4537849 (S.D.N.Y. Sept. 28, 2022)...........................................................9

*Lavi v. UNRWA USA Nat'l Comm., Inc.*,
　2025 WL 2300038 (D. Del. Aug. 8, 2025) ................................................................6

*Lowell Staats Mining Co. v. Pioneer Uravan, Inc*,
　878 F.2d 1259 (10th Cir. 1989) ...............................................................................12

*Moses v. BNP Paribas*,
　2025 WL 2780803 (S.D.N.Y. Sept. 30, 2025)...........................................................5

*Moses v. Diocese of Colorado*,
    863 P.2d 310 (Colo. 1993).......................................................................................12

*Parizer v. AJP Educ. Found., Inc.*,
    2025 WL 2382933 (E.D. Va. Aug. 15, 2025)...........................................................6

*Raanan v. Binance Holdings Ltd.*,
    2025 WL 605594 (S.D.N.Y. Feb. 25, 2025)..................................................... *passim*

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013)........................................................................................8

*Schansman v. Sberbank of Russia PJSC*,
    565 F. Supp. 3d 405 (S.D.N.Y. 2021)......................................................................11

*Shatsky v. PLO*,
    2017 WL 2666111 (D.D.C. June 20, 2017)...................................................... *passim*

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    605 U.S. 280 (2025)...............................................................................................2, 7

*Sokolow v. PLO*,
    60 F. Supp. 3d 509 (S.D.N.Y. 2014)......................................................................2, 12

*In re Terrorist Attacks on Sept. 11, 2001*,
    298 F. Supp. 3d 631 (S.D.N.Y. 2018)........................................................................6

*In re Terrorist Attacks on Sept. 11, 2001*,
    2022 WL 4227151 (S.D.N.Y. May 3, 2022) ...........................................................10

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023)..........................................................................................1, 3, 4, 6

*Weiss v. Nat'l Westminster Bank, PLC*,
    993 F.3d 144 (2d Cir. 2021)......................................................................................9

*Wenz v. Memery Crystal*,
    55 F.3d 1503 (10th Cir. 1995) ..................................................................................2

*Zobay v. MTN Grp. Ltd.*,
    695 F. Supp. 3d 301 (E.D.N.Y. 2023) ....................................................................5, 8

**Statutes**

18 U.S.C. § 2333(a) .............................................................................................................8, 9

18 U.S.C. § 2339A................................................................................................................8

18 U.S.C. § 2339B .............................................................................................................8, 9, 10

18 U.S.C. § 2339C ...................................................................................................................8

**Other Authorities**

*In conversation with Salam Fayyad, former Prime Minister
     of Palestine* (Dec. 5, 2023) ..........................................................................................7

*Palestine elections: Talks collapse over formation of joint left-wing list*,
     Middle East Eye (Apr. 1, 2021)......................................................................................2

*PFLP calls on Abbas to halt security coordination with Israel*,
     Middle East Monitor (June 5, 2015)...............................................................................7

*Popular Front for the Liberation of Palestine*, Encyclopedia Britannica .......................7

## PRELIMINARY STATEMENT

Plaintiffs concede they allege no links between the PA and PLO and the <u>Attack</u> and instead base their claims entirely on Defendants' alleged support to the PFLP as an <u>organization</u>. Opp. 5-9. That alone forecloses both primary and secondary liability under the ATA, and *Shatsky*,[1] which rejected a look-alike theory of PFLP-support liability, reinforces the import of that concession.

ATA primary liability requires a connection to the Attack, either by express elements of ATA provisions that Plaintiffs now correctly abandon[2] or because the ATA requires that the defendant's own act be both violent in nature and the proximate cause of the Attack. ECF 151 at 13. ATA secondary liability likewise requires a concrete nexus to the Attack, an "'affirmative act' 'with the intent of facilitating the offense's commission,'" and "conscious, voluntary, and culpable participation in another's wrongdoing." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490, 493 (2023). Plaintiffs concede they have not alleged those elements and instead attempt to satisfy the alternative "high bar" of "pervasive, systemic, and culpable" conduct under *Taamneh*. *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 445 (2d Cir. 2025). They fail to meet *Taamneh*'s "high bar," however, because the FAC, at most, pleads Defendants' "knowledge, acquiescence, carelessness, indifference, [or] lack of concern" about PFLP actions, which cannot support ATA secondary liability. *Id.* at 443.

