## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1:21-cv-03043-GPG-STV

SHELLEY LEVINE, *et al.*,

                Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION
and THE PALESTINIAN AUTHORITY (a/k/a "The
Palestinian Interim Self-Government Authority" and/or
"The Palestinian National Authority"),

                Defendants.

---

### DEFENDANTS' REPONSE TO PLAINTIFFS'
### NEW ASSERTIONS REGARDING *ATCHLEY*

---

Defendants submit this response to the erroneous claims in Plaintiffs' March 31, 2026 submission (ECF No. 184) on *Atchley v. AstraZeneca UK Ltd.*, 165 F.4th 592 (D.C. Cir. 2026).

First, Plaintiffs deliberately conflate elements of primary and secondary ATA liability to conceal defects in their legal theories under both liability frameworks. They fail under either framework and find no support in *Atchley*, which deals substantively only with aiding-and-abetting liability. For starters, Plaintiffs improperly graft an element of ATA primary liability—their allegation that "Defendants' funding of the PFLP was thus a violation of 18 U.S.C. § 2339B" (ECF No. 184 at 1)—onto JASTA's "pervasive, systemic, and culpable" secondary liability framework by labeling all such funding as "unusual." This mixes apples and oranges. ATA secondary liability cannot be established just by showing that a defendant provides monetary or other support—even

"material" support in the words of 18 U.S.C. § 2339B—to a designated Foreign Terrorist Organi-zation.  *See* ECF No. 179 at 4; *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 498-99 (2d Cir. 2021) (rejecting argument that, because "[m]oney is fungible," JASTA aiding-and-abetting liability can be premised solely on knowing and material support to an FTO); *Wildman v. Deutsche Bank Ak-tiengesellschaft*, 2022 WL 17993076, at *7 (E.D.N.Y. Dec. 29, 2022), *aff'd sub nom. Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420 (2d Cir. 2025) ("[i]t is not enough for a defendant to be aware 'of the organization's connection to terrorism[,]'" "[n]or is it even sufficient for a defendant to knowingly violate laws which were designed to prevent terrorist activity").  Equally, ATA <u>primary</u> liability cannot be established just by showing that a defendant provides "direct[]… material support to FTOs" because primary liability requires that "Defendants were the 'principal perpetrators' of the terrorist" attack.  *Freeman v. HSBC Holdings PLC*, 2026 WL 880107, at *6, 17 (E.D.N.Y. Mar. 31, 2026) (rejecting fungibility theory).  For all their rhetoric, even Plaintiffs do not go so far as to say the PA and PLO were the "principal perpetrators" of the attack at issue here.

Nor can Plaintiffs toggle between ATA primary and secondary liability theories by positing that their incomplete showings under both frameworks somehow "meet [the] high bar" of plausibly pleading a "pervasive, systemic, and culpable" theory of secondary liability.  *Ashley*, 144 F.4th at 445.  That is because PLO budget allocations to <u>all</u> Palestinian political factions—not just to the PFLP—are "too widespread to impart the requisite intent to aid the specific terrorist acts at issue" for secondary liability.  *Freeman*, 2026 WL 880107, at *16.

If Plaintiffs want to fall back solely to primary liability under § 2339B, then their claims fail because they cannot establish the essential element of proximate cause, as confirmed most

recently by *Goldman v. Lafarge S.A.*, 2026 WL 451616, at \*7 (E.D.N.Y. Feb. 18, 2026).  *Goldman* explained that allegations that payments enhance an FTO's "general capacity to carry out attacks like those" at issue do not "allege a sufficiently direct relationship between the Defendants' payments … and the specific terrorist attacks at issue" to establish proximate cause.  *Id.* (collecting cases).  Nor do Plaintiffs plausibly allege the funding is itself an act of international terrorism, another essential element of primary liability.  *Id.* at \*3-4.  The provision of funding to <u>all</u> recognized Palestinian political parties constitutes neither "payments linked to specific terroristic acts" nor "a 'scheme' to 'incentivize' further acts of violence" and thus is "'insufficient' to allege primary liability."  *Id.* at \*4.

Second, the PA and the PLO collectively are a government—<u>not</u> "ideological entities," as Plaintiffs claim.  ECF No. 184 at 2.  The PLO is the "sole legitimate representative of the Palestinian people" and its charter reflects "the PLO's acceptance of the Oslo Accords, including recognition of Israel."[1]  The Oslo Accords created the PA in 1994 as "governing body of the Palestinian autonomous regions in the West Bank."[2]  The PA "funds conventional government services," including "public safety and the judicial system; health care; public schools and education; foreign affairs; economic development initiatives[;] … the payment of more than 155,000 government employee salaries and related pension funds; transportation; and, communications[.]"  *Waldman*, 835 F.3d at 323.  Plaintiffs' claim that Defendants "work hand-in-glove" with the PFLP (FAC ¶ 152) is implausible as a matter of undisputed fact.  Defendants politically oppose any terrorist

---

[1] Mapping Palestinian Politics, European Council on Foreign Relations, https://ecfr.eu/special/mapping_palestinian_politics/plo/; *see also Waldman v. PLO*, 835 F.3d 317, 322-23 (2d Cir. 2016).