Plaintiffs argue, for the first time, that Defendants and the PFLP were two sides of the same organization, such that Defendants "are therefore liable for **all** PFLP attacks." Opp. 18. They claim that Defendants organize and fund the PFLP as an alter-ego to commit violence on their behalf. *Id.* No other plaintiff has ever made such an absurd claim, and for good reason. The PFLP

---

[1] *Shatsky v. PLO*, 2017 WL 2666111 (D.D.C. June 20, 2017), *vac'd on other gnds*, 955 F.3d 1016 (D.C. Cir. 2020).
[2] Opp. 16-17 (abandoning claims based on 18 U.S.C. §§ 2339A and 2339C, which require connection between alleged support and a terrorist attack).

is a secular Marxist-Leninist political party with minority representation on the Palestinian

Legislative Council.[3]  It opposes everything Defendants represent, including the two-state solution,

security cooperation with Israel, and the Oslo Accords (which created the PA).  No intelligence

agency or serious commentator has ever claimed Defendants control or direct the PFLP, and such

conclusory allegations should not be credited, even on a motion to dismiss.  *Wenz v. Memery

Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *Smith & Wesson Brands, Inc. v. Estados Unidos

Mexicanos*, 605 U.S. 280, 295 (2025).  The FAC, moreover, alleges the same general support that

the PLO has provided for the legitimate governance activities of all Palestinian political factions.

That support does not render Defendants liable for any and all wrongdoing by those factions.

On look-alike facts involving Defendants, *Shatsky* held that Defendants' alleged support

(nearly identical to that alleged here) for the PFLP was insufficient to hold Defendants liable under

the ATA for an attack.  That support did not proximately cause the attack because "no reasonable

jury could find that the PLO's payment of rent [for the PFLP] … 'caused' the bombing."  2017

WL 2666111, at *9.  The court also held that "after-the-fact payments are not sufficient for a

reasonable jury to conclude that defendants proximately caused" an attack.  *Id*. at *10.  *Shatsky*

rejected ATA liability because plaintiffs lacked evidence that the attacker "knew his family would

receive martyrdom payments" or that he "was motivated by the prospect of such payments."  *Id*.

Plaintiffs here do not even make such allegations or otherwise try to tie Defendants to the Attack.

*Sokolow* similarly held that post-attack financial support for the families of attackers

cannot, on their own, qualify as the proximate cause of an attack.  *Sokolow v. PLO*, 60 F. Supp. 3d

509, 517 n.11 (S.D.N.Y. 2014) ("A showing of support—even post-attack financial support to the

families of terrorists—is not sufficient to demonstrate that Defendants were somehow responsible

---

[3] *See, e.g.*, *Palestine elections: Talks collapse over formation of joint left-wing list*, Middle East Eye (Apr. 1, 2021),
https://bit.ly/3XJJUOv; *infra* note 4.

for the attacks."). *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 972-73 (D.C. Cir. 2016), also dismissed a case for failure to tie Defendants to the attack at issue. The great weight of cases supports dismissal of ATA primary-liability claims for lack of proximate cause. *See Raanan v. Binance Holdings Ltd.*, 2025 WL 605594, at *15-16 (S.D.N.Y. Feb. 25, 2025) (collecting cases holding that "providing [financial] services" to an FTO "does not constitute an act dangerous to human life"). The Supreme Court agreed with this principle when it rejected ATA secondary liability in *Taamneh* because "it is not enough … that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Taamneh*, 598 U.S. at 495.

Plaintiffs' other chief arguments fare no better. They make much ado about Defendants' citations to cases involving "commercial" defendants. Opp. 2-7. But no case—and certainly not the text of the ATA—supports their artificial distinction. *Taamneh* itself adopted the reasoning of the "leading case on civil aiding-and-abetting and conspiracy liability" that considered the liability of the live-in partner of a serial burglar. *Taamneh*, 598 U.S. at 485. *Taamneh* also does not distinguish entities from individuals, nor the commercial from the governmental. Plaintiffs also do not meaningfully distinguish the PFLP's role as one of many Palestinian non-governing political factions, or show that a government should be held liable for the independent actions of the political parties that participate in the country's political affairs. Opp. 8-9. The issue here is whether Defendants' alleged support for the PFLP caused or facilitated the Attack. Plaintiffs admit they have no such evidence and endeavor to plead around it. This Court should dismiss.