[2] Palestinian Authority, Encyclopedia Britannica, https://www.britannica.com/topic/Palestinian-Authority; *see also Waldman*, 835 F.3d at 322-23.

objectives of the PFLP and have excluded the PFLP from both PLO functions and budget alloca-

tions to enforce that opposition.  *See* ECF No. 179 at 3 n.5.

Third, Plaintiffs misread governing case law in rejecting the aiding-and-abetting require-

ment that the defendants' act must be done with the intent to facilitate specific terrorist attacks

(ECF No. 184 at 3 n.2).  The element of an act performed "with the intent of facilitating the of-

fense's commission" was endorsed by *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490 (2023) (internal

citation omitted).  Justice Sotomayor recently reaffirmed that *Taamneh* and *Smith & Wesson*

*Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025), held that "aiding-and-abetting

liability requires proof that the defendant aided another <u>with the intent of helping that other person

succeed in committing wrongful conduct</u>."[3]  *Cox Commc'ns, Inc. v. Sony Music Ent.*, 2026 WL

815823, at \*10 (U.S. Mar. 25, 2026) (Sotomayor, J., concurring) (emphasis added); *id.* at \*11 ("Put

another way, the defendant has to take some affirmative act with the intent of facilitating the of-

fense's commission." (internal quotations omitted)); *see also Zobay v. MTN Grp. Ltd*, Case No.

21-cv-03503, ECF No. 263, at 11 (E.D.N.Y. Mar. 23, 2026) ("Courts must examine whether the

defendant acted with the intent of facilitating the offense's commission, meaning that the defend-

ant intended to further a terrorist organization's goals and support its causes." (cleaned up and

quoting *Taamneh* and *Ashley*)).  Such "knowledge-based intent can be found where 'the actor

knows that the consequences are certain, or substantially certain, to result from his act, and still

goes ahead.'"  *Cox Commc'ns*, 2026 WL 815823, at \*11 (Sotomayor, J., concurring).  Plaintiffs

do not plausibly allege (nor can they) that terrorist attacks—let alone the terrorist attack here—

---

[3] Plaintiffs' conspiracy claim fails for a similar reason because the allegations and information produced in discovery
show only the provision of political support to all Palestinian political parties—not an <u>intent</u> to commit terrorist at-
tacks.  *Freeman*, 2026 WL 880107, at \*7 ("Plaintiffs fail to plead both a common object between Defendants and their
terrorist-affiliated clients and an overt act in furtherance of that common object.").

were the "certain, or substantially certain" "consequence[]" of providing budget allocations to all Palestinian political factions, including the PFLP. *Id.*; *see also Freeman*, 2026 WL 880107, at \*14 ("Notably, Plaintiffs here have not linked Defendants' payments directly to the alleged attacks." (cleaned up)).

Finally, Plaintiffs' repeated reliance on a theory of "pervasive, systemic, and culpable" support dating back to 1999 (*see, e.g.*, ECF No. 184 at 1), all but concedes that they cannot establish "close temporal and geographical proximity to the synagogue attack" in 2014 at issue here (*id.* at 3). That "proximity" theory of traditional aiding-and-abetting—not a pervasive-and-systemic theory—was the one at issue in *Atchley*, but is a mismatch here where Plaintiffs rely on alleged long-duration support for the PFLP, not on support provided in close temporal proximity to the attack. *See Atchley*, 165 F.4th at 607 ("Because plaintiffs' allegations are limited to defendants' provision of aid to a temporally and geographically discrete set of Jaysh al-Mahdi's terrorist acts, plaintiffs need not plead that defendants and Jaysh al-Mahdi participated in a near-common enterprise of the type necessary to state claims against defendants for aiding Jaysh al-Mahdi's terrorist activities without regard to where or when they occurred."). Here, (1) "[t]here are no … allegations that the funds Defendants provided were used solely for terrorist activities," *Freeman*, 2026 WL 880107, at \*16, (2) Defendants' provision of support to Palestinian political parties "is too widespread to impart the requisite intent to aid the specific terrorist acts at issue," *id.*, and (3) Plaintiffs provide no citation or support for their claim of "temporal and geographical proximity to the synagogue attack," (ECF 184 at 3) nor any "discrete set" of terrorist attacks, *Atchley*, 165 F.4th at 607.

For the reasons stated both in their prior motion to dismiss briefing and herein, Defendants' motion to dismiss should be granted with prejudice.

Dated:  April 7, 2026

Respectfully submitted,

*s/ Gassan A. Baloul*
Gassan A. Baloul
Mitchell R. Berger
Squire Patton Boggs (US) LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315
gassan.baloul@squirepb.com
mitchell.berger@squirepb.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of April, 2026 a true and correct copy of the foregoing was electronically served upon all counsel of record via *CM/ECF*.

_s/ Gassan A. Baloul_
Gassan A. Baloul

7