## ARGUMENT

### I.    Plaintiffs' Claim For Aiding And Abetting Should Be Dismissed.

There is no doubt that the Supreme Court's decision in *Taamneh*, 598 U.S. 471, both provides the proper framework for alleged facilitative conduct and forecloses secondary liability

in this case.  Plaintiffs correctly abandon any aiding-and-abetting theory that would require them to plausibly plead a discernable nexus to the Attack, because the FAC neither alleges Defendants' "conscious, voluntary, and culpable participation" in the Attack, nor an "affirmative act" by Defendants "with the intent of facilitating the [Attack's] commission."  *Id.* at 490, 493; *Finan v. Lafarge S.A.*, 2025 WL 2504317, at \*19 (E.D.N.Y. Aug. 29, 2025) (dismissing aiding-and-abetting claim where "Plaintiffs fail to allege that Defendants 'culpably associated themselves' with any of the attacks that caused injury to Plaintiffs and their relatives as required by *Taamneh*").  Plaintiffs' claim fails, moreover, because Defendants' mere "knowledge, acquiescence, carelessness, indifference, [or] lack of concern" about PFLP activities cannot on their own support JASTA aiding-and-abetting liability absent a plausible allegation of Defendants' "interested cooperation, stimulation, [and] instigation" in or of the Attack.  *Ashley*, 144 F.4th at 443; *see* ECF 151 at 4-5.

Because Defendants' alleged actions lack "a concrete nexus" to the Attack, Plaintiffs must plausibly plead that Defendants' participation was "'pervasive, systemic, and culpable' such that we can say the defendant aided every wrongful act."  *Ashley*, 144 F.4th at 445; Opp. 18.  The FAC, as alleged, "would necessarily hold defendants liable as having aided and abetted each and every [PFLP] terrorist act committed anywhere in the world" and "[u]nder plaintiffs' theory, any U.S. national victimized by [a PFLP] attack could bring the same claim based on the same [support] allegedly provided to [the PFLP]."  *Taamneh*, 598 U.S. at 501.  The FAC, however, fails to meet the "high bar" of "pervasive, systemic, and culpable" conduct.  *Ashley*, 144 F.4th at 445.  As *Finan* explains, "the ATA's pleading standard requires a more specific showing" for systemic and pervasive support than the types of broad allegations, untethered to the attack at issue, made in *Finan* or here—*i.e.*, that "Defendants' payments to ISIS in 2013-2014 … assumed an outsized role in financing ISIS violence through at least the end of 2017."  2025 WL 2504317, at \*20.

- 4 -

Plaintiffs rely on four cases (Opp. 18-19) to purportedly show pervasive and systemic

conduct. Each of those cases, however, addresses allegations of support provided "in an 'unusual

way'—designed to evade government detection and regulation," and therefore is inapposite.

*Raanan*, 2025 WL 605594, at \*22. In *Moses v. BNP Paribas*, the court found knowing and

substantial assistance where the defendants "<u>willfully violated sanctions laws</u> and deterred the

ability of the United States to identify and ascertain the identities of their customers." 2025 WL

2780803, at \*14-15 (S.D.N.Y. Sept. 30, 2025) (emphasis added). In *Raanan*, the defendants

"intentionally engaged in <u>a scheme to evade anti-terror financing regulations</u>." 2025 WL 605594,

at \*21 (emphasis added). In *Hakimyar v. Habib Bank Ltd.*, the court found that the defendant

provided "<u>non-routine banking services</u> to terrorists and their allies and that Defendant's

management 'subjectively intended to assist [Defendant's] terrorist customers in their effort to

harm Americans.'" 2025 WL 605575, at \*9 (S.D.N.Y. Feb. 25, 2025) (alterations in original and

emphasis added). Finally, in *Zobay v. MTN Grp. Ltd.*, the court found that plaintiffs pled

pervasive, substantial assistance where they provided "<u>embargoed</u> dual-use technologies" and took

a "leadership role in a procurement scheme" while knowing "that a significant portion of Irancell's

annual profits would flow to the IRGC and ultimately be used to fund terrorist operations." 695

F. Supp. 3d 301, 348 (E.D.N.Y. 2023) (emphasis added). By contrast here, the FAC neither alleges

that the support at issue—including funding, radio frequency, and internet service—was provided

in "an unusual way," nor pleads a "close nexus between the defendants' alleged assistance and the

attack[]" at issue. *Raanan*, 2025 WL 605594 at \*23. Indeed, the alleged support at issue is the

same support provided to all PLO factions. *See* ECF 151 at 2, 12, 15, 19, 24.

The Court should turn to *Shatsky*, 2017 WL 2666111, at \*2, 9, a case closely resembling

this one, for guidance. There, the court rejected nearly identical arguments that Plaintiffs make

- 5 -

here: that the PA's and PLO's provision of support to the PFLP, including funding, rent for a PFLP office, a car and apartment for a PFLP representative, and payments to the families of those responsible for the attack at issue, constituted conduct sufficient to hold Defendants liable for the attack allegedly carried out by the PFLP. *Shatsky* held that the alleged support was too attenuated from the attack at issue to support liability. The Court here should do the same.

Finally, Plaintiffs' contention that Defendants must be treated differently than commercial defendants because they are "ideological entities" (Opp. 3, 18, 20) finds no support in *Taamneh* and its progeny. *See also In re Terrorist Attacks on Sept. 11, 2001*, 298 F. Supp. 3d 631, 655 (S.D.N.Y. 2018) (holding plaintiffs fail to allege that the "tortious acts of the charity organizations … caused the 9/11 Attacks"). In *Keren Kayemeth LeIsrael - Jewish Nat'l Fund v. Educ. for a Just Peace*, 66 F.4th 1007, 1011, 1018 (D.C. Cir. 2023), the court affirmed dismissal of direct liability and aiding-and-abetting claims against an ideological defendant that "provides material support … to the Boycott National Committee, which was formed ... to coordinate the efforts of various Palestinian political parties, unions, associations, and other organizations to 'boycott[ ] Israel ... economically, academically[,] and diplomatically.'" In *Lavi v. UNRWA USA Nat'l Comm., Inc.*, 2025 WL 2300038, at *1, 10 (D. Del. Aug. 8, 2025), the court dismissed aiding-and-abetting and conspiracy claims against an ideological defendant with "'the stated mission of 'supporting the humanitarian work of the [UNRWA] through fundraising, advocacy, and community engagement in the United States.'" In *Parizer v. AJP Educ. Found., Inc.*, 2025 WL 2382933, at *2, 23 (E.D. Va. Aug. 15, 2025), the court dismissed aiding-and-abetting claims against an ideological defendant allegedly founded for the purpose of "provid[ing] Hamas with an effective propaganda and recruiting arm in the United States." And in *Shatsky*, plaintiffs' nearly identical allegations about Defendants being ideologically driven were insufficient to support ATA liability. *See*

*Shatsky*, No. 02-cv-2280 (D.D.C. Nov. 18, 2002), ECF 3 (Compl.) ¶ 28 ("the PLO has carried out

and utilized these terrorist attacks … as a means of advancing and achieving its political goals").

Those cases all considered the liability of "ideological entities" and all compel dismissal here.

## II.    Plaintiffs' Claim For Conspiracy Liability Should Be Dismissed.

Extraordinary claims require specific and detailed allegations.  Plaintiffs now propose the

wholly unsupported theory that, in the wake of the Oslo Accords, the PFLP and Defendants agreed

that the PA and PLO would form Palestine's legitimate government while the PFLP would act as

their secret outlet for terrorism.  The court "cannot take the allegation here at face value" because

Plaintiffs have "not said enough to make it plausible."  *Smith & Wesson*, 605 U.S. at 295.  Indeed,

the PFLP is undisputedly a Marxist-Leninist revolutionary group opposed to both security

cooperation with Israel and the two-state solution (which are the pillars on which the PA was

created).[4]  No one knowledgeable about Palestinian politics would claim the PFLP and Defendants

"share the same ideology," and Plaintiffs' theory would require believing that Oslo was a sham

from its inception and decades of political infighting, including PFLP personal attacks on

Presidents Arafat and Abbas, were window-dressing.  *See* ECF 76 at 29-31; ECF 151 at 25 & n.10.

Plaintiffs do not dispute that Defendants provided the PFLP with the same alleged support

provided to all political factions.  This undifferentiated support along with Defendants' advocacy

for releasing all Palestinians imprisoned by Israel—regardless of political affiliation—is not

evidence that Defendants and the PFLP were "pursuing the same object" with a "common intent."

*Freeman v. HSBC Holdings*, 57 F.4th 66, 79-80 (2d Cir. 2023); *Shatsky*, 2017 WL 2666111, at \*9-

---

[4] *See, e.g.*, ECF 151 at 25 (collecting authority); *In conversation with Salam Fayyad, former Prime Minister of Palestine*, at 3 (Dec. 5, 2023), https://bit.ly/496diDV ("There are some factions within the PLO itself that beg to differ with the PLO, most notably the PFLP."); *Popular Front for the Liberation of Palestine*, Encyclopedia Britannica, https://bit.ly/4pWFqzR; *PFLP calls on Abbas to halt security coordination with Israel*, Middle East Monitor (June 5, 2015), https://bit.ly/4q5iGxW.

10 (holding Defendants' incidental support to the PFLP, including paying rent for a PFLP office and "after-the-fact" social services payments were not substantial factors for causation); *Zobay*, 695 F. Supp. 3d at 355 (dismissing conspiracy due to conclusory allegations of common intent).

The recent cases cited by Plaintiffs make this point clear. *Finan*, 2025 WL 2504317, at *21-22, found a valid civil conspiracy where the cement company executives had *already* pled guilty to a criminal conspiracy—based on emails seeking a "durable agreement" with ISIS that ultimately resulted in "a formal revenue-sharing agreement" with ISIS. In that written contract, ISIS agreed to certain prices for cement, pledged to provide security for the company, and even promised to stop the company's competitors from importing cement into the region. *Id*. Plaintiffs in this case allege ***nothing*** remotely akin to the ***express agreements*** alleged in *Finan*. Similarly, *Hakimyar*, 2025 WL 605575, at *10, involved payments by Habib Bank to ***al-Qaeda***—not generalized support by a government to all of the nation's political parties. *Cf. Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013) ("the fact remains that Iran is a government, and as such it has many legitimate agencies, operations, and programs to fund").

### III.    Plaintiffs' Primary Liability Claim Under 18 U.S.C. § 2333(a) Should Be Dismissed.

Plaintiffs correctly abandon their material-support theories based on alleged violations of 18 U.S.C. §§ 2339A and 2339C because the FAC does not plausibly allege that Defendants knew or intended that any resources provided would be used to prepare for or to carry out the Attack. Opp. 16-17 (conceding "it is unnecessary for Plaintiffs, or the Court, to address Defendants' arguments that Plaintiffs have failed to plead violations of §§ 2339A or 2339C").

Plaintiffs' own cases, moreover, dispose of their remaining material-support theory under § 2339B. As numerous courts have explained, the "Second Circuit … has since found *Boim*"— relied on by Plaintiffs (Opp. 15)—"'inapposite,' observing that the framework that JASTA adopted for aiding-and-abetting claims had replaced the analysis in *Boim*." *Raanan*, 2025 WL

605594, at \*16 (citing *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 499 n.14 (2d Cir. 2021)); *see*

*also King v. Habib Bank Ltd.*, 2022 WL 4537849, at \*4 (S.D.N.Y. Sept. 28, 2022) ("Later Second

Circuit precedent has recognized that liability of the kind recognized in *Boim* is now properly

lodged under the secondary liability provision of JASTA.").  *Shatsky*, a case premised on nearly

identical allegations of "material" support, further rejected Plaintiffs' argument that the support at

issue need not actually be material to violate the "material support" statute.  *Contra* Opp. 16.

Moreover, even if Defendants' "alleged conduct violates a material support statute, *see* 18

U.S.C. § … 2339B," which it does not, the "'provision of material support to a terrorist

organization does not invariably equate to an act of international terrorism,'" as all ATA primary-

liability claims require.  *Raanan*, 2025 WL 605594, at \*15.  As Defendants explained (ECF 58 at

34; ECF 151 at 13-20), "a suit for damages under the ATA 'is akin to a Russian matryoshka doll,

with statutes nested inside statutes.'"  *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 553 (E.D.N.Y.

2012).  For a primary liability claim under 18 U.S.C. § 2333(a), in addition to showing a violation

of § 2339B, Plaintiffs must also show (1) proximate cause, and (2) that the support provided (i)

"involve[d] violence or endanger[ed] life," and (ii) "manifest[ed] the apparent intent required by

§ 2331(1)(B)."  *Raanan*, 2025 WL 605594, at \*15; *see Weiss v. Nat'l Westminster Bank, PLC*, 993

F.3d 144, 162 (2d Cir. 2021) (affirming grant of summary judgment where there was no "evidence

that the transfers by [defendant] involved violence, or danger to human life" because, for example,

they were not "explicitly *identified as payments for*" violence like "*suicide bombings*"); *Hakimyar*,

2025 WL 605575, at \*5.  Plaintiffs have failed to make these requisite showings.

On proximate cause, Plaintiffs have failed "to supply nonconclusory allegations that the

defendants' actions were a 'substantial factor' in causing the [Attack] … and that the [Attack]

would have been 'reasonably foreseeable' to the defendants as a 'natural consequence' of the

defendants' actions." *Raanan*, 2025 WL 605594, at *17 (collecting ATA cases finding no proximate cause). *Shatsky*, *supra* 2, 5-6, rejected Plaintiffs' look-alike theory of primary liability under § 2339B based on indistinguishable alleged support provided by Defendants to the PFLP. 2017 WL 2666111, at *9-10 (incidental support to PFLP, including paying rent for an office, was not a substantial factor in the sequence of causation, because there was no connection between the support and attack); *see also* ECF 58 at 30-33; ECF 76 at 22-25; ECF 151 at 13-17.

Plaintiffs have also failed to show that any of the support alleged "involve[d] violence or endanger[ed] life" and that it manifested the terroristic "intent required by § 2331(1)(B)." *Raanan*, 2025 WL 605594, at *15. *Raanan* explains that the great weight of authority dismisses primary liability claims when facilitative conduct is alleged—because "plaintiffs do not contend that the defendants' conduct was violent" and do not explain why any of the support alleged "constitute[d] an act dangerous to human life." *Id.* at *16. Plaintiffs' reliance on three cases is unavailing.

In *In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 4227151 (S.D.N.Y. May 3, 2022) (Opp. 8, 15), the court recounted the unparalleled decades of Sudanese support to al Qaeda, including assistance relocating al Qaeda to Sudan, the provision of uniformed soldiers to protect bin Laden and al Qaeda training camps, passports, the ferrying of weapons on government planes, and brokering an "agreement with Iran and Hezbollah to transfer their vast terrorist expertise to al Qaeda." *Id.* at *5-7. The court also emphasized Sudan's shared goal of killing Americans, as evidenced by al Qaeda's myriad large-scale attacks leading to September 11. *Id.* at *8-11. Finally, the court noted that the "September 11 Attacks required incredible resources and a sophisticated organization" and that "Al Qaeda's organizational expertise existed because of Sudan." *Id.* at *10. The same cannot be said here. In contrast to Sudan, which provoked U.S. economic and military responses and earned a state sponsor of terror designation, the paucity of the FAC's support

- 10 -

allegations is further highlighted by the U.S. view of the PA as a "key partner of the United States

and Israel in … combating terrorism" with which it "cooperat[es] on [the] training of PA security

forces" (ECF 73 at 2 n.2). *Contra* Opp. 15 ("The degree to which giving material support to a

terrorist group is dangerous to human life depends on the nature and scale of the support.").

In contrast to *Miller v. Arab Bank* (Opp. 3, 13-15), Plaintiffs here do not allege that

Defendants provided support that was "clearly earmarked for terrorist activity." *Raanan*, 2025

WL 605594, at \*16. *Schansman v. Sberbank of Russia PJSC*, 565 F. Supp. 3d 405, 416 (S.D.N.Y.

2021), is likewise inapposite. There, the court considered a primary-liability material support

count, and held that "the funds raised were used to purchase lethal weapons prior to the attack [at

issue]" and therefore, "Defendants committed an act of 'international terrorism' within the

meaning of 18 U.S.C. § 2331(1)." In contrast, Plaintiffs do not tie any of the alleged support to

the Attack. *Schansman*, moreover, is aberrational and courts have found it to be distinguishable

on its facts. *See, e.g.*, *Raanan*, 2025 WL 605594, at \*16 (collecting cases in tension with

*Schansman*); *Averbach v. Cairo Amman Bank*, 2022 WL 2530797, at \*19 (S.D.N.Y. Apr. 11, 2022)

(R&R) (distinguishing *Schansman*). Finally, Defendants note the irony of Plaintiffs extensively

relying on commercial cases like *Miller* and *Schansman* following nearly six pages of criticism of

Defendants' "Meritless Reliance on Cases Involving *Commercial* Defendants" (Opp. 2-7).

**IV.    Plaintiffs Fail To Plausibly Allege Respondeat Superior Liability.**

Plaintiffs' respondeat superior theory fails for much the same reason as their conspiracy

claim: it lacks specific allegations that would make the theory plausible. Plaintiffs' chief case,

*Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242 (10th Cir. 2020), highlights the FAC's

deficiency. In *Alfaro-Huitron*, the principal and agent executed a written agreement that "set forth

the categories of workers … the type of work …, the number of workers, and the dates on which

they would be working." *Id*. at 1256-57. The agent agreed, and the principal acknowledged, that

- 11 -

the contracts would be submitted to the government, and that the contracts had to be binding. *Id*. The "acts" and "communications" by the principal created the apparent authority. *Id*. at 1251.

Plaintiffs concede there is no relationship or agreement between Defendants and the Attackers themselves. Opp. 10. And Plaintiffs allege no actual contracts or written agreements in which Defendants grant the PFLP the ability to act on their behalf. The PFLP has never acknowledged that Defendants have any "right to control" its actions. *Moses v. Diocese of Colorado*, 863 P.2d 310, 324 (Colo. 1993) (the "most important factor in determining whether a person is an agent" is "the right to control"). Nor do Plaintiffs allege any specific actions by Defendants that could lead the PFLP to believe it could act on behalf of Defendants. Indeed, *Sokolow* held that respondeat superior and vicarious liability theories could not even apply to senior officials of the PLO's largest political faction, Fatah. 60 F. Supp. 3d at 520 n.12. The idea that Defendants' political antagonists at the PFLP would agree to cede any level of control to Defendants is facially absurd—and unsupported by any plausible allegations in the FAC. *Alfaro-Huitron*, 982 F.3d at 1252 ("control is an essential element of the relationship"); *see Brinkley v. Farmers Elevator Mut. Ins. Co.*, 485 F.2d 1283, 1286 (10th Cir. 1973) ("If the principal had no such right to direct and control, then he is not vicariously liable to third parties...").

Finally, the FAC falls far short of plausibly alleging that the PFLP is Defendants' alter ego. Under Colorado law, an alter ego finding requires ownership, financial control, common directors or officers, and a host of other limitations that find no parallels here. *Lowell Staats Mining Co. v. Pioneer Uravan, Inc*., 878 F.2d 1259, 1262-63 (10th Cir. 1989). Therefore, any argument that the PFLP is the agent or alter ego of Defendants is legally and factually unsupported.

### CONCLUSION

For the foregoing reasons, Plaintiffs' FAC should be dismissed with prejudice.

December 22, 2025

Respectfully Submitted,

**SQUIRE PATTON BOGGS (US) LLP**

/s/ *Gassan A. Baloul*
Gassan A. Baloul (DC Bar 1034245)
gassan.baloul@squirepb.com
Mitchell R. Berger (DC Bar 385467)
mitchell.berger@squirepb.com

2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

717 17th Street, Suite 1825
Denver, CO 80202
Telephone: (303) 830-1776
Facsimile: (303) 894-9239

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

Gassan A. Baloul, an attorney duly admitted to practice before this Court, certifies that on December 22, 2025, I caused true and correct copies of the foregoing to be served on Plaintiffs' counsel of record via electronic filing on the Court's CM/ECF system.

Dated:  December 22, 2025

/s/ *Gassan A. Baloul*
Gassan A. Baloul

- 14 -